Richard S. Kanowitz
Leslie Thorne
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
leslie.thorne@haynesboone.com

-and-

Martha Wyrick (admitted *pro hac vice*)
HAYNES AND BOONE, LLP
2323 Victory Ave., Suite 700
Dallas, TX 75219
(214) 651-5000
martha.wyrick@haynesboone.com

*Attorneys for JGB Partners, LP, JGB Capital, LP, JGB (Cayman) Ancona, Ltd. and JGB Plymouth Rock, LLC and their affiliates*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** § | | **Chapter 11** |
| § | | |
| **BRICKCHURCH ENTERPRISES, INC.** § | | **Case No. 8-22-70914-ast** |
| § | | |
| § | | **Ref. Doc. No. 21** |
| **Debtor.** § | | |

**JGB'S STATEMENT OF FACTS;**
**RESPONSE TO DEBTOR'S CHAPTER 11 AFFIDAVIT PURSUANT TO LOCAL RULE**
**1007-4 OF THE U.S. BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF**
**NEW YORK; AND RESERVATION OF RIGHTS**

JGB Partners, LP, JGB Capital, LP, JGB (Cayman) Ancona, Ltd. and JGB Plymouth Rock,

LLC and their affiliates (collectively "JGB"), are the largest secured creditors of Brickchurch

Enterprises, Inc. (the "Debtor" or "Brickchurch") in the above-captioned chapter 11 case, hereby

submit this *Statement of Facts; Response to Debtor's Chapter Affidavit Pursuant to Local Rule 1007-*

*4 of the U.S. Bankruptcy Court for the Eastern District of New York; and Reservation of Rights* (the "Statement") and respectfully state as follows:

### Preliminary Statement[1]

1.      JGB is the Debtor's largest secured creditor, holding claims as of the Petition Date of approximately $43,943,271.51.  Less than a year after entry into the Loan Documents with JGB in July 2018, Brickchurch defaulted on its obligations by failing to make required payments to JGB under the Loan Documents, including repayment of the entirety of the Debtor's obligations under the Loan Documents upon the maturity date of October 31, 2019, and the Morgan Stanley Mortgage.  JGB provided Brickchurch with notice and the opportunity to cure the defaults, which Brickchurch did not do.  JGB worked with Brickchurch to forbear from exercising remedies, but ultimately, Brickchurch failed to pay its obligations under the Loan Documents.  The repayment of $30,257,666.67 as of the maturity date, plus interest, fees, and other expenses which accrued after the maturity date, is now past due by over two and a half years, and JGB has not received a single payment of principal or interest from the Debtor since April 30, 2019—more than three years ago.

2.      Throughout its relationship with Brickchurch, JGB worked with Brickchurch to pursue alternatives to resolving the defaults, such as selling the Gin Lane Properties to satisfy the outstanding debt in full.  Unfortunately, Brickchurch was unable to consummate any offers received for the Gin Lane Properties.  Ultimately, to protect its rights under the Loan Documents, JGB pursued the Foreclosure Action, which was fully litigated in the State Court resulting in the Referee Report and the Foreclosure Judgment.  Brickchurch participated in the Foreclosure Action

---

[1] Capitalized terms used in this Preliminary Statement that are not otherwise defined shall have the meanings given to them below.

but failed to convince the State Court that JGB's Motion to Confirm and Foreclose should not be granted or that the Foreclosure should be stayed.

3.      Despite the pendency of the Foreclosure Action, JGB engaged with Brickchurch in pursuit of alternative resolutions to foreclosure.   JGB engaged in such discussions with Brickchurch and its representatives notwithstanding that many of the  proposals presented to JGB required JGB to take substantial reductions on the amount owed.  Indeed, despite JGB's good faith negotiations to resolve the Foreclosure Action, Brickchurch did not have the financial wherewithal to consummate a resolution.  Upon obtaining authority from the State Court to proceed, JGB scheduled the Foreclosure for May 2, 2022, which was stayed by the filing of this chapter 11 case three days before the Foreclosure.

