October 18, 2022

The Honorable Chief Judge Alan Trust
Courtroom 960
United States Bankruptcy Court
Eastern District of New York
Alfonse M. D'Amato Federal Courthouse
290 Federal Plaza
Central Islip, New York 11722

Re:    *In re Brickchurch Enters., Inc.*, **Case No. 8-22-70914-ast (the "<u>Bankruptcy
Case</u>"); Position Letter of Debtor with Respect to the Debtor's Obligations
Under the JGB Loan Documents**

Dear Judge Trust,

This firm acts for Brickchurch Enterprises, Inc. (the "***Debtor***"), debtor and debtor-in-possession in this Bankruptcy Case.   At the hearing on October 6, 2022, the Court asked Debtor to submit a Joint Letter with  Debtor's prepetition secured lender JGB Partners, LP, JGB Capital, LP, JGB (Cayman) Ancona, Ltd. and JGB Plymouth Rock, LLC and their affiliates (collectively "***JGB***," and with the Debtor, the "***Parties***") to set forth the Parties' position relating to what amount is due and needs to be paid with the Take-Out Financing secured by Debtor.  JGB drafted the initial draft of the letter, which states what they believe was the undisputed and disputed amount due to JGB.  Debtor immediately provided some feedback to JGB in regard to what was disputed, and a detailed analysis as to why those amounts were disputed, in order to provide the Court with some basis upon which to determine the issue of the amount.  Debtor then gave JGB the opportunity to supports JGB's position, but JGB would have none of it, claiming the Court was not interested in the Parties position but only as to the amount that was in dispute.  It has since filed its own independent letter, seemingly leaving the Court to figure it out on its own.  In any event, the Debtor now submits this letter, along with the following documents: (i) the Note, (ii) the Mortgage; (iii) the Forbearance Agreement; and (iv) the Foreclosure Judgment, attached as **Exhibits A, B, C and D**, respectively.

*Undisputed Amounts*

Debtor agrees and does not dispute for the purpose of determining the amount JGB is to be paid with the Take-Out financing (some of which are the subject to the appeal now pending in the Appellate Division, Second Department of the New York Supreme Court and subject to reimbursement, should the appeal be successful (the "***Undisputed Amounts***")), the following:

| <u>Category</u> | <u>Amount</u> |
|---|---|
| The Amount Set forth in the Foreclosure Judgment dated, entered February 2, 2022 | $39,961,521.80 |

1

| Category | Amount |
|---|---|
| Interest from July 2, 2021 through October 26, 2022 (plus per diem after October 26, 2022 at $13,000 per day)[1] | $ 6,266,000.00 |
| Insurance payments from July 1, 2022 through February 2, 2022 | $55,749.66 |
| **Total** | **$46,283,271.50** |

## Disputed Amounts

JGB asserts that the following amounts (the "***Disputed Amounts***") are also presently due and payable to JGB pursuant to the Foreclosure Judgment and applicable law. The categories of the Disputed Amounts include the following:

| Category | Amount |
|---|---|
| Debtor's indemnity obligations under the Loan Documents | $2,500,000.00 |
| Legal (Haynes and Boone) fees and expenses from August 2, 2021 through April 29, 2022 related to the State Court Action | $176,814.87 |
| Legal (Haynes and Boone) fees and expenses from April 30, 2022 through September 30, 2022 related to the Bankruptcy Case | $978,749.33 |
| Legal (Haynes and Boone) fees and expenses from April 30, 2022 through September 30, 2022 related to the State Court Action | $11,106.00 |
| Expert (FTI Consulting) fees and expenses from April 30, 2022 through September 30, 2022 related to the Bankruptcy Case | $190,232.73 |
| Estimated legal fees and expenses that continue to accrue from October 1, 2022 through November 9, 2022 related to the State Court Action | $100,000.00 |
| Estimated legal fees and expenses that continue to accrue from October 1, 2022 through November 9, 2022 related to the Bankruptcy Case | $615,000.00 |

In summary, JGB asserts that the total amounts due and owing under the JGB Loan Documents are **$51,037,174.44** that includes estimated legal expenses that will accrue through November 9, 2022. As part of the Foreclosure Judgment, JGB claims that it only waived its right to collect from Borrowers the legal fees and expenses incurred as of August 1, 2021 in the amount of $305,786.05.

---

[1] The parties agree this amount may go up or down depending on the date of the actual payment (in other words, the amount would go up if paid after October 26th, and down if paid before – all in increments of $13,000 per diem).

## Debtor's Position

There are three categories of fees and cost to which the debtor objects: (i) the sum of $2,500,000 for estimated indemnity obligation; (ii) the sum of $1,881,670.20 in attorney's fees and costs, $715,000 of which are estimated and not yet incurred; and (iii) an expert consultant fee of $190,232.73 incurred in the Bankruptcy Case. In the main, it seems that JGB wishes to pile on as much as possible, hoping for the Court will simply compromise the dispute by "cutting the baby in half." However, courts are not directed by the Judgment of Solomon, but must look to the contract and law in making a determination as to what is due on a judgment and for the purpose of this Joint Submission, to be paid as part of the Take-Out Financing.

### 1.      The $2,500,000 War Chest Sought By JGB

JGB, in addition to the amount due on the Foreclosure Judgment, also seeks an additional $2,500,000 in order to fund the defense of threatened litigation by Debtor and its sister company, Aberdeen Enterprises, Inc. JGB relies upon certain provisions in the Loan Documents. However, there is no provision in any of the mentioned Loan Documents that allows for advancement of fees for feared litigation. Worse, JGB seems to have pulled the $2,500,000 figure out of thin air, and without any support or reasoning behind the mathematical calculation (if any) of the $2,500,000 number. Indeed, it is nearly **double** the total amount that it claims to have incurred through the date of this filing in the foreclosure and Bankruptcy Case combined.

There are three provisions in the Loan Documents with speak to the entitlement by JGB of its attorneys' fees and costs. The first appears in the Note, and provides, in relevant part:

> 11.2    <u>Expenses</u>. The Borrowers hereby agree to pay on demand: .
> . . . (b) all costs and expenses of the Noteholder in connection with
> any *Event of Default and the enforcement of this Note, the other*
> *Loan Documents or any document entered into in connection*
> *therewith*, including without limitation, the fees and expenses of
> legal counsel, advisors, consultants, and auditors for the
> Noteholders.

Nowhere in the Note does it allow for the reimbursement for fees and expenses after the payoff of the obligation, nor for matters that involve a direct action by Borrowers and against JGB, which cannot involve "the enforcement of" the Note or other Loan Documents.

The second mention of expense reimbursement is contained in Section 13 of the Mortgage. It provides, in relevant part, as follows:

13. If any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby) to which action or proceeding the holder of this mortgage is made a party or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the holder of this mortgage for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees) shall be paid by the Mortgagor, together with interest thereon, at the rate or rates specified in the Note secured hereby and any such sums, with the interest thereon, shall be a lien on said premises attaching or accruing subsequent to the lien of this mortgage and shall be deemed to be secured by this mortgage and by the Note which it secures. In any action or proceeding to foreclose this mortgage and/or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall continue unaffected by this covenant.

This provision is even less supportive to JGB's position because, first, the Mortgage refers to "all sums paid by the holder of this mortgage," not amounts supposedly to be paid in the future, like the $2,500,000 amount, and second, that reimbursement obligation only applies to fees incurred "to defend or uphold the lien of this mortgage."

The final mention of the right to reimbursement for attorneys' fees and costs appears in the Forbearance Agreement (entered into by Debtor AFTER the default), and that agreement seems to trade the actual amount expended for attorneys' fees and costs for a liquidated amount of $90,000.00, providing as follows:

> 12.  Expense reimbursement.  The Lenders shall be entitled to a non-accountable expense reimbursement of $90,000 (which shall be applied towards, among other things, Lender's legal fees) in connection with this Agreement. . . .

It is well established that unambiguous provisions of a written contract, must be given their plain and ordinary meaning" in order to "give effect to the parties' reasonable expectations." *Glassalum Int'l v. Albany Ins.*, 2005 U.S. Dist. LEXIS 9767, *16-17 (S.D.N.Y. 2005); *see also McCarthy v. Am. Int'l Group*, 283 F.2d 121, 124 (2nd Cir. 2001) (stating that New York law seeks to "give effect to the intent of the parties as expressed in the clear language of the contract").  In the present case, there is no mention of allowing for attorneys' fees and costs to secure a war chest for threatened litigation not arising out of the default of the loan, but out of the fraudulent and deceitful conduct Debtor alleges was committed by JGB and its cohorts.  Moreover, the amount sought by JGB is both well north of what the Parties agreed to in the Forbearance and is speculative and not supported by any evidence to boot.

Moreover, even if there is some basis upon which to seek a deposit for future litigation under the Loan Documents, that obligation will cease upon payoff in a few weeks.  Once the balance of the loan is paid off, Section 3-604 of the UCC provides that Debtor's obligations are "discharged to the extent of all subsequent liability for interest, costs and attorney's fees." UCC § 3-604(1).  Along this same line, the Mortgage itself states that all obligations to JGB are discharged upon the payment of the loan in full:

> 27. All obligations of the Mortgagor hereunder shall continue until the entire debt evidenced hereby is paid, notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this agreement.

What possible basis could there be for the creation of such a war chest which can only be expended after Debtor's reimbursement obligations (whatever they are) will have ceased as a matter of law?

### 2.      Attorney's Fees and Costs in the Amount of $1,881,670.20

In addition to seeking attorneys' fees in costs for litigation that has not been filed, JGB seeks attorneys' fees and costs incurred **after** the entry of the Foreclosure Judgment, and during the course of this bankruptcy, in the amount of $1,166,670.20, and an estimate of amounts to be incurred from now until the payoff of its loan in a few weeks, in the amount of $715,000. As to the amount of $715,000, that amount is not recoverable for many of the same reasons as the $2,500,000 war chest amount is not – it has yet to be incurred. But, as to any amount for attorneys' fees and costs, they are not recoverable at all, insofar as the Foreclosure Judgment disallowed attorney's fees and costs associated with its enforcement.

The Foreclosure Judgment directed the payment of $39,961,521.80, plus a per diem payment of $13,000 from July 2, 2021, but the State Court specifically refused to grant JGB its fees in prosecuting the Foreclosure Judgment, crossing out the wording in the proposed order of "an award for legal fees incurred *or to be incurred by Plaintiff in the prosecuting of the foreclosure action,* in the amount of $304,316 as provided in the Loan Documents, ***plus any additional legal fees and expenses incurred by Mortgage Holder, including the Assignment, including any Assign in connection with the foreclosure and sale that are required to be paid by Borrower under the Loan Documents. . . . .*"** as more fully provided in the Foreclosure Judgment:

> FOURTH:     (A) with respect to the sale of 366 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, the sum of
> $   39,961,521.80            , which is comprised of (i) the said amount of $39,961,521.80 so reported by the Referee to be due as of July

1, 2021 with interest ~~in the total amount of $ _____~~ accruing at a per diem rate of Thirteen Thousand Dollars ($13,000) from the date July 2, 2021 to date of entry of this judgment as provided in the said Referee's Report, ~~(ii) an award for legal fees incurred or to be incurred by Plaintiffs in prosecuting the foreclosure action, in the amount of $304,316.05 as provided for in the Loan Documents, *plus* any additional legal fees and expenses incurred by Mortgage Holder, including any Assignee, including any Assignee in connection with the foreclosure and sale that are required to be paid by the Borrowers under the Loan Documents~~, and (iii) an award of costs, disbursements and additional allowances in the amount of $1,125.00 to be taxed by the Clerk of this Court with interest thereon from the date hereof, with interest thereon from the date hereof, together and thereafter interest at the statutory rate thereon, to the date of sale directed herein or to the date of the delivery of the Referee's deed, whichever is later or so much as the purchase money of the mortgaged Properties will pay of the same, and (B) with respect to the sale of 376 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, an amount equal to the judgment of foreclosure and sale amount *less* any amounts paid to the Mortgage Holder from the proceeds of the sale of 366 Gin Lane.

So, it follows, just as Debtor cannot in this Court challenge the amount of the Foreclosure Judgment (by clawing back on items that it believes should not have been included by the State Court), JGB is likewise bound both under ordinary principles of issue preclusion as well as the *Rooker-Feldman* doctrine.

Issue preclusion in New York has four elements: (i) the issues in both proceedings are identical; (ii) the issue in the prior proceeding was actually litigated and decided; (iii) there was a full and fair opportunity to litigate in the prior proceeding; and (iv) the issue previously litigated was necessary to support a valid and final judgment on the merits. *Conason v Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015). The *Rooker-Feldman* doctrine precludes this Court from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Debtor recognizes that the Foreclosure Judgment controls in regard to the payoff to JGB, which is why it pursued an appeal in State Court.

JGB made a motion to the State Court for final judgment of foreclosure and sale, and presented an order with the relief sought in that motion. While the Foreclosure Judgment was entered, the order was modified in a way which denied JGB attorneys' fees incurred not only in the foreclosure, but "any additional legal fees and expenses incurred by [it]." If JGB is now unhappy with the denial of its attorneys' fees and costs, it can seek recourse with the State Court with a motion to vacate the judgment. Debtor is not sure that such a motion would be granted, but that is the only avenue available to JGB.

In addition, and to the extent this Court believes that issue preclusion or *Rooker-Feldman* is not implicated, the $715,000 amount, for yet to be incurred attorneys' fees, is easily barred for many of the same reasons as set forth in Point 1 of Debtor's Position above.

Still, there is another reason why none of the attorneys' fees should be allowed, and that is because there is no proof showing their reasonableness.  The law is clear that "[t]he burden of showing the reasonableness of the fees lies upon the claimant."  *1 Toms Point Lane Corp. v. New York State Div. of Hum. Rts.*, 176 A.D.3d 930, 933 (1st Dep't 2019) (citations omitted).  Rather than meet this burden, JGB simply states that the amount is owed without any showing that these claimed fees are reasonable.

### 3.    The Expert Consultant Fee of $190,232.73

As set forth above, only amounts that are incurred as a result of an Event of Default and the enforcement of the Note or the other Loan Documents*,* are collectible from Debtor.  The Expert Consultant Fee was not incurred to collect the amount due, but only to determine the value and condition of the collateral.  There is no reason to do that in the context of a foreclosure, as the judgment is *in rem,* and whether property is worth $1 or a billion dollars, is beside the point, and not part of the collection activity.

Moreover, there is no evidence to show, as it is JGB's burden to do so, the reasonableness of the amount.

In sum, Debtor submits that no additional amounts are due in addition to the judgment amount set forth in the Foreclosure Judgment, and the interest which has accrued since the time that Judgment was entered.

Lastly, Debtor plans to file a formal objection to the Disputed Amounts during the claim objection and reconciliation process in the Bankruptcy Case.

Respectfully submitted,

SIMMONS LEGAL PLLC

*/s/ Camisha L. Simmons*

**Camisha L. Simmons**
SIMMONS LEGAL PLLC
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
212.653.0667 (Telephone- New York)
214.643.6192 (Telephone- Dallas)
800.698.9913 (Facsimile)
Email:  camisha@simmonslegal.solutions

***COUNSEL FOR DEBTOR***

*INDEX AND EXHIBITS*

*In re Brickchurch Enters., Inc.*, **Case No. 8-22-70914-ast (the "<u>Bankruptcy Case</u>"); Position Letter of Debtor Brickchurch Enterprises, Inc. with Respect to the Debtor's Obligations Under the JGB Loan Documents**

| Exhibit A | Note |
|-----------|------|
| Exhibit B | Mortgage |
| Exhibit C | Forbearance Agreement |
| Exhibit D | Judgment of Foreclosure and Sale |

# EXHIBIT A

# SECURED PROMISSORY NOTE

## July 25, 2018

FOR VALUE RECEIVED, and subject to the terms and conditions set forth herein, BRICKCHURCH ENTERPRISES, INC., a Delaware corporation ("**Brickchurch**") and ABERDEEN ENTERPRISES, a Delaware corporation ("**Aberdeen**" and together with Brickchurch, collectively, the "**Borrowers**" and each a "**Borrower**"), hereby unconditionally, jointly and severally, promise to pay to the order of each Lender identified on Exhibit A attached hereto, or its assigns (each a "**Noteholder**" and together the "Noteholders", and collectively with the Borrowers, the "**Parties**"), the principal amount of $26,000,000 (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (the "**Note**").

