October 18, 2022

The Honorable Chief Judge Alan Trust
Courtroom 960
United States Bankruptcy Court
Eastern District of New York
Alfonse M. D'Amato Federal Courthouse
290 Federal Plaza
Central Islip, New York 11722

**Re: *In re Brickchurch Enters., Inc.*, Case No. 8-22-70914-ast (the "Bankruptcy Case"); Letter of Debtor RE: JGB's Allowed Secured Claim Amount**

Dear Judge Trust,

This firm acts for Brickchurch Enterprises, Inc. (the "***Debtor***"), debtor and debtor-in-possession in this Bankruptcy Case. At the hearing on October 6, 2022, the Court asked Debtor to submit a Joint Letter with Debtor's prepetition secured lender JGB Partners, LP, JGB Capital, LP, JGB (Cayman) Ancona, Ltd. and JGB Plymouth Rock, LLC and their affiliates (collectively "***JGB***," and with the Debtor, the "***Parties***") to set forth the Parties' position relating to what amount is due and needs to be paid with the Take-Out Financing secured by Debtor. The Debtor filed its position letter at Docket No. 136. JGB filed its position letter at Docket No. 134.

On October 18, 2022, the Court issued an *Order Concerning Outstanding Obligations* [Dkt. No. 137] requiring the Debtor to submit a letter stating whether it agrees or disagrees with the assertion by JGB that it holds an allowable, secured claim as follows:

**UNDISPUTED AMOUNT TOTAL $46,452,271.51**

Debtor shall file a letter stating whether it agrees or disagrees that JGB has asserted a disputed claim as follows:

**DISPUTED AMOUNT TOTAL $4,695,574.43**

In such letter, Debtor shall also state, as to each category of debt claimed by JGB, if it agrees or disagrees with the allowability and calculation of each item and amount.

**The below is the Debtor's response to the Court's request.**

- The Debtor agrees that JGB that holds an allowable, secured claim as follows:

  **UNDISPUTED AMOUNT TOTAL $46,452,271.51**

- The Debtor agrees that JGB has asserted a disputed claim as follows:

  **DISPUTED AMOUNT TOTAL $4,695,574.43**

### *Agreed Allowed Undisputed Amounts*

Debtor agrees and does not dispute for the purpose of determining the amount JGB is to be paid with the Take-Out financing (some of which are the subject to the appeal now pending in the Appellate Division, Second Department of the New York Supreme Court and subject to reimbursement, should the appeal be successful (the "***Undisputed Amounts***")), that **JGB has an allowed secured claim for the following amounts:**

| **Category** | **Amount Asserted** | **Agreed Allowed Amount** |
|---|---|---|
| The Amount Set forth in the Foreclosure Judgment dated, entered February 2, 2022 | $39,961,521.80 | $39,961,521.80 |
| Interest from July 2, 2021 through October 26, 2022 (plus per diem after October 26, 2022 at $13,000 per day)[1] | $ 6,266,000.00 | $ 6,266,000.00 |
| Insurance payments from July 1, 2022 through February 2, 2022 | $55,749.66 | $55,749.66 |
| **Total** | **$46,283,271.50** | **$46,283,271.50** |

### **Disputed Amounts**

JGB asserts that the following amounts (the "***Disputed Amounts***") are also presently due and payable to JGB pursuant to the Foreclosure Judgment and applicable law. **The Debtor agrees that the categories of the Disputed Amounts include the following:**

| **Category** | **Amount** | **Proposed Amount to be Paid to JGB** |
|---|---|---|
| Debtor's indemnity obligations under the Loan Documents | $2,500,000.00 | $0 |
| Legal (Haynes and Boone) fees and expenses from August 2, 2021 through April 29, 2022 related to the State Court Action | $176,814.87 | $0 |
| Legal (Haynes and Boone) fees and expenses from April 30, 2022 through September 30, 2022 related to the Bankruptcy Case | $978,749.33 | $0 |
| Legal (Haynes and Boone) fees and expenses from April 30, 2022 through September 30, 2022 related to the State Court Action | $11,106.00 | $0 |
| Expert (FTI Consulting) fees and expenses from April 30, 2022 through September 30, 2022 related to the Bankruptcy Case | $190,232.73 | $0 |

