**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BRICKCHURCH ENTERPRISES, INC. | § | Case No. 8-22-70914-ast |
| | § | |
| Debtor. | § | |

**AFFIDAVIT OF BRETT COHEN IN SUPPORT OF (I) JGB'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. §§ 305(A) AND 1112(B) AND (II) JGB'S OBJECTION TO THE MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER APPROVING THE DEBTOR'S ENTRY INTO EXIT FINANCING COMMITMENT**

STATE OF CONNECTICUT )
                                          ) ss.:
COUNTY OF FAIRFIELD )

Brett Cohen, being duly sworn, deposes and states as follows:

1. I am the President of JGB Partners, LP, JGB Capital, LP, JGB (Cayman) Ancona Ltd., and JGB Plymouth Rock LLC (collectively, "JGB").

2. Pursuant to this Court's October 18, 2022 *Contested Matters Scheduling Order* [Doc. No. 135], I submit this affidavit (the "Cohen Affidavit") in support of (i) *JGB's Motion to Dismiss Pursuant to 11 U.S.C. §§ 305(A) and 1112(B) of the Bankruptcy Code* [Doc. No. 44] (the "Motion to Dismiss") and (ii) JGB's objection, filed herewith (the "Objection") to the *Motion of the Debtor for Entry of an Order Approving the Debtor's Entry Into Exit Financing Commitment* [Doc. No. 115] (the "Exit Financing Motion"), and for use as my direct testimony at the October 26, 2022 hearing on the Motion to Dismiss and the Exit Financing Motion (the "October 26 Hearing").[1]

3. The statements contained in this affidavit are based upon my personal knowledge of the matters described herein.

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Objection.

1

**I.      Qualifications.**

4.      In 2005, I founded JGB Management, Inc., an entity related to the JGB entities listed above.  JGB Management, Inc., and its related companies, comprise an alternative asset management firm focused on investing in niche credit-oriented situations.  JGB specializes in investing in downside-protected, process-driven opportunities in under-followed areas.

5.      In 2018, representatives of Louise Blouin approached JGB with a request to obtain financing in connection with the Gin Lane Properties (as defined below) on behalf of the Borrowers (as defined below).  Ultimately, this request culminated in the execution of the Loan Documents (as defined below).  I have been involved in managing JGB's relationship with Ms. Blouin and the Borrowers since the inception of the relationship.  I am familiar with the circumstances leading to the Foreclosure (as defined below) and this bankruptcy case.

**II.     Business Records Qualifications.**

6.      In my capacity as President and founder of JGB, I am familiar with JGB's business operations, business and financial affairs, and books and records.  In such capacities, I am a custodian who has access to JGB's records.  The documents listed below are records that have been created and kept by JGB in the regular course of its business (the "Business Records").  The relevant Business Records are as follows:

| Hearing Exhibit[2] | Document |
|---|---|
| Hearing Ex. 1, Doc. No. 48-7 | Mortgage, dated July 25, 2018 |
| Hearing Ex. 2, Doc. No. 48-8 | Secured Promissory Note, dated July 25, 2018 |
| Hearing Ex. 3, Doc. No. 48-9 | First Default Notice, dated June 4, 2019 |
| Hearing Ex. 4, Doc. No. 48-10 | Second Default Notice, dated June 13, 2019 |
| Hearing Ex. 5, Doc. No. 48-11 | Third Default Notice, dated July 5, 2019 |
| Hearing Ex. 6, Doc. No. 48-12 | Forbearance Agreement, dated July 11, 2019 |
| Hearing Ex. 7, Doc. No. 48-13 | Guaranty Agreement, dated July 11, 2019 |
| Hearing Ex. 8, Doc. No. 48-14 | Collateral Assignment of Rents, dated July 25, 2018 |

---

[2] "Hearing Ex." refers to the exhibits as listed on JGB's Witness and Exhibit List that will be submitted in connection with the October 26 Hearing.  "Doc. No." refers to the docket number of such exhibit, to the extent the exhibit was already filed on the docket.

7. The Business Records were created, sent, or received by an employee or representative of JGB with knowledge of the act, event, condition, or opinion that was recorded, and the records were made as a regular practice at or near the time or reasonably soon after the act, event, or condition that was recorded. I was involved in the creation of each of the Business Records. As applicable, I executed the Business Records on behalf of JGB. The Business Records are the originals or exact duplicates of the originals.

