1

2    UNITED STATES BANKRUPTCY COURT

3    EASTERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - -x

5

6    In the Matter of:

7    BRICKCHURCH ENTERPRISES, INC.,          Main Case No.

8           Debtor.                          22-70914-ast

9

10   - - - - - - - - - - - - - - - - - - - -x

11

12                   United States Bankruptcy Court

13                   290 Federal Plaza

14                   Central Islip, New York

15

16                   October 26, 2022

17                   11:34 AM

18

19

20

21   B E F O R E:

22   HON. ALAN S. TRUST

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ELECTORNIC RECORDING



1

2    Motion for Authority to Obtain Credit Under Section 364

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Michael Drake

21    eScribers, LLC

22    7227 North 16th Street, Suite #207

23    Phoenix, AZ 85020

24    (302)263-0885

25    operations@escribers.net



```
 1

 2    A P P E A R A N C E S (All present by video or telephone):

 3    SIMMONS LEGAL

 4         Attorneys for Debtor

 5         1330 Avenue of the Americas

 6         Suite 23A

 7         New York, NY 10019

 8

 9    BY:    CAMISHA L. SIMMONS, ESQ.

10

11

12    HAYNES AND BOONE, LLP

13         Attorneys for JGB Secured Parties

14         30 Rockefeller Plaza

15         26th Floor

16         New York, NY 10112

17

18    BY:    RICHARD KANOWITZ, ESQ.

19

20

21

22

23

24

25
```



1

2  UNITED STATES DEPARTMENT OF JUSTICE

3      Attorneys for Office of the United States Trustee

4      560 Federal Plaza

5      Central Islip, NY 11712

6

7  BY:   WILLIAM BIRMINGHAM, ESQ.

8

9

10  ALSO PRESENT:

11      LOUISE T. BLOUIN, Brickchurch Enterprises, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25



BRICKCHUIRCH ENTERPRISES, INC.

1                  P R O C E E D I N G S

2          THE CLERK:  Case Number 22-70914, Brickchurch

3    Enterprise, Inc.

4          THE COURT:  I'll take appearances, please, starting

5    with the debtor.

6          MS. SIMMONS:  Good morning, Your Honor.  Camisha

7    Simmons on behalf of the debtor, Brickchurch Enterprises, Inc.

8          MS. BLOUIN:  Good morning.  Louise Blouin.

9          THE CLERK:  What was her name?

10         THE COURT:  Blouin.  And for JGB?

11         MR. KANOWITZ:  Good morning, Your Honor.  Richard

12   Kanowitz, Haynes and Boone, on behalf of JGB.  With me is

13   Michael Pfiffer (ph.) as well as Greg Kramer.  And we also have

14   Brett Capone, principal of JGB, in the court with us.

15         THE COURT:  All right.  And then Office of the United

16   States Trustee?

17         MR. BIRMINGHAM:  Good morning, Judge.  William

18   Birmingham, Office of the United States Trustee.

19         THE COURT:  Do we have any other parties-in-interests?

20         MR. ALLERDING:  Good morning, Your Honor.  John

21   Allerding of Thompson Hine on behalf of Baypoint Capital

22   Partners II LP, proposed DIP lender, along with John Isbell and

23   Curtis Tuggal (ph.).

24         UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

25         MR. ALLERDING:  And also we have Charles Andros with



BRICKCHUIRCH ENTERPRISES, INC.

1    us from Baypoint.

2              THE COURT:  Is it Mr. Harding is it?

3              MR. ALLERING:  Allerding, A-L-L-E-R-D-I-N-G.

4              THE COURT:  Thank you.

5              MR. ALLERDING:  Thank you, Your Honor.

6              THE COURT:  Anyone else?

7              MS. SIMMONS:  Your Honor, are we requiring counsel to

8    come to the podium or are we -- staying over here, just want

9    to --

10             THE COURT:  Right now I'm just calling the room.  So

11   is there anyone else who wants to make an appearance?

12             MS. SIMMONS:  Yes, Your Honor.  The debtor filed the

13   retention application for Duane Morris as a special litigation

14   counsel.  And Brad Messenger of Duane Morris is here.

15             MR. MESSENGER:  Good morning, Your Honor.  Good to see

16   you.

17             THE COURT:  Good morning.  Anyone else?

18             All right.  Let me go over a few housekeeping issues.

19   First, in terms of health and safety COVID protocols, the Court

20   did require that in advance of the hearings, the parties notify

21   the Court through my courtroom deputy as to the vaccination

22   status.  The names that the Court received indicated that

23   everyone who planned to be present had been vaccinated.

24             We may have more people in the courtroom than we have

25   listed on the appearance sheet.  So because the vaccination



BRICKCHUIRCH ENTERPRISES, INC.

1    status is a health and safety issue, but also a personal health

2    and safety issue, I don't put this information, your name, on

3    the record.

4             So for those of you who are present who have not --

5    who have not disclosed your vaccination status, you need to

6    leave your masks on at all times.  For those of you who are

7    present who did indicate your vaccination status as vaccinated,

8    you can take your mask off if you wish to do so.  Anyone who

9    wishes to keep their mask on is welcome to do so as a health

10   and safety matter.  And anyone who has disclosed to the Court

11   that they are fully vaccinated, you may take and keep your mask

12   off throughout the proceedings if you wish to do so.  If you

13   have to keep it on, you're certainly welcome to do that as

14   well.

15            In terms of the issues for this morning, since I see a

16   lot of notebooks and not a lot of smiles, I take that to mean

17   that you all have -- the debtor and JGB have not settled.  Is

18   that --

19            MR. KANOWITZ:  That would be correct, Your Honor.

20            MS. SIMMONS:  Yes, Your Honor.  At this point, no

21   settlement has been made.

22            THE COURT:  When was the last time you all had a

23   meaningful settlement discussion?

24            UNIDENTIFIED SPEAKER:  Oh, we had one the other day.

25            MS. SIMMONS:  There have been communications, Your



BRICKCHUIRCH ENTERPRISES, INC.

1    Honor, back and forth throughout the process.  And there's

2    always the possibility of settlement up until the time for

3    payment.

4         THE COURT:  All right.  Then in my ongoing endeavor to

5    not be cryptic with the parties, and I'll repeat what I'm

6    pretty sure I said last time we gathered when we gathered

7    virtually, one of the reasons that I had you all docket a

8    letter as to how much was not in dispute as to what was owed to

9    JGB and  how much was in dispute as to JGB was for me to get a

10   sense of, first, whether there is enough money proposed to come

11   in from the security lender to cover the fifty-two-million-

12   dollar threshold that the Court had set, and two, to see if a

13   protocol could be worked out where if the loan is approved and

14   funded in time, JGB would be paid the undisputed amount which

15   you both -- which the debtor and JGB appear to agree to the

16   same undisputed amount, although there was no indication of one

17   of the debtors letters that there may be 120-dollar difference.

18   I'm not sure why that is.

19        But the information the Court has right now is that

20   the debtor JGB agree that JGB is owed on an undisputed basis a

21   secured claim of $46,452,271.51.  And there's a dispute as to

22   4.6 million dollars or so.  You have agreed to the same

23   disputed number.  You don't agree -- you at least agree to the

24   same disputed number.  And so my math tells that those numbers

25   add up to less than fifty-two million dollars and that the



BRICKCHUIRCH ENTERPRISES, INC.

1    problem hearing the proposed DIP lender had said that their

2    proposed loan was fifty-two million dollars plus the add-ons,

3    the lender's finance fee, and et cetera.

4         So my question now to you all is, are you all amenable

5    to the protocol that I'm pretty sure I suggested last time that

6    if the loan is approved, the undisputed portion is paid, paid

7    by the deadline that the Court had previously fixed, the

8    disputed person is safely held somewhere while you-all quickly

9    duke out how much of the -- how much of the disputed portion

10   should then be paid?

11        MR. KANOWITZ:  Yes.  Yes, Your Honor.  From JBG's --

12        THE COURT:  You can -- it might be easier -- but to

13   answer Ms. Simmons' question -- it'll be easier just for the

14   audio system to just work now from the lectern.

15        MR. KANOWITZ:  For the record, Richard Kanowitz on

16   behalf of JGB.

17        Your Honor, the answer is yes, subject to obviously

18   clarification concerning the DIP order and the payment motion

19   and making sure the mechanisms and processes are safeguarded

20   for JGB's adequate protection in the indemnity reserve and

21   other types of things that you are alluding to in the disputed

22   category would be escrowed by a third-party escrow agent held

23   for the benefit until such further order of the Court.

24        There is no -- another potential issue though that we

25   brought up.  And we can address it at the appropriate time.



BRICKCHUIRCH ENTERPRISES, INC.

1          THE COURT:  Okay.  Ms. Simmons?

2          MS. SIMMONS:  Camisha Simmons on behalf of the debtor,

3     Brickchurch Enterprises, Inc.

4          Your Honor, as aware in our pleadings, it's the

5     debtor's position that that 4.6 million plus JGB is not

6     entitled to.  As the Court has repeatedly stated in these

7     proceedings, the referee report is what the Court is going by.

8     So the amount of the asserted for attorneys' fees that are not

9     in the foreclosure judgment and actually were crossed out in

10    the order of foreclosure, they're not entitled to those

11    disputed amounts.  And to the extent they haven't paid property

12    taxes, they're not entitled to those amounts.  And to the

13    extent that they want a 2.5 million indemnity reserve and

14    burdening the estate with a 2.5-million-dollar indemnity

15    reserve, they're not entitled to that amount.

16         So it's the debtor's position that that amount should

17    not be escrowed.  Their allowed secured claim is the undisputed

18    amount.  And we're asking the Court to award that.  Now, we're

19    going to abide by any order of the Court in terms of how the

20    Court wants to structure this transaction and the payouts.

21    However, it's our position that those undisputed amounts

22    shouldn't be escrowed because they're not entitled to those

23    amounts pursuant to the referee report and according to the

24    Court's position in terms of applicable law as to what they're

25    entitled to recover.



www.escribers.net | 602-263-0885

1       THE COURT:  So I think that's a long way of saying no

2   without saying no, that the debtor is not prepared to enter

3   into an agreement.  If the Court approves the financing under

4   which the undisputed financials would be paid as soon as the

5   loan funds, the disputed portion would be escrowed somewhere,

6   pending determination as to how much of that amount should

7   actually be paid over.

8       MS. SIMMONS:  Your Honor, the debtor would prefer for

9   that not to be what the Court awards.  But the debtor will

10  abide by any order of the Court to move forward in the --

11      THE COURT:  Yeah.  Let me -- so just again, and in the

12  interest of not being cryptic, this hearing is not going to end

13  with the loan being approved and the disputed portion not being

14  escrowed.  And so if that advances the potential conversation

15  or not, I would welcome you all to have a further conversation.

16  But there's simply not a way that this hearing runs today with

17  the Court approving the loan and the disputed portion not being

18  asked for pending determination of how much that's owed or not.

19  That would be a complete failure of adequate protection to the

20  secured creditor.

21      And so since we're clearly not going to do that, I

22  would welcome you to take about twenty or thirty minutes and

23  see if you can figure out how the escrow the funds, with whom

24  to escrow funds, and which court is going to decide how much of

25  the escrowed funds get to be paid over and under what time

BRICKCHUIRCH ENTERPRISES, INC.

