IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRICKCHURCH ENTERPRISES, INC., | ) | Case No. 8-22-70914-ast |
| | ) | |
| Debtor. | ) | Judge Alan S. Trust |
| _____ | ) | |

**INTERNAL REVENUE SERVICE'S RESPONSE TO
DEBTOR'S OBJECTION TO PROOF OF CLAIM (ECF NO. 205)**

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

/s/ Edward J. Murphy
EDWARD J. MURPHY
ERIC A. ASHBY II
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
Tel: 202-307-6064 / 202-514-6508
Fax: 202-514-5238
Edward.J.Murphy@usdoj.gov
Eric.A.Ashby@usdoj.gov

## TABLE OF CONTENTS

I.      Introduction……………………………………………………………...………1

II.     Background……………………………………………………………………..2

        A.      Ms. Blouin's Ownership of the Gin Lane Property…………………………2

        B.      Ms. Blouin's Control Over Brickchurch…………………………………..4

        C.      The IRS's § 6672 Assessments Against Ms. Blouin……………………...5

        D.      This Bankruptcy Case………………………………………..…………7

III.    Law and Argument……………………………………………………………10

        A.      The IRS Meets the "Excusable Neglect" Standard Because Its Late
                Filing Was Due to Debtor's Failure to Give Adequate Notice……………..……10

                1.      The Debtor Failed to Maintain Accurate Schedules……………………..11

                2.      The Debtor Did Not Put the IRS on Notice of Its Claim………………...12

                3.      The IRS's Explanation for the Late Filing Is Reasonable and
                        Allowing the Late Filing Will Not Result in Any Unfair Prejudice……..14

        B.      The Section 6672 Assessments Against Ms. Blouin Are Valid…………..……15

                1.      The IRS Satisfied the § 6672(b) Notice Requirement……………..……15

                2.      The § 6672 Assessments Are Presumptively Correct……………….....17

                3.      The Elements of § 6672 Liability Are Met……………………………....20

        C.      Brickchurch Is Ms. Blouin's Nominee and Alter Ego…………………….....21

IV.     Conclusion………………………………………………………………...……..25

The creditor Internal Revenue Service ("IRS"), by undersigned counsel, hereby responds to "Debtor's Motion Objecting to Proof of Claim Filed by Internal Revenue Service" (ECF No. 205, "Objection"), requests a hearing on the same, and further requests leave under Fed. R. Bankr. P. 9006(b)(1) to file its Proof of Claim (Claim 13-1, "Claim") after the bar date. For the reasons below, the Objection should be overruled and the Claim should be allowed as filed.

## I.    Introduction

The IRS Claim, filed on December 1, 2022, asserts that debtor Brickchurch Enterprises, Inc. ("Brickchurch"), is liable for tax debts of Louise T. Blouin as her nominee or alter ego. Ms. Blouin, a Canadian art magazine publisher who resides in Switzerland, has run U.S.-based companies. The IRS assessed trust fund recovery penalties under 26 U.S.C. § 6672 against Ms. Blouin for failing to remit withholding taxes for two companies, Louise Blouin Media, Inc. ("LBM"), and ArtNow, Inc. ("ANI"). The Claim shows unsecured priority claims in the amount of $5,685,582.56 for § 6672 liabilities assessed for 25 quarterly periods between 2010 and 2017. The liabilities are entitled to priority under 11 U.S.C. § 507(a)(8)(C). The Claim also includes a $50,000 unsecured general claim for a separate tax penalty assessed against Brickchurch.

The debtor filed the Objection on December 28, 2022, contending that the Claim should be disallowed because (1) it was filed after the October 31, 2022 bar date for proofs of claim by governmental units, (2) the IRS did not make valid § 6672 assessments against Ms. Blouin, and (3) the debtor is not Ms. Blouin's nominee. These three arguments should all be rejected.

First, the IRS satisfies the "excusable neglect" standard to permit late filing of the Claim because Brickchurch failed to give the IRS adequate notice of its claim in this bankruptcy case. The debtor's schedules merely listed the IRS as a creditor for notice purposes only, and without identifying the IRS's claim to collect Ms. Blouin's § 6672 liabilities against property titled to Brickchurch. The IRS told Brickchurch's counsel about the recording of Notices of Federal Tax

1

Lien (NFTLs) against Brickchurch as the nominee of Ms. Blouin in August 2022, but the debtor waited until November 2022—after the bar date had passed—to belatedly bring the IRS into this case by filing a motion accusing the IRS of violating the automatic stay. The IRS then worked quickly to resolve that motion and to file its Claim. Under the circumstances, the IRS's explanation for the late filing is reasonable and there is no unfair prejudice to the debtor.

Second, the § 6672 assessments against Ms. Blouin are valid. The IRS provided Ms. Blouin with the notice required by § 6672(b) by sending her two letters dated July 16, 2018, one for LBM and one for ANI. The debtor's allegation that the IRS failed to mail such notice is false. Moreover, the IRS's assessment of the § 6672 liabilities is entitled to a presumption of correctness that the Objection fails to overcome. In any event, the evidence shows that Ms. Blouin was a responsible officer of LBM and ANI who willfully failed to collect, truthfully account for, and pay over trust fund taxes.

Third, Brickchurch holds title to its sole asset, 366 Gin Lane, Southampton, New York ("the Property"), as Ms. Blouin's nominee. The focus of the nominee analysis is control, and the evidence demonstrates that Ms. Blouin controls the Property, notwithstanding title being in Brickchurch's name. The Property does not belong to Brickchurch and it is not property of the estate. Alternatively, the IRS position that Brickchurch is Ms. Blouin's alter ego is well supported, as Ms. Blouin controls not only the Property but Brickchurch as an entity. Consequently, Ms. Blouin's tax liabilities can be collected in Brickchurch's bankruptcy.

## II.    Background

### A.    Ms. Blouin's Ownership of the Gin Lane Property

Brickchurch "is a real estate holding company" that holds title to "a world-class trophy property" in Southampton known as "La Dune." ECF No. 21 (Affidavit of Louise Blouin) ¶ 5. Ms. Blouin "purchased the four-acre compound in 1998." *Id*. At the time, the compound

consisted of a "mansion" and "cottage." *Id*. "In or about 2002," Ms. Blouin "tore down the cottage and spent approximately ten million dollars to build a new home" on the site. *Id*. "From the time she acquired the compound almost 25 years ago until recently, Ms. Blouin used the main house as one of her residences, and the second home for guests." *Id*. "The original historic home is located at 376 Gin Lane and the newer home is located at 366 Gin Lane." *Id*.  Ms. Blouin "owns Debtor, which owns the second home at 366 Gin Lane. She also owns Aberdeen Enterprises, Inc. ["Aberdeen"], which owns the historic home at 376 Gin Lane." *Id*.