4.      It is the intent of JGB to work constructively and cooperatively with the Debtor during the pendency of this chapter 11 case to reach a resolution that is beneficial for all constituencies.  Based on the Debtor's filing with this Court, JGB and the Debtor's interests seem to be aligned—namely, to sell the 366 Gin Lane Property and satisfy creditors in full.

5.      JGB provides this Statement to the Court ahead of the status conference scheduled on May 25, 2022 to provide the Court with information regarding:  (I) JGB's relationship with the Debtor, including the history of the Foreclosure Action; (II) JGB's efforts to work with the Debtor after the Petition Date; (III) JGB's response to the Rule 1007-4 Statement; and (IV) the Debtor's secured obligations outstanding as of the Petition Date.

**Statement of Facts**

6.      On April 30, 2022 (the "Petition Date"), Brickchurch filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned chapter 11 case. Doc. No. 1 (the "Voluntary Petition").  In the Voluntary

3

Petition and other pleadings filed in the chapter 11 case, the Debtor has provided certain representations regarding its relationship with JGB, which JGB clarifies and responds to below.

## I.     JGB's Relationship with the Debtor.

### A.     The Debtor Borrows $26,000,000 from JGB.

7.     On July 25, 2018, Brickchurch and Aberdeen Enterprises, Inc. ("Aberdeen" and, with Brickchurch, "Borrowers") executed and delivered to JGB a Secured Promissory Note (the "Note"), which obligated Borrowers to repay to JGB a sum of $26,000,000.00, plus interest and other amounts payable under the Note and related loan documents.  Borrowers entered into the Note to obtain financing in connection with the Gin Lane Properties (defined below).

8.     To secure their obligations under the Note, Borrowers executed and delivered to JGB a mortgage (the "Mortgage") granting JGB a security interest in properties located at 366 Gin Lane (the "366 Gin Lane Property") and 376 Gin Lane (the "376 Gin Lane Property," and collectively, the "Gin Lane Properties").   The Gin Lane Properties are each located in Southampton, New York and comprise a main historical house (the 376 Gin Lane Property) and a property currently used as a guest house (the 366 Gin Lane Property).

9.     The 366 Gin Lane Property is solely owned by the Debtor.  JGB was granted a valid first ranking mortgage lien on the 366 Gin Lane Property.  The 376 Gin Lane Property is solely owned by Aberdeen.  JGB was granted a valid second ranking mortgage lien on the 376 Gin Lane Property.  Morgan Stanley Private Bank, N.A. ("Morgan Stanley") holds the first lien on the 376 Gin Lane Property pursuant to a mortgage in the principal amount of $15,000,000, dated December 30, 2011 (the "Morgan Stanley Mortgage").

10.     As additional security, JGB and Borrowers entered into the Collateral Assignment of Rents, dated July 25, 2018 (the "Assignment," and together with the Note and Mortgage and all

other documents and agreements created or contemplated thereunder, the "Loan Documents"). Pursuant to the Assignment, Borrowers assigned JGB all leases and lettings of the 366 Gin Lane Property. True and correct copies of the Note, the Mortgage, and the Assignment are attached hereto as **Exhibits A1, JGB000017-34; A2, JGB000036-62; and B**, respectively.[2]

### B. Borrowers Default Less Than One Year Later.

11. Less than a year after execution of the Note, JGB declared defaults under the Note for an interest payment default and cross-default for failure to pay the Morgan Stanley Mortgage, and provided notice to Borrowers on June 4, 2019 (the "First Default Letter"). Borrowers failed to cure these defaults within the applicable cure periods. Accordingly, on June 13, 2019, JGB provided Borrowers a notice of continuing defaults and JGB's right to acceleration for failure to cure the defaults (the "Second Default Letter"). JGB declared an additional payment default under the Note and provided notice to Borrowers on July 5, 2019 (the "Third Default Letter," together with the First and Second Default Letters, the "Default Letters"). True and correct copies of the Default Letters are attached hereto as **Exhibits A3, JGB 000063; A4, JGB 000069; A5, JGB 000073**. Furthermore, prior to entry into the Forbearance Agreement (as defined below), JGB became aware of an additional default caused by Borrowers' failure to pay real estate taxes on the Gin Lane Properties.