1. Definitions. Capitalized terms used herein shall have the meanings set forth in this **Section 1**.

"**366 Gin Lane Property**" means the parcel of real property known as 366 Gin Lane, Southampton, NY and all improvements thereon.

"**376 Gin Lane Property**" means the parcel of property known as 376 Gin Lane, Southampton, NY and all improvements thereon.

"**Affiliate**" means as to any Person, any other Person that, directly or indirectly through one or more intermediaries, is in control of, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person means the power, directly or indirectly, either to (a) vote 10% or more of the securities having ordinary voting power for the election of directors (or persons performing similar functions) of such Person or (b) direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

"**Applicable Rate**" means the annual rate equal to 12%.

"**Anti-Terrorism Law**" means any Law related to money laundering or financing terrorism including the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Title III of Pub. L. 107-56) (the "**USA PATRIOT Act**"), the Currency and Foreign Transactions Reporting Act, 31 U.S.C. §§ 5311-5330 and 12 U.S.C. §§ 1818(s), 1820(b) and 1951-1959) (also known as the "**Bank Secrecy Act**"), the Trading With the Enemy Act (50 U.S.C. § 1 et seq., as amended) and Executive Order 13224 (effective September 24, 2001).

"**Borrower**" or "**Borrowers**" has the meaning set forth in the introductory paragraph.

Case 8-22-70914-ast Doc 136 Filed 10/18/22 Entered 10/18/22 13:46:36

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in New York City, New York are authorized or required by law to close.

"**Change in Control**" means any (a) reorganization, recapitalization, consolidation or merger (or similar transaction or series of related transactions) of a Borrower, sale or exchange of outstanding shares (or similar transaction or series of related transactions) of a Borrower in which the holders of such Borrower's outstanding shares immediately before consummation of such transaction or series of related transactions do not, immediately after consummation of such transaction or series of related transactions, retain shares representing more than fifty percent (50%) of the voting power of the surviving entity of such transaction or series of related transactions (or the parent of such surviving entity if such surviving entity is wholly owned by such parent), in each case without regard to whether Borrower is the surviving entity or (b) a Borrower disposes, transfers, sells or assigns any material portion of its assets to another Person.

"**Debt**" of a Borrower, means all (a) indebtedness for borrowed money; (b) obligations for the deferred purchase price of property or services; (c) obligations evidenced by notes, bonds, debentures or other similar instruments; (d) obligations as lessee under capital leases; (e) obligations in respect of any interest rate swaps, currency exchange agreements, commodity swaps, caps, collar agreements or similar arrangements entered into by such Borrower providing for protection against fluctuations in interest rates, currency exchange rates or commodity prices or the exchange of nominal interest obligations, either generally or under specific contingencies; (f) obligations under acceptance facilities and letters of credit; (g) all obligations or liabilities secured by a lien on the assets of such Borrower, (h) any obligation arising with respect to any other transaction that is the functional equivalent of borrowing but which does not or would not constitute a liability on the balance sheet of such Borrower, (i) guaranties, endorsements (other than for collection or deposit in the ordinary course of business), and other contingent obligations to purchase, to provide funds for payment, to supply funds to invest in any Person, or otherwise to assure a creditor against loss, in each case, in respect of indebtedness set out in clauses (a) through (h) of a Person other than such Borrower; and (j) indebtedness set out in clauses (a) through (i) of any Person other than such Borrower secured by any lien on any asset of such Borrower, whether or not such indebtedness has been assumed by such Borrower.

"**Default**" means any of the events specified in **Section 9** which constitutes an Event of Default or which, upon the giving of notice, the lapse of time, or both pursuant to **Section 9** would, unless cured or waived, become an Event of Default.

"**Default Rate**" means, at any time, the Applicable Rate plus 6 percentage points.

"**Event of Default**" has the meaning set forth in **Section 9**.

"**GAAP**" means generally accepted accounting principles in the United States of America as in effect from time to time.

"**Governmental Authority**" means the government of any nation or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal or any other level, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of, or pertaining to, government.

"**Interest Make Whole**" means, with respect to any payment of this Note prior to January 31, 2019, the amount of interest that would have accrued hereunder from the date of such prepayment through January 31, 2019 but for such payment.

"**Interest Payment Date**" means the last Business Day of each calendar month commencing on the first such date to occur after the execution of this Note.

"**Law**" as to any Person, means any law (including common law), statute, ordinance, treaty, rule, regulation, policy or requirement of any Governmental Authority and authoritative interpretations thereon, whether now or hereafter in effect, in each case, applicable to or binding on such Person or any of its properties or to which such Person or any of its properties is subject.

"**Lien**" means any mortgage, pledge, hypothecation, encumbrance, lien (statutory or other), charge or other security interest.

"**Loan**" has the meaning set forth in the introductory paragraph.

"**Loan Documents**" means this Note, the Mortgage, the Collateral Assignment of Leases and Rents executed by the Borrowers and any other agreements, instruments, or documents executed and delivered by the Borrowers or Guarantor in connection with the foregoing.

"**Material Adverse Effect**" means a material adverse effect on (a) the business, assets, properties (including the Properties), liabilities (actual or contingent), operations, or condition (financial or otherwise) of a Borrower; (b) the validity or enforceability of the Loan Documents; (c) the perfection or priority of any Lien purported to be created under the Mortgage; (d) the rights or remedies of the Noteholders hereunder or under the other Loan Documents; or (e) a Borrower's ability to perform any of its material obligations hereunder or under the other Loan Documents.

"**Maturity Date**" means October 31, 2019.

"**Mortgage**" means that certain Mortgage dated as of even date herewith and granted by the Borrowers in favor of the Noteholders with respect to the Properties.

3

"**Note**" has the meaning set forth in the introductory paragraph.

"**Noteholder**" or "**Noteholders**" has the meaning set forth in the introductory paragraph.

"**Order**" as to any Person, means any order, decree, judgment, writ, injunction, settlement agreement, requirement or determination of an arbitrator or a court or other Governmental Authority, in each case, applicable to or binding on such Person or any of its properties or to which such Person or any of its properties is subject.

"**Parties**" has the meaning set forth in the introductory paragraph.

"**Permitted Debt**" means Debt (a) existing or arising under this Note or the other Loan Documents, (b) existing as of the date of this Note as set forth on <u>Schedule 1</u>, which may not be amended, modified or refinanced without the consent of the Noteholders, and (b) other unsecured Debt not to exceed $50,000 in the aggregate at any time.

"**Permitted Rentals**" means, with respect to a Property, the short term rental of such Property for a term of not more than 8 weeks with un-Affiliated third parties on customary terms for short term rentals and at market rates.

"**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, Governmental Authority or other entity.

"**Properties**" means collectively the 366 Gin Lane Property and the 376 Gin Lane Property.

"**Sanctions**" means, sanctions administered or enforced by the US Department of the Treasury's Office of Foreign Assets Control (OFAC), US Department of State, United Nations Security Council, European Union, Her Majesty's Treasury, or other relevant sanctions authority.

"**USA PATRIOT Act**" has the meaning set forth in the definition of Anti-Terrorism Law.

2.   <u>Final Payment Date; Optional Prepayments</u>.

2.1   <u>Final Payment Date</u>. The aggregate unpaid principal amount of the Loan, all accrued and unpaid interest and all other amounts payable under this Note shall be due and payable on the Maturity Date.

2.2   <u>Optional Prepayment</u>. The Borrowers may, upon 10 Business Days prior written notice to the Noteholders, prepay all, but not less than all, the Loan together with all

accrued and unpaid interest thereon, all other amounts due and payable hereunder and, if applicable, the Interest Make Whole. No prepaid amount may be re-borrowed.

2.3  Facility Charge.  A facility charge equal to 2% of the Loan ($520,000) is due and payable to Noteholders on the date of this Note.  For the avoidance of doubt, such facility charge is fully earned by Noteholders on the date hereof.

3.  Security Interests. The Borrowers' performance of their obligations hereunder are secured by a second ranking Lien in the 376 Gin Lane Property and first ranking lien on the 366 Gin Lane Property.

4.  Interest.

4.1  Interest Rate. Except as otherwise provided herein, the outstanding principal amount of the Loan made hereunder shall bear interest at the Applicable Rate from the date the Loan was made until the Loan is paid in full, whether at maturity, upon acceleration, by prepayment or otherwise.

4.2  Interest Payment Dates. Interest shall be payable monthly in arrears to the Noteholders on each Interest Payment Date.

4.3  Default Interest. If any Default or Event of Default occurs and is continuing the outstanding principal amount of the Loan shall bear interest at the Default Rate from the date of such Default or Event of Default until such Default or Event of Default is cured (if curable) or the Loan is repaid in full in accordance with the terms hereof.

4.4  Computation of Interest. All computations of interest shall be made on the basis of a year of 360 days, as the case may be, and the actual number of days elapsed. Interest shall accrue on the Loan on the day on which the Loan is made.

5.  Payment Mechanics.

5.1  Manner of Payments. All payments of interest, principal and other amounts due and payable hereunder shall be made in lawful money of the United States of America no later than 3:00 PM (local time in New York City, New York) on the date on which such payment is due by wire transfer of immediately available funds to one or more accounts at a bank specified by the Noteholders in writing to the Borrowers from time to time.

5.2  Application of Payments. All payments made hereunder shall be applied first to the payment of any fees or charges outstanding hereunder, second to accrued interest, third to the payment of the principal amount outstanding under the Note, and fourth, to other any other amounts due and payable hereunder.

   5.3 <u>Business Day Convention</u>. Whenever any payment to be made hereunder shall be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day.

   5.4 <u>Rescission of Payments</u>. If at any time any payment made by the Borrowers under this Note is rescinded or must otherwise be restored or returned upon the insolvency, bankruptcy or reorganization of the Borrowers or otherwise, the Borrowers' obligation to make such payment shall be reinstated as though such payment had not been made.

6.   <u>Representations and Warranties</u>. Each Borrower hereby represents and warrants to the Noteholders on the date hereof as follows:

   6.1 <u>Existence; Compliance With Laws</u>. Such Borrower is (a) duly incorporated, validly existing and in good standing under the laws of the state of its jurisdiction of organization and has the requisite power and authority, and the legal right, to own, lease and operate its properties and assets and to conduct its business as it is now being conducted (b) is duly qualified to conduct business as foreign corporation in each jurisdiction in which the nature of its business or property owned by it makes such qualification necessary, and (c) in compliance with all applicable Laws and Orders, except to the extent that the failure to comply therewith would not, in the aggregate, reasonably be expected to have a Material Adverse Effect.

   6.2 <u>Power and Authority</u>. Each Borrower has the power and authority, and the legal right, to execute and deliver this Note and the other Loan Documents and to perform its obligations hereunder and thereunder.

   6.3 <u>Authorization; Execution and Delivery</u>. The execution and delivery of this Note and the other Loan Documents by such Borrower and the performance of such Borrower's obligations hereunder and thereunder have been duly authorized by all necessary corporate action on the part of such Borrower in accordance with all applicable Laws and no further action is required by such Borrower, its board of directors or its stockholders in connection herewith or therewith. Such Borrower has duly executed and delivered this Note and the other Loan Documents.

   6.4 <u>No Approvals</u>. No consent or authorization of, filing with, notice to or other act by, or in respect of, any Governmental Authority or any other Person is required in order for such Borrower to execute, deliver, or perform any of its obligations under this Note or the other Loan Documents.

   6.5 <u>No Violations</u>. The execution and delivery of this Note and the other Loan Documents and the consummation by each Borrower of the transactions contemplated hereby and thereby do not and will not (a) violate any provision of such Borrower's organizational documents; (b) violate any Law or Order applicable to such Borrower or

4818-7809-1116 v.9

by which any of its properties or assets may be bound; or (c) constitute a default under any material agreement or contract by which such Borrower may be bound.

6.6 <u>Enforceability</u>. Each of the Note and the other Loan Documents is a valid, legal and binding obligation of such Borrower, enforceable against such Borrower in accordance with its terms.

6.7 <u>No Litigation</u>. No action, suit, litigation, investigation or proceeding of, or before, any arbitrator or Governmental Authority is pending or, to the knowledge of such Borrower, threatened by or against such Borrower or any of its property or assets (a) with respect to the Note, the other Loan Documents or any of the transactions contemplated hereby or thereby or (b) that would be expected to materially adversely affect such Borrower's financial condition or the ability of any Borrower to perform its obligations under the Note or the other Loan Documents.

6.8 <u>Disclosure</u>. Such Borrower has disclosed to the Noteholders all material agreements, instruments and corporate or other restrictions to which it is subject, and all other matters known to it, that, individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect. No report, financial statement, certificate or other information furnished in writing by or on behalf of such Borrower to the Noteholders in connection with the transactions contemplated hereby and the negotiation of this Note or delivered hereunder or under any other Loan Document contains any material misstatement of fact or omits to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

6.9 <u>USA PATRIOT Act, OFAC and Other Regulations</u>

(a)  Neither such Borrower  nor, to the knowledge of such Borrower, any of its Affiliates or any of their respective officers, directors, brokers or agents (i) has violated any Anti-Terrorism Laws or (ii) has engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering.

(b)  Neither such Borrower nor, to the knowledge of such Borrower, any of its Affiliates or any of their respective officers, directors, brokers or agents is a Person that is, or is owned or controlled by Persons that are: (i) the target of any Sanctions, or (ii) located, organized or resident in a country or territory that is, or whose government is, the subject of Sanctions, including, without limitation, Cuba, Iran, North Korea, Sudan and Syria.

(c)  Neither such Borrower nor, to the knowledge of such Borrower any of its Affiliates or any of their respective officers, directors, brokers or agents acting or

4818-7809-1116 v.9

Case 8-22-70914-ast    Doc 136    Filed 10/18/22    Entered 10/18/22 13:46:36

benefiting in any capacity in connection with the Loan (i) conducts any business or engages in making or receiving any contribution of goods, services or money to or for the benefit of any Person, or in any country or territory, that is the target of any Sanctions, (ii) deals in, or otherwise engages in any transaction related to, any property or interests in property blocked pursuant to any Anti-Terrorism Law or (iii) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law.

6.10 <u>Assets and Liabilities</u>. Such Borrower hereby represents, warrants and covenants that, other than its ownership of the 376 Gin Lane Property or 366 Gin Lane Property, as applicable, and fixtures and furnishings contained therein, such Borrower does not have any material assets. Other than the Debt evidenced by this Note and Permitted Debt, such Borrower does not have any material liabilities.

6.11 <u>Taxes</u>. Such Borrower has filed (or has obtained effective extensions for filing) all federal, state and local tax returns required to be filed and has paid or made adequate provision for the payment of all federal, state and local taxes, charges and assessments payable by such Borrower. Except for federal tax liens not exceeding $60,000 in the aggregate that have been recorded with the New York Secretary of State: (i) there are no material federal, state or local tax liabilities of such Borrower, due or to become due for any tax year ended on or prior to the date hereof and (ii) there are no material claims pending or, to the knowledge of such Borrower, proposed or threatened against such Borrower for past federal, state or local taxes.

7. <u>Affirmative Covenants</u>. Until all amounts outstanding in this Note have been paid in full, each Borrower shall:

7.1 <u>Maintenance of Existence</u>. (a) Preserve, renew and maintain in full force and effect its corporate or organizational existence and (b) take all reasonable action to maintain all rights, privileges and franchises necessary or desirable in the normal conduct of its business.

7.2 <u>Compliance</u>. Comply with (a) all of the terms and provisions of its organizational documents; (b) its obligations under its material contracts and agreements; and (c) all Laws and Orders applicable to it and its business.

7.3 <u>Payment Obligations</u>. Pay, discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all its material obligations of whatever nature, except where the amount or validity thereof is currently being contested in good faith by appropriate proceedings, and reserves in conformity with GAAP with respect thereto have been provided on its books.

7.4 <u>Notice of Events of Default</u>. As soon as possible and in any event within two (2) days after it becomes aware that a Default or an Event of Default has occurred, notify the Noteholders in writing of the nature and extent of such Default or Event of Default and the action, if any, it has taken or proposes to take with respect to such Default or Event of Default.

7.5 <u>Access and Information</u>. Provide the Noteholders with such information regarding the Properties and the financial condition of the Borrowers as the Noteholders may reasonably request. In addition, the Noteholders or their representative shall have the right to inspect the Properties at any time during normal business hours on a Business Day. The Borrowers shall provide the Noteholders or their representatives with access to the Properties for any such inspection within 5 Business Days of Noteholders' request. The Borrowers shall cause their officers, directors and stockholders to be reasonably available to discuss matters related to this Note, the properties and/or the financial condition of the Borrowers at such times as the Noteholders may reasonably request.