[1] The parties agree this amount may go up or down depending on the date of the actual payment (in other words, the amount would go up if paid after October 26th, and down if paid before – all in increments of $13,000 per diem).

| | | |
|---|---|---|
| Estimated legal fees and expenses that continue to accrue from October 1, 2022 through November 9, 2022 related to the State Court Action | $100,000.00 | $0 |
| Estimated legal fees and expenses that continue to accrue from October 1, 2022 through November 9, 2022 related to the Bankruptcy Case | $615,000.00 | $0 |
| **TOTAL DISPUTED AMOUNT** | **$4,695,574.43** | **$0** |

**Details of Reasons for the Amounts that are Disputed**

There are three categories of fees and cost to which the debtor objects: (i) the sum of $2,500,000 for estimated indemnity obligation; (ii) the sum of $1,881,670.20 in attorney's fees and costs, $715,000 of which are estimated and not yet incurred; and (iii) an expert consultant fee of $190,232.73 incurred in the Bankruptcy Case. In the main, it seems that JGB wishes to pile on as much as possible, hoping for the Court will simply compromise the dispute by "cutting the baby in half." However, courts are not directed by the Judgment of Solomon, but must look to the contract and law in making a determination as to what is due on a judgment and for the purpose of this Joint Submission, to be paid as part of the Take-Out Financing.

**1. The $2,500,000 War Chest Sought By JGB**

JGB, in addition to the amount due on the Foreclosure Judgment, also seeks an additional $2,500,000 in order to fund the defense of threatened litigation by Debtor and its sister company, Aberdeen Enterprises, Inc. JGB relies upon certain provisions in the Loan Documents. However, there is no provision in any of the mentioned Loan Documents that allows for advancement of fees for feared litigation. Worse, JGB seems to have pulled the $2,500,000 figure out of thin air, and without any support or reasoning behind the mathematical calculation (if any) of the $2,500,000 number. Indeed, it is nearly **double** the total amount that it claims to have incurred through the date of this filing in the foreclosure and Bankruptcy Case combined.

There are three provisions in the Loan Documents with speak to the entitlement by JGB of its attorneys' fees and costs. The first appears in the Note, and provides, in relevant part:

> 11.2 Expenses. The Borrowers hereby agree to pay on demand: . . . . (b) all costs and expenses of the Noteholder in connection with any *Event of Default and the enforcement of this Note, the other Loan Documents or any document entered into in connection therewith*, including without limitation, the fees and expenses of legal counsel, advisors, consultants, and auditors for the Noteholders.

Nowhere in the Note does it allow for the reimbursement for fees and expenses after the payoff of the obligation, nor for matters that involve a direct action by Borrowers and against JGB, which cannot involve "the enforcement of" the Note or other Loan Documents.

The second mention of expense reimbursement is contained in Section 13 of the Mortgage. It provides, in relevant part, as follows:

> 13. If any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby) to which action or proceeding the holder of this mortgage is made a party or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the holder of this mortgage for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees) shall be paid by the Mortgagor, together with interest thereon, at the rate or rates specified in the Note secured hereby and any such sums, with the interest thereon, shall be a lien on said premises attaching or accruing subsequent to the lien of this mortgage and shall be deemed to be secured by this mortgage and by the Note which it secures. In any action or proceeding to foreclose this mortgage and/or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall continue unaffected by this covenant.

This provision is even less supportive to JGB's position because, first, the Mortgage refers to "all sums paid by the holder of this mortgage," not amounts supposedly to be paid in the future, like the $2,500,000 amount, and second, that reimbursement obligation only applies to fees incurred "to defend or uphold the lien of this mortgage."