### III. JGB's Relationship with the Debtor.

#### A. The Debtor Borrows $26,000,000 from JGB.

8. On July 25, 2018, Brickchurch Enterprises, Inc. ("Brickchurch" or the "Debtor") and Aberdeen Enterprises, Inc. ("Aberdeen" and, with Brickchurch, "Borrowers") executed and delivered to JGB a Secured Promissory Note (the "Note"), which obligated Borrowers to repay to JGB, jointly and severally, a sum of $26,000,000.00, plus interest and other amounts payable under the Note and related loan documents. Hearing Ex. 2 (Note). Borrowers entered into the Note to obtain financing in connection with the Gin Lane Properties (defined below). *See* Hearing Ex. 2, Doc. No. 48-8.

9. To secure their obligations under the Note, Borrowers executed and delivered to JGB a mortgage (the "Mortgage") granting JGB a security interest in properties located at 366 Gin Lane ("366 Gin Lane") and 376 Gin Lane (the "376 Gin Lane," and collectively, the "Gin Lane Properties"). The Gin Lane Properties are each located in Southampton, New York and comprise a main historical house (376 Gin Lane) and a property currently used as a guest house (366 Gin Lane). *See* Hearing Ex. 1, Doc. No. 48-7.

10. 366 Gin Lane is solely owned by the Debtor. JGB was granted a valid first ranking mortgage lien on 366 Gin Lane. 376 Gin Lane is solely owned by Aberdeen. JGB was granted a

3

valid second ranking mortgage lien on 376 Gin Lane. Morgan Stanley Private Bank, N.A. ("Morgan Stanley") holds the first lien on 376 Gin Lane pursuant to a mortgage in the principal amount of $15,000,000, dated December 30, 2011 (the "Morgan Stanley Mortgage"). *See id.* Pursuant to JGB's second lien rights against 376 Gin Lane, to the extent JGB is ever deemed undersecured with respect to 366 Gin Lane, Aberdeen is responsible for any and all such amounts.

11. As additional security, JGB and Borrowers entered into the Collateral Assignment of Rents, dated July 25, 2018 (the "Assignment," and together with the Note and Mortgage and all other documents and agreements created or contemplated thereunder, the "Loan Documents"). Pursuant to the Assignment, Borrowers assigned JGB all leases and lettings of 366 Gin Lane. *See* Hearing Ex. 8, Doc. No. 48-14.

### B. Borrowers Default Less Than One Year Later.

12. Less than a year after execution of the Note, JGB declared defaults under the Note for an interest payment default and cross-default for failure to pay the Morgan Stanley Mortgage, and provided notice to Borrowers on June 4, 2019 (the "First Default Letter"). Borrowers failed to cure these defaults within the applicable cure periods. Accordingly, on June 13, 2019, JGB provided Borrowers a notice of continuing defaults and JGB's right to acceleration for failure to cure the defaults (the "Second Default Letter"). JGB declared an additional payment default under the Note and provided notice to Borrowers on July 5, 2019 (the "Third Default Letter," together with the First and Second Default Letters, the "Default Letters"). Hearing Exs. 3-5, Doc. No. 48-9, 48-10, 48-11.

13. Borrowers, including the Debtor, have not made any mortgage payments to JGB since April 30, 2019.

4

14. Furthermore, prior to entry into the Forbearance Agreement (as defined below), JGB became aware of an additional default caused by Borrowers' failure to pay real estate taxes on the Gin Lane Properties.

15. On July 11, 2019, JGB and Borrowers entered into a Forbearance Agreement (the "Forbearance Agreement") pursuant to Borrowers' request that JGB forbear from exercising remedies based on the various defaults. In the Forbearance Agreement, JGB agreed to temporarily forbear from exercising remedies until the earlier of the maturity date under the Note (i.e., October 31, 2019) or the occurrence of an Event of Default (as defined therein). Borrowers acknowledged that: (i) pursuant to the terms of the Note and the Mortgage, Specified Defaults (as defined in the Forbearance Agreement) occurred and were continuing, and (ii) JGB had the right to exercise all rights and remedies under the Note and the Mortgage, including the right to accelerate the maturity, demand immediate payment, and foreclose on the Gin Lane Properties. *See* Hearing Ex. 6, Doc. No. 48-12.