1    line.

2              One thing that I've learned in my fourteen-plus years

3    sitting on this side of the bench on top of the twenty-

4    four-plus years sitting on that side of the bench, is that

5    money sitting in escrow doesn't do a whole lot of good for

6    anybody other than maybe the escrow agent who probably isn't

7    earning a whole lot of interest on it anyway.

8              And so I recognize that you all have a state court

9    appeal pending.  I recognize that there are some pure

10   bankruptcy issues on liability and some pure state law issues

11   on liability.  And so I can see a scenario where one of you

12   says, well, I'd rather have the state court decide categories 1

13   through 6 but have the Bankruptcy Court decide categories 7, 8,

14   and 9 of the dispute.  I mean, that's certainly theoretically

15   viable, but it's probably going to take a lot more time.  And

16   so if the old -- if the age-old adage is true, that time is

17   money, I would invite you all to try to figure out a mechanism,

18   again, if you amenable.

19             If you're not amenable, then we'll have the hearing

20   and I'll make my orders.  And you all can pretty much with

21   99.94 percent accuracy and figure out what's going to happen

22   for the undisputed -- for the disputed dollars.  Maybe you all

23   can have a meaningful conversation for twenty or thirty minutes

24   to see if you can edge out the rest of it.  But also said, it

25   is 99.94 percent unlikely that I'm going to approve the DIP

BRICKCHUIRCH ENTERPRISES, INC.

1   motion and dismiss the case.  So if are banking -- if you are

2   hedging the prospects of the case being dismissed and the

3   financing approved, I can sort of take that one off your --

4   what's under the river card if you have plans in Texas Hold 'Em

5   here.   So --

6           MR. KANOWITZ:  May I address the Court, Your Honor?

7           THE COURT:  Yes.

8           MR. KANOWITZ:  And I'm addressing it not because of

9   anything that you said in the objection.  I think that's

10  exactly what should have happened already in this case.

11          But I'm addressing it so that Ms. Blouin understands

12  where we are from JGB's perspective, because we've communicated

13  a very favorable offer to this debtor.

14          JGB's position is abundantly clear.  We want to be

15  indefeasibly paid in full period, end of story.  We want a

16  general release.  We want to go on with our life.  If the

17  debtor wants to do this DIP, they can do the DIP.  What they

18  can do two things from our perspective:  1, a lien on nondebtor

19  property to do this DIP and not give us adequate protection.

20  And so that goes to the crux of what you're saying, which is we

21  need to have indemnity reserve.  We need to have the escrow put

22  in place.  And we need Your Honor to make rulings because it's

23  a bankruptcy issue.  We're an oversecured creditor by their own

24  admission.  They're looking to combine the compound, which,

25  again, earlier in this case, that's the path we should have



BRICKCHUIRCH ENTERPRISES, INC.

1    taken.  We didn't.  And now it's -- now we're having a compound

2    discussion.  They're asking you to approve a DIP with a

3    nondebtor.  So all I'm saying from -- we communicated and also

4    the level below the foreclosure judgment amount, full releases.

5    We didn't get anywhere.

6        THE COURT:  Well, I don't want to know who offered

7    what to who and who demanded what and all that who shot John

8    part.  Right now I'm just trying to figure out that can you all

9    agree on how to fight about the part that I think you're

10    actually fighting about, which is how to treat the

11    4.6-billion-dollar escrow.  But I'm not asking you all -- I

12    mean, it'd be great if you came back in twenty minutes and said

13    we settled all of it, the number is X, and we're going to get

14    it in fourteen days and we're done.

15        But right now I'm just asking you to talk about

16    whether you can agree on mechanically how we get a decision out

17    of which court on the disputed portion.  I don't want either of

18    you to misread me.  I've not decided what was in those eight or

19    nine categories is actually allowable.  I'm not making any

20    decisions like yeah, it's 4.695, they're going to end up

21    getting all of it.  I'm not there.  I'm just trying to see if

22    you all can agree on mechanically which court is going to

23    decide those amounts and how to do that in the most

24    cost-effective and efficient manner.

25        I'm also not asking to take more work from you, but I



BRICKCHUIRCH ENTERPRISES, INC.

1    recognize the realm of the case is that dispute needs to be

2    decided.  It should be decided relatively quickly because,

3    again, that that amount of money just sitting there -- by that

4    amount, I mean just under 4.7 million dollars, doesn't really

5    help -- doesn't really help anybody.

6         MR. KANOWITZ:  Very well, Your Honor.  We're prepared

7    to have those discussions as you direct.

8         THE COURT:  All right.  So I'm going to recess you all

9    until -- fifteen lawyer minutes is really thirty tick-tock

10   on-the-clock minutes.  So why don't you all come back in at

11   12:20?  And we'll see where we are.

12        MR. KANOWITZ:  Thank you, Your Honor.

13        Your Honor, I would just we'll let your court

14   personnel know we're sort of on our way but not going to be

15   completed at 12:20, that's okay.

16        THE COURT:  Yeah, I'll have Ms. Mills come back with

17   at 12:20.  And if everybody smiling and going like this, she'll

18   bring me back in.  And if I see some -- if she sees some

19   frowning faces, then she'll bring me in, okay?

20        MR. KANOWITZ:  We'll just do thumbs up,, all right?

21   Thumbs up, thumbs down works great.  Thank you all.  We'll be

22   in recess then until 12:20.  We'll go off the record.

23        (Recess from 11:51 a.m., until 1:14 p.m.)

24        THE COURT:  Back on the record on Brickchurch

25   Enterprises, 22-70914.  Ms. Simmons and Mr. Kanowitz?



1          MR. KANOWITZ:  Yes, Your Honor.  Good afternoon.

2   First, the parties, all of here, the attorneys, the clients, we

3   do appreciate the patience that you had with us today.  Yeah.

4   Your directions to us, I bore fruit.  And we're pleased to

5   report a resolution of the entire case as between the debtor,

6   JGB, and the guarantors under the JGB loan documents.

7          Obviously, everything is subject to definitive

8   documentation.  And there are certain housecleaning things that

9   we probably need to do for the record.  But if we can describe

10  for you in the 30,000-foot viewpoint of -- from us what we're

11  trying to accomplish and what we're going to be doing over the

12  next couple of days.  And then, obviously, I believe the debtor

13  wants to move forward on the DIP hearing and make sure that the

14  proper factual predicate for Your Honor granting it and giving

15  the proposed DIP lender its protections, et cetera, are on the

16  record.

17         Clearly we have work to do on that form of order, but

18  we'll deal with the administrative stuff.  So --

19         THE COURT:  All right.

20         MR. KANOWITZ:  I'll be happy to tell you what the

21  big-picture settlement is.  And obviously the debtor's counsel

22  could correct me if I miss it.  But bottom line is, and again,

23  subject to definitive documentation, is JGB will be paid 44.5

24  million dollars.  It will be paid at closing.  The hope is that

25  closing will happen by November 9th.  However, we're going to



BRICKCHUIRCH ENTERPRISES, INC.

1    bake into the documents that they do have till November 30th of

2    2022 to get it done.  There is some issues with Suffolk County.

3    Hopefully title gets issued, and we can move forward faster.

4    So that's the big ticket as to the number.

5        As to what's going to happen with these loan documents

6    and proofs of claim for the benefit of the proposed DIP lender

7    at closing and subject to being paid, JGB is going to assign

8    all of the loan documents to the DIP lender as well as its

9    proofs of claim.  How the DIP lender proceeds from there, it's

10   up to the DIP lender.  There is assignments of all the loan

11   documents, including its proofs of claims, are going to be

12   without recourse to JGB, meaning we are giving them what they

13   what they get and we're done with them.  We're going to need a

14   release as to those loan documents and assignments from

15   Baypoint.  And we'll build that into the documents.

16       As to the debtor's estate, once the 45 -- once 44.5 is

17   paid, the parties are going to enter into releases from the

18   beginning to the date of the release.  And the loan parties are

19   going to be obviously the debtor, Brickchurch, Aberdeen who is

20   a nondebtor because that's 376 Gin Lane because that is that is

21   one of the properties that's coming on to the DIP, the two

22   guarantors, and anybody else.

23       The only thing that I would say to you, Your Honor, is

24   while we're going to ask for this debtor to sign a release to

25   be effective, I don't think we should spend time unless you



BRICKCHUIRCH ENTERPRISES, INC.

1    direct for a 9019 motion to get him released effective.  We're

2    going to ask the debtor, to the extent they file a plan, to

3    imbed that release and confirm that release by Your Honor's

4    order in a plan.

5            Now, obviously, if they don't file a plan and move to

6    dismiss their case once we're out of it, at least we have the

7    writing That Brickchurch gave a release.  And obviously they're

8    going to have a new lender and the parties go their separate

9    way.

10            So that that, in a nutshell, is what is going to

11    happen as to, again, JGB, Baypoint, the guarantors, as well as

12    the debtor and the nondebtor.

13            THE COURT:  Okay.

14            MR. KANOWITZ:  As to the DIP, yes, we are withdrawing

15    our objection provided of course that the deal closes.  So as

16    to the various different liens that the DIP lender is going to

17    get, they need to be subordinate to JGB until such time as

18    they're paid off, which makes sense because the assignments and

19    everything is going to be affected as of closing.  So we have

20    to tweak the language.  So we state that on our objection.  We

21    leave it to the debtor to convince the Court that in its

22    business judgment, it should proceed with the DIP.  I believe

23    there are certain other things that need to be put on the

24    record, but that's the universe where we are.

25            THE COURT:  All right.  And for clarity, 44,500,000



BRICKCHUIRCH ENTERPRISES, INC.

1    dollars?

2            MR. KANOWITZ:  Correct.

3            THE COURT:  Okay.  All right.  Okay.  Ms. Simmons?

4            MS. SIMMONS:  Yes, Your Honor.  Good things happen.

5    There is a God above.  And so we worked out a deal.  Me, in

6    conjunction with Baypoint, are going to run through the numbers

7    in terms of what was worked out and what the financing package

8    looks like before we go into of course the evidentiary hearing.

9            MR. ISBELL:  Thank you, Your Honor.  John Isbell,

10   Baypoint.

11           First of all, I wanted to agree with what counsel for

12   JFB said as far as the value of the release as far as recourse

13   and specific release as far as the loan documents.  We agree

14   with that.

15           In terms of the total loan amount, it looks like this

16   is still subject to a few moving parts, but looks like it's

17   going to come in about 61.3 million total.  Of that amount,

18   fifty-two million will go to the estate.  Of that fifty-two

19   million rough numbers, it looks like 44.5 million to JGB, 3.1

20   million will establish a six-month interest reserve for the

21   debtor so the debtor doesn't have to make monthly interest

22   payments, It looks like 250,000 to the U.S. Trustee,

23   approximately 475,000 in taxes and claims.  And then we've

24   allocated another 250,000 in legal which will leave a little

25   bit of cushion in the estate, roughly about 3.4 million dollars



BRICKCHUIRCH ENTERPRISES, INC.

1    of a cushion in the estate at that point, subject to the loan

2    documents, what would be mandatory paydowns and whatnot, once

3    claims are paid.