In 2000, Ms. Blouin arranged for a transfer of title to 366 Gin Lane from Aberdeen to Brickchurch; the transfer was for no consideration. ECF No. 205-3 at 4-10. But despite title being held by separate entities, the real estate remained bound up in Ms. Blouin's personal affairs. In 2001, she divorced John MacBain, and the divorce agreement gave Mr. MacBain a right of first refusal on the Property. ECF No. 215 ¶ 19. Ms. Blouin recently objected to debtor's former counsel's fee application on the grounds that counsel's communication with her ex-husband's lawyer about this right of first refusal "resulted in family conflict." ECF No. 214 at 2.

Ms. Blouin refers to 376 Gin Lane as "my home." ECF No. 93 (Blouin Deposition) at 15:6-11. She and her "whole family . . . use both houses" at 366 and 376 Gin Lane. *Id*. at 24:5-6. To Ms. Blouin, 366 Gin Lane has "been a family place because we have lots of friends that come over and lots of family members that come over." *Id*. at 24:12-15.

Numerous media reports have identified Ms. Blouin as the owner of La Dune. *See, e.g.*, Caitlin Keating, Summer in the Hamptons: Eleven Madison Park and Uber (Finally!) Are Coming to the East End, New York Times, May 25, 2017, copy attached as Exhibit 1, *available at* https://www.nytimes.com/2017/05/25/style/the-talk-of-the-hamptons-this-summer.html [https://perma.cc/88NT-VRMP] ("On the market is La Dune, a 22-bedroom, 22,000-square-foot property on Gin Lane in Southampton owned by Louise Blouin, an art magazine publisher."). In

October 2022, Ms. Blouin gave a tour of the compound that aired on CNBC.

https://www.cnbc.com/2022/10/06/inside-a-150-million-hamptons-summer-home-for-sale.html

[https://perma.cc/UR4J-G2DE] (embedded video link). During the televised segment, the text on

the screen read "Louise Blouin, La Dune's Owner." Ex. 2 (CNBC Screen Shot).

### B.    Ms. Blouin's Control Over Brickchurch

Technically, Ms. Blouin owns Brickchurch indirectly via multiple British Virgin Islands

companies. *See* ECF No. 22. When her name appeared in the Panama Papers in 2016, she

explained that her advisors set up these companies because they "probably don't want anything

under my name. If someone breaks their nose or anything, to not have liability. . . ." Tanya

Talaga, Who uses offshore tax shelters? One of Canada's richest women, Toronto Star, Apr. 9,

2016, https://www.thestar.com/news/world/2016/04/09/who-uses-offshore-tax-shelters-one-of-

canadas-richest-women.html [https://perma.cc/RB27-6D2J]. Nonetheless, Ms. Blouin readily

acknowledges that she "has been the sole owner and director of Debtor for about 25 years" and

that she is Brickchurch's "sole officer/manager." ECF No. 21 ¶ 16. She controls both

Brickchurch and Aberdeen. ECF No. 93 at 34:10-11; 46:4-9; *see also* ECF No. 31 at 2 ("Louise

Blouin, Debtor's director, is the ultimate owner of both properties.").

Brickchurch "has no employees and no payroll." ECF No. 21 ¶ 17. At the time of the

bankruptcy filing it had no bank account either. *Id*. ¶ 21. The Property is Brickchurch's sole asset

(*id*. ¶ 14), and it is "not a commercial real estate." ECF No. 93 at 201:19-20; *see also* ECF No.

21 ¶ 4 (Brickchurch "is not regularly engaged in the business of renting out this property"). At

the § 341 meeting, Ms. Blouin revealed that Brickchurch never had a bank account prior to

bankruptcy and that it "is purely supported by Ms. Blouin and her funds." ECF No. 46 at 14:19-

20, 15:1 (hearing transcript). She paid from personal funds the $5,000 retainer for Brickchurch's

bankruptcy counsel. ECF No. 40 ¶ 2. The Chapter 11 monthly operating reports show no

ongoing business activity. *E.g.*, ECF No. 217. Ms. Blouin has possession of Brickchurch's books and records. ECF No. 1 at 30 (Statement of Financial Affairs, line 26).

The Receiver of Taxes for the Town of Southampton shows the current owner of record for the Property to be Brickchurch, with an address of "Private Office of Louise Blouin." Ex. 3; *see also* Claim 12-1. The electricity and water bills for the Property are in Ms. Blouin's name. Exs. 4, 5. *See also* Tisch, other Hamptons billionaires shamed by water authority, The Real Deal, Aug. 17, 2022, copy attached as Ex. 6 (noting that Ms. Blouin was publicly disclosed as one of "the biggest water users in the Hamptons").

Ms. Blouin says "she obtained a bridge loan" secured by the Property with JGB Partners in 2018 and that "Ms. Blouin sought to refinance the JGB mortgage" but was unable to do so. ECF No. 21 ¶ 5. That led to JGB filing a foreclosure action, even though "Ms. Blouin sought to work out a resolution," and eventually Ms. Blouin putting the debtor into bankruptcy. *Id*. Ms. Blouin and her husband personally guaranteed the JGB loan secured by the Property. ECF No. 25-3. Ms. Blouin has similarly given a personal guarantee of the recent DIP loan. ECF No. 124 at 1. The transcript of Ms. Blouin's deposition in the JGB dispute (ECF No. 93) shows her direct involvement in negotiations and her exclusive decision-making authority regarding whether to sell, rent, or refinance the Property.

### C.    The IRS's § 6672 Assessments Against Ms. Blouin

The Claim is for trust fund recovery penalty assessments that the IRS made in 2018 against Ms. Blouin pursuant to § 6672. Those assessments are for withheld income and FICA taxes that LBM and ANI failed to remit to the IRS for 25 quarterly tax periods between 2010 and 2017. Attached as Exhibit 7 are IRS Forms 4340, Certificates of Assessments and Payments, for all of the quarterly tax periods at issue. Because Ms. Blouin is a foreign national with no social security number, the IRS assigned her an Individual Taxpayer Identification Number (ITIN) for

the purpose of making the § 6672 assessments. Ex. 8: Declaration of Spencer Gould ¶ 2; *see also* Individual Tax Identification Number, https://www.irs.gov/individuals/individual-taxpayer-identification-number [https://perma.cc/F38M-NN2W] (explaining IRS use of ITINs).

On July 16, 2018, more than 60 days prior to the assessment dates, the IRS sent Letters 1153 to Ms. Blouin at the Gin Lane address, offering her the chance to appeal the proposed assessments. Copies of the letters, with proof of mailing, are attached as Exhibits 9 and 10.