12. On July 11, 2019, JGB and Borrowers entered into a Forbearance Agreement (the "Forbearance Agreement") pursuant to Borrowers' request that JGB forbear from exercising remedies based on the various defaults. In the Forbearance Agreement, JGB agreed to temporarily forbear from exercising remedies until the earlier of the maturity date under the Note (i.e., October 31, 2019) or the occurrence of an Event of Default (as defined therein). Borrowers acknowledged

---

[2] **Exhibits** denoted with **A#** are copies of the documents as they were attached to the Referee Report (as defined herein). They have been relabeled for ease of reference for the Court.

that: (i) pursuant to the terms of the Note and the Mortgage, Specified Defaults (as defined in the Forbearance Agreement) occurred and were continuing, and (ii) JGB had the right to exercise all rights and remedies under the Note and the Mortgage, including the right to accelerate the maturity, demand immediate payment, and foreclose on the Gin Lane Properties.  A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit A6, JGB 000077**.

13.    As a condition precedent under the Forbearance Agreement, on July 11, 2019, Louise Blouin and Mathew Kabatoff,[3] as guarantors, entered into that certain Guaranty Agreement for the benefit of JGB (the "Guaranty").  The Guarantors (as defined therein) absolutely, irrevocably and unconditionally guaranteed, jointly and severally, to JGB the prompt payment and performance of the Guaranteed Obligations (as defined therein) which obligations were triggered by the filing of this chapter 11 case.  As of the date of this Statement, JGB has not made a demand on the Guarantors.  A true and correct copy of the Guaranty is attached hereto as **Exhibit C**.

14.    By its terms, the Forbearance Agreement terminated on October 31, 2019, when the maturity date under the Note occurred and Borrowers failed to pay the total principal, interest, and other amounts that were due and owing under the Loan Documents.

**C.    JGB Exercises its Rights under the Loan Documents and Pursues Foreclosure.**

15.    In accordance with its rights under the Loan Documents, on November 22, 2019, JGB filed the *Complaint for Foreclosure of a Non-Residential Mortgage* in the Supreme Court for the State of New York, County of Suffolk (the "State Court") commencing the case styled and numbered *JGB Partners, LP, et al. v. Brickchurch Enters., Inc., et al.*, Index No. 6323208/2019 (the "Foreclosure Action").  *See* State Court Doc. No. 1.  In the Foreclosure Action, JGB specifically named Brickchurch and Aberdeen as defendants.

---

[3] Ms. Blouin is the sole principal and owner of the Debtor.  Mr. Kabatoff is Ms. Blouin's husband.

16.     None of the defendants appeared in the Foreclosure Action or answered or otherwise responded to the Complaint.  Accordingly, on January 30, 2020, JGB moved for a default judgment against all defendants and for the appointment of a referee to calculate the sum due to JGB pursuant to the Loan Documents (the "Referee Motion").  *See* State Court Doc. Nos. 24–47.  On June 1, 2021, the State Court granted the Referee Motion appointing Ann Cryan, Esq. as the referee (the "Referee") and entered an order granting default judgment.  State Court Doc. No. 72.

17.     On July 27, 2021, the Referee issued the *Report of Referee of Amount Due* [State Court Doc. No. 80] (the "Referee Report").  Pursuant to the Referee Report, the Referee determined that, as of July 1, 2021, the total amount due to JGB pursuant to the Loan Documents included: (i) $39,961,521.80 under the Loan Documents, (ii) interest at a rate of $13,000 per diem, (iii) attorneys' fees, (iv) disbursements, and (iv) costs.  A true and correct copy of the Referee Report is attached hereto as **Exhibit A**.

18.     On October 20, 2021, JGB moved to confirm the Referee's Report and for foreclosure of the Gin Lane Properties.  *See* State Court Doc. Nos. 75–87 (the "Motion to Confirm and Foreclose").[4]  On October 29, 2021, Brickchurch filed an *Affirmation in Opposition to Motion for Judgment* [State Court Doc. No. 88], to which JGB replied [State Court Doc. No. 90–95].