7.6 <u>Further Assurances</u>. Upon the request of the Noteholders, promptly execute and deliver such further instruments and do or cause to be done such further acts as may be necessary or advisable to carry out the intent and purposes of this Note and the other Loan Documents.

7.7 <u>Use of Proceeds</u>. The proceeds of the Loan will be used exclusively for the purposes set forth on <u>Schedule 7.7</u>.

8. <u>Negative Covenants</u>. Until all amounts outstanding under this Note have been paid in full, each Borrower shall not:

8.1 <u>Indebtedness</u>. Incur, create or assume any Debt, other than Permitted Debt. Aberdeen will not amend the terms of the Mortgage dated December 30, 2011, given to Morgan Stanley Private Bank, N.A. without the Noteholder's prior written consent.

8.2 <u>Liens</u>. Incur, create, assume or suffer to exist any Lien on any of its property or assets, whether now owned or hereinafter acquired except for (a) Liens for taxes not yet due or which are being contested in good faith by appropriate proceedings and for which adequate reserves have been established; (b) non-consensual Liens arising by operation of law, arising in the ordinary course of business, and for amounts which are not overdue for a period of more than 30 days or that are being contested in good faith by appropriate proceedings and for which adequate reserves have been established; (c) Liens created pursuant to the Loan Documents; and (d) Liens existing on the date hereof as set forth on <u>Schedule 2</u> attached hereto.

8.3 <u>Line of Business</u>. Enter into any business, directly or indirectly, except for ownership of the Properties and business activities that are reasonably related thereto.

4818-7809-1116 v.9

8.4   <u>Compliance With Anti-Terrorism Regulations.</u>

(a)   (i) Violate any Anti-Terrorism Laws or (ii) engage in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering or (iii) permit any of its Affiliates to violate these laws or engage in these actions.

(b)   (i) Use, directly or indirectly, the proceeds of the Loan, or lend, contribute or otherwise make available such proceeds to any subsidiary, joint venture partner or other Person, (x) to fund any activities or business of or with any Person, or in any country or territory, that, is, or whose government is, the subject of Sanctions at the time of such funding, or (y) in any other manner that would result in a violation of Sanctions by any Person (including any Person participating in the Loan, whether as underwriter, advisor, investor, or otherwise).

(c)   (i) Deal in, or otherwise engage in any transaction related to, any property or interests in property blocked pursuant to any Anti-Terrorism Law, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempt to violate, any of the prohibitions set forth in any Anti-Terrorism Law or (iii) permit any of its Affiliates to do any of the foregoing.

8.5   <u>Charter Amendments</u>.   Amend its charter documents, including, without limitation, its certificate of incorporation and bylaws, in any manner that adversely affects any rights of the Noteholders.

8.6   <u>Repurchases of Stock</u>.   Repay, repurchase or offer to repay, repurchase or otherwise acquire any shares of its capital stock or other equity securities of such Borrower or any instruments exercisable or exchangeable for or convertible into shares of capital stock or equity securities of such Borrower.

8.7   <u>Repayment of Debt</u>.   Repay, repurchase or offer to repay, repurchase or otherwise acquire any Debt other than regularly scheduled principal and interest payments as such terms are in effect on the date hereof, provided that such payments shall not be permitted if, at such time, or after giving effect to such payment, any Event of Default exists or occurs.

8.8   <u>Dividends</u>.   Pay dividends or distributions on any capital stock or other equity securities of each Borrower.

8.9   <u>Affiliate Transactions</u>.   Enter into any transaction with any Affiliate of any Borrower.

4818-7809-1116 v.9

8.10 <u>Merger; Change in Control</u>. (i) Become a party to a merger or consolidation, or purchase or otherwise acquire all or any part of the assets of any Person or any shares or other evidence of beneficial ownership of any Person, or wind-up, dissolve, or liquidate or (ii) suffer, permit, allow or become a party to a Change in Control.

8.11 <u>Loans and Investments</u>. Make any advance, loan, extension of credit, or capital contribution to or investment in, or purchase any stock, bonds, notes, debentures, or other securities of, any Person, except (i) readily marketable direct obligations of the United States of America or any agency thereof with maturities of one year or less from the date of acquisition; (ii) fully insured certificates of deposit with maturities of one year or less from the date of acquisition issued by any commercial bank operating in the United States of America having capital and surplus in excess of $50,000,000.00; or (iii) money market funds.

8.12 <u>Disposition of Assets</u>. Sell, lease (except for Permitted Rentals), assign, transfer, or otherwise dispose of any of its assets, including, without limitation, either Property (unless this Note is repaid in full pursuant to Section 2.2 simultaneously with the sale, lease, assignment, transfer or other disposition of such Property).

8.13 <u>No Negative Pledge</u>. Enter into or permit to exist any arrangement or agreement, other than pursuant to this Note or any Loan Document, which directly or indirectly prohibits any Borrower or any Subsidiary from creating or incurring a Lien on any of its assets.

8.14 <u>Subsidiaries</u>. Form or acquire any subsidiary.

8.15 <u>Capital Stock</u>. Issue or sell any shares of its capital stock to any Person or enter into any option, warrant, right or other instrument that would give any Person the right to purchase, subscribe for or otherwise acquire shares of the Company's capital stock.

9. <u>Events of Default</u>. The occurrence and continuance of any of the following shall constitute an Event of Default hereunder:

9.1 <u>Failure to Pay</u>. The Borrowers fail to pay (a) any principal amount of the Loan when due or declared due (b) interest or any other amount when due or declared due.

9.2 <u>Breach of Representations and Warranties</u>. Any representation or warranty made or deemed made by the Borrowers (or any of their respective officers) in the Note or any other Loan Document or in any certificate, report, notice, or financial statement furnished at any time in connection with this Note or any Loan Document shall be false, misleading, or erroneous in any material respect when made or deemed to have been made.

9.3 <u>Breach of Covenants</u>. (1) The Borrowers fail to observe or perform (a) any covenant, condition or agreement contained in **Section 8**, (b) any other covenant,

11

obligation, condition or agreement contained in this Note or any other Loan Document other than those specified in clause (a) and **Section 9.1** and such failure continues for 10 days following the date such failure first began or (2) any default or event of default occurs and is continuing under any other Loan Document, subject to any grace period set forth therein.

9.4   <u>Cross-Defaults</u>. A Borrower fails to pay when due any of its Debt (other than Debt arising under this Note) or any interest or premium thereon when due (whether by scheduled maturity, acceleration, demand or otherwise) and such failure continues after the applicable grace period, if any, specified in the agreement or instrument relating to such Debt.

9.5   <u>Bankruptcy</u>.

(a)   a Borrower commences any case, proceeding or other action (i) under any existing or future Law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking to have an order for relief entered with respect to them, or seeking to adjudicate it as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to them or their debts or (ii) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for them or for all or any substantial part of its assets, or such Borrower make a general assignment for the benefit of its creditors;

(b)   there is commenced against a Borrower any case, proceeding or other action of a nature referred to in **Section 9.5(a)** above which (i) results in the entry of an order for relief or any such adjudication or appointment or (ii) remains undismissed, undischarged or unbonded for a period of thirty (30) days;

(c)   there is commenced against a Borrower any case, proceeding or other action seeking issuance of a warrant of attachment, execution or similar process against all or any substantial part of their assets which results in the entry of an order for any such relief which has not been vacated, discharged, or stayed or bonded pending appeal within thirty (30) days from the entry thereof;

(d)   a Borrower takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in **Section 9.5(a), Section 9.5(b)** or **Section 9.5(c)** above; or

(e)   a Borrower is generally unable, or shall reasonably be expected to become unable, or admits in writing its inability, to pay its debts as they become due.

9.6   <u>Judgments</u>. One or more judgments or decrees shall be entered against the Borrowers and all of such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within thirty (30) days from the entry thereof.

4818-7809-1116 v.9

FILED: SUFFOLK COUNTY CLERK 11/22/2019 03:39 PM
Case 8-22-70914-ast Doc 136 Filed 10/18/22 Entered 10/18/22 13:46:36 INDEX NO. 623208/2019

NYSCEF DOC. NO. 5
RECEIVED NYSCEF: 11/22/2019

9.7  <u>Material Adverse Change</u>.  There shall have occurred any significant adverse change in the business, operations, properties (including the Properties) or condition (financial or otherwise) of a Borrower which, in the reasonable opinion of the Noteholders, impairs its security or increases its risk.

10.  <u>Remedies</u>. Upon the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, the Noteholders may at their option, by written notice to the Borrowers (a) declare the entire principal amount of this Note together with, if applicable, the Interest Make Whole and all accrued interest and all other amounts payable hereunder, immediately due and payable; and/or (b) exercise any or all of its rights, powers or remedies under this Note, the Pledge Agreement, the Mortgage and/or applicable Law; *provided, however* that, if an Event of Default described in **Section 9.5** shall occur, the principal of and accrued interest on the Loan and the Interest Make Whole shall become immediately due and payable without any notice, declaration or other act on the part of the Noteholders.

11.  <u>Miscellaneous</u>.

11.1  <u>Notices</u>.

(a)  All notices, requests or other communications required or permitted to be delivered hereunder shall be delivered in writing, in each case to the address specified below or to such other address as such Party may from time to time specify in writing in compliance with this provision:

> (i)   If to the Borrowers:
> Mr. Matthew Kabatoff
> Haus Blauherd
> Wiestistrasse 61, 3920
> Zerrat, Switzerland
>
> E-mail: MKabatoff@ltbholdings.com
>
>
> If to the Noteholders:
>
> c/o JGB Management Inc.
> 21 Charles Street
> Westport, CT 06880
> Attention: Shuky Ehrenberg and Hunter Dorbandt
> Telephone (212) 355-5771
> Email: sehrenberg@jgbcap.com and hdorbandt@jgbcap.com
> Facsimile: (212) 253-4095

4818-7809-1116 v.9

Case 8-22-70914-ast    Doc 136    Filed 10/18/22    Entered 10/18/22 13:46:36

(b)  Notices if (i) mailed by certified or registered mail or sent by hand or overnight courier service shall be deemed to have been given when received; (ii) sent by facsimile during the recipient's normal business hours shall be deemed to have been given when sent (and if sent after normal business hours shall be deemed to have been given at the opening of the recipient's business on the next business day); and (iii) sent by e-mail shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment).

11.2  Expenses. The Borrowers hereby agree to pay on demand: (a) all costs and expenses of the Noteholders in connection with the preparation, negotiation, execution, and delivery of the Loan Documents and any and all amendments, modifications, renewals, extensions, and supplements thereof and thereto, including, without limitation, the reasonable fees and expenses of legal counsel, advisors, consultants, and auditors for the Noteholders, up to $50,000 in the aggregate (for the avoidance of doubt, the foregoing cap of $50,000 does not include the cost of title insurance or mortgage recording tax, which shall be paid by Borrower from the proceeds of the Loan), (b) all costs and expenses of the Noteholders in connection with any Event of Default and the enforcement of this Note, the other Loan Documents or any document entered into in connection therewith, including, without limitation, the fees and expenses of legal counsel, advisors, consultants, and auditors for the Noteholders, (c) all transfer, stamp, documentary, or other similar taxes, assessments, or charges levied by any Governmental Authority in respect of this Note or the other Loan Documents, (d) all costs, expenses, assessments, and other charges incurred in connection with any filing, registration, recording, or perfection of any security interest or Lien contemplated by the Loan Documents, and (e) all other costs and expenses incurred by Noteholders in connection with this Note, the other Loan Documents or any other document entered into in connection therewith, any litigation, dispute, suit, proceeding or action; the enforcement of their rights and remedies, protection of their interests in bankruptcy, insolvency or other legal proceedings, including, without limitation, all costs, expenses, and other charges (including the Noteholders' internal charges) incurred in connection with evaluating, observing, collecting, examining, auditing, appraising, selling, liquidating, or otherwise disposing of any collateral for the Loan.

11.3  Governing Law. This Note and the other Loan Documents and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Note, the other Loan Documents and the transactions contemplated hereby and thereby shall be governed by the laws of the State of New York.

11.4  Submission to Jurisdiction

(a)  The Borrowers hereby irrevocably and unconditionally (i) agree that any legal action, suit or proceeding arising out of or relating to this Note or the other Loan

4818-7809-1116 v.9

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

Documents may be brought in the courts of the State of New York or of the United States of America for the Southern District of New York and (ii) submit to the exclusive jurisdiction of any such court in any such action, suit or proceeding. Final judgment against the Borrowers in any action, suit or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.

(b)   Nothing in this **Section 11.4** shall affect the right of the Noteholders to (i) commence legal proceedings or otherwise sue the Borrowers in any other court having jurisdiction over the Borrowers or (ii) serve process upon the Borrowers in any manner authorized by the laws of any such jurisdiction.

11.5 <u>Venue</u>. The Borrowers irrevocably and unconditionally waive, to the fullest extent permitted by applicable law, any objection that they may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Note or the other Loan Documents in any court referred to in **Section 11.4** and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

11.6 <u>Waiver of Jury Trial</u>. THE BORROWERS HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

11.7 <u>Counterparts; Integration; Effectiveness</u>. This Note, the other Loan Documents and any amendments, waivers, consents or supplements hereto and thereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Note and the other Loan Documents constitute the entire contract between the Parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Note or the other Loan Documents by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Note or the other Loan Documents, as applicable.

11.8 <u>Successors and Assigns</u>. This Note may be assigned or transferred by the Noteholders to any Person. The Borrowers may not assign or transfer this Note or any of their rights hereunder without the prior written consent of the Noteholders. This Note shall inure to the benefit of, and be binding upon, the Parties and their permitted assigns.

11.9 <u>Waiver of Notice</u>. The Borrowers hereby waive demand for payment, presentment for payment, protest, notice of payment, notice of dishonor, notice of nonpayment, notice of acceleration of maturity and diligence in taking any action to collect sums owing hereunder.

11.10    USA PATRIOT Act. The Noteholders hereby notifies the Borrowers that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify, and record information that identifies the Borrowers, which information includes the name of the Borrowers and other information that will allow the Noteholders to identify the Borrowers in accordance with the US PATRIOT Act, and the Borrowers agree to provide such information from time to time to the Noteholders.

11.11    Interpretation. For purposes of this Note (a) the words "include," "includes" and "including" shall be deemed to be followed by the words " without being limited to"; (b) the word "or" is not exclusive; (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Note as a whole; (d) words of masculine, feminine, or neuter gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice versa; (e) no inference in favor of or against any party shall be drawn from the fact that such party has drafted any portion of this Agreement; (f) all obligations of the Borrowers under this Note and the other Loan Documents shall be performed and satisfied by or on behalf of Borrowers at Borrowers' sole expense; (g) the term "person" shall include natural persons, firms, partnerships, limited liability companies, trusts, corporations, Governmental Authorities or agencies, and any other public or private legal entities; (h) the term "provisions," when used with respect hereto or to any other document or instrument, shall be construed as if preceded by the phrase "terms, covenants, agreements, requirements, and/or conditions"; (i) the term "owned" shall mean "now owned or later acquired"; and (j) the terms "any" and "all" shall mean "any or all". The definitions given for any defined terms in this Note shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. Unless the context otherwise requires, references herein: (x) to Schedules, Exhibits and Sections mean the Schedules, Exhibits and Sections of this Note; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Note shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

11.12    Joint and Several.

(a)    Borrowers are jointly and severally liable for all of the indebtedness, obligations, and liabilities of the Borrowers now or hereafter existing under this Note and the other Loan Documents, whether for principal, interest, fees, expenses, indemnification or otherwise (the "Obligations") and the Noteholders may proceed against one Borrower to enforce the Obligations without waiving their right to proceed

4818-7809-1116 v.9

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

against the other Borrower. This Note and each Loan Document are a primary and original obligation of each Borrower and shall remain in effect notwithstanding future changes in conditions, including any change of law or any invalidity or irregularity in the creation or acquisition of any Obligations or in the execution or delivery of any agreement between the Noteholders and any Borrower. Each Borrower shall be liable for existing and future Obligations fully as if all of the principal amount of this Note were advanced to such Borrower. The Noteholders may rely on any certificate or representation made by a Borrower as made on behalf of, and binding on, both Borrowers. Each Borrower appoints the other Borrower as its agent with all necessary power and authority to give and receive notices, certificates or demands for and on behalf of both Borrowers. This authorization cannot be revoked, and the Noteholders need not inquire as to one Borrower's authority to act for or on behalf of the other Borrower.