The final mention of the right to reimbursement for attorneys' fees and costs appears in the Forbearance Agreement (entered into by Debtor AFTER the default), and that agreement seems to trade the actual amount expended for attorneys' fees and costs for a liquidated amount of $90,000.00, providing as follows:

> 12. Expense reimbursement. The Lenders shall be entitled to a non-accountable expense reimbursement of $90,000 (which shall be applied towards, among other things, Lender's legal fees) in connection with this Agreement. . . .

It is well established that unambiguous provisions of a written contract, must be given their plain and ordinary meaning" in order to "give effect to the parties' reasonable expectations." *Glassalum Int'l v. Albany Ins.*, 2005 U.S. Dist. LEXIS 9767, *16-17 (S.D.N.Y. 2005); *see also McCarthy v. Am. Int'l Group*, 283 F.2d 121, 124 (2nd Cir. 2001) (stating that New York law seeks to "give effect to the intent of the parties as expressed in the clear language of the contract"). In the present case, there is no mention of allowing for attorneys' fees and costs to secure a war chest for threatened litigation not arising out of the default of the loan, but out of the fraudulent and deceitful conduct Debtor alleges was committed by JGB and its cohorts. Moreover, the amount sought by JGB is both well north of what the Parties agreed to in the Forbearance and is speculative and not supported by any evidence to boot.

Moreover, even if there is some basis upon which to seek a deposit for future litigation under the Loan Documents, that obligation will cease upon payoff in a few weeks. Once the balance of the loan is paid off, Section 3-604 of the UCC provides that Debtor's obligations are "discharged to the extent of all subsequent liability for interest, costs and attorney's fees." UCC

§ 3-604(1). Along this same line, the Mortgage itself states that all obligations to JGB are discharged upon the payment of the loan in full:

> 27. All obligations of the Mortgagor hereunder shall continue until the entire debt evidenced hereby is paid, notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this agreement.

What possible basis could there be for the creation of such a war chest which can only be expended after Debtor's reimbursement obligations (whatever they are) will have ceased as a matter of law?

**2. Attorney's Fees and Costs in the Amount of $1,881,670.20**

In addition to seeking attorneys' fees in costs for litigation that has not been filed, JGB seeks attorneys' fees and costs incurred **after** the entry of the Foreclosure Judgment, and during the course of this bankruptcy, in the amount of $1,166,670.20, and an estimate of amounts to be incurred from now until the payoff of its loan in a few weeks, in the amount of $715,000. As to the amount of $715,000, that amount is not recoverable for many of the same reasons as the $2,500,000 war chest amount is not – it has yet to be incurred. But, as to any amount for attorneys' fees and costs, they are not recoverable at all, insofar as the Foreclosure Judgment disallowed attorney's fees and costs associated with its enforcement.

The Foreclosure Judgment directed the payment of $39,961,521.80, plus a per diem payment of $13,000 from July 2, 2021, but the State Court specifically refused to grant JGB its fees in prosecuting the Foreclosure Judgment, crossing out the wording in the proposed order of "an award for legal fees incurred *or to be incurred by Plaintiff in the prosecuting of the foreclosure action,* in the amount of $304,316 as provided in the Loan Documents, ***plus any additional legal fees and expenses incurred by Mortgage Holder, including the Assignment, including any Assign in connection with the foreclosure and sale that are required to be paid by Borrower under the Loan Documents. . . . ."*** as more fully provided in the Foreclosure Judgment:

FOURTH: (A) with respect to the sale of 366 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, the sum of $__39,961,521.80__________, ~~which is comprised of (i)~~ the said amount ~~of $39,961,521.80~~ so reported by the Referee to be due as of July