16. As a condition precedent under the Forbearance Agreement, on July 11, 2019, Louise Blouin and Mathew Kabatoff,[3] as guarantors, entered into that certain Guaranty Agreement for the benefit of JGB (the "Guaranty"). The Guarantors (as defined therein) absolutely, irrevocably and unconditionally guaranteed, jointly and severally, to JGB the prompt payment and performance of the Guaranteed Obligations (as defined therein) which obligations were triggered by the filing of this chapter 11 case. As of the date hereof, JGB has not made a demand on the Guarantors. *See* Hearing Ex. 7, Doc. No. 48-13.

17. By its terms, JGB's agreement to forbear from exercising its rights and remedies under the Forbearance Agreement terminated on October 31, 2019, when the maturity date under

---

[3] Ms. Blouin is the sole principal and owner of the Debtor. Mr. Kabatoff is Ms. Blouin's husband.

the Note occurred and Borrowers failed to pay the total principal, interest, and other amounts that were due and owing under the Loan Documents. *See* Hearing Ex. 6, Doc. No. 48-12.

### C. JGB Exercises its Rights under the Loan Documents and Pursues Foreclosure.

18. In accordance with its rights under the Loan Documents, on November 22, 2019, JGB filed the *Complaint for Foreclosure of a Non-Residential Mortgage* (the "Complaint for Foreclosure") in the Supreme Court for the State of New York, County of Suffolk (the "State Court") commencing the case styled and numbered *JGB Partners, LP, et al. v. Brickchurch Enters., Inc., et al.*, Index No. 6323208/2019 (the "Foreclosure Action"). *See* Hearing Ex. 10, Doc. No. 48-15. In the Foreclosure Action, JGB specifically named Brickchurch and Aberdeen as defendants. *Id.*

19. None of the defendants appeared in the Foreclosure Action or answered or otherwise responded to the Complaint. Accordingly, on January 30, 2020, JGB moved for a default judgment against all defendants and for the appointment of a referee to calculate the sum due to JGB pursuant to the Loan Documents (the "Referee Motion"). *See* Hearing Ex. 11, Doc. No. 48-16. On June 1, 2021, the State Court granted the Referee Motion appointing Ann Cryan, Esq. as the referee (the "Referee") and entered an order granting default judgment. *See* Hearing Ex. 12, Doc. No. 48-17.

20. On July 27, 2021, the Referee issued the *Report of Referee of Amount Due* (the "Referee Report"). *See* Hearing Ex. 14, Doc. No. 48-19. Pursuant to the Referee Report, the Referee determined that, as of July 1, 2021, the total amount due to JGB pursuant to the Loan Documents included: (i) $39,961,521.80 under the Loan Documents, (ii) interest at a rate of $13,000 per diem, (iii) attorneys' fees , (iv) disbursements, and (iv) costs. *Id.*

6

21. On October 20, 2021, JGB moved to confirm the Referee's Report and for foreclosure of the Gin Lane Properties. *See* Hearing Ex. 13, Doc. No. 48-18 (the "Motion to Confirm and Foreclose"). On October 29, 2021, Brickchurch filed an *Affirmation in Opposition to Motion for Judgment* [Doc. No. 48-20], to which JGB replied [Doc. No. 48-21]. *See* Hearing Exs. 15-16, Doc. Nos. 48-20, 48-21. In connection with the Motion to Confirm and Foreclose, JGB also submitted requests for attorneys' fees incurred through August 1, 2022 in the amount of $305,786.05.

22. On January 14, 2022, over Brickchurch's objection, the State Court granted the Motion to Confirm and Foreclose, in part, and entered an order confirming the Referee's Report. *See* Hearing Ex. 17, Doc. No. 48-22. In this order, the State Court scheduled a hearing on JGB's request for attorney's fees incurred through August 1, 2021 in the amount of $305,786.05. *Id.* JGB ultimately waived its request to receive these attorneys' fees. For the avoidance of doubt, JGB did not waive its right to all future attorneys' fees; JGB only waived the amount it was seeking as of August 1, 2021 in the amount of $305,786.05. *See* Foreclosure Judgment (defined below), p. 3 of 16.

23. Thereafter, on February 2, 2022, the State Court entered another order ordering a foreclosure of the Gin Lane Properties (the "Foreclosure Judgment"). *See* Hearing Ex. 18, Doc. No. 48-23. As set forth in the Foreclosure Judgment, the State Court ordered that the Gin Lane Properties be sold in two parcels at separate public auctions, with 366 Gin Lane to be sold first, and 376 Gin Lane to be sold at a separate, later auction. *Id.*

24. On March 2, 2022, Brickchurch appealed the Foreclosure Judgment (the "Appeal"). *See* Hearing Ex. 19, Doc. No. 48-24. The Appeal is pending in the Appellate Division, Second Department at Index No. 2022-01592.