4         On top of the fifty-two million going to the estate,

5    there's roughly 5.6 million in origination fees.  2.6 million

6    has been allocated to reinstate the loan on the nondebtor

7    property for Morgan Stanley, 400,000 roughly legal to document

8    the deal, roughly 400,000 dollars of recording taxes and for

9    New York, and then the real estate broker of the 310-.  That

10   gets us to roughly the $61.3 million.

11        Charles Andros is here on behalf of Baypoint, has

12   submitted an affidavit.  He can attest to those numbers and the

13   materials in his affidavit as well as going through the process

14   of identifying the debtor, doing diligence on this loan to

15   satisfy the good-faith requirements that we have in the DIP

16   order as well.

17        THE COURT:  Okay.

18        MS. SIMMONS:  And, Your Honor, I will concur those

19   numbers.

20        In terms of moving to the evidentiary portion, we

21   have, of course, submitted our witness and exhibit list, and we

22   have three witnesses:  Mr. Andros at Baypoint, Ms. Blouin,

23   principal of the debtor, and also Geoff Gifkins of Nest Seekers

24   International.

25        We didn't submit our recent affidavit for Mr. Gifkins,



BRICKCHUIRCH ENTERPRISES, INC.

1    but they are numerous affidavits attesting to the marketing and

2    sale process of Mr. Gifkins on the record and on other exhibit

3    lists.

4          So Your Honor, I know your process is to have direct

5    testimony serve through affidavit.

6          THE COURT:  Ms. Simmons -- I'm sorry, Ms. Simmons.

7    Before we get to that evidentiary part, I would like to get

8    confirmation on the record from the debtor's principal that the

9    settlement as announced on the record has been agreed to by the

10   principal of the debtor.  And then I would like to get the same

11   from the principal of JGB.

12         MS. SIMMONS:  So Ms. Blouin, as you have heard the

13   testimony regarding the settlement, the line-item numbers of

14   the settlement, and also the information regarding the global

15   release with JGB, do you agree with what was stated on the

16   record in terms of what was agreed to today during these

17   proceedings?

18         MS. BLOUIN:  I do.

19         THE COURT:  All right.  Thank you.

20         And Mr. Kanowitz, for your client?

21         MR. KANOWITZ:  Yes.  Mr. Cohen is here.

22         And likewise, Mr. Cohen, do you affirm the resolution

23   of this matter for the terms and conditions as described on the

24   record, subject to definitive documentation?

25         MR. COHEN:  Yes.



BRICKCHUIRCH ENTERPRISES, INC.

1          THE COURT:  All right.  Thank you.

2          And I'm going to get the same from Mr. Andros, but

3    he's testifying about the financing.  So I would take that

4    as -- from the testimony that he would be presenting rather

5    than an affirmation of the settlement.

6          And so Ms. Simmons, the part where I interrupted you

7    was where you were talking about how I how I take the

8    testimony.  And you're right, I do take that by a by direct.

9    And so in the witness and exhibit list that was submitted by

10   the debtor, I do have Ms. Blouin's affidavit at Exhibit D and

11   then Mr. Andros's affidavit as Exhibit E as in Edward, so D as

12   in David, E as in Edward.

13         What I typically do this is I'll have the witness come

14   forward, affirm the statements contained in the affidavit are

15   true and correct to the best of their knowledge and belief,

16   tender them for cross if anybody has cross.  I'm supposing

17   that's a no now where we are, but still to have that

18   opportunity.

19         So let's just go ahead and proceed in that fashion.

20   If you're now wanting to move to the evidentiary portion of the

21   bond motion, I was waiting to hear -- because I am still not in

22   the assuming business -- that the motion to dismiss is

23   withdrawn based upon the settlement put on the record.

24         MR. KANOWITZ:  Well, Your Honor, I was going to ask

25   you -- again, Richard Kanowitz, sorry, for the record.



BRICKCHUIRCH ENTERPRISES, INC.

1          I was going to ask you, how would you like to proceed?

2    I don't want to rain on anybody's parade, but if the deal

3    doesn't close, there's no DIP liens, we're still back in

4    bankruptcy.  I think the best thing for us to do is to carry

5    everything forward to a date sometime in December.  And

6    hopefully we just never get there.

7          THE COURT:  All right.  Ms. Simmons, does that work

8    for you?

9          MS. SIMMONS:  Your Honor, of course.  The debtor would

10   prefer that they withdraw their motion to dismiss.

11         THE COURT:  Okay.  Well, I'm going to carry it under

12   the assumption that it moots because it would be for those

13   obvious reason.  So let's go ahead -- do you want to bring Ms.

14   Blouin first or do you want to do Mr. Andros first?

15         MS. SIMMONS:  Your Honor, we can bring Ms. Blouin

16   first to the stand.

17         THE COURT:  All right.

18         MS. SIMMONS:  Ms. Blouin?

19         THE COURT:  So Ms. Blouin if you'll -- you probably

20   won't spend a lot of time there.  But if you'll got to the

21   witness stand over to your right.  And when you get there, just

22   remain standing so that I can swear you in.

23         Is that on now?  There's a HEPA filter in the witness

24   box.  That's what -- Ms. Blouin, would you raise your right

25   hand?



BRICKCHUIRCH ENTERPRISES, INC.

1          (Witness sworn)

2          THE COURT:  All right.  So you can sit down.

3          Ms. Blouin, the Court is in receipt of an affidavit

4     dated as of October 21, 2022.  It's filed at ECF docket item

5     146.  Is that is that your exhibit book there, Ms. Simmons?

6          MS. SIMMONS:  What was that, Your Honor?

7          THE COURT:  Is that your exhibit book?

8          MS. SIMMONS:  Yes.  The white exhibit book is

9     debtor's.

10          MS. BLOUIN:  Sorry.  I can't hear very well because I

11     have a machine next to me.

12          THE COURT:  If you would open that exhibit book --

13          MS. SIMMONS:  Yes.

14          THE COURT:  -- for the document from line 10, D as in

15     David.  D as in David.

16          MS. BLOUIN:  Okay.  Thank you.  I can't hear you very

17     well because I have a fan next to me.

18          THE COURT:  Yeah.

19          MS. BLOUIN:  Yes.

20          THE COURT:  Is that an affidavit that you executed?

21          MS. BLOUIN:  Yes.

22          THE COURT:  And are the statements in that affidavit

23     true and correct to the best of your knowledge and belief?

24          MS. BLOUIN:  Correct.  Yes.

25          THE COURT:  So the Court is admitting Exhibit D.



BRICKCHUIRCH ENTERPRISES, INC.

1          (Affidavit of Louise Blouin was hereby received into

2    evidence as Debtor's Exhibit D, as of this date.)

3          THE COURT:  Well, do you have any questions you want

4    to ask Ms. Blouin, Ms. Simmons?

5          MS. SIMMONS:  No, Your Honor.  We'll rest on her

6    affidavit.

7          THE COURT:  Any cross either from JGB or the United

8    States Trustee?

9          MR. BIRMINGHAM:  No, Your Honor.

10         MR. KANOWITZ:  No, Your Honor.

11         THE COURT:  Okay.  State your name because I know who

12   you are, but the audio doesn't, the U.S. Trustee's Office.

13         MR. BIRMINGHAM:  William Birmingham, Office of the

14   United States Trustee.  No questions, Judge.

15         THE COURT:  All right.  Thank you.

16         Ms. Blouin, you may return to your seat.

17         MS. BLOUIN:  Thank you.

18         MS. SIMMONS:  Your Honor, next the Debtor will call

19   Mr. Charles Andros of Baypoint Advisors.

20         THE COURT:  Mr. Andros, when you get to the witness

21   stand, just remain standing so I can swear you in.  If you

22   would raise your right hand.

23         (Witness sworn)

24         THE COURT:  In the exhibit book behind Tab E as in

25   Edward, do you see the affidavit with your name?



BRICKCHUIRCH ENTERPRISES, INC.

1              MR ANDROS:  Yes.

2              THE COURT:  Do you (indiscernible) affidavit?

3              MR ANDROS:  Yes.

4              THE COURT:  Are the statements contained in the

5     affidavit true and correct to the best of your knowledge and

6     belief?

7              MR ANDROS:  Yes, sir.

8              THE COURT:  Ms. Simmons, any follow-up in anything

9     related to the announcement that was made on the record as to

10    the settlement or do you want Mr. -- is it Mr. Allerding?

11             MR. ISBELL:  I'm Mr. Isbell.

12             THE COURT:  Oh, Isbell.  Sorry.  If you'd like to

13    handle that part.

14             MR. ISBELL:  Yes, if I could.  I don't know if this

15    would be direct or cross, but probably direct since he's my

16    client.

17    DIRECT EXAMINATION

18    BY MR. ISBELL:

19    Q.   Mr. Andros, you have informed the Court that the sources

20    of funds a few minutes ago.  Is that information -- is that

21    reporting accurate?

22    A.   Yes.

23    Q.   And Mr. Andros, of that sources of uses, there was roughly

24    a 5.6-million-dollar origination fee; is that accurate?

25    A.   Yes.



BRICKCHUIRCH ENTERPRISES, INC.

1    Q.    That's what was agreed to by the debtor?

2    A.    Yes.

3    Q.    And what are you asking the Court to approve today?

4    A.    Yes.

5    Q.    And roughly another 400,000 dollars of it is going to be

6    used for professional expenses, diligence fees?  Does that

7    sound about accurate?

8    A.    Correct.

9    Q.    And again, that's the actual fees that are incurred by

10    Baypoint documenting this, correct?

11    A.    Correct.

12          MR. ISBELL:  Okay.  Nothing further, Your Honor.

13          THE COURT:  Mr. Kanowitz?

14          MR. KANOWITZ:  Your Honor, we have no questions at

15    this time.  Thank you.

16          THE COURT:  Mr. Birmingham?

17          MR. BIRMINGHAM:  No questions, Judge.

18          THE COURT:  All right.  Mr. Andros, you may return to

19    your seat.  Thank you.

20          THE WITNESS:  Thank you.

21          THE COURT:  Ms. Simmons?

22          MS. SIMMONS:  Yes, Your Honor.  I need to get back to

23    the motion to dismiss in terms of admission of certain exhibits

24    since that's being carried.  But in terms of moving forward

25    with the evidentiary portion of the DIP financing, the debtor



BRICKCHUIRCH ENTERPRISES, INC.

1    is resting on the testimony presented in the affidavits and the

2    questioning that's been done at this hearing.

3          In terms of whether or not the requirements of Section

4    364 have been met, yes, Your Honor, the proposed financing is

5    within the sound exercise of the business judgment of the

6    debtor.  As presented in the affidavits, testimony, this

7    financing was the best available.  And the debtor had been

8    searching for months to find the best available deal through a

9    loan broker utilized.  And this financing, of course, Your

10   Honor, fifty-two million -- up to fifty-two million to satisfy

11   all creditors' claims in this case, of course, is in the best

12   interests of the estate and creditors.

13         And for those reasons, Your Honor, we're asking that

14   the Court approve the proposed DIP financing with the proposed

15   DIP lender Baypoint Advisors.

16         THE COURT:  For benefit of the record, I'm going to

17   admit the debtor's Exhibits A through J.