Ms. Blouin was the CEO of LBM. Ex. 11 (NY Department of State record). LBM's 2016 income tax return reported that Ms. Blouin was the corporation's sole officer, that she devoted 100% of her time to the company, and that she received compensation of $500,000 in that year. Ex. 12 (see p. 10, Form 1125-E, Compensation of Officers). LBM's tax returns also identified ANI as a "subsidiary corporation" that was 100% owned by LBM. Ex. 13 (Form 851, Affiliations Schedule). In 2004, Ms. Blouin bought ANI, the "publisher of the Gallery Guides, handouts at galleries around the country." Carol Vogel, Inside Art, New York Times, August 6, 2004, copy attached as Ex. 14, *available at* https://www.nytimes.com/2004/08/06/arts/inside-art.html. [https://perma.cc/4PW6-3ZSY]. ANI was one of five corporations owned by LBM that filed consolidated income tax returns. In 2016, Ms. Blouin sent a letter to the IRS Commissioner stating LBM's election no longer to file consolidated returns on behalf of the group that included ANI. Ex. 15. She signed the letter as "Officer & Chairperson" of LBM. *Id*. Also in 2016, Ms. Blouin sent another letter to the IRS responding to a separate tax penalty that had been imposed against LBM. Ex. 16.

Ms. Blouin exercised authority within LBM over personnel and other financial matters. A New York state court entered judgment against both LBM and Ms. Blouin jointly for failing to pay LBM's employees. *See* Ex. 17 (Judgment in *Shanley v. Louise Blouin Media, Inc*., Index No. 151232/2014). The opinion in that case recognized that "Blouin is the sole owner of LBM" and

described her control over LBM's personnel, including the power to hire and fire employees. *See Shanley v. Louise Blouin Media, Inc.*, 2018 N.Y. Misc. LEXIS 5629, 2018 NY Slip Op 32982(U) (Sup. Ct. N.Y. Co. Nov. 26, 2018), copy attached as Ex. 18. The IRS's § 6672 investigation likewise found that she had signature authority over at least one of LBM's bank accounts. Ex. 19 (HSBC summons response and signature card). An IRS administrative summons to LBM's landlord further revealed that Ms. Blouin was the decision-maker in lease renewal negotiations for LBM's office at 80 Broad Street in Manhattan. Ex. 20 (Regus documents and emails).

### D.    This Bankruptcy Case

Brickchurch's Chapter 11 petition was filed on April 30, 2022. ECF No. 1. Ms. Blouin signed the petition on behalf of the debtor. *Id*. at 4, § 17. She also signed the Corporate Resolution to File for Chapter 11 Bankruptcy. ECF No. 3. The IRS was listed as a creditor on Official Form 204 but only "for noticing purposes" and without disclosing any potential claim of the IRS. ECF No. 1 at 6. On Schedule E/F, the IRS was listed as having an unsecured claim of unknown amount. *Id*. at 17.

On May 3, 2022, the Court entered an order setting October 31, 2022, as the bar date for proofs of claim filed by governmental units. ECF No. 7 at 1 ("Bar Date Order"). The Bar Date Order added that "if the Schedules are amended or supplemented after the date of this Order, the Debtor(s) shall give notice of any such amendment or supplement to the holders of claims amended thereby, and holders of such claims shall have sixty (60) days from the date of service of the notice to file proofs of claims[.]" *Id*. at 3.

The IRS's Automated Insolvency System (AIS) shows that the IRS received notice of the bankruptcy filing on May 2, 2022 (the Monday after the Saturday night petition filing) and immediately assigned an employee, IRS Bankruptcy Specialist Anne Sylvia, who researched the matter and found no current liabilities owed by Brickchurch. Ex. 21 (AIS Case History); Ex. 22:

Sylvia Declaration ¶ 3. Because Brickchurch had not filed its returns for the four tax years preceding the petition date, Ms. Sylvia reached out to debtor's counsel to request copies of the delinquent returns, and debtor's counsel provided them. Ex. 23 (emails with debtor's counsel); Ex. 22 (Sylvia Declaration) ¶ 3. The returns showed no tax owed, and the IRS, after reviewing the returns, chose not to assert that Brickchurch owed any additional income tax. Ex. 21 (AIS Case History); Ex. 22 (Sylvia Declaration) ¶ 3.

Ms. Sylvia also considered potential tax debts of Ms. Blouin but assumed that she did not have any because she was not a U.S. resident and did not have a social security number. Ex. 21 (AIS History). Additionally, she knew Ms. Blouin could not be liable for § 6672 assessments with respect to Brickchurch because Brickchurch had no Form 941 payroll tax filing obligation. Ex. 22 (Sylvia Declaration) ¶ 4. Ms. Sylvia did not know at the time that an ITIN had been assigned to Ms. Blouin for the purpose of assessing § 6672 liabilities against Ms. Blouin with respect to other companies that were not mentioned in the bankruptcy petition. *Id*. None of the debtor's notices to the IRS disclosed that Ms. Blouin had been assigned an ITIN and assessed the § 6672 liabilities either. *Id*. Because the IRS had not assessed any liabilities against Brickchurch, and the IRS was not filing a proof of claim in the Chapter 11 case, Ms. Sylvia did not enter a bankruptcy freeze code on Brickchurch's IRS account. *Id*. ¶¶ 5-6. The entry of such a code normally prevents the IRS from taking collection actions against taxpayers who are currently in bankruptcy. *Id*. ¶ 6.

In August 2022, IRS Revenue Officer Spencer Gould filed with the Suffolk County Clerk Notices of Federal Tax Liens (NFTLs) asserting that Brickchurch holds title to the Property as the nominee of Ms. Blouin and listing the § 6672 liabilities. ECF No. 168 at 94-96, 100-102, 106-108, 112-114. Mr. Gould was unaware of the pendency of this bankruptcy case at the time of the NFTL filing. Ex. 8 (Gould Declaration) ¶ 4. Ms. Sylvia did not become aware of the

NFTL filings until after the debtor filed a motion in November 2022 accusing the IRS of violating the automatic stay. Ex. 22 (Sylvia Declaration) ¶¶ 7-8; *see* ECF No. 168.