19.     On January 14, 2022, over Brickchurch's objection, the State Court granted the Motion to Confirm and Foreclose, in part, and entered an order confirming the Referee's Report.  *See* State Court Doc. No. 97.  Thereafter, on February 2, 2022, the State Court entered another order ordering a foreclosure of the Gin Lane Properties.  *See* State Court Doc. No. 99 (the "Foreclosure Judgment").  As set forth in the Foreclosure Judgment, the State Court ordered that

---

[4] JGB later waived its application for attorney's fees.  *See* Foreclosure Judgment (defined below), p. 3 of 16.

the Gin Lane Properties be sold in two parcels at separate public auctions, with the 366 Gin Lane Property to be sold first, and the 376 Gin Lane Property to be sold at a separate, later auction.  A true and correct copy of the Foreclosure Judgment is attached hereto as **Exhibit D**.

20.     On March 2, 2022, Brickchurch appealed the Foreclosure Judgment (the "<u>Appeal</u>"). *See* State Court Doc. No. 100.  The Appeal is pending in the Appellate Division, Second Department at Index No. 2022-01592.

21.     On March 28, 2022, JGB served Borrowers with a Notice of Sale of the 366 Gin Lane Property, which sale was to take place on May 2, 2022 (the "<u>Foreclosure</u>").  *See* State Court Doc. No. 102.

22.     On April 24, 2022, Borrowers filed an order to show cause to stay the Foreclosure and requested a temporary restraining order.  State Court Doc. Nos. 103–07 (the "<u>Show Cause Request</u>").  On April 25, 2022, JGB filed an opposition to the Show Cause Request. State Court Doc. No. 108.  On April 26, 2022, the State Court denied the Show Cause Request, which allowed JGB to proceed with the Foreclosure despite the Appeal. *See* State Court Doc. No. 111.

**D.     The Debtor Continued to Violate the Loan Documents During the Foreclosure Action.**

23.     During the Foreclosure Action, Brickchurch violated various provisions of the Loan Documents, separate and apart from the defaults noticed in the Default Letters.

*i.     Brickchurch Collects Rental Income in Violation of the Loan Documents.*

24.     Under the Assignment, Assignor (i.e., Brickchurch), assigned "all leases and lettings" of the 366 Gin Lane Property to JGB and may only collect rents from leasing the 366 Gin Lane Property "so long as there shall exist no default."  Assignment, Recitals, § 5.  If Brickchurch collected rents "under a license granted" by JGB through the Assignment, Brickchurch had an obligation to apply the rents in a certain priority scheme (i.e., first to taxes, then to insurance and

repairs, and then to obligations under the Loan Documents).  Assignment, § 5, **Ex. B, JGB 000107**.  During the summer of 2021, JGB became aware that Brickchurch leased the 366 Gin Lane Property for approximately $750,000 (the "<u>Rental Fees</u>").  *See also* Voluntary Petition, Doc. No. 1. p. 25 of 40 (stating that for 2021, the Debtor collected $750,000 in rental income).  As a preliminary matter, renting the property while the defaults existed violates the Assignment.  But, importantly, upon information and belief, Brickchurch kept the Rental Fees instead of applying them to taxes, insurance, and repairs.

25.     Based on the Debtor's filings with this Court, JGB is now aware that Brickchurch leased the 366 Gin Lane Property on other occasions in apparent violation of the Assignment.  For example, in the Voluntary Petition, the Debtor represents that during 2020, it collected $250,000 in rental income.  Doc. No. 1, p. 25 of 40.  Moreover, in the Rule 1007-4 Statement (as defined below), the Debtor states that it rented the 366 Gin Lane Property in September 2021 for two weeks.  Doc. No. 21, p. 3 of 7.  Brickchurch did not apply any of the rental income to the obligations required under the Assignment.