(b) Notwithstanding any other provision of this Note or any other Loan Document to the contrary, each Borrower irrevocably waives, until all Obligations are paid in full, all rights that it may have at law or in equity (including, without limitation, any law subrogating a Borrower to the rights of the Noteholders under this Note or any other Loan Document) to seek contribution, indemnification, or any other form of reimbursement from the other Borrower, or any other Person now or hereafter primarily or secondarily liable for any of the Obligations, for any payment made by a Borrower with respect to the Obligations in connection with this Note or the other Loan Documents or otherwise and all rights that it might have to benefit from, or to participate in, any security for the Obligations as a result of any payment made by a Borrower with respect to the Obligations in connection with the Loan Documents or otherwise. Any agreement providing for indemnification, reimbursement or any other arrangement prohibited under this Section shall be null and void. If any payment is made to a Borrower in contravention of this Section, such Borrower shall hold such payment in trust for the Noteholders and such payment shall be promptly delivered to the Noteholders for application to the Obligations, whether matured or unmatured.

(c) Each Borrower waives, to the extent permitted by law, notice of acceptance hereof; notice of the existence, creation or acquisition of any of the Obligations; notice of any Default or Event of Default except as set forth herein; notice of the amount of the Obligations outstanding at any time; notice of any adverse change in the financial condition of the other Borrower or of any other fact that might increase a Borrower's risk; presentment for payment; demand; protest and notice thereof as to any instrument; and all other notices and demands to which Borrower would otherwise be entitled by virtue of being a co-borrower or a surety. Each Borrower waives any defense arising from any defense of the other Borrower, or by reason of the cessation from any cause whatsoever of the liability of any other Borrower. The Noteholders' failure at any time to require strict performance by any Borrower of any provision of this Note or the other Loans Documents shall not waive, alter or diminish any right of the Noteholders thereafter to demand strict compliance and performance therewith. Each Borrower also waives any

17

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

defense arising from any act or omission of the Noteholders that changes the scope of such Borrower's risks hereunder. Each Borrower hereby waives any right to assert against the Noteholders any defense (legal or equitable), setoff, counterclaim, or claims that such Borrower individually may now or hereafter have against the other Borrower or any other Person liable to the Noteholders with respect to the Obligations in any manner or whatsoever.

(d) The liability of the Borrowers hereunder shall not be diminished by (i) any agreement, understanding or representation that any of the Obligations is or was to be guaranteed by another Person or secured by other property, or (ii) any release or unenforceability, whether partial or total, of rights, if any, which the Noteholders may now or hereafter have against any other Person, including another Borrower, or property with respect to any of the Obligations. Without notice to any given Borrower and without affecting the liability of any given Borrower hereunder, the Holder may (i) compromise, settle, renew, extend the time for payment, change the manner or terms of payment, discharge the performance of, decline to enforce, or release all or any of the Obligations with respect to the other Borrower by written agreement with such other Borrower, (ii) grant other indulgences to the other Borrower in respect of the Obligations, (iii) modify in any manner any documents relating to the Obligations with respect to the other Borrower by written agreement with such other Borrower, (iv) release, surrender or exchange any deposits or other property securing the Obligations, whether pledged by a Borrower or any other Person, or (v) compromise, settle, renew, or extend the time for payment, discharge the performance of, decline to enforce, or release all or any obligations of any guarantor, endorser or other Person who is now or may hereafter be liable with respect to any of the Obligations.

11.13    Amendments and Waivers. No term of this Note may be waived, modified or amended except by an instrument in writing signed by both of the parties hereto. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

11.14    Headings. The headings of the various Sections and subsections herein are for reference only and shall not define, modify, expand or limit any of the terms or provisions hereof.

11.15    No Waiver; Cumulative Remedies. No failure to exercise and no delay in exercising on the part of the Noteholders, of any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

4818-7809-1116 v.9

11.16    Electronic Execution. The words "execution," "signed," "signature," and words of similar import in the Note shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.), the Electronic Signatures and Records Act of 1999 (N.Y. State Tech. Law §§ 301-309), or any other similar state laws based on the Uniform Electronic Transactions Act.

11.1    Indemnity. The Borrowers, jointly and severally, shall indemnify and hold harmless each Noteholder, its respective affiliates, and its respective partners, directors, officers, employees, agents and advisors (collectively the "**Indemnitees**") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses (including the reasonable fees, charges and disbursements of any counsel for any Indemnitee), incurred by any Indemnitee or asserted against any Indemnitee by any third party or by the Borrowers arising out of, in connection with, or as a result of (i) the execution or delivery of this Note, any other Loan Document or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder, or the consummation of the transactions contemplated hereby or thereby, (ii) the use or proposed use of the proceeds of the borrowing hereunder, or (iii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, and regardless of whether any Indemnitee is a party thereto; provided that such indemnity shall not as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee.   To the fullest extent permitted by applicable law, the Borrowers shall not assert, and hereby waive, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Note, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any use of the proceeds of the borrowing hereunder.   No Indemnitee shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Note or the other Loan Documents or the transactions contemplated hereby or thereby, except in connection with such Indemnitee's gross negligence or willful misconduct, as determined by the final and non-appealable judgment of a court of competent jurisdiction.   All amounts due under this subsection shall be payable by the Borrowers within ten (10) Business Days after demand therefor.   To the fullest extent permitted by applicable law, the Borrowers hereby agree not to assert, and hereby waives, any claim against any Indemnitee, on any theory of

19

liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Note, any other Loan Document or any agreement or instrument contemplated hereby or the transactions contemplated hereby or thereby, the extension of credit evidenced by this Note or the use of proceeds thereof. No Indemnitee shall be liable for any damages arising from the use of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Note or the other Loan Documents or the transactions contemplated hereby or thereby by unintended recipients. The indemnity obligation set forth in this section shall survive the repayment, satisfaction or discharge of all the other obligations and liabilities of the parties under the Loan Documents.

11.2 <u>Severability</u>. If any term or provision of this Note or the other Loan Documents is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Note or the other Loan Documents or invalidate or render unenforceable such term or provision in any other jurisdiction.

[SIGNATURE PAGE FOLLOWS]

4818-7809-1116 v.9

Case 8-22-70914-ast    Doc 136    Filed 10/18/22    Entered 10/18/22 13:46:36

IN WITNESS WHEREOF, the parties hereto have executed this Note as of the date set forth above.

**Borrowers**:

Brickchurch Enterprises, Inc.

By_____

Name: David M. Hryck
Title: Authorized Signatory

Aberdeen Enterprises, Inc.

By_____

Name: David M. Hryck
Title: Authorized Signatory

State of New York        )

County of *New York* :

On the 25th day of July, in the year 2018 before me, the undersigned, personally appeared David M. Hryck, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

Jan Kiderman
Notary Public, State of NY
No. 01KI6075678
Qualified in Westchester County
Commission Expires June 10, 2022

4818-7809-1116 v.9

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

[NOTEHOLDER SIGNATURE PAGE TO ABERDEEN AND
BRICKCHURCH SECURED PROMISSORY NOTE]

Noteholders:

JGB Capital, LP

By _____
Name: Brett Cohen
Title: President

JGB Partners, LP

By _____
Name: Brett Cohen
Title: President

JGB (Cayman) Ancona Ltd.

By _____
Name: Brett Cohen
Title: President

JGB Plymouth Rock, LLC

By _____
Name: Brett Cohen
Title: President

3

Case 8-22-70914-ast    Doc 136    Filed 10/18/22    Entered 10/18/22 13:46:36

# EXHIBIT A

## NOTEHOLDERS

| Lender | Loan Amount |
| --- | --- |
| JGB Capital, LP | $2,750,000 |
| JGB Partners, LP | $13,090,620 |
| JGB (Cayman) Ancona Ltd. | $8,250,000 |
| JGB Plymouth Rock LLC | $1,909,380 |

4818-7809-1116 v.9

Schedule 1

Permitted Debt

Mortgage dated December 30, 2011, by and between Aberdeen Enterprises Inc. and
Morgan Stanley Private Bank, N.A., $15,000,000.00  principal amount outstanding.

4818-7809-1116 v.9

Schedule 2

Permitted Liens

Solely with respect to the 376 Gin Lane Property, Mortgage dated December 30, 2011, by and between Aberdeen Enterprises Inc. and Morgan Stanley Private Bank, N.A., $15,000,000.00 principal amount outstanding.

4818-7809-1116 v.9

Schedule 7.7

See attached.

4818-7809-1116 v.9

# EXHIBIT B

# MORTGAGE

**THIS MORTGAGE**, made as of the 25th day of July, 2018, by **Brickchurch Enterprises, Inc.**, a Delaware corporation having an address at **Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801** and **Aberdeen Enterprises, Inc.**, a Delaware corporation having and address at **Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801** (hereinafter referred to t o g e t h e r as the "Mortgagor(s)"), to **JGB Partners, LP**, a Delaware limited partnership, having an address at 21 Charles Street, Westport, CT 06880, **JGB Capital, LP** a Delaware limited partnership, having an address at 21 Charles Street, Westport, CT 06880, **JGB (Cayman) Ancona Ltd.** having its address at c/o Harneys Services (Cayman) Limited, 4th Floor, Harbour Place, 103 South Church Street, PO. Box 10240, Grand Cayman KY1-1002 Cayman Islands, and **JGB Plymouth Rock LLC**, a Delaware limited liability company, having an address at 21 Charles Street, Westport, CT 06880 (hereinafter referred to collectively as the "Mortgagee").

**WITNESSETH**, that to secure payment of an indebtedness in the sum of TWENTY-SIX MILLION AND 00/100 ($26,000,000.00) DOLLARS, lawful money of the United States, to be paid with interest thereon, according to that certain Secured Promissory Note (the "Note" and capitalized terms used herein but not otherwise defined herein shall have the respective meanings given such terms in the Note) or obligation bearing even date herewith, the Mortgagor hereby mortgages to the Mortgagee the premises known as and by the street number **366 Gin Lane, Southampton, NY 11968 and 376 Gin Lane, Southampton, NY 11968** more fully described in Schedule "A" attached hereto and incorporated herein,

**TOGETHER** with any and all articles of personal property attached to or used in any way in connection with the operation or renting of the premises, including, but not limiting the generality of the foregoing to, all partitions, elevators, engines, motors, dynamos, boilers, furnaces, fuel oil, coal; heating, refrigerating, air conditioning, plumbing, gas and electric light equipment; vacuum cleaning systems; sprinkler system or other fire preventing or extinguishing equipment and materials; stoves, ranges, refrigerators, washing machines, clothes dryers, dishwashers, refuse compactors, saunas, awnings, screens, window shades, furniture and furnishings for the common halls and lobbies; furnishings and equipment of any hotel, motel, resort, health spa, restaurant, recreation facility, hospital, nursing home, adult residence or other health care related facility, theater, bowling alley, place of public or private assemblage, club and lodge, constituting all or part of the mortgaged premises; also all other articles constituting a part of or used in connection with the operation of the buildings and other structures situated upon and constituting part of the mortgaged premises, to all of which the Mortgagor represents that the Mortgagor has title free from any prior liens or encumbrances, and all buildings, structures, improvements, fixtures and articles of personal property at any time, now or hereafter, constructed, affixed to or placed upon the premises or used in connection with the operation thereof. This provision shall apply to any personalty or fixtures, now or hereafter in the premises, even though any fixture or article of personal property may not form a part of the realty as a matter of law or may not be essential to the support of the realty, it being intended hereby that such fixtures and articles of personal property shall become a part of the mortgaged realty and shall be covered by the lien of this mortgage and shall be subject to a security interest in accordance with Article 9 of the Uniform Commercial Code. If any other security agreement and/or financing statement is executed simultaneously with the execution hereof, said security agreement and/or financing statement shall be deemed to be given by the Mortgagor and

4819-8839-7932 v.7

accepted by the Mortgagee as additional security and shall be in confirmation of the foregoing; the execution or delivery of such other security agreement and/or financing statement shall not render the security interest created hereby ineffective or without force, whether said security agreement and/or financing statement is filed or re-filed or not, the security interest herein created being, notwithstanding the execution and delivery of such other security agreement and/or financing statement, fully effective and operative. Should any of such fixtures and/or articles of personal property be placed in the premises by the Mortgagor herein or any successor in interest subject to any prior security interest deemed superior to that created hereby, the lien of this mortgage shall be deemed to include the equity and interest of the Mortgagor or any such successor in interest in any of such fixtures and/or articles of personal property and, in the event of any default hereunder, all the right, title and interest of the Mortgagor or of any such successor in interest in and to any and all such property is hereby assigned to the Mortgagee together with any benefits of any deposits or payments theretofore made thereon by the Mortgagor or any such successor in interest. The provisions hereof are intended by Mortgagor and Mortgagee, and shall be deemed and construed to constitute a security agreement in accordance with Article 9 of the Uniform Commercial Code, creating a security interest in the property described in this paragraph. The Mortgagee is hereby authorized to file and re-file financing statements relating to the security interests created hereby on behalf of and in the name of Mortgagor without the Mortgagor's consent to or execution of such filings whenever the Mortgagee deems it advisable for the purpose of complying with the Uniform Commercial Code and of effectuating, continuing or renewing the liens hereby created.

**TOGETHER** also with any and all award and awards heretofore made and hereafter to be made by any municipal, county, state, federal or other governmental authority to the present and/or all subsequent owners of the premises herein described including any award and awards for any change or changes of grade of streets affecting said premises, which said award or awards are hereby assigned to the said Mortgagee and the legal representatives, successors and assigns of the Mortgagee, and the said Mortgagee, and the legal representative, successors and assigns of the Mortgagee (at its or their option), are hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the amount owing on account of this mortgage and its accompanying Note, notwithstanding the fact that the amount owing on account of this mortgage and said Note may not be then due and payable; and the said Mortgagor for the said Mortgagor and the legal representatives, successors and assigns of the Mortgagor hereby covenants and agrees to and with the said Mortgagee and the legal representatives, successors and assigns of the Mortgagee, upon demand by the holder of this mortgage, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and awards to the holder of this mortgage, free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

The Mortgagor covenants with the Mortgagee as follows.

1.     The Mortgagor will pay the indebtedness as provided in the Note and the other Loan Documents.

2.     The Mortgagor will keep the buildings on the premises continuously insured, by policies in form and substance approved by Mortgagee, to the extent of their full

4819-8839-7932 v.7

insurable value, against loss or damage by fire, with extended coverage, and coverage against loss or damage by vandalism, malicious mischief, sprinkler leakage and, if available, against flood and against other hazards as Mortgagee may reasonably require from time to time (such insurance to be in such amounts and with such insurance carriers as the Mortgagee may in its sole discretion require and approve) for the benefit of the Mortgagee, and the Mortgagor will assign and deliver to the Mortgagee fully prepaid, unassigned, unpledged, and unencumbered policies of such insurance, as the Mortgagee may require, the unexpired premium or premiums on which shall at all times likewise be unassigned, unpledged and unencumbered, except that, in the event of any default hereunder, any unearned premium on any policy of insurance required by the Mortgagee is hereby assigned to the Mortgagee; that the Mortgagor will reimburse the Mortgagee for any premiums paid for insurance by the Mortgagee on the Mortgagor's default in so insuring the buildings or in so assigning and delivering said policies.

In the event of loss, Mortgagor will give immediate notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor; provided, however, that any adjustment of a proof of loss shall require the prior written consent of Mortgagee.

3.      The Mortgagor will insure and keep insured all of the articles of personal property referred to herein against loss or damage by fire, with extended coverage, and coverage against loss or damage by vandalism, malicious mischief, sprinkler leakage and, if available, against flood and against other hazards as Mortgagee may reasonably require from time to time to be insured for the benefit of the Mortgagee. This provision shall be construed in the same manner as the foregoing provision for the keeping of the buildings on the premises insured against loss by fire and any other casualty or hazard.