> 1, 2021 with interest ~~in the total amount of $_____________~~ accruing at a per diem rate of Thirteen Thousand Dollars ($13,000) from the date July 2, 2021 to date of entry of this judgment as provided in the said Referee's Report, ~~(ii) an award for legal fees incurred or to be incurred by Plaintiffs in prosecuting the foreclosure action, in the amount of $304,316.05 as provided for in the Loan Documents, *plus* any additional legal fees and expenses incurred by Mortgage Holder, including any Assignee, including any Assignee in connection with the foreclosure and sale that are required to be paid by the Borrowers under the Loan Documents~~, and (iii) an award of costs, disbursements and additional allowances in the amount of $1125.00 -to be taxed by the Clerk of this Court with interest thereon from the date hereof, with interest thereon from the date hereof, together and thereafter interest at the statutory rate thereon, to the date of sale directed herein or to the date of the delivery of the Referee's deed, whichever is later or so much as the purchase money of the mortgaged Properties will pay of the same, and (B) with respect to the sale of 376 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, an amount equal to the judgment of foreclosure and sale amount *less* any amounts paid to the Mortgage Holder from the proceeds of the sale of 366 Gin Lane.

So, it follows, just as Debtor cannot in this Court challenge the amount of the Foreclosure Judgment (by clawing back on items that it believes should not have been included by the State Court), JGB is likewise bound both under ordinary principles of issue preclusion as well as the *Rooker-Feldman* doctrine.

Issue preclusion in New York has four elements: (i) the issues in both proceedings are identical; (ii) the issue in the prior proceeding was actually litigated and decided; (iii) there was a full and fair opportunity to litigate in the prior proceeding; and (iv) the issue previously litigated was necessary to support a valid and final judgment on the merits. *Conason v Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015). The *Rooker-Feldman* doctrine precludes this Court from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). Debtor recognizes that the Foreclosure Judgment controls in regard to the payoff to JGB, which is why it pursued an appeal in State Court.

JGB made a motion to the State Court for final judgment of foreclosure and sale, and presented an order with the relief sought in that motion. While the Foreclosure Judgment was entered, the order was modified in a way which denied JGB attorneys' fees incurred not only in the foreclosure, but "any additional legal fees and expenses incurred by [it]." If JGB is now unhappy with the denial of its attorneys' fees and costs, it can seek recourse with the State Court with a motion to vacate the judgment. Debtor is not sure that such a motion would be granted, but that is the only avenue available to JGB.

In addition, and to the extent this Court believes that issue preclusion or *Rooker-Feldman* is not implicated, the $715,000 amount, for yet to be incurred attorneys' fees, is easily barred for many of the same reasons as set forth in Point 1 of Debtor's Position above.

Still, there is another reason why none of the attorneys' fees should be allowed, and that is because there is no proof showing their reasonableness. The law is clear that "[t]he burden of showing the reasonableness of the fees lies upon the claimant." *1 Toms Point Lane Corp. v. New York State Div. of Hum. Rts.*, 176 A.D.3d 930, 933 (1st Dep't 2019) (citations omitted). Rather than meet this burden, JGB simply states that the amount is owed without any showing that these claimed fees are reasonable.

**3. The Expert Consultant Fee of $190,232.73**

As set forth above, only amounts that are incurred as a result of an Event of Default and the enforcement of the Note or the other Loan Documents, are collectible from Debtor. The Expert Consultant Fee was not incurred to collect the amount due, but only to determine the value and condition of the collateral. There is no reason to do that in the context of a foreclosure, as the judgment is *in rem,* and whether property is worth $1 or a billion dollars, is beside the point, and not part of the collection activity.

Moreover, there is no evidence to show, as it is JGB's burden to do so, the reasonableness of the amount.

In sum, Debtor submits that no additional amounts are due in addition to the judgment amount set forth in the Foreclosure Judgment, and the interest which has accrued since the time that Judgment was entered.

Lastly, Debtor plans to file a formal objection to the Disputed Amounts during the claim objection and reconciliation process in the Bankruptcy Case.

Respectfully submitted,

**SIMMONS LEGAL PLLC**

/s/ *Camisha L. Simmons*

**Camisha L. Simmons**
**SIMMONS LEGAL PLLC**
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
212.653.0667 (Telephone- New York)
214.643.6192 (Telephone- Dallas)
800.698.9913 (Facsimile)
Email: camisha@simmonslegal.solutions

***COUNSEL FOR DEBTOR***