25. On March 28, 2022, JGB served Borrowers with a Notice of Sale of 366 Gin Lane, which sale was to take place on May 2, 2022 (the "Foreclosure"). *See* Hearing Ex. 20, Doc. No. 48-25.

26. On April 24, 2022, Borrowers filed an order to show cause to stay the Foreclosure and requested a temporary restraining order. *See* Hearing Ex. 21, Doc. No. 48-26 (the "Show Cause Request"). On April 25, 2022, JGB filed an opposition to the Show Cause Request. *See* Hearing Ex. 22, Doc. No. 48-27. On April 26, 2022, the State Court denied the Show Cause Request, which allowed JGB to proceed with the Foreclosure despite the Appeal. *See* Hearing Ex. 23, Doc. No. 48-28.

### D. The Debtor Continued to Violate the Loan Documents During the Foreclosure Action and After the Petition Date.

27. During the Foreclosure Action, Brickchurch violated various provisions of the Loan Documents, separate and apart from the defaults noticed in the Default Letters.

#### *i. Brickchurch Collects Rental Income in Violation of the Loan Documents.*

28. During the summer of 2021, JGB became aware that Brickchurch leased 366 Gin Lane for approximately $750,000 (the "Rental Fees") during the 2021 summer season. Renting the property while the defaults existed violates the Assignment. Moreover, upon information and belief, Brickchurch kept the Rental Fees instead of applying them to taxes, insurance, and repairs.

29. Based on the Debtor's filings with this Court, JGB became aware that Brickchurch leased 366 Gin Lane on other occasions in apparent violation of the Assignment. *See* Hearing Ex. 26, Doc. No. 48-3, p. 25 of 40 (Debtor statement in Voluntary Petition that during 2020, it collected $250,000 in rental income); Hearing Ex. 30, Doc. No. 48-5, p. 3 of 7 (Debtor statement in Rule 1007-4 Statement that it rented 366 Gin Lane in September 2021 for two weeks). Brickchurch did not apply any of the rental income to the obligations required under the Assignment.

30. After the Petition Date, JGB became aware that the Debtor listed 366 Gin Lane for rent for the months of July and August 2022. The Debtor did not provide any notice to JGB about this alleged rental.

31. On August 7, 2022, JGB became aware, via the Debtor's *Application to Retain Nest Seekers LLC d/b/a NestSeekers International as Its Real Estate Broker* [Doc. No. 54], that the Debtor was marketing 366 Gin Lane for rent and for sale. Hearing Ex. 32, Doc. No. 54. JGB first noticed an online listing for the sale of 366 Gin Lane on August 12, 2022, without having received notice of the listing from the Debtor. The listing remains active. *See, e.g.*, Zillow, *366 Gin Ln, Southampton, NY 11968*, https://www.zillow.com/homedetails/366-Gin-Ln-Southampton-NY-11968/64507149_zpid/ (last visited August 16, 2022). The Debtor also listed 366 Gin Lane and non-debtor property, 376 Gin Lane, for sale together. *See* NestSeekers Int'l, *An Oceanfront Compound on Southampton's Gin Lane Relists for $150 Million*, https://www.nestseekers.com/Company/Press/an-oceanfront-compound-on-southamptons-gin-lane-re. The Debtor's listing of 366 Gin Lane for rent and sale without prior consent of JGB violates the Loan Documents. Hearing Ex. 2, Doc. No. 48-8 §§ 1, 8.12; Hearing Ex. 1, Doc. No. 48-7 § 15; Hearing Ex. 8, Doc. No. 48-14 § 5.

        *ii.* ***Brickchurch Failed to Maintain Insurance in Violation of the Mortgage.***

32. In late September 2020, JGB became aware that Brickchurch allowed the insurance policy covering the Gin Lane Properties to lapse and that Borrowers were unable to make the necessary payments. Accordingly, from October 2020 to October 2021, JGB advanced funds to

the insurance carriers to cover the necessary payments in a cumulative amount of approximately $98,623.56.[4]

33.     In addition, JGB was made aware, through documents provided by Brickchurch's counsel, that Brickchurch again failed to maintain insurance during the course of this bankruptcy case. *See* Hearing Exs. 40–42, Doc. Nos. 57-1, 57-2, 57-3. These documents show that Brickchurch only partially paid the premiums necessary to maintain insurance. Brickchurch contends that the remaining premium will be financed, but JGB is unaware of any financing arrangement. Brickchurch's failure to maintain insurance is a clear violation of the Mortgage.[5] *See* Hearing Ex. 1, Doc. No. 48-7 § 2.