18        (Debtor's Exhibits were hereby received into evidence as

19   Debtor's Exhibit A through J, as of this date.)

20         THE COURT:  I'm going to suspend admission of any of

21   the JGB exhibits until -- if we get to the motion to dismiss

22   hearing.  So the record will not consist of -- stated on the

23   record, the debtor's Exhibits A through J and the testimony

24   elicited here this afternoon.

25         Mr. Kanowitz?



BRICKCHUIRCH ENTERPRISES, INC.

1          MR. KANOWITZ:  Yes, Your Honor.  As reported, we

2     withdraw our objection and subject to just working out the

3     mechanics so that the DIP liens obviously don't get granted

4     today.  They are subject to JGB's liens until paid off.  And

5     same thing with the adequate protection type of claims and

6     liens.  We're okay with the debtor moving forward with this

7     process.  Thank you.

8          THE COURT:  All right.  Mr. Isbell?

9          MR. ISBELL:  Yes, Your Honor.  And that's certainly

10    correct.  We wouldn't ask that we prime them prior to them

11    being paid off.  So there may be a tweak or two to the proposed

12    DIP order that we need to clarify that.  But we'll get that

13    submitted shortly for Your Honor.

14         THE COURT:  All right.  Thank you.

15         Mr. Birmingham?

16         MR. BIRMINGHAM:  Judge, we don't we don't have any

17    issues.  The only issue that we didn't really have is whether

18    the debtor will potentially have the ability to repay this

19    loan.  But we don't -- we're not going to make the argument

20    that this is outside of the -- that the debtor is not using

21    prudent business judgment.  So we have no objection, Judge.

22         THE COURT:  All right.  All right.  So then the Court

23    is prepared to approve the proposed financing with Baypoint

24    both as set out in the pleadings as well as updated, if you

25    will, by the statements on the record, both by counsel for



BRICKCHUIRCH ENTERPRISES, INC.

1    Baypoint and by Mr. Andros in his testimony.  The Court does

2    find that this is a proper exercise by the debtor of its

3    business judgment, that the financing was negotiated at arm's

4    length and in good faith.  It is necessary to retire the

5    primary lien against the primary asset of the estate.  And the

6    Court would make the requisite additional findings, but those

7    are the sort of the top four of your debtor-in-possession

8    financing motions.

9         What I'm anticipating then to happen next is you all

10   are going to submit an iterated debtor-in-possession financing

11   wherever that has all the bells and whistles necessary to

12   implement what was put on the record today.  Do you all -- do

13   you all -- within a few days from now, sometime next week?

14        MR. KANOWITZ:  Yes, Your Honor.  I think it would be

15   appropriate to take some time to make sure that we have the

16   mechanics worked out right.

17        One other housekeeping, and I don't mean to bring up

18   more issues.  But the debtor put on a motion for the ability to

19   pay.  Clearly, the motion for the ability to pay was to pay the

20   undisputed because it's outside of a plan process.

21        So again, with respect to Your Honor's authority and

22   direction, just paying us off, we would be more comfortable if

23   there's an order granting that motion and we could tweak that

24   order to deal with the appropriate resolution of the settlement

25   and not be technically a 9019 but authorize the debtor to make



BRICKCHUIRCH ENTERPRISES, INC.

1   that payment so that the DIP order and that -- there's a

2   package gets the parties to where there's a new lender and the

3   old lender is pay off.

4          THE COURT:  So mechanically, it's fine with me.  I've

5   got two orders out there already setting this procedure in

6   place.  So whether it's updating those orders or a fancy new

7   order on a different motion that's already pending, I'm okay

8   with how you all --

9          MR. KANOWITZ:  Well, the reason I raise it, I don't

10  need to wait to get the DIP order entered, for example, if the

11  DIP order is proper containment of the terms and conditions.

12  Otherwise, a payoff -- or it doesn't have to be the DIP order.

13  We could try to put it together.  I'm just trying to say move

14  it along as fast as possible so Your Honor could get orders

15  entered.

16         THE COURT:  I'll enter it as quick as I go.  And we

17  can have you all sign what -- it's up to you.  But they're not

18  advancing till they have the Dip order.  So I'm not sure if

19  there's a -- who comes first as far as the order will go, but

20  they're not going to advance without the DIP order anyway.  So

21  whether you all do it as one order, separate orders, it's all

22  going to happen together.

23         MR. KANOWITZ:  And I guess we can feel most

24  comfortable if Your Honor allows or permits or directs the

25  debtor to pay off to consummate the DIP order and allows us to



BRICKCHUIRCH ENTERPRISES, INC.

1    receive the proceeds.  If you so say it on the record, that

2    would give us all the parties comfort to know we're moving

3    forward.

4           THE COURT:  Ms. Simmons?

5           MS. SIMMONS:  Yes, Your Honor.  Pursuant to our motion

6    to pay that we requested a hearing on today, the debtor, in

7    order to stop the accrual the interest, we've reached a

8    settlement.  But the intention was to stop the accrual of

9    interest.  We wanted to be able to pay JGB at closing to

10   extinguish, of course, the liens.  And so we want, of course,

11   the Court's authority today to be able to pay them at closing

12   instead of at the time of plan confirmation should a plan be

13   confirmed in this case.

14          THE COURT:  That's all fine because, again,

15   mechanically, whatever lets you all sleep better tonight in

16   terms of an order for me that says you can borrow money and you

17   can pay them, that's fine with me because the Baypoint liens

18   aren't going to spring into existence under the DIP order until

19   you paid off JGB anyway.  So, again, however you all want to

20   address that, if it's one twenty-five-pager and one five-pager,

21   that's fine with me.  At the end of the day, Baypoint gets

22   their liens by paying off and taking assignments of the JGB

23   liens.

24          Everything after that is, again, how you all feel more

25   comfortable actually doing it, although the most comfort is



BRICKCHUIRCH ENTERPRISES, INC.

1  going to come when somebody is looking at their wires and sees

2  it hit.   So that's when Mr. Cohen will be comfortable with it

3  at that point.   But it's not when I say it can happen but when

4  the money hits his account.

5      So go ahead and submit those orders.   What I would --

6  on the DIP order, just circling back to mechanically what needs

7  to happen. there are -- and this may already be addressed in

8  the draft that you all submitted, that there are nondebtor

9  parties who are binding themselves to do things under my order.

10      I do want them to sign off on that order because,

11  while it's fun for me to order nondebtors to do stuff, it's

12  more fun when I can actually enforce that order should the need

13  arise.   And given the questions certainly of jurisdiction to do

14  things, I want to have the nondebtors who are doing stuff under

15  the DIP order like pledging collateral or like signing

16  guarantees to actually sign off on the DIP order consent to

17  enter so that it's clearly effective when I sign it because

18  they've all said, yeah, I'm going to do that.   Okay?   So

19  whatever mechanically needs to happen to get them signing on

20  board, you all just -- and I know it would be baked in.   But

21  for my purposes, I want to see they have signed, approved for

22  entry on the DIP order.   I think that makes Mr. Isbell happier

23  anyway, if not Mr. Andros.

24      MR. ISBELL:   Yes, Your Honor.   Enforceability is

25  always something that's good to have in a DIP order.



1          THE COURT:  So on a mechanical -- the next question,

2   leaving hopefully nothing substantive to guess, what I think

3   I'm hearing now is that when the dust settles and the champagne

4   has been uncorked, the debtor actually wants to proceed through

5   to confirm a plan.  I know there's a plan on file, but the

6   debtor is at this point wanting to move to confirm the plan or

7   you all want to figure out whether or not to move forward with

8   that or to dismissal.

9          MS. SIMMONS:  Your Honor, that is still being decided.

10  As of today, the debtor plans to move forward with confirming.

11  But we still need to consult and figure out what the best

12  option is going forward.

13         THE COURT:  Okay.  o what we're going to do is get to

14  a docket control date -- December 14th at 11:30.  December 14th

15  at 11:30.  For Mr. Kanowitz's purposes, that will be the carry

16  date of the motion to dismiss.  For my purposes, it's going to

17  be an adjourned status conference.  I don't think there's

18  enough time between what you all need to do in the next few

19  days and then to then actually make that any sort of

20  substantive hearing on confirmation or disclosure statements.

21  So I'll table that.

22         But the two-pronged conversation that I think you're

23  next going to be having with Mr. Birmingham is their view on

24  dismissal if the debtor opts to go that route, or if not,

25  whether or not the U.S. Trustee's Office would consent to a



BRICKCHUIRCH ENTERPRISES, INC.

1    combined hearing on plan and disclosure statement because

2    there's probably stuff to do, just not a whole lot of stuff to

3    do at that hopeful juncture.

4            So in that kind of scenario to save money and time,

5    I'm fine moving to a combined hearing on plan and disclosure

6    statement, just have that conversation with Mr. Birmingham's

7    office.  And then we'll be setting calendar for all of those

8    things come December 14th.  All right?  So that'll be December

9    14th at 11:30.

10           Ms. Simmons, Mr. Kanowitz, you all can flip a coin.

11   Somebody draft a letter of the case status and dismiss the

12   motion filed to then.

13           Anything else that you can think of physically

14   gathered here today in person that we ought to address?

15           MR. KANOWITZ:  No, Your Honor.  But we do again for

16   the parties do thank you.  Very helpful today.

17           THE COURT:  Well, we just provided you a meeting

18   space.  You all did the hard part.  So with the Court's

19   appreciation, I know this has been going on for quite some time

20   and particularly to Ms. Blouin and Mr. Cohen.  I know that you

21   all have some very deep disagreements about what happened and

22   why it happened and who did what to who.  And you may in the

23   elevator down or the car ride home have some second thoughts

24   about was that the right thing, am I happy about what happened,

25   you all reached a resolution that has been very hard fought and



www.escribers.net | 602-263-0885

BRICKCHUIRCH ENTERPRISES, INC.

1    a very long time coming.  From what I see in front of me, you

2    both have made concessions neither one of you is especially

3    happy about.

4            But the import I think today with is now this chapter,

5    no pun intended, can be closed, and you all can move back and

6    on to doing other more productive things because -- and I

7    suggest to the principals.  You're not going to make any money

8    sitting in the courtroom.  They're making money sitting in the

9    courtroom, and that's okay.  Everybody needs to make a living.

10   But the clients don't make any money sitting in the courtroom.

11   And I'm sure there are more fun and valuable things you all can

12   do with your time other than come back and listen to me drone

13   on and on.

14           So congratulations to you all for getting this work

15   done.  It took a lot of work from your professionals to get

16   there as well.  And so the Court's appreciation to them for

17   what they have done.

18           Now, please just go fall into the end zone and close

19   this thing, okay?  All right.

20           Anything else then for this afternoon on Brickchurch?

21           MS. SIMMONS:  NO, Your Honor.  The debtor has nothing

22   further.

23           THE COURT:  All right.  Very well.  Well, go forth and

24   get the money and make it so.  Again, the Court appreciations,

25   best wishes.  And the Court will now be in recess.  And we'll



BRICKCHUIRCH ENTERPRISES, INC.

1    go off the record.