At the time of the NFTL filings, Ms. Blouin was represented by attorney Thomas W. Ostrander of Duane Morris LLP. Mr. Ostrander had previously sent correspondence to the IRS disputing the validity of the § 6672 assessments. *See* ECF No. 205-3 at 43 (fax dated August 5, 2021, from Mr. Ostrander to Mr. Gould). Immediately upon recording the NFTLs, Mr. Gould provided copies of the NFTLs to Mr. Ostrander. Ex. 8 (Gould Declaration) ¶ 5. Mr. Ostrander acknowledged receipt via fax dated August 29, 2022. Ex. 24 (Ostrander fax); Ex. 8 (Gould Declaration) ¶ 5. The fax did not disclose that Brickchurch was in bankruptcy. *See id.* Three weeks later, Brickchurch filed a motion to employ Duane Morris as counsel "nunc pro tunc to September 1, 2022" but without mentioning the NFTL filings. ECF No. 106.

Brickchurch did not alert either the IRS or the Court to the existence of the NFTLs until it filed a motion on November 11, 2022, accusing the IRS of violating the automatic stay. ECF No. 168. Prior to that motion filing, Mr. Gould was unaware that Brickchurch was in bankruptcy, and Ms. Sylvia was unaware of the NFTLs. Ex. 8 (Gould Declaration) ¶ 6; Ex. 22 (Sylvia Declaration) ¶ 8. The IRS response to the motion explained why Ms. Sylvia had made her initial determination not to file a proof of claim on behalf of the IRS. *See* ECF No. 185 at 3. Further, the IRS's response noted that Mr. Gould had "been in regular communication with Ms. Blouin's representatives in recent months with regard to the § 6672 collection investigation and the IRS's nominee determination, and Ms. Blouin's representatives did not disclose to the IRS the existence of this bankruptcy case." *Id*. The parties then resolved the motion through a stipulation by which the IRS withdrew the NFTLs under 26 U.S.C. § 6323(j) but without prejudice to the IRS's argument that Brickchurch is the nominee or alter ego of Ms. Blouin. ECF No. 192 ¶ 1. Having preserved this argument, the IRS then asserted it in the Claim filed on December 1, 2022.

The bankruptcy schedules valued the Property at $63 million. ECF No. 1 at 10 (Form 206 A/B, line 55). In her affidavit of August 22, 2022, Ms. Blouin claimed that the appraised value had increased to $67.5 million. ECF No. 76 ¶ 12. She has maintained throughout this case that there are "several tens of millions of dollars of equity in the full compound, as well as substantial equity in the real estate owned by Debtor," and for that reason "Debtor anticipates paying all creditors in full." ECF No. 21; *see also* ECF No. 146 ¶ 19 ("The value of the Property exceeds the combined amount of the Exit Facility and the amount needed to pay off allowed claims of creditors and administrative expenses of the bankruptcy estate."); ECF No. 93 at 195:20-22 (testifying that there was more than $20 million in equity in 366 Gin Lane).

Brickchurch filed a proposed Chapter 11 plan on September 30, 2022 (ECF No. 116) but no confirmation hearing was ever scheduled. Brickchurch now says that it intends to propose an amended plan (ECF No. 216), yet that amended plan remains unfiled.

## III.    Law and Argument

### A.    The IRS Meets the "Excusable Neglect" Standard Because Its Late Filing Was Due to Debtor's Failure to Give Adequate Notice

The IRS filed its Claim on December 1, 2022, 31 days after the bar date for governmental units. The Claim should nonetheless be allowed because the IRS did not meet the bar date due to "excusable neglect." Fed. R. Bankr. P. 9006(b)(1); *see In re Queen Elizabeth Realty Corp*., 2017 WL 1102865 at *5 (Bankr. S.D.N.Y. Mar. 24, 2017) ("Rule 9006(b)(1) governs the permissibility of filing a late claim in a chapter 11 case."). Excusable neglect "is an 'elastic concept.'" *In re Caritas Healthcare, Inc*., 435 B.R. 111, 114 (Bankr. E.D.N.Y.2010) (quoting *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 392 (1993)). The inquiry "is at bottom an equitable one, taking account of all relevant circumstances," *Williams v. KFC Nat. Management Co.*, 391 F.3d 411, 415 (2d Cir. 2004) (quoting *Pioneer*, 507 U.S. at 395).

The relevant circumstances here are that the debtor failed to meet its two related duties of (1) maintaining accurate schedules of creditor claims and (2) giving notice to creditors. The debtor should have included the IRS claim on its schedules and given the IRS notice of its potential claim in this bankruptcy prior to the bar date. Had the debtor done these things, the IRS would have filed its Claim prior to the bar date.

### 1.    The Debtor Failed to Maintain Accurate Schedules

First, by failing to list the IRS claim on its schedules, the debtor violated its duty to maintain its schedules with accuracy. *See* 11 U.S.C. § 521(a). Although the IRS claim might not have been known to the debtor at the outset of the case, the disclosure obligation "continues throughout the case and requires the debtor to amend its schedules whenever it becomes necessary in order to insure the accuracy and reliability of the information disclosed therein." *In re Okan's Foods, Inc.*, 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998). Bankruptcy Rule 1009 contemplates debtor amendments to any "list, schedule, or statement," and the 1983 Advisory Committee Notes make clear that this rule applies to amendments where there is a "creditor whose claim is changed or newly listed." Thus, the debtor here should have amended its schedules to include the IRS's claim once debtor's counsel became aware of the NFTL filings in August 2022. *See Pioneer*, 507 U.S. at 397 (clients are "held accountable for the acts and omissions of their chosen counsel").

That the debtor disputes the validity of the IRS claim is no excuse. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 158 (E.D.N.Y. 2012) (debtor's schedules "should include potential legal claims against it, even if disputed"); *see also In re J.A. Jones, Inc.*, 492 F.3d 242, 252 (4th Cir. 2007) ("[A] disputed claim, if known, must be listed as a known claim in the appropriate schedule[.]"); 11 U.S.C. § 101(5)(A) (broadly defining a "claim" as a "right to payment, whether or not such right is . . . disputed"). "[A] known creditor or claim

11

arises from facts that would alert a reasonable debtor, based on a careful examination of its own books and records, to the possibility that a claim might reasonably be filed against it by a particular individual or entity." *Evans v. Brooklyn Navy Yard Dev. Corp.*, No. 09 CV 5113 (RJD) (RML), 2012 WL 2501024 at *3 (E.D.N.Y. May 16, 2012) (quotation omitted). The IRS gave debtor's counsel notice of its August 2022 NFTL filings, and that made the IRS claim a known creditor claim. Accordingly, the debtor was required to amend its schedules to include the claim, and its failure to do so supports the IRS's position that the late filing was due to excusable neglect. *See In re Enron Corp.*, 419 F.3d 115, 130 (2d Cir. 2005) ("whether the debtor had advance knowledge of the claim" is a factor in the excusable neglect determination).