### ii.     Brickchurch Failed to Maintain Insurance in Violation of the Mortgage.

26.     Under the Mortgage, Borrowers agreed to "keep the buildings on the premises continuously insured" and covenanted to pay the costs of insurance for the 366 Gin Lane Property.  Mortgage, §§ 2, 24, **Ex. B., JGB 000020-21, JGB 000026-27**.  In late September 2020, JGB became aware that Brickchurch allowed the insurance policy covering the Gin Lane Properties to lapse and that Borrowers were unable to make the necessary payments.  Accordingly, from October 2020 to October 2021, JGB advanced funds to the insurance carriers to cover the necessary

payments in a cumulative amount of approximately $98,623.56.[5] Brickchurch's failure to maintain insurance is a clear violation of the Mortgage.[6]

## II.    Events after the Chapter 11 Case.

27.    In the Voluntary Petition, the Debtor asserts that based on an appraisal, the 366 Gin Lane Property is worth $63,000,000. Doc. No. 1, p. 10 of 40. The Debtor also asserts that JGB has a disputed secured claim of $43,376,485. *Id.* at p. 14. According to the Debtor's filing, JGB is therefore oversecured by $19,623,515. The Debtor's assertions were made by Ms. Louise Blouin under penalty of perjury.

28.    To evaluate the Debtor's assertions on value and to request adequate protection under section 361 of the Bankruptcy Code, on May 10, 2022, JGB delivered to the Debtor, through counsel, and in accordance with the notice procedures required under the Loan Documents, a demand for adequate protection and access to the 366 Gin Lane Property (the "May 10 Demand Letter"). In the May 10 Demand Letter, JGB requested access to the 366 Gin Lane Property to conduct an inspection in accordance with its rights under the Note. Note, § 7.5, **Ex. A2, JGB 000045** (stating that JGB is entitled to access the 366 Gin Lane Property "at any time during normal business hours on a Business Day. The Borrowers shall provide [JGB] or their representatives with access to the Properties for any such inspection within 5 Business Days of [JGB's] request."). JGB also requested adequate protection in the form of monthly payments, post-petition interest at the non-default rate, payment of outstanding professional fees, payment of outstanding real estate taxes, and assignment of any rents received during the chapter 11 case.

---

[5] Of this amount, approximately $40,356.85 is allocated to insurance for the 376 Gin Lane Property.

[6] In addition to failing to pay the insurance premiums, Ms. Blouin collected approximately $1,326,409.85 from an insurance claim in connection with the 376 Gin Lane Property. Upon information and belief, Ms. Blouin cashed the insurance checks and none of the amounts were applied as required under the Loan Documents.

29.     Having received no response to the May 10 Demand Letter, on May 12, 2022, JGB sent a follow up letter (the "May 12 Letter").  In the May 12 Letter, JGB reiterated its demands set forth in the May 10 Demand Letter and also addressed issues concerning a rental request JGB became aware of for the 366 Gin Lane Property during the summer of 2022.  In the May 12 Letter, JGB advised the Debtor that: (i) the rental request violated the terms of the Loan Documents and (ii) any rents received by the Debtor during the chapter 11 case are JGB's cash collateral.

30.     Presently, the Debtor's and JGB's counsel are working cooperatively to facilitate JGB's request for an inspection.  As of the date of this Statement, the Debtor has not responded to JGB's adequate protection request.  Nevertheless, JGB reemphasizes that it is seeking to work with the Debtor and its advisors to obtain the highest value for the 366 Gin Lane Property for all constituencies.

**III.     Response to the Rule 1007-4 Statement.**

31.     On May 16, 2022, the Debtor filed its *Debtor's Chapter 11 Affidavit Pursuant to Local Rule 1007-4 of the U.S. Bankruptcy Court for the Eastern District of New York* [Doc. No. 21] (the "Rule 1007-4 Statement").  The Debtor made certain allegations with respect to JGB, to which JGB responds.