4.      The Mortgagor will maintain the buildings on the premises in good repair; if all or any portion thereof is rented or adapted for renting, then the Mortgagor will maintain same in good rentable condition at all times, whether or not occupied. Neither the value of the mortgaged premises nor the lien of this mortgage will be diminished or impaired in any way by any act or omission of the Mortgagor or any successor in interest thereto and Mortgagor will not do or permit to be done to, in, upon or about said mortgaged premises or any part thereof, anything that may in any way substantially impair the value thereof or substantially weaken, diminish or impair the security of this mortgage. The Mortgagee may make whatever advances it deems necessary as a result of Mortgagor's default and/or in order to preserve and protect the mortgaged premises and all such advances shall be deemed secured hereby, shall bear interest at the rate(s) specified in the Note and shall be allowed and collectible in any action to foreclose.

5.      No structural changes shall be made to the buildings on the premises without the prior written consent of the Mortgagee and that no building on the premises shall be removed or demolished without the prior written consent of the Mortgagee.

6.      The whole of said principal sum of the Note and the interest thereon and other amounts payable under the Note and the Other Loan Documents shall be due, at the option of

4819-8839-7825v2

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

the Mortgagee, after default in: a) payment of any interest, principal or other amounts due and payable under the Note, or of any payment of an escrow deposit hereinafter referred to for real estate taxes, water rates, sewer charges, vault taxes, assessments or other charges, for five (5) days; or b) payment of any taxes, including Corporate franchise taxes, payable by any corporate owner of the premises for thirty (30) days; c) delivering receipted bills showing payment of such real estate taxes, water rates, sewer charges, vault taxes or assessments for thirty (30) days after demand therefor; d) either assigning and/or delivering the policies insuring the buildings against loss by fire or any other hazard or casualty referred to in paragraph 2 or paragraph 3 hereof or in reimbursing the Mortgagee for premiums paid on such insurance as hereinbefore provided; e) furnishing upon request a statement setting forth the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided; or f) performance of any other covenant, agreement, term or condition of the Note or the Other Loan Documents. The holder of this mortgage in any action to foreclose it, shall be entitled to the appointment of a receiver.

7.  The Mortgagor will pay all taxes, including, but not limited to, corporate franchise taxes and real estate taxes, water rates, sewer charges, vault taxes and assessments and will submit to the Mortgagee receipted bills therefor on demand, and in default thereof, the Mortgagee may pay the same. If any duplication of payment results from the failure of the Mortgagor to submit receipted bills, the cost and expense of procuring refund of duplicate payments shall be borne by the Mortgagor.

8.  The Mortgagor within six (6) days upon request in person or within fifteen (15) days upon request by mail will furnish a written statement, duly acknowledged, setting forth the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt.

9.  Notice, notice and demand or request may be in writing and may be served in the manner set forth in the Note.

10.  The Mortgagor warrants the title to the premises.

11.  In the event of the passage after the date of this mortgage of any law of the State of New York deducting from the value of land for the purposes of taxation any lien thereon or changing in any way the laws of taxation of mortgages or debts secured by mortgages for state or local purposes or the manner of the collection of any such taxes, so as to affect said mortgage, the holder of this mortgage and of the debt which it secures shall have the right to give thirty days' written notice to the owner of the land requiring the payment of the mortgage debt. If such notice be given, the said debt shall become due, payable and collectible at the expiration of said thirty days.

12.  If said mortgage is now or shall hereafter be protected or affected by moratorium laws or by any other statute or statutes preventing the Mortgagee from foreclosing for nonpayment of the principal at the expiration date hereof, the Mortgagor hereby undertakes to continue to pay interest to the Mortgagee (if the Mortgagee so elects and only so long as the moratorium laws or any such other statute or statutes protect said Mortgagor from foreclosure for nonpayment of the balance of the principal debt), at the

4819-8839-7932 v.7

Default Rate set forth in the Note, on the maturity date on the Note and, thereafter, on the same days of the months set forth in the Note.

13. If any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby) to which action or proceeding the holder of this mortgage is made a party or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the holder of this mortgage for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees) shall be paid by the Mortgagor, together with interest thereon, at the rate or rates specified in the Note secured hereby and any such sums, with the interest thereon, shall be a lien on said premises attaching or accruing subsequent to the lien of this mortgage and shall be deemed to be secured by this mortgage and by the Note which it secures. In any action or proceeding to foreclose this mortgage and/or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall continue unaffected by this covenant.

14. If the said premises as existing or used at any time are in violation any state or local statute, ordinance, code, rule, regulation or requirement or of any order issued or filed by any municipal or governmental authority or subdivision thereof, or if by reason of any change either in the physical condition of the premises or its use or in the aforesaid laws, statutes, ordinances, codes, rules, regulations or requirements, or direction of any municipal or governmental authority or subdivision thereof or if, by reason of the filing of a violation against the said premises they shall become and be in violation of any of the foregoing, the Mortgagor shall take immediate steps to alter the premises as required to comply therewith. In any of the aforementioned events, (a) any necessary alteration or repair shall proceed with all due diligence and shall be completed within a reasonable time and (b) there shall be submitted to the Mortgagee, upon completion, (i) receipted bills evidencing the payment of the cost thereof and (ii) satisfactory proof that no liens or encumbrances have been or will be filed on account thereof; if such alterations or repairs require filing and approval of plans or specifications, said plans and specifications must first be approved by the Mortgagee before they are filed with the governmental department having jurisdiction thereof and the Mortgagor, on completion, shall procure and exhibit to the Mortgagee a Certificate of Occupancy issued by said governmental department and a Notice of Dismissal of all violations; if the alterations do not require filing and approval of plans, the Mortgagor shall produce, on completion, a Notice of Dismissal of all violations. For the purpose of this mortgage, any attempted compliance with the above by the partial or total vacating of the premises shall not be considered compliance with the requirements hereof. On any occasion when the premises shall be deemed to be in violation of any law, order, decree, code, rule or requirement relating to said premises, it shall be deemed so to be on the assumption that the premises are or will be fully occupied. The repairs and alterations to be made in order to comply with the foregoing shall include all unoccupied portions of the premises with like effect as though they were fully occupied.

15. The Leases and Rents, as defined in that certain Collateral Assignment of Leases and Rents of even date herewith between Mortgagor and Mortgagee (the "Assignment"), of the mortgaged premises are assigned to the holder hereof pursuant to the provisions of the Assignment collateral hereto as further security for the payment of the obligations

4819-8839-7932 v.7

evidenced by the Note and secured hereby, and Mortgagee shall upon the occurrence of a default hereunder which shall not have been cured within applicable grace and cure periods, if any, have all rights provided in the Assignment in consequence thereof. The Mortgagor covenants that it will not assign, pledge or otherwise alienate any of the rents, issues and profits from said premises without prior written consent of the Mortgagee, except as set forth in the Assignment, and any such attempted assignment, pledge or alienation of said rents shall be subject and subordinate to the rights of the Mortgagee.

16. In the event of any such entry and in the event of such taking of possession by the Mortgagee pursuant to the provisions above stated, or in the event of the appointment of a receiver of rents or profits in any action brought by the Mortgagee by reason of the provisions of this mortgage, the Mortgagor or any subsequent owner, if in possession of any portion of the mortgaged premises, shall be obligated to pay to the Mortgagee or to the receiver of rents a reasonable rental monthly in advance for the portion of the premises so occupied. In the event a receiver is appointed by reason of such default or breach, the amount of rent payable shall be determined upon an application to be made by the receiver to the court for a determination of the reasonable rental value payable by the Mortgagor or any subsequent owner. In the event of a default in the payment of any amount of rent monthly in advance to be determined as above stated, the Mortgagor or any subsequent owner may be dispossessed by the usual summary proceedings in the same manner that any defaulting tenant may likewise be dispossessed.

17. The Mortgagor will not assign, pledge or otherwise alienate any of the rents, issues and profits from said premises without prior written consent of the Mortgagee and any such attempted assignment, pledge or alienation of said rents shall be subject and subordinate to the rights of the Mortgagee.

18. Mortgagor hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Mortgage or to any action brought to enforce the Note or any other obligation secured by this Mortgage.

19. The Mortgagor or any subsequent owner of said premises will, annually within sixty (60) days after the end of the Mortgagor's fiscal year, furnish to the Mortgagee or any subsequent holder of this mortgage, a full and complete statement of all income and expenses incurred in the operation and maintenance of the said premises. Such a statement shall include a rent roll and such other information relating to the property as the Mortgagee may require. Such statement will also be furnished to the Mortgagee at any other time on demand.

20. The Mortgagor represents that it is now the owner of the premises described in the mortgage. That this is a valid second ranking lien for the principal sum of **$26,000,000.00** on the parcel known as 376 Gin Lane, Southampton, NY 11968 and a valid first ranking lien for the principal sum of **$26,000,000** on the parcel known as 366 Gin Lane, Southampton, NY 11968, in each case with interest thereon as aforesaid, and that there are no defenses or offsets to this mortgage or to the Note or obligation which it secures.

21. The Mortgagor covenants to pay to the Mortgagee a reasonable fee which the Mortgagee may impose, at its option, for the processing on its records of any change of ownership or

substitution of bondsman or for any letter advice as to the amount of principal and interest owing on the mortgage or for inspections of the mortgaged premises in connection with payment of fire loss proceeds or condemnation award, or for any release, modification, extension, consent, easement, special agreement, reduction certificate, assignment, satisfaction of mortgage or other instrument relating to this mortgage.

22.    Any and all articles of personal property now or hereafter attached to or used in any way in connection with the operation or renting of the premises shall be a part of the security for the indebtedness hereinabove referred to, including, but not limiting the generality of the foregoing to, all partitions, elevators, engines, motors, dynamos, boilers, furnaces, fuel oil, coal; heating, refrigerating, air conditioning, plumbing, gas and electric light equipment; vacuum cleaning systems; sprinkler system or other fire preventing or extinguishing equipment and materials; stoves, ranges, refrigerators, washing machines, clothes dryers, dishwashers, refuse compactors, saunas, awnings, screens, window shades; furniture and furnishings for the common halls and lobbies; furnishings and equipment of any hotel, motel, resort, health spa, restaurant, recreation facility, hospital, nursing home, adult residence or other health care related facility, theater, place of public or private assemblage, club and lodge, constituting all or part of the mortgaged premises; also all other articles constituting a part of or used in connection with the operation of the buildings and other structures situated upon and constituting part of the mortgaged premises, to all of which the Mortgagor represents that the Mortgagor has title free from any prior liens or encumbrances, and all buildings, structures, improvements, fixtures and articles of personal property at any time, now or hereafter, constructed, affixed to or placed upon said premises or used in connection with the operation thereof. This provision shall apply to any personalty or fixtures, now or hereafter in the premises, even though any fixture or article of personal property may not form a part of the realty as a matter of law or may not be essential to the support of the realty, it being intended hereby that such fixtures and articles of personal property shall become a part of the mortgaged realty and shall be covered by the lien of the mortgage and shall be subject to a security interest in accordance with Article 9 of the Uniform Commercial Code. If any other security agreement and/or financing statement is executed simultaneously with the execution hereof, said security agreement and/or financing statement shall be deemed to be given by the Mortgagor and accepted by the Mortgagee as additional security and shall be in confirmation of the foregoing; the execution or delivery of such other security agreement and/or financing statement shall not render the security interest created hereby ineffective or without force, whether said security agreement and/or financing statement is filed or re-filed or not, the security interest herein created being, notwithstanding the execution and delivery of such other security agreement and/or financing statement, fully effective and operative. Should any of such fixtures and/or articles of personal property be placed in the premises by the Mortgagor herein or any successor in interest subject to any prior security interest deemed superior to that created hereby, the lien hereof shall be deemed to include the equity and interest of the Mortgagor or any such successor in interest in any of such fixtures and/or articles of personal property and, in the event of any default hereunder, all the right, title and interest of the Mortgagor or of any such successor in interest in and to any and all such property is hereby assigned to the Mortgagee, together with any benefits of any deposits or payments theretofore made thereon by the Mortgagor or any such successor in interest. The provisions hereof are intended by Mortgagor and Mortgagee, and shall be deemed and construed to constitute a

security agreement in accordance with Article 9 of the Uniform Commercial Code, creating a security interest in the property described in this paragraph. The Mortgagee is hereby authorized to file and re-file financing statements relating to the security interests created hereby on behalf of and in the name of Mortgagor without the Mortgagor's consent to or execution of such filings whenever the Mortgagee deems it advisable for the purpose of complying with the Uniform Commercial Code and of effectuating, continuing or renewing the liens hereby created.

23.    The Mortgagor does hereby assign to the Mortgagee and the legal representatives, successors and assigns of said party, as a part of the security for the indebtedness hereinabove referred to, any and all award and awards heretofore made and hereafter to be made by any municipal, county, state, federal or other governmental authority to the present and/or all subsequent owners of the premises herein described including any award and awards from any change or changes of grade of streets affecting said premises; and the said Mortgagee, and the legal representatives, successors and assigns of the Mortgagee (at its or their option) are hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquittances therefrom, and to apply the same toward the payment of the amount owing on account hereof, notwithstanding the fact that the amount owing on account hereof may not be then due and payable, and the said Mortgagor for the said Mortgagor and the legal representatives, successors and assigns of the Mortgagor hereby covenants and agrees to and with the said Mortgagee and the legal representatives, successors and assigns of the Mortgagee, upon demand by the holder hereof, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and awards to the holder hereof, free, clean and discharged of any and all encumbrances of any kind or nature whatsoever.

24.    Upon notice from the Mortgagee, the Mortgagor covenants to pay to the Mortgagee on the sixth day of each and every month commencing with the month after receipt of such notice, one-twelfth (1/12th) of the annual charges for real estate taxes, water rates, sewer charges, vault taxes and assessments affecting the premises herein mentioned and, at the option of the Mortgagee, the annual premiums for fire, flood and other hazard insurance, which sums shall be held by the Mortgagee and used by it to pay such taxes and charges as the same become due and payable. The amount of such monthly payments is to be fixed and determined by the Mortgagee immediately after the date hereof and if, on the first day of any month hereafter, the total of the monthly installments theretofore paid to the Mortgagee shall be insufficient to pay such taxes and charges as shall then or thereafter be due and payable, the Mortgagor shall pay to the Mortgagee such further sum as shall be necessary to make up such deficit within ten (10) days after written notice and demand therefor; and if there be any excess in any month over and above the sum necessary to pay such taxes and charges, it shall be applied to such taxes and charges subsequently accruing. Such funds held by the Mortgagee shall not be deemed trust or agency funds, may be co-mingled with the general funds of the Mortgagee and no interest or earnings thereon shall be payable by Mortgagee except as may be required by law. Upon Mortgagor's default in making any such payment or payments as and when herein provided, Mortgagee shall have the right (but not the obligation), in Mortgagee's sole and absolute discretion, to pay any such taxes or

FILED: SUFFOLK COUNTY CLERK 11/22/2019 03:39 PM   INDEX NO. 623208/2019
NYSCEF DOC. NO. 2                                            RECEIVED NYSCEF: 11/22/2019

charges and Mortgagor shall be obligated to repay the same to Mortgagee with interest at the rate(s) specified in the Note secured hereby and such sums so advanced by Mortgagee, together with the interest thereon, shall be a lien on said premises and secured by this mortgage.

25. In the event of a sale, conveyance or transfer of ownership of the mortgaged premises or a portion thereof by the Mortgagor or any subsequent owner thereof, this mortgage will immediately become due and payable at the option of the Mortgagee and the Mortgagee shall be entitled to all rights and remedies under paragraph 26. As used in this paragraph, the phrase "sale, conveyance or transfer of ownership" shall be construed to include, but not be limited to, with respect to the mortgaged premises; a) an installment sales contract; b) a lease with an option to buy; c) a lease for more than eight (8) calendar weeks including renewal terms; d) a transfer of stock of the Mortgagor, if Mortgagor is a corporation or transfer of membership interest of the Mortgagor, if Mortgagor is a limited liability company; e) any change in the general partners comprising Mortgagor, as same presently exist, if Mortgagor is a partnership; and f) the creation of any other lien or encumbrance, including, without limitation, any lien or encumbrance involving a transfer of rights of occupancy.

26. Upon any default hereunder, the breach of any of the covenants hereof or the occurrence of an Event of Default (as defined in the Note), the entire principal sum secured hereby shall, at the option of the Mortgagee, become immediately due and payable and the Mortgagee shall have the right to foreclose this mortgage. Mortgagor hereby agrees that upon any action to foreclose or otherwise enforce the provisions contained in this agreement and the other Loan Documents (as defined in the Note), Mortgagor shall not interpose any counterclaim and Mortgagor hereby waives any right to a jury trial. In addition, the Mortgagee may, its option, immediately and without demand, exercise any and all rights and remedies available to a secured party under the Uniform Commercial Code as in effect from time to time. This paragraph 26 is without limitation to any other rights and remedies which the Mortgagee may have under the Loan Documents, at law or in equity.