### E.     The Debtor's Refinancing Attempts Prior to the Exit Financing Motion.

34.     JGB is aware of the Debtor's statements in the Bankruptcy Case that after entering into the Note with JGB, it worked to refinance the amounts due to JGB. *See, e.g.*, Hearing Ex. 30, Doc. No. 48-5, p. 3 of 7. JGB does not have any record of any formal documentation of a refinancing.

35.     On or around October 21, 2020, JGB became aware that the Debtor was seeking to obtain refinancing from REYL Bank. With respect to the proposal from REYL Bank, in October 2020, REYL Bank requested that as a condition to refinancing, that JGB waive its right to a significant amount of debt outstanding under the Loan Documents. While JGB offered to maintain a second lien in connection with the remaining outstanding obligations, this settlement offer was

---

[4] Of this amount, approximately $40,356.85 is allocated to insurance for 376 Gin Lane.

[5] In addition to failing to pay the insurance premiums, Ms. Blouin collected approximately $1,326,409.85 from an insurance claim in connection with the 376 Gin Lane Property. Upon information and belief, Ms. Blouin cashed the insurance checks and none of the amounts were applied as required under the Loan Documents.

not accepted. Other than the proposal from REYL Bank, JGB is unaware of any of other realistic or reliable prospective refinancing proposals.

36. On August 16, 2022, the Debtor's counsel sent JGB a letter, dated August 7, 2022, from Nicholas Hubbard of Nathan Capital Group ("Nathan Capital"), stating that the Debtor has been attempting to refinance the Loan Documents. *See* Hearing Ex. 31. Other than receipt of this letter, JGB has not received any information from Nathan Capital regarding a potential refinancing.

## IV. JGB Holds a Claim of No Less than $51,147,845.94.

37. JGB is the Debtor's largest secured creditor holding a claim of at least $51,147,845.94 (the "JGB Secured Obligations").

### A. Amounts Established by the Referee Report and the Foreclosure Judgment.

38. Pursuant to the Referee Report, confirmed by the State Court, the Referee determined that, as of July 1, 2021, the total amount due to JGB pursuant to the Loan Documents was $39,961,521.85, which included the following categories:

| **Category** | **Amount** |
|---|---|
| Principal, as of July 1, 2021, and as determined by the Referee Report and Foreclosure Judgment | $26,000,000.00 |
| Accrued Interest, as of July 1, 2021, and as determined by the Referee Report and Foreclosure Judgment | $10,161,668.00 |
| Forbearance Exit Charge, as of July 1, 2021, and as determined by the Referee Report and Foreclosure Judgment | $2,000,000.00 |
| 5% Late Charge, as of July 1, 2021, and as determined by the Referee Report and Foreclosure Judgment | $1,527,183.00 |
| Insurance payments, as of July 1, 2021, and as determined by the Referee Report and Foreclosure Judgment | $42,873.90 |
| Real Estate Taxes, as of July 1, 2021, and as determined by the Referee Report and Foreclosure Judgment | $229,796.95 |
| **Subtotal pursuant to the Referee Report and Foreclosure Judgment as of July 1, 2021 (the "Subtotal")** | **$39,961,521.85** |

*See* Hearing Ex. 14.

### B.     Amounts Incurred After Issuance of the Referee Report and the Foreclosure Judgment.

39.     After issuance of the Referee Report and entry of the Foreclosure Judgment, JGB continued to incur additional fees and expenses pursuant to the Loan Documents, the Foreclosure Judgment, and applicable law.  JGB also incurred interest at $13,000 per day from July 2, 2021 pursuant to the Foreclosure Judgment.  JGB continues to incur fees and expenses in connection with the Appeal, which are separately categorized from its fees and expenses that it continues to incur in connection with the Bankruptcy Case.

40.     JGB is entitled to its professional fees and expenses, including for its attorneys and expert, incurred after the Referee Report and Foreclosure Judgment, pursuant to the Mortgage and the Note.  *See* Hearing Ex. 1 (Mortgage), § 34; Hearing Ex. 2 (Note), § 11.2(b), (e).