2            IN UNISON:  Thank you, Your Honor.

3        (Whereupon these proceedings were concluded at 1:45 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1

 2                         I N D E X

 3   WITNESS              EXAMINATION BY       PAGE

 4   Charles Andros       Mr. Isbell            26

 5

 6                       E X H I B I T S

 7   DEBTOR'S        DESCRIPTION          MARKED  ADMITTED

 8   D               Affidavit of Louise          25

 9                   Blouin

10   A through J     Debtor's Exhibits            28

11

12   RULINGS:                              PAGE   LINE

13   DIP Financing is approved             29     18

14

15

16

17

18

19

20

21

22

23

24

25
```



1

2                          C E R T I F I C A T I O N

3

4      I, Michael Drake, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7

8      

9      _____

10     Michael Drake (CER-513, CET-513)

11     AAERT Certified Electronic Transcriber

12

13     eScribers

14     7227 North 16th Street, Suite #207

15     Phoenix, AZ 85020

16

17     Date:  October 27, 2022

18

19

20

21

22

23

24

25

**A**

A-L-L-E-R-D...
6:3
a.m 15:23
AAERT 39:11
Aberdeen 17:19
abide 10:19
11:10
ability 29:18
30:18,19
able 32:9,11
abundantly
13:14
accomplish
16:11
account 33:4
accrual 32:7,8
accuracy 12:21
accurate 26:21
26:24 27:7
39:5
actual 27:9
adage 12:16
add 8:25
add-ons 9:2
additional 30:6
address 9:25
13:6 32:20
35:14
addressed 33:7
addressing 13:8
13:11
adequate 9:20
11:19 13:19
29:5
adjourned
34:17
administrative
16:18
admission 13:24
27:23 28:20
admit 28:17
ADMITTED
38:7
admitting 24:25
advance 6:20
31:20
advances 11:14

advancing 31:18
Advisors 25:19
28:15
affidavit 20:12
20:13,25 21:5
22:10,11,14
24:3,20,22
25:1,6,25 26:2
26:5 38:8
affidavits 21:1
28:1,6
affirm 21:22
22:14
affirmation 22:5
afternoon 16:1
28:24 36:20
age-old 12:16
agent 9:22 12:6
ago 26:20
agree 8:15,20,23
8:23 14:9,16
14:22 19:11,13
21:15
agreed 8:22 21:9
21:16 27:1
agreement 11:3
ahead 22:19
23:13 33:5
ALAN 1:22
Allerding 5:20
5:21,25 6:3,5
26:10
ALLERING 6:3
allocated 19:24
20:6
allowable 14:19
allowed 10:17
allows 31:24,25
alluding 9:21
amenable 9:4
12:18,19
Americas 3:5
amount 8:14,16
10:8,15,16,18
11:6 14:4 15:3
15:4 19:15,17
amounts 10:11
10:12,21,23

14:23
Andros 5:25
20:11,22 22:2
23:14 25:19,20
26:1,3,7,19,23
27:18 30:1
33:23 38:4
Andros's 22:11
announced 21:9
announcement
26:9
answer 9:13,17
anticipating
30:9
anybody 12:6
15:5 17:22
22:16
anybody's 23:2
anyway 12:7
31:20 32:19
33:23
appeal 12:9
appear 8:15
appearance
6:11,25
appearances 5:4
applicable 10:24
application 6:13
appreciate 16:3
appreciation
35:19 36:16
appreciations
36:24
appropriate
9:25 30:15,24
approve 12:25
14:2 27:3
28:14 29:23
approved 8:13
9:6 11:13 13:3
33:21 38:13
approves 11:3
approving 11:17
approximately
19:23
argument 29:19
arm's 30:3
asked 11:18

asking 10:18
14:2,11,15,25
27:3 28:13
asserted 10:8
asset 30:5
assign 17:7
assignments
17:10,14 18:18
32:22
assuming 22:22
assumption
23:12
attest 20:12
attesting 21:1
attorneys 3:4,13
4:3 16:2
attorneys' 10:8
audio 9:14 25:12
authority 2:2
30:21 32:11
authorize 30:25
available 28:7,8
Avenue 3:5
award 10:18
awards 11:9
aware 10:4
AZ 2:23 39:15

**B**

B 1:21 38:6
back 8:1 14:12
15:10,16,18,24
23:3 27:22
33:6 36:5,12
bake 17:1
baked 33:20
banking 13:1
bankruptcy 1:2
1:12,23 12:10
12:13 13:23
23:4
based 22:23
basis 8:20
Baypoint 5:21
6:1 17:15
18:11 19:6,10
20:11,22 25:19
27:10 28:15

29:23 30:1
32:17,21
beginning 17:18
behalf 5:7,12,21
9:16 10:2
20:11
belief 22:15
24:23 26:6
believe 16:12
18:22
bells 30:11
bench 12:3,4
benefit 9:23
17:6 28:16
best 22:15 23:4
24:23 26:5
28:7,8,11
34:11 36:25
better 32:15
big 17:4
big-picture
16:21
binding 33:9
Birmingham
4:7 5:17,18
25:9,13,13
27:16,17 29:15
29:16 34:23
Birmingham's
35:6
bit 19:25
Blouin 4:11 5:8
5:8,10 13:11
20:22 21:12,18
23:14,15,18,19
23:24 24:3,10
24:16,19,21,24
25:1,4,16,17
35:20 38:9
Blouin's 22:10
board 33:20
bond 22:21
book 24:5,7,8,12
25:24
Boone 3:12 5:12
bore 16:4
borrow 32:16
bottom 16:22

box 23:24
Brad 6:14
Brett 5:14
Brickchurch 1:7
4:11 5:2,7 10:3
15:24 17:19
18:7 36:20
bring 15:18,19
23:13,15 30:17
broker 20:9
28:9
brought 9:25
build 17:15
burdening
10:14
business 18:22
22:22 28:5
29:21 30:3

**C**

C 3:2 5:1 39:2,2
calendar 35:7
call 25:18
calling 6:10
Camisha 3:9 5:6
10:2
Capital 5:21
Capone 5:14
car 35:23
card 13:4
carried 27:24
carry 23:4,11
34:15
case 1:7 5:2 13:1
13:2,10,25
15:1 16:5 18:6
28:11 32:13
35:11
categories 12:12
12:13 14:19
category 9:22
Central 1:14 4:5
CER-513 39:10
certain 16:8
18:23 27:23
certainly 7:13
12:14 29:9
33:13

Certified 39:11
certify 39:4
CET-513 39:10
cetera 9:3 16:15
champagne 34:3
chapter 36:4
Charles 5:25
20:11 25:19
38:4
circling 33:6
claim 8:21 10:17
17:6,9
claims 17:11
19:23 20:3
28:11 29:5
clarification
9:18
clarify 29:12
clarity 18:25
clear 13:14
clearly 11:21
16:17 30:19
33:17
CLERK 5:2,9
client 21:20
26:16
clients 16:2
36:10
close 23:3 36:18
closed 36:5
closes 18:15
closing 16:24,25
17:7 18:19
32:9,11
Cohen 21:21,22
21:25 33:2
35:20
coin 35:10
collateral 33:15
combine 13:24
combined 35:1,5
come 6:8 8:10
15:10,16 19:17
22:13 33:1
35:8 36:12
comes 31:19
comfort 32:2,25
comfortable

30:22 31:24
32:25 33:2
coming 17:21
36:1
communicated
13:12 14:3
communicatio...
7:25
complete 11:19
completed 15:15
compound
13:24 14:1
concerning 9:18
concessions 36:2
concluded 37:3
concur 20:18
conditions 21:23
31:11
conference
34:17
confirm 18:3
34:5,6
confirmation
21:8 32:12
34:20
confirmed 32:13
confirming
34:10
congratulations
36:14
conjunction
19:6
consent 33:16
34:25
consist 28:22
consult 34:11
consummate
31:25
contained 22:14
26:4
containment
31:11
control 34:14
conversation
11:14,15 12:23
34:22 35:6
convince 18:21
correct 7:19

16:22 19:2
22:15 24:23,24
26:5 27:8,10
27:11 29:10
cost-effective
14:24
counsel 6:7,14
16:21 19:11
29:25
County 17:2
couple 16:12
course 18:15
19:8 20:21
23:9 28:9,11
32:10,10
court 1:2,12 5:4
5:10,14,15,19
6:2,4,6,10,17
6:19,21,22
7:10,22 8:4,12
8:19 9:7,12,23
10:1,6,7,18,19
10:20 11:1,3,9
11:10,11,17,24
12:8,12,13
13:6,7 14:6,17
14:22 15:8,13
15:16,24 16:19
18:13,21,25
19:3 20:17
21:6,19 22:1
23:7,11,17,19
24:2,3,7,12,14
24:18,20,22,25
24:25 25:3,7
25:11,15,20,24
26:2,4,8,12,19
27:3,13,16,18
27:21 28:14,16
28:20 29:8,14
29:22,22 30:1
30:6 31:4,16
32:4,14 34:1
34:13 35:17
36:23,24,25
Court's 10:24
32:11 35:18
36:16

courtroom 6:21
6:24 36:8,9,10
cover 8:11
COVID 6:19
Credit 2:2
creditor 11:20
13:23
creditors 28:12
creditors' 28:11
cross 22:16,16
25:7 26:15
crossed 10:9
crux 13:20
cryptic 8:5
11:12
Curtis 5:23
cushion 19:25
20:1

**D**

D 5:1 22:10,11
24:14,15,25
25:2 38:2,8
date 17:18 23:5
25:2 28:19
34:14,16 39:17
dated 24:4
David 22:12
24:15,15
day 7:24 32:21
days 14:14
16:12 30:13
34:19
deadline 9:7
deal 16:18 18:15
19:5 20:8 23:2
28:8 30:24
debtor 1:8 3:4
5:5,7 6:12 7:17
8:15,20 10:2
11:2,8,9 13:13
13:17 16:5,12
17:19,24 18:2
18:12,21 19:21
19:21 20:14,23
21:10 22:10
23:9 25:18
27:1,25 28:6,7

29:6,18,20
30:2,18,25
31:25 32:6
34:4,6,10,24
36:21
**debtor's** 10:5,16
16:21 17:16
21:8 24:9 25:2
28:17,18,19,23
38:7,10
**debtor-in-pos...**
30:7,10
**debtors** 8:17
**December** 23:5
34:14,14 35:8
35:8
**decide** 11:24
12:12,13 14:23
**decided** 14:18
15:2,2 34:9
**decision** 14:16
**decisions** 14:20
**deep** 35:11
**definitive** 16:7
16:23 21:24
**demanded** 14:7
**DEPARTME...**
4:2
**deputy** 6:21
**describe** 16:9
**described** 21:23
**DESCRIPTI...**
38:7