### 2.     The Debtor Did Not Put the IRS on Notice of Its Claim

A debtor is also required to give notice to its known creditors, and this is a second related duty that the debtor here failed to meet. It is axiomatic that "[e]ach creditor or interested party must be properly notified for it to be able to have the opportunity to protect its interests during the reorganization process." *In re Turning Point Lounge, Ltd.*, 111 B.R. 44, 47 (Bankr. W.D.N.Y. 1990); *see also* 11 U.S.C. § 342(a) ("There shall be given such notice as is appropriate . . . of an order for relief in a case under this title."). "The burden of providing effective notice pursuant to 11 U.S.C. § 342 is always on the debtor." *In re Sun Property Consultants, Inc.*, 629 B.R. 682, 703 (Bankr. E.D.N.Y. 2021) (quotation omitted). Courts "look to the totality of the circumstances in determining whether a creditor was adequately apprised of the proceeding." *In re Massa*, 187 F.3d 292, 297 (2d Cir. 1999) (quotation omitted).

In this case, the IRS was not adequately apprised on the case prior to the bar date because its claim was not listed on the debtor's schedules. The consequences of the debtor's failure to give adequate notice by scheduling a creditor's claim can be severe. In *Massa*, for example, the Second Circuit found that "[s]ince [the debtor] failed to schedule the debt owed to the [creditor]

on his original petition, no official notice of the proceeding was provided" and the creditor's claim was not discharged. *Id.* at 296. Similarly, in *Turning Point*, the court held that a creditor's claim was not discharged where the debtor "had knowledge that there was at least a contingent claim against it" yet "never moved to amend its schedules to include the claim." 111 B.R. at 47-48. Brickchurch likewise failed to schedule any debt owed to the IRS, and as a result the IRS was never put on notice until after the bar date passed. The debtor's mere listing of the IRS as a creditor "for noticing purposes," and without scheduling the IRS's potential claim, was insufficient. *See Acevedo v. Van Dorn Plastic Machinery Co.*, 68 B.R. 495, 499 (Bankr. E.D.N.Y. 1986) ("A creditor who is notified of the bankruptcy but not of his claim is in the same position as a creditor who has notice of his claim, but not of the bankruptcy.").

The debtor's notice to the IRS was also deficient because it did not include the taxpayer identification number under which the tax debts at issue were assessed: Ms. Blouin's ITIN. This information is essential to enable the IRS to identify whether it has any claim to assert, and the Bankruptcy Code and Rules provide that all required notices must include taxpayer identification numbers for this reason. *See* 11 U.S.C. § 342(c)(1); Fed. R. Bankr. P. 1005, 2002(n). When a debtor does not divulge this information, the IRS should be permitted to file a late proof of claim asserting a tax debt that was assessed under the undisclosed taxpayer identification number. For example, in *In re Spenlinhauer*, 572 B.R. 18 (Bankr. D. Mass. 2017), the court allowed a late-filed IRS claim because the IRS had not previously been put on notice of its potential claim against the debtor as transferee for his mother's estate tax liability. By the same reasoning, the IRS should be permitted to file a late claim in this case for taxes assessed against Ms. Blouin under the undisclosed ITIN.

The Bankruptcy Rules and case law broadly support the rights of creditors that do not receive proper notice to file their claims after the bar date. Bankruptcy Rule 3003(c)(3) says a

creditor in a Chapter 11 case may file a late claim under circumstances described in Rule 3002(c)(6), *i.e.*, when "the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim." Fed. R. Bankr. P. 3003(c)(3), 3002(c)(6); *see also* Fed. R. Bankr. P. 3003(c)(3) (time to file claim in Chapter 11 case may be extended "for cause shown"). This is consistent with the Supreme Court's finding in *Pioneer* that inadequate notice established "excusable neglect" for a late-filed claim. 507 U.S. at 399 ("the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, 'excusable.'"). In keeping with these authorities, the IRS's late-filed claim should be permitted here based on the debtor's failure to give the required notice.

### 3. The IRS's Explanation for the Late Filing Is Reasonable and Allowing the Late Filing Will Not Result in Any Unfair Prejudice

The Objection makes two contrary arguments for why the IRS's Claim should be disallowed as untimely, neither of which is persuasive.

The first is that "the IRS is without adequate excuse for the late filing" (Objection ¶ 22), but the foregoing discussion shows that the IRS's late filing was due to the debtor's own failure to provide the IRS with proper notice. *See In re Interstate Cigar Co.*, 150 B.R. 305, 310 (Bankr. E.D.N.Y. 1993) ("[E]xcusable neglect has been found where the claimant's failure to file a timely proof of claim is attributable to the debtor's conduct."). Indeed, the IRS's actions were reasonable under the circumstances. After the debtor opportunistically waited from August until November before belatedly bringing the IRS into this case after the bar date had passed, the IRS worked quickly to resolve the pending stay-violation motion[1] and then to file its Claim. From the time of the filing of the debtor's motion against the IRS on November 11, 2022, until the IRS

---

[1] The NFTL filing did not violate the stay. *See* ECF No. 185 at 5-8; *see also United States v. Colasuonno*, 21 Civ. 10877 (JCM), 2023 WL 1070229 at *5 (S.D.N.Y. Jan. 27, 2023) (finding "no support for the proposition" that NFTL filing violated automatic stay).

14

filed its Claim on December 1, 2022, only 20 days passed—far fewer than the 60 days allowed for new creditors to file their claims after amendments to the schedules. *See* Bar Date Order at 3.

Second, the debtor asserts that it will be prejudiced if the Court allows the Claim because that will supposedly "disrupt the Debtor's ability to reorganize." Objection ¶ 31. In determining the prejudice factor under *Pioneer*, the "pertinent circumstances include the size of the late claim in relation to the estate and, closely related to the first, the disruptive effect the late filing would have upon a plan close to completion." *In re R.H. Macy & Co., Inc.*, 166 B.R. 799, 802 (S.D.N.Y. 1994). Here, the debtor has not yet even proposed its allegedly forthcoming amended plan of reorganization, much less come "close to completion" of such a plan. In any event, Ms. Blouin has given repeated assurances that there is ample equity in the Property to pay all claims with millions to spare, and if that is true then "the size of the late claim in relation to the estate" should be manageable. Regardless, any disruption is the debtor's own fault for not bringing the IRS into the case earlier.

For all of these reasons, the Court should extend the IRS's time to file its Claim, *nunc pro tunc*, through December 1, 2022, because the IRS's failure to file the Claim before the bar date was due to "excusable neglect."

**B.    The Section 6672 Assessments Against Ms. Blouin Are Valid**

In addition to attacking the timeliness of the Claim, the debtor contests the validity of the IRS's tax assessments against Ms. Blouin under § 6672. The Objection should be overruled because the IRS complied with the § 6672(b) notice requirement, the assessments are presumptively correct, and the evidence supports § 6672 liability.