### *i.     JGB Did Not Receive Reasonable Refinancing Requests from Brickchurch.*

32.     The Debtor states that after entering into the Note with JGB, it worked to refinance the amounts due to JGB.  Rule 1007-4 Statement, Doc. No. 21, p. 3 of 7.  The Debtor states it was unable to obtain alternative financing but had a "final loan agreement . . . with REYL Bank."  *Id.* at p. 4 of 7.  The Debtor implies that the agreement with REYL Bank fell through because JGB was "unreceptive to [Ms. Blouin's] proposals."  *Id.*  As a preliminary matter, JGB does not have record of any formal documentation of a refinancing.  Moreover, with respect to the proposal from

REYL Bank, in October 2020, REYL Bank requested that as a condition to refinancing, that JGB waive its right to a significant amount of debt outstanding under the Loan Documents. While JGB offered to maintain a second lien in connection with the remaining outstanding obligations, this settlement offer was not accepted. Other than the proposal from REYL Bank, JGB is unaware of any of other realistic or reliable prospective refinancing proposals.

> ### ii. Brickchurch Received—and Rejected—Offers for the 366 Gin Lane Property in Excess of the JGB Secured Obligations.

33.     The Debtor states that JGB commenced the Foreclosure Action because the Debtor could not obtain new financing or "work[] out a resolution [with JGB]." *Id.* The Debtor does not disclose that, prior to the Petition Date, Brickchurch received multiple offers for the 366 Gin Lane Property which would have repaid JGB and Morgan Stanley in full. For example:

- On October 23, 2019, JGB received notice of an offer for $25,000,000 for the 366 Gin Lane Property, which at the time, would have partially satisfied the outstanding obligations to JGB.

- On October 29, 2019, JGB received notice of an offer for $50,000,000 for the Gin Lane Properties. At the time, the outstanding cumulative obligations to JGB and Morgan Stanley were less than this offer.

- On October 31, 2019, JGB received notice of an offer for $55,000,000 for the Gin Lane Properties. At the time, the outstanding cumulative obligations to JGB and Morgan Stanley were less than this offer.

34.     Brickchurch, however, rejected all these offers.

## IV.    JGB Secured Obligations as of the Petition Date.

35.     As of the Petition Date, the Debtor was indebted to JGB in the total amount of **$43,943,271.51** (the "JGB Secured Obligations"), itemized as follows. Unless otherwise indicated, these amounts are identical to the calculation provided in the Referee Report that was approved by the State Court. A true and correct copy of the Referee's itemized calculation is attached hereto as **Exhibit A8, JGB 000102.**

- Principal:  $26,000,000.00

- Interest (due as of the Referee Report):  $10,161,668.00

- Interest (at the per diem rate approved by the State Court from the date of the Referee Report to April 29, 2022): $3,926,000.00

- Forbearance Exit Charge:  $2,000,000.00

- 5% Late Charge:  $1,527,183.00

- Miscellaneous Expenses:  $98,623.56[7]

- Real Estate Taxes:  $229,796.95

## **Reservation of Rights**

36.     For the avoidance of doubt, nothing contained in this Statement is intended to waive or release any right, remedy, or claim JGB may have under the Loan Documents, the Guaranty, or applicable law, including but not limited to JGB's right to seek dismissal of the chapter 11 case, relief from the automatic stay, adequate protection, contest the Debtor's use of cash collateral, assert post-petition interest and other charges, request that the Debtor sequester any rents received during the chapter 11 case, or make demand under the Guaranty.  Moreover, this Statement is qualified in its entirety by JGB's proof of claim, which JGB shall file on a timely basis.

---

[7] Miscellaneous expenses include amounts that JGB paid to cover the Debtor's insurance amounts, including amounts to American Bankers Insurance Company of FL and Colstan & Associates Inc.  When the State Court approved the Referee Report, these amounts were $42,873.90, but since the approval, JGB made additional payments on behalf of insurance.

## Conclusion

37.    JGB looks forward to working with the Debtor to resolve the issues set forth in this

Statement.  Like the Debtor, it is JGB's goal that the 366 Gin Lane Property be marketed during

the chapter 11 case and ultimately sold at the highest value for the benefit of all constituencies.