27. All obligations of the Mortgagor hereunder shall continue until the entire debt evidenced hereby is paid, notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this agreement.

28. This instrument and all of the covenants contained herein shall bind the heirs, executors, administrators, successors and assigns of the Mortgagor and inure to the benefit of the successors and assigns of the Mortgagee, with like effect as if such heirs, executors, administrators, successors and assigns were named herein.

29. The terms and provisions of this mortgage shall not be changed, modified, or discharged in whole or in part except by an instrument in writing signed by the party against whom enforcement of such change, modification or discharge is sought or by its agent thereunto duly authorized in writing.

30. This mortgage and the execution and delivery of same by the Mortgagor have been duly

authorized by the members and officers of the Mortgagor.

31. Nothing contained herein shall be construed or operate so as to require the Mortgagor to pay interest at a greater rate than is now lawful or to make any payment contrary to law. In any event, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law and any excess portion of such charges that have been collected shall be refunded to the Mortgagor.

32. Mortgagor hereby covenants and agrees as follows:

   a. Within ninety (90) days after notification by Mortgagee, Mortgagor shall remove or cause to be removed any and all asbestos or correct or cause to be corrected the condition of such asbestos by enclosure or encapsulation for all asbestos which may at any time be determined to be located in or on any part of the mortgaged premises and will take or cause to be taken any and all other actions, required by law in connection therewith; and

   b. Mortgagor shall proceed promptly and with due diligence to perform or cause to be performed all actions required to be taken by law in connection therewith and/or as requested by Mortgagee; and

   c. Mortgagor shall comply with all laws, rules or regulations, as the same may from time to time be amended, modified or supplemented, and relating to acceptable levels of asbestos, asbestos-containing materials or other hazardous materials including, without limitation, all pollutants, dangerous substances, toxic substances, hazardous wastes and hazardous substances as defined or set forth in or pursuant to or covered by the Resource Conservation and Recovery Act (42 U.S.C. Section 9601, et seq.), the Comprehensive Environmental Response Compensation and Liability Act (42 U.S.C. Section 6901, et seq.), or any other federal, state or local environmental law, ordinance, rule or regulation.

Mortgagor shall, whenever required hereunder, perform all of the work so required in a safe and proper manner and in accordance and in compliance with all applicable federal, state, city and building laws, rules or regulations in existence now or established from time to time hereafter. Upon completion of such work, Mortgagor shall deliver to Mortgagee certified copies of all clearance reports and testing results required by all applicable laws, rules and regulations in existence now or established from time to time hereafter.

Mortgagor, its successors and assigns, shall defend, indemnify and hold harmless Mortgagee, including its directors, officers, employees, agents, successors and assigns, from and against any and all claims, demands, judgments, damages, actions, causes of action, injuries, administrative orders, consent agreements and orders, liabilities, penalties, costs and expenses (including reasonable attorneys' fees) of any kind whatsoever, including claims arising out of loss of life, injury to persons, property, or business in connection with the acts or failure to act of Mortgagor or Mortgagor's predecessors in interest, third parties in a contractual relationship with Mortgagor, or any of them, whether or not occasioned wholly or in part by any condition, accident or event

caused by any act or omission of Mortgagor, which:

 i. arises out of the actual, alleged or threatened discharge, dispersal, release, generation, disposal or escape of asbestos-containing materials or other hazardous materials; or

 ii. actually or allegedly arises out of the performance or failure to perform the abatement of any asbestos or other hazardous materials source or the work required to be taken by law in connection therewith.

Mortgagee shall have the right, but not the obligation, to perform or cause to be performed all of Mortgagor's obligations hereunder. If Mortgagee shall perform or cause to be performed such obligations, Mortgagors shall, immediately and upon demand of Mortgagee, reimburse Mortgagee for all costs and expenses Mortgagee incurs in connection therewith.

The Mortgagor, its successors and assigns, shall bear, pay and discharge when and as the same becomes due and payable, any and all such judgments or claims for damages, penalties, clean-ups or otherwise against Mortgagee described in this paragraph, shall hold Mortgagee harmless for those judgments or claims, and shall assume the burden and expense of defending all suits, administrative proceedings, and negotiations of any description with any and all persons, political subdivisions or government agencies arising out of any of the occurrences set forth in this paragraph.

In the event Mortgagor fails to meet and comply with the covenants and conditions set forth in this paragraph, the entire balance of principal secured hereunder, together with all interest thereon shall immediately become due and payable at the option of the Mortgagee. Mortgagor hereby represents to Mortgagee that there is as of the date hereof no asbestos, asbestos-containing materials or other hazardous materials in, on or about the mortgaged premises. Anything contained in this agreement to the contrary notwithstanding, the Mortgagor hereby agrees that the indemnifications contained in this paragraph shall continue and survive satisfaction of the loan whether by payment or through foreclosure or acceptance by Mortgagee of a deed in lieu of foreclosure.

33. Any provisions in this Agreement to the contrary notwithstanding, Mortgagor hereby agrees to pay any and all state and local real property and other transfer taxes payable in connection with a sale or other conveyance of the mortgaged premises arising or resulting from Mortgagee's (i) foreclosure of the mortgage as extended or (ii) acceptance of a deed to the mortgaged premises in lieu of foreclosure proceedings. Mortgagor further hereby irrevocably appoints Mortgagee its true and lawful attorney to act in Mortgagor's name and stead in completing any and all returns, questionnaires, notices of sale or other documents which may be required in connection with any such transfer or the payment of any such transfer tax or other tax.

34. If it becomes necessary to employ counsel to collect the obligation described herein or to protect or foreclose said mortgage, the Mortgagor hereby agrees to pay reasonable attorneys' fees for the services of such counsel together with all other costs and disbursements in connection therewith whether or not suit be brought.

4819-8839-7932 v.7

35.  In the event that the Mortgagor elects to accept a payment from the Mortgagor which is received more than five (5) days late, a late charge of five (5%) percent for each $1.00 of such payment so overdue shall be changed for the purpose of defraying the expenses incidental to handling such delinquent payment. Such change may be added to the amount owing on the principal indebtedness and its payment further secured hereby. Acceptance of any late payment by the Mortgagee in one instance shall not be construed to be a waiver of any of Mortgagee's rights under this mortgage in connection with any other late payment during the term of this mortgage.

36.  Any forbearance by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Mortgagee of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Mortgagee's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Mortgagee shall not be a waiver of Mortgagee's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Mortgagee's receipt of any awards, proceeds or damages under paragraph 23 hereof operate to cure or waive Mortgagor's default in payment of sums secured by this Instrument.

37.  Mortgagor will not, without the prior written consent of the Mortgagee, create, grant or permit to be created or granted, or permit to remain, any mortgage, pledge, lien, encumbrance, option to purchase or charge, or security interest, or conditional sale or other title retention agreement, with respect to the premises secured hereunder or any part thereof or income therefrom, whether prior or subordinate to the lien of the mortgage or any extensions, renewals or modifications hereof. Any default under any other mortgage secured by the premises, shall be a default hereunder and the whole of the principal sum and the interest thereon shall become due at the option of the Mortgagee.

38.  Any advances made by the Mortgagee under any of the terms, covenants, or conditions of this agreement shall be deemed secured hereby, shall bear interest at the default rate set forth herein and shall be allowed and collectible in any action to foreclose.

39.  Mortgagor hereby warrants and represents to Mortgagee that the undersigned is receiving and will use the proceeds of the loan secured by this Mortgage and the Note exclusively to carry on a business or commercial enterprise and that none of such proceeds shall be used for personal, family, household or consumer purposes; such warranty and representation being a material inducement to the Mortgagee to make the such loan.

40.  At the Mortgagee's option and without demand, notice, or protest, the occurrence of any such default hereunder shall also constitute a default under all other agreements between the Mortgagee and the Mortgagor. Conversely, at Mortgagee's option and without demand, notice, or protest, the occurrence of any event of default under any other agreement between Mortgagee and Mortgagor shall constitute a default hereunder.

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

41. ☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This security instrument covers real property principally improved by one or more structures containing in the aggregate not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

42. ☐ Section 254, et al., of RPL. The clauses, covenants and conditions contained in this Mortgage and in the other Loan Documents, other than those included in the New York Statutory Short Form of Mortgage, shall be construed as affording to Mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions of Sections 254, 271 and 272 of the New York Real Property Law.

43. MAXIMUM AMOUNT SECURED. NOTWITHSTANDING ANY PROVISION SET FORTH IN MORTGAGE TO THE CONTRARY, THE MAXIMUM AMOUNT OF PRINCIPAL INDEBTEDNESS SECURED BY THIS SECURITY INSTRUMENT AT EXECUTION, OR WHICH UNDER ANY CONTINGENCY MAY BECOME SECURED HEREBY AT ANY TIME HEREAFTER, IS $50,000,000, PLUS ALL INTEREST AND OTHER CHARGES PAYABLE UNDER THE NOTE AND ALL AMOUNTS EXPENDED BY MORTGAGEE AFTER DEFAULT BY MORTGAGOR (A) FOR THE PAYMENT OF REAL ESTATE TAXES, CHARGES OR ASSESSMENTS WHICH ARE IMPOSED BY LAW UPON THE PROPERTY; (B) TO MAINTAIN THE INSURANCE REQUIRED TO BE MAINTAINED BY MORTGAGOR PURSUANT TO THIS MORTGAGEAND THE OTHER LOAN DOCUMENTS; (C) FOR ANY EXPENSES INCURRED IN MAINTAING THE PROPERTY AND UPHOLDING THE LIEN OF THIS MORTGAGE, INCLUDING, BUT NOT LIMITED TO, THE EXPENSE OF ANY LITIGATION TO PROSECUTE OR DEFEND THE RIGHTS AND LIEN CREATED BY THIS MORTGAGE; (D) FOR ANY AMOUNT, COST OR CHARGE TO WHICH MORTGAGEE BECOMES SUBROGATED, UPON PAYMENT, WHETHER UNDER RECOGNIZED PRINCIPLES OF LAW OR EQUITY, OR UNDER EXPRESS STATUTORY AUTHORITY; AND ALSO TOGETHER WITH INTEREST ON ALL OF THE FOREGOING AMOUNTS IN CLAUSES (A) THROUGH (D) AT SUCH RATES AS PROVIDED FOR IN THE NOTE.

**SIGNATURE PAGE FOLLOWS**
**NO FURTHER TEXT**

4819-8839-7932 v.7

IN WITNESS WHEREOF, this Mortgage has been executed by the Mortgagor as of the 25th day of July, 2018.

**Brickchurch Enterprises, Inc.**

By: David M. Hryck
Title: Authorized Signatory

**Aberdeen Enterprises, Inc.**

By: David M. Hryck
Title: Authorized Signatory

State of New York          )

County of _New York_ ;

On the 25th day of July, in the year 2018 before me, the undersigned, personally appeared David M. Hryck, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

NOTARY PUBLIC

Jan Kiderman
Notary Public, State of NY
No. 01KI6075678
Qualified in Westchester County
Commission Expires June 10, 2022

4819-8839-7932 v.7

## RED STONE TITLE AGENCY, LLC
As Agent for
## OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

## LEGAL DESCRIPTION

Title No.: **RTNY-32162**

**Parcel I:**
All that certain plot, piece or parcel of land situate, lying and being in the Incorporated Village of Southampton, Town of Southampton, County of Suffolk, State of New York, more particularly described as follows:

BEGINNING at a point on the southerly side of Gin Lane, distant westerly 65.95 feet as measured along same from the intersection of the southerly side of Gin Lane with the westerly side of Wyandanch Lane;

THENCE along lands now or formerly of Aberdeen Enterprises Inc.:

1. RUNNING THENCE South 20 degrees 05 minutes 50 seconds East 178.57 feet;

2. THENCE South 58 degrees 56 minutes 50 seconds West 50.96 feet;

3. THENCE South 03 degrees 20 minutes 09 seconds East 155.09 feet;

4. THENCE South 16 degrees 20 minutes 00 seconds East 213.89 feet to The Atlantic Ocean;

THENCE along Tie Line which marks the General Shore Line of the Atlantic Ocean, as of January 5, 1982 bearing, South 64 degrees 46 minutes 15 seconds West 129.10 feet to land now or formerly of Susan Wilson;

THENCE along said lands, North 16 degrees 20 minutes 00 seconds West 575.00 feet to a monument in the southerly side of Gin Lane;

THENCE along the southerly side of Gin Lane, North 73 degrees 21 minutes 10 seconds East 200.00 feet to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as District 0904, Section 029.00 Block 01.00, Lot 017.014, Suffolk County and also known as Parcel I: 366 Gin Lane, Southampton, NY 11968.

**Parcel II:**
All that certain plot, piece or parcel of land situate, lying and being in the Incorporated Village of Southampton, Town of Southampton, County of Suffolk, State of New York, more particularly described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Gin Lane with the westerly side of Wyandanch Lane;

RUNNING THENCE along the westerly side of Wyandanch Lane, South 30 degrees 54 minutes 10 seconds East 531.00 feet to the Atlantic Ocean;

THENCE along a tie line course which marks the general shoreline of the Atlantic Ocean, as of January 5, 1982 bearing, South 64 degrees 46 minutes 15 seconds West 275.28 feet to land now or formerly of Brickchurch Enterprises Inc.;

THENCE along said lands, the following four courses and distances:

Red Stone Title Agency, LLC
619 West 54th Street, Suite 10A
New York, NY 10019
TEL: 212-235-1151 FAX:

Schedule A Description

RTNY-32162

# RED STONE TITLE AGENCY, LLC
### As Agent for
### OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

## SCHEDULE A continued

1. North 16 degrees 20 minutes 00 seconds West 213.89 feet;

2. North 03 degrees 20 minutes 09 seconds West 155.09 feet;

3. North 58 degrees 56 minutes 50 seconds East 50.96 feet;

4. North 20 degrees 05 minutes 50 seconds West, 178.57 feet to the southerly side of Gin Lane;

THENCE along the southerly side of Gin Lane, North 73 degrees 21 minutes 10 seconds east 65.95 feet to the westerly side of Wyandanch Lane to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as District 0904, Section 029.00, Block 01.00, Lot 017.013, Suffolk County and also known as Parcel II: 376 Gin Lane, Southampton, NY 11968.

# EXHIBIT C

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

# FORBEARANCE AGREEMENT

This Forbearance Agreement (this "**Agreement**"), dated as of July 11, 2019, is made by and between JGB Capital, LP, JGB Partners, LP, JGB Plymouth Rock LLC and JGB (Cayman) Ancona Ltd. (collectively, the "**Lenders**" and each of them a "**Lender**"), on the one hand, and Aberdeen Enterprises, Inc., a Delaware corporation ("**Aberdeen**"), and Brickchurch Enterprises, Inc., a Delaware corporation ("**Brickchurch**" and together with Aberdeen, the "**Borrowers**" and each of them a "**Borrower**"), on the other hand.

WHEREAS, the Lenders are the holders of that Secured Promissory Note due October 31, 2019, made by the Borrowers, as co-borrowers, in the original principal amount of $26,000,000 (as may be subsequently amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its provisions, the "**Note**" and capitalized terms used herein but not otherwise defined herein shall have the respective meanings given such terms in the Note);

WHEREAS, as security for all of the indebtedness and other obligations due to Lenders under the Note and the other Loan Documents (collectively, the "**Obligations**"), the Borrowers executed and delivered to Lenders that certain Mortgage dated July 25, 2018 (as the same may be amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its provisions, the "**Mortgage**"), granting to Lenders a mortgage and security interest in the real property commonly known as 366 and 376 Gin Lane, Southampton, New York and the other collateral described in the Mortgage (collectively, the "**Collateral**");

WHEREAS, on June 4, 2019, June 13, 2019, and July 5, 2019, the Lenders, by written notice to the Borrowers, declared Events of Default pursuant to Sections 9.1, 9.4 and 9.5(e) of the Note as a result of the events and circumstances described in such written notices and Lenders are aware of an additional Event of Default under Sections 6 and 7 of the Mortgage as a result of the Borrowers' failure to pay real estate taxes on the Collateral (collectively, the "**Specified Defaults**") and the Lenders are currently entitled to accelerate the repayment of all of the Obligations and to exercise their rights and remedies under the terms of the Note and the Mortgage; and

WHEREAS, the Borrowers have requested that the Lenders forbear from exercising remedies based on the Specified Defaults.