41.     JGB is also entitled to an indemnity reserve because the Debtor has certain indemnity obligations to JGB under the Loan Documents.  *See* Hearing Ex. 2 (Note) §§ 11.1, 11.12(a); Hearing Ex. 8 (Assignment) § 9.  The Debtor has alleged that JGB interfered with sale and refinancing attempts, entered into the Loan Documents based on an improper "loan to own" strategy, and committed "fraud for profit" conspiracies.  Based on the threatened litigation against JGB that arises under and is related to the Loan Documents, JGB is also entitled to an indemnity reserve under the express terms and conditions of the Loan Documents.

42.     The fees and expenses that JGB has incurred and continues to incur after issuance of the Referee Report, related to the Loan Documents and Foreclosure Judgment, are categorized as follows:

| **Category** | **Amount** |
|---|---|
| Interest at the per diem rate of $13,000 on the Subtotal, as determined by | $6,435,000.00 |

| Category | Amount |
|---|---|
| the Referee Report and Foreclosure Judgment, from July 2, 2021 through the anticipated pay off date of November 9, 2022[6] | |
| Insurance payments from July 1, 2022 through February 2, 2022 | $55,749.66 |
| Debtor's indemnity obligations under the Loan Documents | $2,500,000.00 |
| Legal (Haynes and Boone) fees and expenses from August 2, 2021 through April 29, 2022[7] related to the State Court Action | $176,814.87 |
| Legal (Rivkin Radler) fees and expenses from August 2, 2021 through April 29, 2022 related to the State Court Action | $23,671.50 |
| Legal (Haynes and Boone) fees and expenses from April 30, 2022 through September 30, 2022 related to the Bankruptcy Case | $978,749.33 |
| Expert (FTI Consulting) fees and expenses from April 30, 2022 through September 30, 2022 related to the Bankruptcy Case[8] | $190,232.73 |
| Legal (Haynes and Boone) fees and expenses from April 30, 2022 through September 30, 2022 related to the State Court Action and the Appeal | $11,106.00 |
| Estimated legal (Haynes and Boone) fees and expenses that continue to accrue from October 1, 2022 through November 9, 2022 related to the State Court Action and the Appeal[9] | $100,000.00 |
| Estimated legal (Rivkin Radler) fees and expenses from April 30, 2022 through November 9, 2022 related to the State Court Action and the Appeal | $100,000.00 |
| Estimated legal fees and expenses (Haynes and Boone) that continue to accrue from October 1, 2022 through November 9, 2022 related to the Bankruptcy Case | $615,000.00 |
| **Total Amounts Incurred After the Referee Report and Foreclosure Judgment** | **$11,186,324.09** |

---

[6] JGB acknowledges that the interest amount will fluctuate depending on the actual date the Debtor pays JGB, indefeasibly in full, in cash, the JGB Secured Claim.

[7] As part of the Foreclosure Judgment, JGB waived its right to collect the legal fees and expenses incurred as of August 1, 2021 in the amount of $305,786.05. Hearing Ex. 18. This amount is not included in these calculations.

[8] Section 11.2 of the Note expressly contemplates that Borrowers, including the Debtor, are liable for "all other costs and expenses. . . including, without limitation . . . appraising . . . any collateral for the Loan."

[9] JGB acknowledges that all estimated amounts will fluctuate depending on the actual date the Debtor pays JGB, indefeasibly in full, in cash, the JGB Secured Claim.

43. The information and figures contained above are based on my personal knowledge and JGB's books and records that JGB keeps in the regular course of business, of which I have personal knowledge and familiarity, except for the "real estate taxes," which were calculated according to the Town of Southampton Property Tax Payment Portal.

**V.  JGB is Willing to Release its Liens Upon Payment in Full of the JGB Secured Claim and a Full, General Release.**

44. If the Debtor (and Aberdeen, to the extent necessary) provides: (i) JGB with payment no later than November 9, 2022 that satisfies the JGB Secured Claim in full and (ii) a full general release of any and all clams and causes of action against JGB (including withdrawal of the Appeal), JGB is willing to consent to release its liens on the Gin Lane Properties so that the Debtor and Aberdeen can enter into the Proposed Loan Transaction.

_____
Brett Cohen
President of JGB Partners, LP, JGB
Capital, LP, JGB (Cayman) Ancona Ltd.,
and JGB Plymouth Rock LLC

Sworn to before me this
20th day of OCTOBER, 2022

_____
Notary Public

> VINCENT VACCO
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration No. 01VA6003469
> Qualified in Westchester County
> Commission Expires    March 2, 2026