**determination**
11:6,18
**difference** 8:17
**different** 18:16
31:7
**diligence** 20:14
27:6
**Dip** 5:22 9:1,18
12:25 13:17,17
13:19 14:2
16:13,15 17:6
17:8,9,10,21
18:14,16,22
20:15 23:3
27:25 28:14,15

29:3,12 31:1
31:10,11,12,18
31:20,25 32:18
33:6,15,16,22
33:25 38:13
**direct** 15:7 18:1
21:4 22:8
26:15,15,17
**direction** 30:22
**directions** 16:4
**directs** 31:24
**disagreements**
35:21
**disclosed** 7:5,10
**disclosure** 34:20
35:1,5
**discussion** 7:23
14:2
**discussions** 15:7
**dismiss** 13:1
18:6 22:22
23:10 27:23
28:21 34:16
35:11
**dismissal** 34:8
34:24
**dismissed** 13:2
**dispute** 8:8,9,21
12:14 15:1
**disputed** 8:23,24
9:8,9,21 10:11
11:5,13,17
12:22 14:17
**DISTRICT** 1:3
**docket** 8:7 24:4
34:14
**document** 20:7
24:14
**documentation**
16:8,23 21:24
**documenting**
27:10
**documents** 16:6
17:1,5,8,11,14
17:15 19:13
20:2
**doing** 16:11
20:14 32:25

33:14 36:6
**dollar** 8:12
**dollars** 8:22,25
9:2 12:22 15:4
16:24 19:1,25
20:8 27:5
**draft** 33:8 35:11
**Drake** 2:20 39:4
39:10
**drone** 36:12
**Duane** 6:13,14
**duke** 9:9
**dust** 34:3

_____ E _____

**E** 1:21,21 3:2,2
5:1,1 22:11,12
25:24 38:2,6
39:2
**earlier** 13:25
**earning** 12:7
**easier** 9:12,13
**EASTERN** 1:3
**ECF** 24:4
**ECRO** 1:25
**edge** 12:24
**Edward** 22:11
22:12 25:25
**effective** 17:25
18:1 33:17
**efficient** 14:24
**eight** 14:18
**either** 14:17
25:7
**ELECTORNIC**
1:25
**Electronic** 39:11
**elevator** 35:23
**elicited** 28:24
**Em** 13:4
**endeavor** 8:4
**enforce** 33:12
**Enforceability**
33:24
**enter** 11:2 17:17
31:16 33:17
**entered** 31:10
31:15

**Enterprise** 5:3
**Enterprises** 1:7
4:11 5:7 10:3
15:25
**entire** 16:5
**entitled** 10:6,10
10:12,15,22,25
**entry** 33:22
**eScribers** 2:21
39:13
**escrow** 9:22
11:23,24 12:5
12:6 13:21
14:11
**escrowed** 9:22
10:17,22 11:5
11:14,25
**especially** 36:2
**ESQ** 3:9,18 4:7
**establish** 19:20
**estate** 10:14
17:16 19:18,25
20:1,4,9 28:12
30:5
**et** 9:3 16:15
**everybody**
15:17 36:9
**evidence** 25:2
28:18
**evidentiary** 19:8
20:20 21:7
22:20 27:25
**exactly** 13:10
**EXAMINATI...**
26:17 38:3
**example** 31:10
**executed** 24:20
**exercise** 28:5
30:2
**exhibit** 20:21
21:2 22:9,10
22:11 24:5,7,8
24:12,25 25:2
25:24 28:19
**exhibits** 27:23
28:17,18,21,23
38:10
**existence** 32:18

**expenses** 27:6
**extent** 10:11,13
18:2
**extinguish** 32:10

_____ F _____

**F** 1:21 39:2
**faces** 15:19
**factual** 16:14
**failure** 11:19
**faith** 30:4
**fall** 36:18
**fan** 24:17
**fancy** 31:6
**far** 19:12,12,13
31:19
**fashion** 22:19
**fast** 31:14
**faster** 17:3
**favorable** 13:13
**Federal** 1:13 4:4
**fee** 9:3 26:24
**feel** 31:23 32:24
**fees** 10:8 20:5
27:6,9
**fifteen** 15:9
**fifty-two** 8:25
9:2 19:18,18
20:4 28:10,10
**fifty-two-milli...**
8:11
**fight** 14:9
**fighting** 14:10
**figure** 11:23
12:17,21 14:8
34:7,11
**file** 18:2,5 34:5
**filed** 6:12 24:4
35:12
**filter** 23:23
**finance** 9:3
**financials** 11:4
**financing** 11:3
13:3 19:7 22:3
27:25 28:4,7,9
28:14 29:23
30:3,8,10
38:13

| | | | | |
|---|---|---|---|---|
| **find** 28:8 30:2 | **general** 13:16 | **Greg** 5:13 | **Honor** 5:6,11,20 | 26:2 |
| **findings** 30:6 | **Geoff** 20:23 | **guarantees** | 5:24 6:5,7,12 | **information** 7:2 |
| **fine** 31:4 32:14 | **getting** 14:21 | 33:16 | 6:15 7:19,20 | 8:19 21:14 |
| 32:17,21 35:5 | 36:14 | **guarantors** 16:6 | 8:1 9:11,17 | 26:20 |
| **first** 6:19 8:10 | **Gifkins** 20:23,25 | 17:22 18:11 | 10:4 11:8 13:6 | **informed** 26:19 |
| 16:2 19:11 | 21:2 | **guess** 31:23 34:2 | 13:22 15:6,12 | **intended** 36:5 |
| 23:14,14,16 | **Gin** 17:20 | | 15:13 16:1,14 | **intention** 32:8 |
| 31:19 | **give** 13:19 32:2 | **H** | 17:23 19:4,9 | **interest** 11:12 |
| **five-pager** 32:20 | **given** 33:13 | **H** 38:6 | 20:18 21:4 | 12:7 19:20,21 |
| **fixed** 9:7 | **giving** 16:14 | **hand** 23:25 | 22:24 23:9,15 | 32:7,9 |
| **flip** 35:10 | 17:12 | 25:22 | 24:6 25:5,9,10 | **interests** 28:12 |
| **Floor** 3:15 | **global** 21:14 | **handle** 26:13 | 25:18 27:12,14 | **International** |
| **follow-up** 26:8 | **go** 6:18 13:16 | **happen** 12:21 | 27:22 28:4,10 | 20:24 |
| **foreclosure** 10:9 | 15:22 18:8 | 16:25 17:5 | 28:13 29:1,9 | **interrupted** |
| 10:10 14:4 | 19:8,18 22:19 | 18:11 19:4 | 29:13 30:14 | 22:6 |
| **foregoing** 39:4 | 23:13 31:16,19 | 30:9 31:22 | 31:14,24 32:5 | **invite** 12:17 |
| **form** 16:17 | 33:5 34:24 | 33:3,7,19 | 33:24 34:9 | **Isbell** 5:22 19:9 |
| **forth** 8:1 36:23 | 36:18,23 37:1 | **happened** 13:10 | 35:15 36:21 | 19:9 26:11,11 |
| **forward** 11:10 | **God** 19:5 | 35:21,22,24 | 37:2 | 26:12,14,18 |
| 16:13 17:3 | **goes** 13:20 | **happier** 33:22 | **Honor's** 18:3 | 27:12 29:8,9 |
| 22:14 23:5 | **going** 10:7,19 | **happy** 16:20 | 30:21 | 33:22,24 38:4 |
| 27:24 29:6 | 11:12,21,24 | 35:24 36:3 | **hope** 16:24 | **Islip** 1:14 4:5 |
| 32:3 34:7,10 | 12:15,21,25 | **hard** 35:18,25 | **hopeful** 35:3 | **issue** 7:1,2 9:24 |
| 34:12 | 14:13,20,22 | **Harding** 6:2 | **hopefully** 17:3 | 13:23 29:17 |
| **fought** 35:25 | 15:8,14,17 | **Haynes** 3:12 | 23:6 34:2 | **issued** 17:3 |
| **four** 30:7 | 16:11,25 17:5 | 5:12 | **housecleaning** | **issues** 6:18 7:15 |
| **four-plus** 12:4 | 17:7,11,13,17 | **health** 6:19 7:1 | 16:8 | 12:10,10 17:2 |
| **fourteen** 14:14 | 17:19,24 18:2 | 7:1,9 | **housekeeping** | 29:17 30:18 |
| **fourteen-plus** | 18:8,10,16,19 | **hear** 22:21 | 6:18 30:17 | **it'd** 14:12 |
| 12:2 | 19:6,17 20:4 | 24:10,16 | | **it'll** 9:13 |
| **front** 36:1 | 20:13 22:2,24 | **heard** 21:12 | **I** | **item** 24:4 |
| **frowning** 15:19 | 23:1,11 27:5 | **hearing** 9:1 | **identifying** | **iterated** 30:10 |
| **fruit** 16:4 | 28:16,20 29:19 | 11:12,16 12:19 | 20:14 | |
| **full** 13:15 14:4 | 30:10 31:20,22 | 16:13 19:8 | **II** 5:22 | **J** |
| **fully** 7:11 | 32:18 33:1,18 | 28:2,22 32:6 | **imbed** 18:3 | **J** 28:17,19,23 |
| **fun** 33:11,12 | 34:12,13,16,23 | 34:3,20 35:1,5 | **implement** | 38:10 |
| 36:11 | 35:19 36:7 | **hearings** 6:20 | 30:12 | **JBG's** 9:11 |
| **funded** 8:14 | **good** 5:6,8,11,17 | **hedging** 13:2 | **import** 36:4 | **JFB** 19:12 |
| **funds** 11:5,23,24 | 5:20,24 6:15 | **held** 9:8,22 | **including** 17:11 | **JGB** 3:13 5:10 |
| 11:25 26:20 | 6:15,17 12:5 | **help** 15:5,5 | **incurred** 27:9 | 5:12,14 7:17 |
| **further** 9:23 | 16:1 19:4 30:4 | **helpful** 35:16 | **indefeasibly** | 8:9,9,14,15,20 |
| 11:15 27:12 | 33:25 | **HEPA** 23:23 | 13:15 | 8:20 9:16 10:5 |
| 36:22 | **good-faith** 20:15 | **Hine** 5:21 | **indemnity** 9:20 | 16:6,6,23 17:7 |
| | **granted** 29:3 | **hit** 33:2 | 10:13,14 13:21 | 17:12 18:11,17 |
| **G** | **granting** 16:14 | **hits** 33:4 | **indicate** 7:7 | 19:19 21:11,15 |
| **G** 5:1 | 30:23 | **Hold** 13:4 | **indicated** 6:22 | 25:7 28:21 |
| **gathered** 8:6,6 | **great** 14:12 | **home** 35:23 | **indication** 8:16 | 32:9,19,22 |
| 35:14 | 15:21 | **HON** 1:22 | **indiscernible** | **JGB's** 9:20 |

13:12,14 29:4
**John** 5:20,22
  14:7 19:9
**Judge** 1:23 5:17
  25:14 27:17
  29:16,21
**judgment** 10:9
  14:4 18:22
  28:5 29:21
  30:3
**juncture** 35:3
**jurisdiction**
  33:13
**JUSTICE** 4:2

**K**
**Kanowitz** 3:18
  5:11,12 7:19
  9:11,15,15
  13:6,8 15:6,12
  15:20,25 16:1
  16:20 18:14
  19:2 21:20,21
  22:24,25 25:10
  27:13,14 28:25
  29:1 30:14
  31:9,23 35:10
  35:15
**Kanowitz's**
  34:15