**1.    The IRS Satisfied the § 6672(b) Notice Requirement**

The liabilities that the IRS seeks to collect are trust fund recovery penalties that the IRS assessed against Ms. Blouin pursuant to § 6672. That Code section provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). Section 6672 is commonly known as the "trust fund recovery penalty" or "TFRP." It is so-called because "[a]n employer required to withhold taxes from its employees' wages must hold those funds as 'a special fund in trust for the United States' and pay them to the Government 'in the same manner . . . [as] the taxes from which such fund arose.'" *United States v. Rowe*, 858 F. App'x 405, 406 (2d Cir. 2021) (quoting 26 U.S.C. § 7501(a)); *see also United States v. Shichman*, No. CV 97–7432–LDW WDW, 2002 WL 393070 at *1 (E.D.N.Y. Feb. 16, 2002) ("Trust fund taxes" are "the income and social security taxes employers are required to deduct from their employees' wages pursuant to 26 U.S.C. §§ 3102(a) and 3402(a)."). "If the employer fails to make the required payments, section 6672 provides an alternative method for collecting the withheld taxes: the government may assess a penalty, equal to the full amount of the unpaid tax, against a person responsible for paying over the money who willfully fails to do so." *Schwinger v. United States*, 652 F. Supp. 464, 466 (E.D.N.Y. 1987).

Before imposing a TFRP, the IRS must comply with the notice requirement in § 6672(b)(1), which says the IRS must "notif[y] the taxpayer in writing by mail to an address as determined under section 6212(b) or in person that the taxpayer shall be subject to an assessment of such penalty."[2] The mailing of such notice "shall precede any notice and demand of any penalty under [§ 6672(a)] by at least 60 days." § 6672(b)(2); *see also* § 6303 ("Notice and

---

[2] The cross-reference to 26 U.S.C. § 6212(b) incorporates the requirement of mailing to the taxpayer's "last-known address," which is "where the Commissioner reasonably believed the taxpayer wished to be reached.'" *Follum v. Comm'r*, 128 F.3d 118, 119 (2d Cir. 1997) (per curiam) (quoting *Tadros v. Comm'r*, 763 F.2d 89, 91 (2d Cir. 1985))). Numerous documents show that the Gin Lane address was Ms. Blouin's last-known address.

demand for tax"). "A Letter 1153 is the means by which the IRS typically provides notice pursuant to § 6672(b)." *Romano-Murphy v. Comm'r*, 816 F.3d 707, 711 n.1 (11th Cir. 2016). "Actual receipt of the notice is unnecessary; if it is mailed to the taxpayer's last known address it is adequate for the purposes of the statute." *Tadros v. Comm'r,* 763 F.2d 89, 91 (2d Cir. 1985); *see also Kaplan v. Comm'r*, 552 F. App'x. 77, 78 (2d Cir. 2014) (rejecting argument that taxpayer must receive actual notice).[3]

On July 16, 2018, the IRS mailed two Letters 1153 to Ms. Blouin at the Gin Lane address, one for LBM and one for ANI. Copies of the signed and dated letters, with proof of mailing, are attached as Exhibits 9 and 10. The letters pre-dated the § 6672 assessments by more than 60 days. These documents directly refute the debtor's contention that the IRS did not comply with the § 6672(b) notice requirement. *See* Objection ¶¶ 23, 31, 35, 37. Ms. Blouin's further assertion that she "never received" the letters (ECF No. 205-2 ¶ 5) is irrelevant because, as noted above, actual receipt by the taxpayer is not required for the notice to be legally sufficient. Accordingly, the debtor's Objection in this regard should be overruled.

### 2.    The § 6672 Assessments Are Presumptively Correct

Other than alleging IRS non-compliance with the § 6672(b) notice requirement, the Objection also broadly disagrees with the IRS's § 6672 assessments against Ms. Blouin. But the debtor's assertion that the IRS has "no evidence" to support the assessments (¶ 17)—aside from being untrue (*see infra* § III.B.3)—fails at the outset because it wrongly assumes that the IRS

---

[3] *See also Bonaventura v. United States*, Civil Action No. 1:07-CV-3218, 2009 WL 6042178 at *2 (N.D. Ga. Dec. 14, 2009) ("where the notice has been mailed to the taxpayer's last known address, it is not necessary for the taxpayer to actually receive the notice before the Commissioner can assess the trust fund penalty."); *Jarrett v. Comm'r*, T.C. Memo. 2018-73, 2018 WL 2460171 at *16 (May 31, 2018) (rejecting taxpayer's position that the IRS "should have taken additional steps to notify" the taxpayer of proposed § 6672 assessment after Letter 1153 was returned as "unclaimed" by the postal service); *Hickey v. Comm'r*, T.C. Memo. 2009-2, 2009 WL 20983 at *5 (Jan. 5, 2009) ("neither personal service nor actual receipt is required" for § 6672(b) notice to be valid).

bears the burden of producing such evidence. On the contrary, to overcome the presumptive

validity of the § 6672 assessments, the debtor bears the initial burden.

It is well-established that a "tax assessment is generally presumed to be correct, and a

taxpayer who contests such an assessment bears the burden of proving that it is not." *Papandon

v. United States ex rel. Perler*, 350 F. App'x 491, 493 (2d Cir. 2009). "This burden applies

within bankruptcy proceedings." *In re WorldCom, Inc.*, 723 F.3d 346, 352 (2d Cir. 2013) (citing

*Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 26 (2000)). For § 6672 assessments, "courts have

extended the presumption of correctness not merely to the amount of the assessment itself but

also to the existence of the two elements, responsibility and willfulness, that underlie the

imposition of this type of tax liability."[4] *United States v. McCombs*, 30 F.3d 310, 318 (2d Cir.

1994); *see United States v. Griffin*, 19-cv-4821 (ERK)(PK), 2020 WL 6993893 at *3 (E.D.N.Y.

Sept. 15, 2020) (applying presumption in granting judgment for § 6672 liability of over $2

million); *United States v. Thompson*, 596 F. Supp. 2d 538, 544 (E.D.N.Y. 2009) (upholding

§ 6672 assessments where taxpayer "has not presented the court with any evidence pertaining to

the amount of the assessed penalty, and has made no allegations that the assessment was

calculated incorrectly or arbitrarily"). Thus, "[a] taxpayer who wishes to challenge the validity of

a tax assessment 'bears the burdens both of production and of persuasion.'" *United States v.