Dated: May 20, 2022
New York, New York

HAYNES AND BOONE, LLP

By: */s/ Richard S. Kanowitz*
Richard S. Kanowitz
Leslie Thorne
30 Rockefeller Plaza, 26th Floor
New York, NY 10112
(212) 659-7300
richard.kanowitz@haynesboone.com
leslie.thorne@haynesboone.com

-and-

Martha Wyrick (admitted *pro hac vice*)
HAYNES AND BOONE, LLP
2323 Victory Ave., Suite 700
Dallas, TX 75219
(214) 651-5000
martha.wyrick@haynesboone.com

*Attorneys for JGB Partners, LP, JGB Capital, LP,*
*JGB (Cayman) Ancona, Ltd. and JGB Plymouth*
*Rock, LLC and their affiliates*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by (i) electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case; (ii) email to Debtor and Debtor's Counsel as indicated; and (iii) first class United States mail, postage prepaid and properly addressed, to all parties appearing on the attached Service List on May 20, 2022.

*/s/ Richard S. Kanowitz*
Richard S. Kanowitz

## SERVICE LIST

Debtor:

Brickchurch Enterprises, Inc.
c/o C T Corporation System,
as Registered Agent
28 Liberty Street
New York, NY 10005
Email: lt@ltbholding.com

Brickchurch Enterprises, Inc.
366 Gin Lane
Southampton, NY 11968

Counsel for Debtor:

Craig D. Robins, Esq.
35 Pinelawn Road, Suite 106-E
Melville, NY 117747
Email: craigr@CraigRobinsLaw.com

United States Trustee:

United States Trustee
Long Island Federal Courthouse
560 Federal Plaza – Room 560
Central Islip, NY 11722-4437

William J. Birmingham
Office of the United States Trustee
Region 2
Long Island Federal Courthouse
560 Federal Plaza – Room 560
Central Islip, NY 11722-4437

Aberdeen Enterprises, Inc
C/O BCI Management
165 Broadway 23rd Floor
New York, NY 10006-1452

Barrett, Bonacci & VanWee
175A Commerce Drive
Hauppauge, NY 11788-3920

Casola Well Drillers Inc.
600 Burman Blvd.
Calverton, NY 11933-3020

Internal Revenue Service
Centralized Insolvency Unit
PO Box 7346
Philadelphia, PA 19101-7346

Louise Blouin
Riedstrasse 80
3920, Zermatt, Switzerland

Mancaves
9 Bayberry Ct
Holtsville, NY 11742-2523

Mathew Kabatoff
Riedstrasse 80
3920, Zermatt, Switzerland

New York State Department of
Taxation & Finance
Bankruptcy Unit- TCD
Building 8, Room 455
WA Harriman State Campus
Albany, NY 12227-0001

New York State
Dept. of Tax & Finance
c/o NY State Attorney Gen
120 Broadway, 24th Floor
New York, NY 10271-0042

NYC Department of Finance
Office of Legal Affairs
345 Adams Street
Brooklyn, NY 11201-3739

New York State Department of
Taxation & Finance
Bankruptcy Unit
PO Box 5300
Albany, NY 12205-0300

New York State Unemployment Insurance
Attn: Insolvency Unit
Bldg. #12, Room 256
Albany, NY 12201

PSEG
P.O. Box 888
Hicksville, NY 11802-0888

Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556-3823

Sothebys Int'l Realty Inc
50 Nugent Street
Southampton, NY 11968-4816

State of New York
Empire State Plaza
Albany, NY 12224

Suffolk Co Water Authority
4060 Sunrise Highway
Oakdale, NY 11769-1005

Town of Southampton
116 Hampton Road
Southampton, NY 11968-4998

US Attorney's Office
Eastern District of NY
Attn: LI Bankruptcy Process
610 Federal Plaza, 5th Fl
Central Islip, NY 11722-4454

US Department of Justice
Tax Division
Box 55
Ben Franklin Station
Washington, DC 20044-0055

United States of America
Secretary of the Treasury
15th Street & Pennsylvania Ave. NW
Washington, DC 20220-0001

Village of Southampton
23 Main Street
Southampton, NY 11968-4808