NOW, THEREFORE, in consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      <u>Acknowledgments of the Borrowers</u>. Each Borrower acknowledges and agrees that:

1.1      <u>Defaults</u>. The Specified Defaults have occurred and are continuing. The Note is currently, and has been since June 1, 2019, accruing interest at the Default

Rate, and so long as the Specified Defaults and any Interest Default (as defined below) are continuing the Note shall continue to accrue interest at the Default Rate.

1.2     Transaction Documents. The Note, the Mortgage, the other Loan Documents and all other agreements, instruments and other documents executed in connection with or relating to the Obligations or the Collateral are legal, valid, binding and enforceable against the Borrowers without any setoff, deduction, claim, counterclaim or defense of any character whatsoever.

1.3     Obligations. The Obligations are not subject to any setoff, deduction, claim, counterclaim or defenses of any kind or character whatsoever.

1.4     Collateral. The Lenders have valid, enforceable and perfected security interests in and liens on the Collateral, as to which there are no setoffs, deductions, claims, counterclaims or defenses of any kind or character whatsoever.

1.5     Right to Exercise Remedies. As a result of the Specified Defaults, the Lenders have the right to exercise all rights and remedies under the Loan Documents, including, but not limited to, the right to accelerate the maturity and demand immediate payment of the Obligations and to foreclose on the Collateral.

1.6     Holder Conduct. Lenders have fully and timely performed all of their obligations and duties in compliance with the Loan Documents and applicable law, and have acted reasonably, in good faith and appropriately under the circumstances and the Borrowers have no claim against the Lenders.

2.     Forbearance.

2.1     Agreement to Forbear. Commencing on the Effective Date (as defined below), each Lender hereby agrees, with respect to (i) the Specified Defaults (but only the Specified Defaults) and (ii) any failure by the Borrowers to pay interest on the July 31, 2019, August 30, 2019, and September 30, 2019, Interest Payment Dates pursuant to Section 4.2 of the Note (an "**Interest Default**"), that it will refrain and forebear from exercising or pursuing any rights or remedies under the Note, the Mortgage or any other Loan Document until (but only until) the Termination Date (as defined below). Any term or provision hereof to the contrary notwithstanding, no Lender is waiving any of its rights or remedies under the Note (including, without limitation, the right to be paid interest on the Note in accordance with its terms), Mortgage or any other Loan Document, but instead is simply agreeing not to exercise remedies with respect to the Subject Defaults and any Interest Default until the Termination Date.

2.2     Termination of Forbearance. The "**Termination Date**" shall mean the earlier of (i) the Maturity Date and (ii) the date on which any Event of Default (other than the Specified Defaults or an Interest Default) occurs. Upon the occurrence of the Termination Date the Lenders may pursue any rights and remedies available to them under the Note, the Mortgage or any other Loan Document, or pursuant to law or otherwise, with respect to any Event of Default that has then occurred and is

2

continuing (including the Specified Defaults and any Interest Default), including, but not limited to, declaring all or any portion of the Obligations to be immediately due and payable, imposing a default rate of interest in respect of the Obligations, or pursuing any or all other rights and remedies of the Lenders as mortgagees and secured parties. For clarity, to the extent that (x) Morgan Stanley Private Bank, N.A. (or its successors or assigns) exercises any rights and remedies under the Mortgage dated December 30, 2011, by and between Morgan Stanley Private Bank, N.A. and Aberdeen, including, without limitation, any acceleration of Aberdeen's obligations thereunder or institutes foreclosure proceedings, and/or (y) any Governmental Authority, including the Town of Southampton or the County of Suffolk, commences any action or proceeding related to the failure of the Borrowers to pay real estate taxes, in any case, such event shall be considered a new Event of Default (and shall not be considered one of the Specified Defaults).

3.    <u>Conditions Precedent</u>. This Agreement shall not become effective unless and until the date (the **"Effective Date"**) that each of the following conditions shall have been satisfied in Lenders' sole discretion (unless waived in writing by Lenders in their sole discretion):

3.1    <u>Delivery of this Agreement</u>. Each Borrower shall have delivered to the Lenders a duly executed "wet ink" original of this Agreement.

3.2    <u>Nonrecourse Carve Out Guaranty</u>. Louise Blouin and Matthew Kabatoff shall have delivered to the Lenders a duly executed "wet ink" original of a Nonrecourse Carve Out Guaranty with respect to the Note in substantially the form of <u>Exhibit D</u> attached hereto.

4.    <u>Exit Charge</u>. As additional compensation for the increased risk to the Lenders, the Borrowers, shall, as additional interest on the Loan, pay an "Exit Charge" to the Lenders as follows:

4.1    if the Borrowers repay the Loan and all of the other outstanding obligations under the Note on or prior to July 31, 2019, the Exit Charge shall be $504,065;

4.2    if the Borrowers repay the Loan and all of the other outstanding obligations under the Note on or prior to August 31, 2019, the Exit Charge shall be $1,008,130.08

4.3    if the Borrowers repay the Loan and all of the other outstanding obligations under the Note on or prior to September 30, 2019, the Exit Charge shall be $1,495,934.96;

4.4    if the Borrowers repay the Loan and all of the other outstanding obligations under the Note any time after September 30, 2019, the Exit Charge shall be $2,000,000.

4833-2899-4970 v.5

To the extent that the Loan and all of the other outstanding obligations under the Note are repaid in full prior to September 30, 2019, the Exit Charge will be pro-rated for partial months based on the following formula: ($2,000,000/ 123 days) multiplied by (the number of days between June 30, 2019 and the date of repayment). For example, if the Note is repaid in full on September 3, 2019, the Exit Charge shall equal $1,056,910.57 (e.g., $16,260.16 * 65 days).

5.    <u>Reconfirmation of Mortgage and Security Interests</u>.    Nothing herein shall impair or limit the continuation of the liens and security interests granted to the Lenders under the Mortgage and the other Loan Documents or construed to release, cancel, terminate or adversely affect such liens and securities interests; all such liens and security interests continue in full force and effect pursuant to and as provided in the Mortgage and the other Loan Documents, and which liens and security interests secure all of the Obligations. The Borrowers acknowledges the continuing existence and priority of all liens and security interests granted, conveyed, and assigned pursuant to the Mortgage and the Loan Documents, in accordance with the terms thereof, and agrees to perform such acts and duly authorize, execute, acknowledge, deliver, file, and record such additional documents and certificates as the Lenders reasonably request in order to perfect, preserve, and protect such liens and security interests.

6.    <u>Release</u>.   In further consideration of the Lenders' execution of this Agreement, the Borrowers, on behalf of themselves and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, agents and attorneys hereby forever, fully, unconditionally and irrevocably waive and release the Lenders and its successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, attorneys and agents (collectively, the **"Releasees"**) from any and all claims, liabilities, obligations, debts, causes of action (whether at law or in equity or otherwise), defenses, counterclaims, setoffs, of any kind, whether known or unknown, whether liquidated or unliquidated, matured or unmatured, fixed or contingent, directly or indirectly arising out of, connected with, resulting from or related to any act or omission by the Lenders or any other Releasee with respect to the Note, the other Loan Documents and any Collateral (collectively, the **"Claims"**). The Borrowers further agree that neither Borrower shall commence, institute, or prosecute any lawsuit, action or other proceeding, whether judicial, administrative or otherwise, to prosecute, collect or enforce any Claim.

7.    <u>Representations and Warranties</u>.   Each Borrower represents and warrants, severally and jointly, to the Lenders that:

7.1    <u>Authorization; Enforcement</u>.    Each Borrower has the requisite corporate power and authority to enter into and to consummate the transactions contemplated by this Agreement and otherwise to carry out its obligations hereunder. The execution and delivery of this Agreement (and each other document required to be executed and delivered by a Borrower hereunder) by each Borrower and the consummation by each of them of the transactions contemplated hereby have been duly authorized by all necessary action on the part of each such Borrower and no further action is required by either Borrower in connection herewith.   This Agreement (and each other document required to be executed and delivered by a

Borrower hereunder) has been (or upon delivery will have been) duly executed by each Borrower and, when delivered in accordance with the terms hereof, will constitute the valid and binding obligation of each such Borrower enforceable against each such Borrower in accordance with their respective terms.

7.2     No Conflicts. The execution, delivery and performance by each Borrower of this Agreement (and each other document required to be executed and delivered by a Borrower or hereunder), and the consummation by each of them of the transactions contemplated hereby and thereby do not and will not: (i) conflict with or violate any provision of a Borrower's certificate of incorporation, bylaws or other organizational or charter documents, (ii) conflict with, or constitute a default (or an event that with notice or lapse of time or both would become a default) under, result in the creation of any lien or other encumbrance upon any of the properties or assets of a Borrower, or give to others any rights of termination, amendment, acceleration or cancellation (with or without notice, lapse of time or both) of, any agreement, credit facility, securities purchase agreement, debt or other instrument (evidencing a Borrower debt or otherwise) or other understanding to which a Borrower is a party or by which any property or asset of a Borrower is bound or affected, or (iii) conflict with or result in a violation of any law, rule, regulation, order, judgment, injunction, decree or other restriction of any court or governmental authority to which a Borrower is subject, or by which any property or asset of a Borrower is bound or affected.

7.3     Absence of Defaults.  Other than the Specified Defaults, no Event of Default under the Note has occurred or is continuing.

8.     Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon the Borrowers and the Lenders and each of their respective successors and assigns.

9.     Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.  The parties agree that the state and federal courts located in New York County, New York and Suffolk County, New York shall have exclusive jurisdiction over any action, proceeding or dispute arising out of this Agreement and the parties submit to the personal jurisdiction of such courts.

10.     No Modification.  The Note and the other Loan Documents remain unmodified and in full force effect.  This Agreement is a Loan Document.

11.     Counterparts. This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same agreement, and any party hereto may execute this Agreement by signing and delivering one or more counterparts. Delivery of an executed counterpart of this Agreement electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Agreement.

12.     Expense Reimbursement.  The Lenders shall be entitled to a non-accountable expense reimbursement of $90,000 (which shall be applied towards, among other things,

Case 8-22-70914-ast    Doc 136    Filed 10/18/22    Entered 10/18/22 13:46:36

Lenders' legal fees) in connection with this Agreement and the transactions contemplated hereby, which amount shall be due and payable on the Maturity Date or the earlier repayment of the Note.

[SIGNATURE PAGE ON NEXT PAGE]

6

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

BORROWERS:

| ABERDEEN ENTERPRISES, INC. | BRICKCHURCH ENTERPRISES, INC. |
|---|---|
| By _Matthew Ketschalt_ Name: Mathew Ketschalt Title: Director | By _Matthew Ketschalt_ Name: Mathew Ketschalt Title: Director |

LENDERS:

| JGB (CAYMAN) ANCONA LTD. | JGB CAPITAL, LP |
|---|---|
| By _Brett Cohen_ Name: Brett Cohen Title: President | By _Brett Cohen_ Name: Brett Cohen Title: President |
| JGB PARTNERS, LP | JGB PLYMOUTH ROCK, LLC |
| By _Brett Cohen_ Name: Brett Cohen Title: President | By _Brett Cohen_ Name: Brett Cohen Title: President |

7

# EXHIBIT D

Part 17
At an I.A.S. of the Supreme Court of the State
of New York, held in and for the County of
Suffolk, at the Courthouse at One Court Street,
Riverhead, New York  11901  on the
$\underline{19}$ day of ___January___ , 202$\mathbf{2}$

22954-
723

PRESENT: HON. ~~DERRICK J. ROBINSON~~, J.S.C.
CHRISTOPHER MODELEWSKI,

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

----------------------------------------------------------x

JGB PARTNERS, LP, JGB CAPITAL, LP, JGB
(CAYMAN) ANCONA LTD., and JGB
PLYMOUTH ROCK LLC,

                            Plaintiffs

            - against -

BRICKCHURCH ENTERPRISES, INC.,
ABERDEEN ENTERPRISES, INC., NEW YORK
STATE DEPARTMENT OF TAXATION AND
FINANCE, THE STATE OF NEW YORK, TOWN
OF SOUTHAMPTON TOWN AND SCHOOL
TAX COLLECTOR, THE VILLAGE OF
SOUTHAMPTON VILLAGE TAX COLLECTOR,
SUFFOLK COUNTY WATER AUTHORITY,

                         Defendants.

----------------------------------------------------------x

Index No.: 623208/2019

**JUDGMENT OF
FORECLOSURE AND SALE**

**ENTERED:**
**AT:**         **FEB - 2 2022**
       1206 pm

NO
Directive.

      UPON the Notice of Pendency of this action filed in the Office of the Clerk of the County

of Suffolk on the 22nd day of November 2019, the Summons and Complaint served herein and

filed in the Office of the Clerk of the County of Suffolk on the 22nd day of November 2019, and

upon due proof that all the defendants, BRICKCHURCH ENTERPRISES, INC., ABERDEEN

ENTERPRISES, INC., NEW YORK STATE DEPARTMENT OF TAXATION AND

FINANCE, THE STATE OF NEW YORK, TOWN OF SOUTHAMPTON TOWN AND

SCHOOL TAX COLLECTOR, THE VILLAGE OF SOUTHAMPTON VILLAGE TAX

COLLECTOR, SUFFOLK COUNTY WATER AUTHORITY ("Defendants"), have been duly

served with said Summons, Complaint and Notice of Pendency; and

UPON the Order of the Honorable Derrick J. Robinson, dated June 1, 2021 granting

plaintiffs JGB PARTNERS, LP, JGB CAPITAL, LP, JGB (CAYMAN) ANCONA LTD., and

JGB PLYMOUTH ROCK LLC's ("Plaintiffs") motion, in all respects, for an order (the

"Order"):

      (i)      awarding Plaintiffs default judgment, pursuant to CPLR § 3215 and RPAPL §
               1321, on its Complaint against Defendants to, *inter alia,* foreclose all rights,
               claims, liens, estate and equity of redemption in the premises known as 366
               Gin Lane, Southampton, New York, and 376 Gin Lane, Southampton, New
               York (the "Properties"), based upon the default of the mortgagors, Brickchurch
               Enterprises, Inc. ("Brickchurch") and Aberdeen Enterprises, Inc. ("Aberdeen"),
               under the terms of a Note signed by the Brickchurch and Aberdeen and
               delivered to Plaintiffs on August 18, 2018 (the "Note") and a Mortgage and
               Security Agreement signed by Brickchurch and Aberdeen and delivered to
               Plaintiffs on August 18, 2018 (the "Mortgage");

      (ii)     striking John Doe Nos. 1-25 from the caption; and

      (iii)    appointing Ann Cryan, Esq. as referee (the "Referee") to ascertain and compute
               the amount due to Plaintiffs under the Note and Mortgage and to ascertain and
               report whether the Properties be sold in separate parcels; and

UPON all other papers previously filed herein; and upon all proceedings had herein,

from all of which it appears that this action was brought to foreclose a mortgage held by

Plaintiffs on the Properties, that the entire balance of the principal sum secured thereby and all

other sums due thereon are now due and payable; that the Defendants herein have been duly

served with the Summons and Complaint; that no defendant is an infant or incompetent or

absentee person and that the Notice of Pendency filed herein has been on file for twenty (20)

days or more and contains all of the particulars required by law to be stated in such notice; and

UPON the reading and filing the report of said Referee, dated July 27, 2021 (the

"Report") from which Report it appears that the sum of Thirty-Nine Million, Nine Hundred

Sixty-One Thousand, Five Hundred Twenty-One Dollars and Eighty Cents ($39,961,521.80) was due to Plaintiffs as of July 1, 2021 for principal and interest and otherwise under the Note and Mortgage, plus Thirteen Thousand Dollars ($13,000) per diem, and that the Properties must be sold in two parcels; and

UPON the reading of Plaintiffs' notice of motion to confirm the Report and to enter a judgment of foreclosure (the "Motion"), and the affirmations of Leslie C. Thorne, Greg Kramer, and Tamika Hardy in support of the Motion; and upon the Court having issued a decision and order dated January 12, 2022 and plaintiff having waived its application for attorney's fees, the said decision and order is hereby modified to the extent that the plaintiff's application for attorneys' fees is withdrawn and no hearing is required thereon;

NOW, upon the plaintiffs Motion, it is

ORDERED, ADJUDGED AND DECREED that the Report be, and the same hereby is in all respects ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED that the Properties described in the Complaint in this action and hereinafter described be sold in two parcels at separate public auctions to the highest bidder at such auctions, which shall be held within ninety (90) days of the date of the entry of this Order with (i) 366 Gin Lane sold at auction first, at Southampton Town Hall 116 Hampton Road Southampton, New York 11968, and (ii) 376 Gin Lane sold at auction after the closing of the sale of 366 Gin Lane at Southampton Town Hall 116 Hampton Road Southampton, New York 11968, in each case, under the direction of Ann Cryan, Esq., who is hereby appointed Referee for that purpose; and that said Referee give public notice of the time and place of said sale, according to law and the rules and practices of this Court, by publication in Southampton Press Western Edition

ORDERED, ADJUDGED AND DECREED that, in the case of each sale, Plaintiffs or any assignee of Plaintiffs' interests in the Note and the Mortgage (an "Assignee"; the Plaintiffs or any Assignee being referred to herein as the "Mortgage Holder"), or any other party to this

FILED: SUFFOLK COUNTY CLERK 03/02/2022 03:11 PM
Case 8-22-70914-ast Doc 136 Filed 10/18/22 Entered 10/18/22 13:46:36
INDEX NO. 623208/2019
NYSCEF DOC. NO. 100

RECEIVED NYSCEF: 03/02/2022

action may become a purchaser at such sale, and that if the Mortgage Holder becomes such

purchaser, no deposit shall be required; that in the event a party other than the Mortgage Holder

becomes the purchaser they shall be required to tender a deposit of ten percent (10%) in

certified funds and closing shall be had within thirty (30) days; that said Referee execute to the

purchaser or purchasers on such sale a deed or deeds of the Properties sold; that all deed

stamps, transfer taxes and recording fees, if any, shall be paid by the purchaser;

ORDERED, ADJUDGED AND DECREED that said Referee on receiving the proceeds

of each sale, shall forthwith deposit the same in the name of the Referee, as Referee, ~~with~~ in her IOLA account at any local banking institution insured by the FDIC and the Referee shall thereafter make the following payments therefrom

and the Referee's checks drawn for such purpose shall be paid by such depository, to wit, in the

case of each sale:

FIRST: The Referee shall pay a sum ~~not to exceed $500~~ of $750.00 the amount allowed by Section 8003 of the CPLR to the Referee as the Referee's fee herein.