**keep** 7:9,11,13
**kind** 35:4
**know** 14:6 15:14
  21:4 25:11
  26:14 32:2
  33:20 34:5
  35:19,20
**knowledge**
  22:15 24:23
  26:5
**Kramer** 5:13

**L**
**L** 3:9
**Lane** 17:20
**language** 18:20
**law** 10:24 12:10
**lawyer** 15:9
**learned** 12:2

**leave** 7:6 18:21
  19:24
**leaving** 34:2
**lectern** 9:14
**legal** 3:3 19:24
  20:7
**lender** 5:22 8:11
  9:1 16:15 17:6
  17:8,9,10 18:8
  18:16 28:15
  31:2,3
**lender's** 9:3
**length** 30:4
**let's** 22:19 23:13
**letter** 8:8 35:11
**letters** 8:17
**level** 14:4
**liability** 12:10
  12:11
**lien** 13:18 30:5
**liens** 18:16 23:3
  29:3,4,6 32:10
  32:17,22,23
**life** 13:16
**likewise** 21:22
**line** 12:1 16:22
  24:14 38:12
**line-item** 21:13
**list** 20:21 22:9
**listed** 6:25
**listen** 36:12
**lists** 21:3
**litigation** 6:13
**little** 19:24
**living** 36:9
**LLC** 2:21
**LLP** 3:12
**loan** 8:13 9:2,6
  11:5,13,17
  16:6 17:5,8,10
  17:14,18 19:13
  19:15 20:1,6
  20:14 28:9
  29:19
**long** 11:1 36:1
**looking** 13:24
  33:1
**looks** 19:8,15,16

19:19,22
**lot** 7:16,16 12:5
  12:7,15 23:20
  35:2 36:15
**Louise** 4:11 5:8
  25:1 38:8
**LP** 5:22

**M**
**machine** 24:11
**Main** 1:7
**making** 9:19
  14:19 36:8
**mandatory** 20:2
**manner** 14:24
**MARKED** 38:7
**marketing** 21:1
**mask** 7:8,9,11
**masks** 7:6
**materials** 20:13
**math** 8:24
**matter** 1:6 7:10
  21:23
**mean** 7:16 12:14
  14:12 15:4
  30:17
**meaning** 17:12
**meaningful** 7:23
  12:23
**mechanical** 34:1
**mechanically**
  14:16,22 31:4
  32:15 33:6,19
**mechanics** 29:3
  30:16
**mechanism**
  12:17
**mechanisms**
  9:19
**meeting** 35:17
**Messenger** 6:14
  6:15
**met** 28:4
**Michael** 2:20
  5:13 39:4,10
**million** 8:22,25
  9:2 10:5,13
  15:4 16:24

19:17,18,19,19
  19:20,25 20:4
  20:5,5,10
  28:10,10
**Mills** 15:16
**minutes** 11:22
  12:23 14:12
  15:9,10 26:20
**misread** 14:18
**money** 8:10 12:5
  12:17 15:3
  32:16 33:4
  35:4 36:7,8,10
  36:24
**monthly** 19:21
**months** 28:8
**moots** 23:12
**Morgan** 20:7
**morning** 5:6,8
  5:11,17,20,24
  6:15,17 7:15
**Morris** 6:13,14
**motion** 2:2 9:18
  13:1 18:1
  22:21,22 23:10
  27:23 28:21
  30:18,19,23
  31:7 32:5
  34:16 35:12
**motions** 30:8
**move** 11:10
  16:13 17:3
  18:5 22:20
  31:13 34:6,7
  34:10 36:5
**moving** 19:16
  20:20 27:24
  29:6 32:2 35:5

**N**
**N** 3:2 5:1 38:2
  39:2
**name** 5:9 7:2
  25:11,25
**names** 6:22
**necessary** 30:4
  30:11
**need** 7:5 13:21

13:21,22 16:9
  17:13 18:17,23
  27:22 29:12
  31:10 33:12
  34:11,18
**needs** 15:1 33:6
  33:19 36:9
**negotiated** 30:3
**neither** 36:2
**Nest** 20:23
**never** 23:6
**new** 1:3,14 3:7
  3:16 18:8 20:9
  31:2,6
**nine** 14:19
**nondebtor**
  13:18 14:3
  17:20 18:12
  20:6 33:8
**nondebtors**
  33:11,14
**North** 2:22
  39:14
**notebooks** 7:16
**notify** 6:20
**November**
  16:25 17:1
**number** 5:2 8:23
  8:24 14:13
  17:4
**numbers** 8:24
  19:6,19 20:12
  20:19 21:13
**numerous** 21:1
**nutshell** 18:10
**NY** 3:7,16 4:5

**O**
**o** 1:21 5:1 34:13
  39:2
**objection** 13:9
  18:15,20 29:2
  29:21
**Obtain** 2:2
**obvious** 23:13
**obviously** 9:17
  16:7,12,21
  17:19 18:5,7

29:3
**October** 1:16
24:4 39:17
**offer** 13:13
**offered** 14:6
**office** 4:3 5:15
5:18 25:12,13
34:25 35:7
**Oh** 7:24 26:12
**okay** 10:1 15:15
15:19 18:13
19:3,3 20:17
23:11 24:16
25:11 27:12
29:6 31:7
33:18 34:13
36:9,19
**old** 12:16 31:3
**on-the-clock**
15:10
**once** 17:16,16
18:6 20:2
**ongoing** 8:4
**open** 24:12
**operations@e...**
2:25
**opportunity**
22:18
**option** 34:12
**opts** 34:24
**order** 9:18,23
10:10,19 11:10
16:17 18:4
20:16 29:12
30:23,24 31:1
31:7,10,11,12
31:18,19,20,21
31:25 32:7,16
32:18 33:6,9
33:10,11,12,15
33:16,22,25
**orders** 12:20
31:5,6,14,21
33:5
**origination** 20:5
26:24
**ought** 35:14
**outside** 29:20

30:20
**oversecured**
13:23
**owed** 8:8,20
11:18

_____
**P**
**P** 3:2,2 5:1
**p.m** 15:23
**package** 19:7
31:2
**PAGE** 38:3,12
**paid** 8:14 9:6,6
9:10 10:11
11:4,7,25
13:15 16:23,24
17:7,17 18:18
20:3 29:4,11
32:19
**parade** 23:2
**part** 14:8,9 21:7
22:6 26:13
35:18
**particularly**
35:20
**parties** 3:13
6:20 8:5 16:2
17:17,18 18:8
31:2 32:2 33:9
35:16
**parties-in-inte...**
5:19
**Partners** 5:22
**parts** 19:16
**path** 13:25
**patience** 16:3
**pay** 30:19,19,19
31:3,25 32:6,9
32:11,17
**paydowns** 20:2
**paying** 30:22
32:22
**payment** 8:3
9:18 31:1
**payments** 19:22
**payoff** 31:12
**payouts** 10:20
**pending** 11:6,18

12:9 31:7
**people** 6:24
**percent** 12:21
12:25
**period** 13:15
**permits** 31:24
**person** 9:8 35:14
**personal** 7:1
**personnel** 15:14
**perspective**
13:12,18
**Pfiffer** 5:13
**ph** 5:13,23
**Phoenix** 2:23
39:15
**physically** 35:13
**place** 13:22 31:6
**plan** 18:2,4,5
30:20 32:12,12
34:5,5,6 35:1,5
**planned** 6:23
**plans** 13:4 34:10
**Plaza** 1:13 3:14
4:4
**pleadings** 10:4
29:24
**please** 5:4 36:18
**pleased** 16:4
**pledging** 33:15
**plus** 9:2 10:5
**PM** 37:3
**podium** 6:8
**point** 7:20 20:1
33:3 34:6
**portion** 9:6,9
11:5,13,17
14:17 20:20
22:20 27:25
**position** 10:5,16
10:21,24 13:14
**possibility** 8:2
**possible** 31:14
**potential** 9:24
11:14
**potentially**
29:18
**predicate** 16:14
**prefer** 11:8

23:10
**prepared** 11:2
15:6 29:23
**present** 3:2 4:10
6:23 7:4,7
**presented** 28:1,6
**presenting** 22:4
**pretty** 8:6 9:5
12:20
**previously** 9:7
**primary** 30:5,5
**prime** 29:10
**principal** 5:14
20:23 21:8,10
21:11
**principals** 36:7
**prior** 29:10
**probably** 12:6
12:15 16:9
23:19 26:15
35:2
**problem** 9:1
**procedure** 31:5
**proceed** 18:22
22:19 23:1
34:4
**proceedings**
7:12 10:7
21:17 37:3
39:5
**proceeds** 17:9
32:1
**process** 8:1
20:13 21:2,4
29:7 30:20
**processes** 9:19
**productive** 36:6
**professional**
27:6
**professionals**
36:15
**proofs** 17:6,9,11
**proper** 16:14
30:2 31:11
**properties** 17:21
**property** 10:11
13:19 20:7
**proposed** 5:22

8:10 9:1,2
16:15 17:6
28:4,14,14
29:11,23
**prospects** 13:2
**protection** 9:20
11:19 13:19
29:5
**protections**
16:15
**protocol** 8:13
9:5
**protocols** 6:19
**provided** 18:15
35:17
**prudent** 29:21
**pun** 36:5
**pure** 12:9,10
**purposes** 33:21
34:15,16
**pursuant** 10:23
32:5
**put** 7:2 13:21
18:23 22:23
30:12,18 31:13

_____
**Q**
**question** 9:4,13
34:1
**questioning**
28:2
**questions** 25:3
25:14 27:14,17
33:13
**quick** 31:16
**quickly** 9:8 15:2
**quite** 35:19

_____
**R**
**R** 1:21 3:2 5:1
39:2
**rain** 23:2
**raise** 23:24
25:22 31:9
**reached** 32:7
35:25
**real** 20:9
**really** 15:4,5,9
29:17

| | | | | |
|---|---|---|---|---|
| **realm** 15:1 | **requested** 32:6 | **S** | **shortly** 29:13 | 25:21 |
| **reason** 23:13 | **require** 6:20 | **S** 1:22 3:2 5:1 | **shot** 14:7 | **standing** 23:22 |
| 31:9 | **requirements** | 38:6 | **side** 12:3,4 | 25:21 |
| **reasons** 8:7 | 20:15 28:3 | **safeguarded** | **sign** 17:24 31:17 | **Stanley** 20:7 |
| 28:13 | **requiring** 6:7 | 9:19 | 33:10,16,17 | **starting** 5:4 |
| **receipt** 24:3 | **requisite** 30:6 | **safely** 9:8 | **signed** 33:21 | **state** 12:8,10,12 |
| **receive** 32:1 | **reserve** 9:20 | **safety** 6:19 7:1,2 | **signing** 33:15,19 | 18:20 25:11 |
| **received** 6:22 | 10:13,15 13:21 | 7:10 | **Simmons** 3:3,9 | **stated** 10:6 |
| 25:1 28:18 | 19:20 | **sale** 21:2 | 5:6,7 6:7,12 | 21:15 28:22 |
| **recess** 15:8,22 | **resolution** 16:5 | **satisfy** 20:15 | 7:20,25 10:1,2 | **statement** 35:1,6 |