Kumar*, No. 19 Civ. 4501 (ENV) (VMS), 2021 WL 7908019 at *8 (E.D.N.Y. Mar. 19, 2021)

(quoting *McCombs*, 30 F.3d at 318).

The presumption is doubly strong in this case because the IRS relies upon Forms 4340,

Certificates of Assessments and Payments, for all of the § 6672 assessments at issue. *See* Ex. 7.

---

[4] Debtor incorrectly suggests that it is the IRS's burden to prove mailing of the § 6672(b) notice.
Objection ¶ 36. In fact, the presumption of proper assessment extends to the § 6672(b) notice
requirement. *See In re Chabrand*, 301 B.R. 468, 477 (Bankr. S.D. Tex. 2003). In any event, the
IRS has proved that it mailed the Letters 1153 dated July 16, 2018.

These forms are "presumptive proof of a valid assessment." *Greenhouse v. United States*, 780 F. Supp. 136, 141 n.14 (S.D.N.Y. 1991). Form 4340 makes a prima facie case of both the responsibility and willfulness elements of § 6672 liability. *United States v. Galtrof*, 245 F. Supp. 158, 159 (S.D.N.Y. 1965); *see also Cella v. United States*, 79 C 49 (GCP), 1980 WL 1535 at *2 (E.D.N.Y. Feb. 14, 1980) ("certified copies of the Commissioner's assessments are prima facie proof . . . that the person assessed was under a legal duty to collect, account for and pay over the tax, and that the failure to do so was wilful."). "[T]o overcome the Certificate of Assessment's presumption of correctness," a taxpayer has the burden to "show not only that the assessment was incorrect but also to prove the correct amount." *United States v. Sage*, 412 F. Supp. 2d 406, 416 (S.D.N.Y. 2006).

The presumption in favor of the IRS is also consistent with the bankruptcy principle that a proof of claim is "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The debtor, as "the objecting party has the initial burden of producing sufficient evidence to rebut the claimant's prima facie case." *In re G. Marine Diesel Corp.*, 155 B.R. 851, 853 (Bankr. E.D.N.Y. 1993). In tax cases, "[t]he Debtor may not rebut the prima facie case merely by stating that the amount of taxes claimed by the Service is not correct" but rather "must produce some evidence to support that statement." *In re Forte*, 234 B.R. 607, 618 (E.D.N.Y. 1999) (quotation omitted). "[A]n objection does not deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." *In re Cross Island Plaza, Inc.*, 2015 WL 4610382 at *13 (Bankr. E.D.N.Y. July 30, 2015) (quoting *Hemingway Transp., Inc. v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in original)). And even if an objection overcomes the prima facie case, "any burden shifting to the government of coming forward with relevant evidence involves only those elements that the taxpayer has challenged." *In re Gran*, 964 F.2d 822, 828 (8th Cir. 1992).

The Objection seeks to turn this entire legal framework on its head by placing the burden on the IRS in the first instance to defend its tax assessments. That proposition must be rejected.

### 3.    The Elements of § 6672 Liability Are Met

Aside from this fundamental misunderstanding of the law that undergirds the Objection, the debtor is also wrong on the facts and thus fails to carry its "burden of disproving, by a preponderance of the evidence" either the responsibility or willfulness elements of § 6672 liability. *See Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir. 1993).

The only evidence that the debtor offers in contesting the § 6672 assessments is Ms. Blouin's affidavit that says she "was never a director, manager or employee of" LBM or ANI. ECF No. 205-2 ¶ 5. This statement contests the "responsibility" prong of § 6672 liability, *i.e.*, that Ms. Blouin was a "person required" to collect, truthfully account for, or pay over the withholding taxes for these two companies within the meaning of § 6672(a). But Ms. Blouin's affidavit is refuted by documents showing she was, in fact, the CEO and sole officer of LBM (and by extension its subsidiary ANI), with control over company payroll and other financial matters. *See* Exs. 11-20. She even signed tax-related correspondence to the IRS on behalf of the companies. Exs. 15, 16. This evidence establishes that Ms. Blouin was rightly assessed as a responsible person under § 6672. *See Fiataruolo*, 8 F.3d at 939 (listing factors including whether the individual is an officer or member of the board of directors, has the ability to hire and fire employees, and has check-signing authority).

While the Objection offers no evidence relating to the "willfulness" component of § 6672 liability, that element is met as well. "[A] responsible person who had knowledge of payments to creditors other than the government, or showed a reckless disregard of an obvious risk that the taxes would not be paid, is deemed to have willfully failed to truthfully account for and pay over taxes and is therefore liable under § 6672." *In re Am. Motor Club*, 139 B.R. 578, 583 (Bankr.

E.D.N.Y. 1992). An individual who is "an officer and director" of the delinquent corporation "is charged with such knowledge." *Id*. Further, the Second Circuit has held that a taxpayer's "payment of net wages to himself and other employees" at a time when withholding taxes remain unpaid is "a willful failure to pay taxes." *Hochstein v. United States*, 900 F.2d 543, 548 (2d Cir. 1990). In this case, Ms. Blouin paid herself $500,000 as the sole officer of LBM in 2016, after numerous quarters of unpaid withholding taxes had already accrued, thus establishing her willfulness in regard to the failure to pay the trust fund taxes.

All told, the Objection falls far short of overcoming the presumption that the § 6672 assessments against Ms. Blouin are correct, and therefore the Objection should be overruled.

### C.    Brickchurch Is Ms. Blouin's Nominee and Alter Ego

The Objection goes on to contend that "regardless of whether Ms. Blouin is liable for the TFRP," Brickchurch "is not the nominee of Ms. Blouin." Objection ¶ 42. This contention should be rejected as well. The facts and law support a finding that Brickchurch is both her nominee and alter ego.

Because Ms. Blouin is properly held liable for the § 6672 assessments for the reasons explained above, the IRS may collect these debts from Ms. Blouin's "property and rights to property." *See* 26 U.S.C. §§ 6321, 6331 (defining the scope of federal tax liens and levies). That includes property held in the name of any entity that is her nominee or alter ego. *See Giardino v. United States*, No. 96–CV–6348T, 1997 WL 1038197 at *2 (W.D.N.Y. Oct. 29, 1997) ("It is well settled that, if an individual (or entity) is determined to be the nominee of a taxpayer, the government has the authority to seize or levy on the property of the taxpayer held by the nominee in order to collect the tax liabilities of the taxpayer." (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-351 (1977)). These doctrines form the basis of the IRS's Claim.

"[T]he critical issue in resolving a nominee or alter ego claim is not motive, but control."