SECOND: The Referee shall pay advertising expenses and the expenses of said sale as shown on the bills presented and certified by the said Referee to be correct.

THIRD: The Referee shall pay the amount of any lien or liens upon the Properties to be sold at the time of such sale together with any and all sums which, in each case, may be necessary to redeem the property so sold from any and all sales, unpaid taxes, assessments, water rates, and any sums expanded for the protection, preservation, security or maintenance of the property, including, but not limited to, fire insurance and property inspections. The Referee shall pay or refund to the Plaintiffs, if paid by it, any of the aforementioned sums upon presentation of proper receipts for such payments.

FOURTH: (A) with respect to the sale of 366 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, the sum of $ __39,961,521.80__ , ~~which is comprised of (i)~~ the said ~~amount of $39,961,521.80~~ so reported by the Referee to be due as of July

1, 2021 with interest ~~in the total amount of $~~ _____ accruing at a per diem rate of Thirteen Thousand Dollars ($13,000) from the date July 2, 2021 to date of entry of this judgment as provided in the said Referee's Report, ~~(ii) an award for legal fees incurred or to be incurred by Plaintiffs in prosecuting the foreclosure action, in the amount of $304,316.05 as provided for in the Loan Documents, *plus* any additional legal fees and expenses incurred by Mortgage Holder, including any Assignee, including any Assignee in connection with the foreclosure and sale that are required to be paid by the Borrowers under the Loan Documents,~~ and (iii) an award of costs, disbursements and additional allowances in the amount of $*11,25.bo* to be taxed by the Clerk of this Court with interest thereon from the date hereof, with interest thereon from the date hereof, together and thereafter interest at the statutory rate thereon, to the date of sale directed herein or to the date of the delivery of the Referee's deed, whichever is later or so much as the purchase money of the mortgaged Properties will pay of the same, and (B) with respect to the sale of 376 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, an amount equal to the judgment of foreclosure and sale amount *less* any amounts paid to the Mortgage Holder from the proceeds of the sale of 366 Gin Lane.

FIFTH:      That, if the Referee intends to apply for a further allowance for the Referee's fee, the Referee may leave on deposit such amount as will cover further order of the Court thereon after application duly made.

SIXTH:      That the said Referee take receipts for the money so paid out by the Referee and file the same with the Referee's report of sale and that the Referee deposit the surplus money, if any, with the ~~Treasurer~~ Comptroller of Suffolk County within five days after the same shall be received and ascertainable, to the credit of this action, to be drawn only on order of this Court, signed by a Justice thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that, in the case of each sale, the said

Referee make a report of such sale and file it with the Clerk of the County of Suffolk within 30

days of completing the sale and executing the proper conveyance to the purchaser, and that the

purchaser or purchasers at such sale be let into possession upon production of the Referee's

deed or deeds; that, if the proceeds of such sale be insufficient to pay the amount so reported

due to the Plaintiffs and interest, costs and allowances as aforesaid, said Referee specify the

amount of such deficiency in the Referee's report of sale; and it is further

ORDERED, ADJUDGED AND DECREED, that in the case of each sale, in the event

Case 8-22-70914-ast    Doc 136    Filed 10/18/22    Entered 10/18/22 13:46:36

the Mortgage Holder shall become the purchaser of the applicable Property directed to be sold,

as aforesaid, or in the event that the rights of the purchaser at said sale, and the terms of sale

under this judgment shall be assigned to or acquired by the Mortgage Holder, and a duly

executed assignment thereof in writing be filed with the Referee, said Referee shall not require

the Mortgage Holder to pay in cash the entire amount bid at said sale, but shall execute and

deliver to the Mortgage Holder a deed or deeds of the Properties sold, upon payment to the

Referee of the amounts specified above in the paragraphs marked "FIRST", "SECOND" and

"THIRD", or in lieu of the payment of the said last mentioned amounts, upon filing with said

Referee receipts of the proper municipal authorities showing the payment thereof. That the

balance of the amount bid, if any, shall be allowed to the Mortgage Holder, and applied by the

paragraph marked "FOURTH" above. That if, after so applying the balance of the amount

paid, there shall be a surplus over and above the amounts due to the Mortgage Holder, the

Mortgage Holder shall pay to the said Referee, upon delivery to it of the Referee's deed, the

amount of such surplus, and the Referee shall then deposit the balance with such depository as

herein directed; and it is further

ORDERED, ADJUDGED AND DECREED, that, in the case of each sale, the Referee

shall complete the Foreclosure Action Surplus Monies form, signed by Mortgage Holder's

representative (bank) and any third-party purchaser, and proof of deposit with the County

Comptroller, each to be filed with the Suffolk County Clerk and the Suffolk County Supreme

Court Fiduciary Office within thirty (30) days of close of title; and if such form and proof of

deposit is not timely filed, the Fiduciary Clerk will notify the assigned Justice within 90 days

and the matter will be calendared at the direction of the Justice for whatever action he or she

deems appropriate; and it is further

ORDERED, ADJUDGED AND DECREED, that the Defendants in this action, and all persons claiming under them after the filing of the notice of the pendency of this action be, and they are forever barred and foreclosed of all right, title, claim, lien and equity of redemption in the said mortgaged Properties and in each and every part and parcel thereof. The following is a description of the Properties heretofore mentioned:

> (See Schedule A annexed
> hereto.)

SAID Properties being known as and by the street numbers 366 Gin Lane, Southampton, New York, and 376 Gin Lane, Southampton, New York, and it is further

ORDERED, ADJUDGED AND DECREED that the Properties be sold subject to:

(a) The state of facts an accurate survey will show;

(b) All covenants, restrictions, easements, agreements and reservations, if any, of record and to any and all violations thereof;

(c) Any and all building and zoning regulations, restrictions and ordinances of the municipality in which said Properties are situated, and to any violations of the same, including, but not limited to, reapportionment of lot lines, and vault charges, if any;

(d) Any and all orders or requirements issued by any governmental body having jurisdiction against or affecting said Properties and violations of the same;

(e) The physical condition of any buildings or structure on the Properties as of the date of the later to occur of the closing date or the extension of the closing date hereunder;

(f) Rights of tenants in possession, if any;

(g) Prior mortgages and judgments, if any, now liens of record, which, solely with respect to the sale of 376 Gin Lane, shall include the first ranking mortgage lien held by Morgan Stanley Private Bank, N.A.;

(h) Right of Redemption of the United States of America, if any;

(i) Rights of any defendants pursuant to CPLR Section 317, CPLR

Section 2003 and CPLR Section 5015, if any

(j)     Any and all Hazardous Materials in the Properties including, but not limited to, flammable explosives, radioactive materials, hazardous wastes, asbestos or any material containing asbestos, and toxic substances; and

(k)     Other conditions as set forth in the terms of the sale more particularly to be announced at the sale; and it is further

ORDERED, that by accepting this appointment the Referee certifies that he is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to, Section 36.2(c) ("Disqualifications from Appointment") and Section 36.2(d) ("Limitations on Appointments Based upon Compensation").; and it is further

Dated: _____ January _____, 2021



ENTER:

HON. DERRICK J. ROBINSON, J.S.C.
CHRISTOPHER MODELEWSKI, JSC

**ORDERED** that plaintiff shall serve the notice of the foreclosure sale and any adjournments upon the Supreme Court Calendar Clerk; and it is further

**ORDERED** that the referee complete and file the Suffolk County Foreclosure Action Surplus Monies form with the Supreme Court Calendar Clerk and the Suffolk County Clerk within thirty (30) days of the foreclosure sale in accordance with Suffolk County Administrative Order 104-20; and it is further

**ORDERED** that the referee submit proof of deposit of any surplus monies with the Suffolk County Comptroller with the Supreme Court Calendar Clerk and the Suffolk County Clerk within thirty (30) days of the date of closing of title; and it is further

**ORDERED** that if the referee does not conduct the sale within 90 days of the date of the judgment, in accordance with CPLR 2004, the time fixed by RPAPL § 1351(1) is extended for the referee to conduct the sale as soon as reasonably practicable; and it is further

**ORDERED** that in order to schedule a foreclosure sale, the Referee must contact the Court Fiduciary Office via e-mail at SuffAuctions@nycourts.gov with the proposed details of the foreclosure sale (including the title of action and its index number, the town where the auction is to take place, and the requested date and time for the auction) and the Fiduciary Office will either confirm the proposed date, time and place or ask the Referee to re-schedule the sale to prevent multiple auctions from taking place simultaneously at one location; and it is further

**ORDERED** that the Referee must contact the Court Fiduciary Office via e-mail at SuffAuctions@nycourts.gov to advise of any change or cancellation of a scheduled auction; and it is further

**ORDERED** that, in light of the current COVID-19 pandemic, the Referee must ensure that any requirements in effect at the time of the sale regarding social distancing and face coverings are complied with by all participants in the foreclosure auction; and it is further

**ORDERED** that the Referee shall ensure that post-sale paperwork and any other interactions relating to the foreclosure sale take place outdoors to the fullest extent possible and, whether these interactions take place outside or inside the Town Hall, the Referee must enforce any requirements in effect at the time regarding social distancing and face coverings; and it is further

**ORDERED** that should the Referee believe the situation to be unsafe or if there is noncompliance with safety protocols, the Referee may, in his/her discretion, cancel or postpone the auction; and it is further

**ORDERED** that the Referee shall require that the successful bidder immediately execute Terms of Sale for the purchase of the property, and pay to the Referee, in cash or certified or bank check, ten percent (10%) of the sum bid, unless the successful bidder is Plaintiff in which case no deposit against the purchase price shall be required; and it is further

## RED STONE TITLE AGENCY, LLC
### As Agent for
### OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
### LEGAL DESCRIPTION

Title No.: **RTNY-36148**

**Parcel I:**
All that certain plot, piece or parcel of land situate, lying and being in the Incorporated Village of Southampton, Town of Southampton, County of Suffolk, State of New York, more particularly described as follows:

BEGINNING at a point on the southerly side of Gin Lane, distant westerly 65.95 feet as measured along same from the intersection of the southerly side of Gin Lane with the westerly side of Wyandanch Lane;

THENCE along lands now or formerly of Aberdeen Enterprises Inc.:

1. RUNNING THENCE South 20 degrees 05 minutes 50 seconds East 178.57 feet;

2. THENCE South 58 degrees 56 minutes 50 seconds West 50.96 feet;

3. THENCE South 03 degrees 20 minutes 09 seconds East 155.09 feet;

4. THENCE South 16 degrees 20 minutes 00 seconds East 213.89 feet to The Atlantic Ocean;

THENCE along Tie Line which marks the General Shore Line of the Atlantic Ocean, as of January 5, 1982 bearing, South 64 degrees 46 minutes 15 seconds West 129.10 feet to land now or formerly of Susan Wilson;

THENCE along said lands, North 16 degrees 20 minutes 00 seconds West 575.00 feet to a monument in the southerly side of Gin Lane;

THENCE along the southerly side of Gin Lane, North 73 degrees 21 minutes 10 seconds East 200.00 feet to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as District 0904, Section 029.00 Block 01.00, Lot 017.014, Suffolk County and also known as Parcel I: 366 Gin Lane, Southampton, NY 11968.

**Parcel II:**
All that certain plot, piece or parcel of land situate, lying and being in the Incorporated Village of Southampton, Town of Southampton, County of Suffolk, State of New York, more particularly described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Gin Lane with the westerly side of Wyandanch Lane;

RUNNING THENCE along the westerly side of Wyandanch Lane, South 30 degrees 54 minutes 10 seconds East 531.00 feet to the Atlantic Ocean;

THENCE along a tie line course which marks the general shoreline of the Atlantic Ocean, as of January 5, 1982 bearing, South 64 degrees 46 minutes 15 seconds West 275.28 feet to land now or formerly of Brickchurch Enterprises Inc.;

THENCE along said lands, the following four courses and distances:

Red Stone Title Agency, LLC
825 Eighth Avenue, Suite 18N
New York, NY 10019
TEL: 212-235-1151  FAX:

Schedule A Description                                                                   RTNY-36148

6 of 7

RED STONE TITLE AGENCY, LLC
**As Agent for**
**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
**SCHEDULE A continued**

1. North 16 degrees 20 minutes 00 seconds West 213.89 feet;

2. North 03 degrees 20 minutes 09 seconds West 155.09 feet;

3. North 58 degrees 56 minutes 50 seconds East 50.96 feet;

4. North 20 degrees 05 minutes 50 seconds West, 178.57 feet to the southerly side of Gin Lane;

THENCE along the southerly side of Gin Lane, North 73 degrees 21 minutes 10 seconds east 65.95 feet to the westerly side of Wyandanch Lane to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as District 0904, Section 029.00, Block 01.00, Lot 017.013, Suffolk County and also known as Parcel II: 376 Gin Lane, Southampton, NY 11968.

Red Stone Title Agency, LLC
825 Eighth Avenue, Suite 18N
New York, NY 10019
TEL: 212-235-1151  FAX:

Commitment (NY)

RTNY-36148

FILED: SUFFOLK COUNTY CLERK 03/02/2022 03:11 PM
Case 8-22-70914-ast Doc 136 Filed 10/18/22 Entered 10/18/22 13:46:36 INDEX NO. 623208/2019

NYSCEF DOC. NO. 100                                                    RECEIVED NYSCEF: 03/02/2022

**ORDERED** that no sale shall be deemed final until the full ten percent (10%) deposit has been paid to the Referee and a Memorandum of Sale has been signed, which must be completed immediately following the sale.

Said property is commonly known as PARCEL I: 366 GIN LANE, SOUTHAMPTON, NEW YORK 11968. PARCEL II: 376 GIN LANE, SOUTHAMPTON, NEW YORK 11968.

The legal description of the mortgaged property referred to herein is annexed hereto as Schedule "A".

**GRANTED**

ENTER

JAN 19 2022

Dated: January 19, 2022

Judith A. Pascale
CLERK OF SUFFOLK COUNTY

_____
HON. CHRISTOPHER MODELEWSKI, J.S.C.

*Judith A. Pascale*

Case 8-22-70914-ast   Doc 136   Filed 10/18/22   Entered 10/18/22 13:46:36

FILED

2022 FEB -2  P 12: 06

JUDITH A. PASCALE
SUFFOLK COUNTY CLERK