| 15:23 36:25 | 21:22 30:24 | 28:10 | 10:2 11:8 | **statements** |
| **recognize** 12:8,9 | 35:25 | **save** 35:4 | 15:25 19:3,4 | 22:14 24:22 |
| 15:1 | **respect** 30:21 | **saying** 11:1,2 | 20:18 21:6,6 | 26:4 29:25 |
| **record** 7:3 9:15 | **rest** 12:24 25:5 | 13:20 14:3 | 21:12 22:6 | 34:20 |
| 15:22,24 16:9 | **resting** 28:1 | **says** 12:12 32:16 | 23:7,9,15,18 | **States** 1:2,12 4:2 |
| 16:16 18:24 | **retention** 6:13 | **scenario** 12:11 | 24:5,6,8,13 | 4:3 5:16,18 |
| 21:2,8,9,16,24 | **retire** 30:4 | 35:4 | 25:4,5,18 26:8 | 25:8,14 |
| 22:23,25 26:9 | **return** 25:16 | **searching** 28:8 | 27:21,22 32:4 | **status** 6:22 7:1,5 |
| 28:16,22,23 | 27:18 | **seat** 25:16 27:19 | 32:5 34:9 | 7:7 34:17 |
| 29:25 30:12 | **Richard** 3:18 | **second** 35:23 | 35:10 36:21 | 35:11 |
| 32:1 37:1 39:5 | 5:11 9:15 | **Section** 2:2 28:3 | **Simmons'** 9:13 | **staying** 6:8 |
| **recording** 1:25 | 22:25 | **secured** 3:13 | **simply** 11:16 | **stop** 32:7,8 |
| 20:8 | **ride** 35:23 | 8:21 10:17 | **sir** 26:7 | **story** 13:15 |
| **recourse** 17:12 | **right** 5:15 6:10 | 11:20 | **sit** 24:2 | **Street** 2:22 |
| 19:12 | 6:18 8:4,19 | **security** 8:11 | **sitting** 12:3,4,5 | 39:14 |
| **recover** 10:25 | 14:8,15 15:8 | **see** 6:15 7:15 | 15:3 36:8,8,10 | **structure** 10:20 |
| **referee** 10:7,23 | 15:20 16:19 | 8:12 11:23 | **six-month** 19:20 | **stuff** 16:18 |
| **regarding** 21:13 | 18:25 19:3 | 12:11,24 14:21 | **sleep** 32:15 | 33:11,14 35:2 |
| 21:14 | 21:19 22:1,8 | 15:11,18 25:25 | **smiles** 7:16 | 35:2 |
| **reinstate** 20:6 | 23:7,17,21,24 | 33:21 36:1 | **smiling** 15:17 | **subject** 9:17 |
| **related** 26:9 | 24:2 25:15,22 | **Seekers** 20:23 | **somebody** 33:1 | 16:7,23 17:7 |
| **relatively** 15:2 | 27:18 29:8,14 | **sees** 15:18 33:1 | 35:11 | 19:16 20:1 |
| **release** 13:16 | 29:22,22 30:16 | **sense** 8:10 18:18 | **soon** 11:4 | 21:24 29:2,4 |
| 17:14,18,24 | 35:8,24 36:19 | **separate** 18:8 | **sorry** 21:6 22:25 | **submit** 20:25 |
| 18:3,3,7 19:12 | 36:23 | 31:21 | 24:10 26:12 | 30:10 33:5 |
| 19:13 21:15 | **river** 13:4 | **serve** 21:5 | **sort** 13:3 15:14 | **submitted** 20:12 |
| **released** 18:1 | **Rockefeller** 3:14 | **set** 8:12 29:24 | 30:7 34:19 | 20:21 22:9 |
| **releases** 14:4 | **room** 6:10 | **setting** 31:5 35:7 | **sound** 27:7 28:5 | 29:13 33:8 |
| 17:17 | **rough** 19:19 | **settled** 7:17 | **sources** 26:19,23 | **subordinate** |
| **remain** 23:22 | **roughly** 19:25 | 14:13 | **space** 35:18 | 18:17 |
| 25:21 | 20:5,7,8,10 | **settlement** 7:21 | **SPEAKER** 5:24 | **substantive** 34:2 |
| **repay** 29:18 | 26:23 27:5 | 7:23 8:2 16:21 | 7:24 | 34:20 |
| **repeat** 8:5 | **route** 34:24 | 21:9,13,14 | **special** 6:13 | **Suffolk** 17:2 |
| **repeatedly** 10:6 | **rulings** 13:22 | 22:5,23 26:10 | **specific** 19:13 | **suggest** 36:7 |
| **report** 10:7,23 | 38:12 | 30:24 32:8 | **spend** 17:25 | **suggested** 9:5 |
| 16:5 | **run** 19:6 | **settles** 34:3 | 23:20 | **Suite** 2:22 3:6 |
| **reported** 29:1 | **runs** 11:16 | **she'll** 15:17,19 | **spring** 32:18 | 39:14 |
| **reporting** 26:21 | | **sheet** 6:25 | **stand** 23:16,21 | **supposing** 22:16 |

sure 8:6,18 9:5
9:19 16:13
30:15 31:18
36:11
suspend 28:20
swear 23:22
25:21
sworn 24:1
25:23
system 9:14

**T**

T 4:11 38:6 39:2
39:2
Tab 25:24
table 34:21
take 5:4 7:8,11
7:16 11:22
12:15 13:3
14:25 22:3,7,8
30:15
taken 14:1
talk 14:15
talking 22:7
taxes 10:12
19:23 20:8
technically
30:25
telephone 3:2
tell 16:20
tells 8:24
tender 22:16
terms 6:19 7:15
10:19,24 19:7
19:15 20:20
21:16,23 27:23
27:24 28:3
31:11 32:16
testifying 22:3
testimony 21:5
21:13 22:4,8
28:1,6,23 30:1
Texas 13:4
thank 6:4,5
15:12,21 19:9
21:19 22:1
24:16 25:15,17
27:15,19,20

29:7,14 35:16
37:2
theoretically
12:14
thing 12:2 17:23
23:4 29:5
35:24 36:19
things 9:21
13:18 16:8
18:23 19:4
33:9,14 35:8
36:6,11
think 11:1 13:9
14:9 17:25
23:4 30:14
33:22 34:2,17
34:22 35:13
36:4
third-party 9:22
thirty 11:22
12:23 15:9
Thompson 5:21
thoughts 35:23
three 20:22
threshold 8:12
thumbs 15:20
15:21,21
tick-tock 15:9
ticket 17:4
till 17:1 31:18
time 7:22 8:2,6
8:14 9:5,25
11:25 12:15,16
17:25 18:17
23:20 27:15
30:15 32:12
34:18 35:4,19
36:1,12
times 7:6
title 17:3
today 11:16 16:3
21:16 27:3
29:4 30:12
32:6,11 34:10
35:14,16 36:4
tonight 32:15
top 12:3 20:4
30:7

total 19:15,17
transaction
10:20
Transcribed
2:20
Transcriber
39:11
transcript 39:4
treat 14:10
true 12:16 22:15
24:23 26:5
39:5
TRUST 1:22
Trustee 4:3 5:16
5:18 19:22
25:8,14
Trustee's 25:12
34:25
try 12:17 31:13
trying 14:8,21
16:11 31:13
Tuggal 5:23
tweak 18:20
29:11 30:23
twenty 11:22
12:23 14:12
twenty- 12:3
twenty-five-p...
32:20
two 8:12 13:18
17:21 29:11
31:5
two-pronged
34:22
type 29:5
types 9:21
typically 22:13

**U**

U.S 1:23 19:22
25:12 34:25
uncorked 34:4
understands
13:11
undisputed 8:14
8:16,20 9:6
10:17,21 11:4
12:22 30:20

UNIDENTIFI...
5:24 7:24
UNISON 37:2
United 1:2,12
4:2,3 5:15,18
25:7,14
universe 18:24
updated 29:24
updating 31:6
uses 26:23
utilized 28:9

**V**

vaccinated 6:23
7:7,11
vaccination 6:21
6:25 7:5,7
valuable 36:11
value 19:12
various 18:16
viable 12:15
video 3:2
view 34:23
viewpoint 16:10
virtually 8:7

**W**

wait 31:10
waiting 22:21
want 6:8 10:13
13:14,15,16
14:6,17 23:2
23:13,14 25:3
26:10 32:10,19
33:10,14,21
34:7
wanted 19:11
32:9
wanting 22:20
34:6
wants 6:11
10:20 13:17
16:13 34:4
way 11:1,16
15:14 18:9
we'll 12:19
15:11,13,20,21
15:22 16:18
17:15 25:5

29:12 35:7
36:25
we're 10:18,18
11:21 13:23
14:1,13,14
15:6,14 16:4
16:10,11,25
17:13,13,24
18:1,6 23:3
28:13 29:6,19
32:2 34:13
we've 13:12
19:23 32:7
week 30:13
welcome 7:9,13
11:15,22
whatnot 20:2
whistles 30:11
white 24:8
William 4:7
5:17 25:13
wires 33:1
wish 7:8,12
wishes 7:9 36:25
withdraw 23:10
29:2
withdrawing
18:14
withdrawn
22:23
witness 20:21
22:9,13 23:21
23:23 24:1
25:20,23 27:20
38:3
witnesses 20:22
work 9:14 14:25
16:17 23:7
36:14,15
worked 8:13
19:5,7 30:16
working 29:2
works 15:21
wouldn't 29:10
writing 18:7

**X**

x 1:4,10 14:13

38:2,6

**Y**

**yeah** 11:11
  14:20 15:16
  16:3 24:18
  33:18
**years** 12:2,4
**York** 1:3,14 3:7
  3:16 20:9
**you-all** 9:8

**Z**

**zone** 36:18

**0**

**1**

**1** 12:12 13:18
**1:14** 15:23
**1:45** 37:3
**10** 24:14
**10019** 3:7
**10112** 3:16
**11:30** 34:14,15
  35:9
**11:34** 1:17
**11:51** 15:23
**11712** 4:5
**12:20** 15:11,15
  15:17,22
**120-dollar** 8:17
**1330** 3:5
**146** 24:5
**14th** 34:14,14
  35:8,9
**16th** 2:22 39:14
**18** 38:13

**2**

**2.5** 10:13
**2.5-million-do...**
  10:14
**2.6** 20:5
**2022** 1:16 17:2
  24:4 39:17
**207** 2:22 39:14
**21** 24:4
**22-70914** 5:2

15:25
**22-70914-ast** 1:8
**23A** 3:6
**25** 38:8
**250,000** 19:22
  19:24
**26** 1:16 38:4
**26th** 3:15
**27** 39:17
**28** 38:10
**29** 38:13
**290** 1:13

**3**

**3.1** 19:19
**3.4** 19:25
**30** 3:14
**30,000-foot**
  16:10
**302)263-0885**
  2:24
**30th** 17:1
**310-** 20:9
**364** 2:2 28:4
**376** 17:20

**4**

**4.6** 8:22 10:5
**4.6-billion-dol...**
  14:11
**4.695** 14:20
**4.7** 15:4
**400,000** 20:7,8
  27:5
**44,500,000**
  18:25
**44.5** 16:23 17:16
  19:19
**45** 17:16
**46,452,271.51**
  8:21
**475,000** 19:23

**5**

**5.6** 20:5
**5.6-million-do...**
  26:24
**560** 4:4

**6**

**6** 12:13
**61.3** 19:17 20:10

**7**

**7** 12:13
**7227** 2:22 39:14

**8**

**8** 12:13
**85020** 2:23
  39:15

**9**

**9** 12:14
**9019** 18:1 30:25
**99.94** 12:21,25
**9th** 16:25