*United States v. Evseroff*, 270 F. App'x. 75, 77 (2d Cir. 2008). The two doctrines are related but distinct "in that the nominee theory focuses on the taxpayer's control over and benefit from the property while the alter ego theory emphasizes the taxpayer's control over the entity that holds the property." *United States v. Evseroff*, No. 00-CV-06029 (KAM), 2012 WL 1514860 at *10 (E.D.N.Y. Apr. 30, 2012), *aff'd* 528 F. App'x. 75 (2d Cir. 2013). Both types of control are present on the facts of this case because Ms. Blouin controls both the Property and Brickchurch.

First, Brickchurch holds title to the Property as Ms. Blouin's nominee because she is the beneficial owner of the Property notwithstanding bare legal title being held in the corporate name. *See United States v. Nassar*, 699 F. App'x 46, 47 (2d Cir. 2017) ("New York law recognizes a difference between a 'beneficial owner' and a 'bare legal title-holding nominee.'"). The scope of "property of the estate" is broad, but does not include property in which debtor holds only legal title and not an equitable interest. *See* 11 U.S.C. § 541(d); *cf.* 11 U.S.C. § 102(2). In evaluating whether a nominee relationship exists, a court's, "inquiry should be aimed at determining whether the taxpayer 'exercised active or substantial control over the property.'" *Nassar Family Irrevocable Trust v. United States*, 2016 WL 5793737 at *7 (S.D.N.Y. Sept. 30, 2016), *aff'd sub nom.*, *United States v. Nassar*, 699 F. App'x. 46 (2d Cir. 2017) (quoting *Evseroff*, 2012 WL 1514860, at *10). This inquiry is often guided by the following factors:

> (1) whether inadequate or no consideration was paid by the nominee;
> (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
> (3) whether there is a close relationship between the nominee and the transferor;
> (4) whether they failed to record the conveyance;
> (5) whether the transferor retains possession; and
> (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Evseroff*, 2012 WL 1514860, at *10.

The Objection insists that "Debtor is not the 'nominee of Louise Blouin'" (¶ 24), citing to

22

these six factors (¶ 40), but its analysis misses the mark. As to the first factor, it says that "Ms. Blouin never owned the Property, and thus there is no question of a transfer for allegedly inadequate value." *Id*. ¶ 41. Preliminarily, the assertion that "Ms. Blouin never owned the Property" is contradicted by her case-opening affidavit in which she says that "she acquired the compound almost 25 years ago." ECF No. 21 ¶ 5; *see also* ECF No. 31 (admitting she "is the ultimate owner of" the Property). In any event, the test is "whether inadequate or no consideration was paid by the nominee," not whether such consideration was necessarily paid by the nominee *to the taxpayer*. Brickchurch acquired title to the Property in 2000 via a deed that says, on its face, that the transfer was for "NO CONSIDERATION." The transferor was Aberdeen, another entity Ms. Blouin owns and controls. On these facts, the first factor is met.

The only other factor from the above list that is addressed by the Objection is #4, "whether they failed to record the conveyance" (*see* Objection ¶ 41), and this factor concededly does not appear to be present here. But the Objection is silent as to the other four factors, all of which are met. Ms. Blouin admitted that she placed title to the Property in Brickchurch's name "in anticipation of a lawsuit or other liability" (factor #2) because her advisors "don't want anything under my name" as a form of liability protection. There exists "a close relationship between the nominee and the transferor" (factor #3) because both Brickchurch and Aberdeen are owned and controlled by Ms. Blouin. She has also "retained possession" (factor #5) and "continued to enjoy the benefits" (factor #6) of the Property by regularly using it for family gatherings over the years.

Regardless, the list of six nominee factors is "non-exclusive" and should not distract from the "overarching principle" of the nominee doctrine "that liability is imposed to reach an equitable result." *LiButti v. United States*, 107 F.3d 110, 119 (2d Cir. 1997). To this end, the court must "evaluate the totality of the circumstances." *Nassar Family Irrevocable Trust v.*

*United States*, 2016 WL 5793737 at *7.[5] The totality of the circumstances in this case shows that Ms. Blouin controls the Property and that Brickchurch holds title as her nominee. Considering that Ms. Blouin gave a recent televised tour of the Property that identified her as the Property's owner, this is not a matter that can be seriously disputed.

Alternatively, the IRS should be allowed to collect the § 6672 liabilities in this bankruptcy because Brickchurch is the alter ego of Ms. Blouin. This is an argument advanced on the IRS Claim that the Objection does not address at all. An alter-ego determination looks to factors like "intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." *LiButti*, 107 F.3d at 119; *see also United States v. Coppola*, 99 F.3d 402 (Table), 1995 WL 760573 at *2, (2d Cir. 1995) (corporations were alter egos of individual taxpayers). Many of these factors are present in this case as well, as catalogued above. Brickchurch does not conduct any business whatsoever. Its sole asset is the Property, and it is not in the business of renting the Property out because Ms. Blouin considers the Property to be a "family place" and "home." Ms. Blouin uses her personal funds to keep Brickchurch operational, including paying debtor's counsel's retainer. She has personally guaranteed multiple loans that were nominally made to the company and secured by the Property. She is the company's sole officer and has been so for 25 years. She alone keeps the company's books and records. She alone makes the decisions regarding whether the Property should be refinanced or sold. She even gave her ex-husband a right of first refusal on the Property in their divorce. On these facts, the Court should conclude that Brickchurch is

---

[5] Note that "[a] nominee finding does not require intent to defraud creditors or hinder collection efforts." *Nassar Family Irrevocable Trust v. United States*, 2016 WL 5793737 at * 7, (S.D.N.Y. 2016), *aff'd sub nom.*, *United States v. Nassar*, 699 F. App'x. 46 (2d Cir. 2017).

Ms. Blouin's alter ego.

With both the nominee and alter-ego doctrines well supported, the Court should allow the IRS to collect Ms. Blouin's § 6672 liabilities in Brickchurch's bankruptcy case.

## IV. Conclusion

For the foregoing reasons, the Court should overrule the Objection and allow the Claim as filed because the IRS's late filing was due to excusable neglect, the § 6672 assessments against Ms. Blouin are valid, and Brickchurch is Ms. Blouin's nominee and alter ego.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

/s/ Edward J. Murphy
EDWARD J. MURPHY
ERIC A. ASHBY II
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
Tel: 202-307-6064 / 202-514-6508
Fax: 202-514-5238
Edward.J.Murphy@usdoj.gov
Eric.A.Ashby@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2023, I served the foregoing document

electronically upon all parties of record through the Court's Electronic Case Filing System on

those parties that have consented to such service.

*/s/ Edward J. Murphy*
EDWARD J. MURPHY
Trial Attorney
United States Department of Justice, Tax Division
