**IN UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                              :          **Chapter 11**
                                                    :
**BRICKCHURCH ENTERPRISES, INC.,**                  :          **Case No. 22-70914-ast**
                                                    :
                                                    :
                    **Debtor.**                     :
                                                    :
------------------------------------------------------------x

<u>**REPLY BRIEF IN FURTHER SUPPORT OF DEBTOR'S OBJECTION TO PROOF OF CLAIM
FILED BY INTERNAL REVENUE SERVICE**</u>

DUANE MORRIS LLP
Brett L. Messinger
1540 Broadway
New York, NY 10036
215.979.1508
Email: blmessinger@duanemorris.com

SIMMONS LEGAL PLLC
Camisha L. Simmons
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
212.653.0667 (Telephone- New York)
214.643.6192 (Telephone- Dallas)
800.698.9913 (Facsimile)
Email:  camisha@simmonslegal.solutions

**COUNSEL FOR DEBTOR**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ....................................................................................................................1

II.    ARGUMENTS AND AUTHORITIES ...................................................................................6

    A.     The Proof Of Claim Should Be Disallowed As Being Late....................................................6

    B.     The §6672 Assessments Are Not Valid Because The Notice Was Not Properly Mailed To Ms. Blouin .................................................................................................13

    C.     Debtor Is Not, As A Matter Of Law, The Nominee Of Louise Blouin...............................14

        1.     Debtor is not, as a matter of law, the Nominee of Louse Blouin ...........................14

        2.     Debtor is not the alter ego of Louise Blouin ..........................................................16

    D.     The IRS Did Not Have A Scintilla Of Evidence Showing That Ms. Blouin Should Be Assessed The TFRP In The First Place ........................................................17

III.   CONCLUSION ......................................................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

**Federal Cases**

*In re AMR Corp.,* 492 B.R. 660 (Bankr. S.D.N.Y. 2013) ............................................................7

*In re Dana Corp.,* 2008 Bankr. LEXIS 2241 (S.D. N.Y. July 23, 2008)......................................7

*In re Delphi Corp.,* 2009 Bankr. LEXIS 571 (S.D.N.Y. Jan. 20, 2009) ......................................7

*Gephart v. United States*, 818 F.2d 469 (6th Cir. 1987) (per curiam) ........................................17

*Hochstein v. United States*, 900 F.2d 543 (2d Cir. 1990) ..................................................... 17-18

*Kalb v. United States*, 505 F.2d 506 (2d Cir. 1974)...................................................................18

*In re Kmart Corp.*, 381 F.3d 709 (7th Cir. 2004).........................................................................7

*In re Lehman Bros Holdings, Inc.,* 433 B.R. 113 (Bankr. S.D.N.Y. 2010) ..................................7

*Marks Management Servs. V. Reliant Mfg.,* 74 F.App'x 493 (6th Cir. 2003) ..............................7

*Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115 (2d
    Cir. 2005) ................................................................................................................................3

*In re Musicland Holding Corp.*, 356 B.R. 603 (Bankr. S.D.N.Y. 2006) ......................................7

*Nassar Fam. Irrevocable Tr. v. United States*, 2016 WL 5793737 (S.D.N.Y. Sept. 30,
    2016), *aff'd in part, appeal dismissed in part sub nom*., *United States v. Nassar*, 699
    Fed. Appx. 46 (2d Cir. 2017) ................................................................................................14

*Neckles v. United States*, 579 F.2d 938 (5th Cir. 1978) (per curiam) ........................................17

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380 (1993).............3, 7

*Ruth v. United States*, 823 F.2d 1091 (7th Cir. 1987) ................................................................17

*Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355 (2d Cir. 2003) (cited by *In re Residential
    Capital,* 2020 Bankr. LEXIS 653 (Bankr. S.D.N.Y. 2020)) ..................................................3

*Tadros v. Comm'r*, 763 F.2d 89 (2d Cir. 1985) .................................................................. 13-14

*United States v. Applebaum*, 2016 WL 427944 (W.D.N.C. Feb. 3, 2016) ...................................9

*United States v. Evseroff*, 2012 WL 1514860 (E.D.N.Y. April 30, 2012), *aff'd*, 528 Fed
    Appx. 75 (2d Cir. 2013) .......................................................................................................15

*United States v. Evseroff*, 270 Fed. Appx. 75 (2d Cir. 2008)......................................................15

*United States v. Snyder,* 233 F. Supp. 2d 293 (D. Conn. 2002)........................................... 14-15

*In re Voll,* 2013 Bankr. LEXIS 4723 (Bankr. N.D.N.Y. 2013) ....................................................8

DM1\13870966.4

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131 (2d Cir. 1991)........................................................................................................ 16-17

*Wood v. United States*, 808 F.2d 411 (5th Cir. 1987) ............................................................18

**Federal Statutes**

26 U.S.C. § 6212(b)(1)..................................................................................................9

26 U.S.C. § 6672 ...............................................................................3, 7, 9, 13, 18

**Rules**

Rule 30(b)(6)....................................................................................................................1

DM1\13870966.4

Debtor Brickchurch Enterprises, Inc. ("***Debtor***") by and through its undersigned counsel, hereby files this Reply in further support of Debtor's objection to the proof of claim ("***Objection***") filed the Internal Revenue Service ("***IRS***") and in support of the Objection, respectfully shows as follows:

## I.    INTRODUCTION

On December 28, 2022, Debtor filed its Objection on the grounds that: (i) the proof of claim was filed late; (ii) the IRS never properly served Louise Blouin with its notice to assess Trust Fund Recovery Penalties ("TFRP"); and, in any event (iii) Debtor is not the nominee or alter ego of Louise Blouin; nor (iv) can the TFRP be imposed against Louise Blouin.

Contemporaneously with the filing of the Objection, Debtor also served the IRS with a Rule 30(b)(6) Notice of Deposition, with a request for the production of documents.

The parties then participated in an approximate two-hour telephone conference to hone the areas of inquiry during the deposition; which lead to an Amended Rule 30(b)(6) Notice of Deposition (with requests for production of documents) being rescheduling in New York City on February 10, 2023.

The IRS had two witnesses testify on February 10, 2023; one being Anne Sylvia, who prepared the late-filed Proof of Claim; and the other being Revenue Officer Spencer Hughes, who was in charge of the collection of the employment tax and TFRP purported assessed against Ms. Blouin.[1]

The IRS filed its Response to the Objection (the "***Response***"), on February 13, 2023, in which it requests that the matter of the issues raised in Objection and Response be set for an evidentiary hearing,

---

[1]    References to the depositions transcripts are to rough drafts sent to counsel. The final transcript will be filed when available, but the Exhibits to the Depositions are being filed with this Motion.  The final transcripts are being prepared on an expedited basis.  The page number may be off when the final transcript is received, but we will file an amended Brief to update those page numbers if inaccurate. The rough draft of the Deposition of Anne Sylvia (the "Sylvia Dep.") is being filed as Exhibit "A".  The rough draft of the Deposition of RO Officer Hughes (the "Hughes Dep.") is being filed as Exhibit "B".

1

and for the additional relief of allowing it leave to file a late Proof of Claim.[2]  In furtherance of its efforts, the Response makes a number of allegations that make one wonder whether the IRS was even paying attention to the testimony provided by the two witnesses; as its statement regarding the facts of this case are inconsistent with its own witnesses' testimony.

There is no reason for an evidentiary hearing because the facts – as testified by Ms. Sylvia and RO Hughes – show: (i) it was not due to the lack of notice that the IRS missed filing its proof of claim by the bar date; but rather was a result of Ms. Sylvia's lack of training on the system used by the IRS; and (ii) the letter addressed to Ms. Blouin notifying her of the intent to assess TFRP was addressed incorrectly, returned as undelivered, and was not sent to the last known address of Ms. Blouin.  In fact, by the time the Notice was put in the mail, the IRS was aware that the homes on Gin Lane were not occupied, and that Ms. Blouin resided in Zermatt, Switzerland.

But, even if this Court gets beyond the timing issue and the mailing of the letter issue, the evidence presented by the IRS simply does not carry the day regarding proof of Ms. Blouin using Debtor as her nominee or alter ego; each such piece of evidence being hearsay and cavalierly-drawn conclusions; the majority of which are news articles and blogs; the facts of which were never verified by the IRS.  And, there is no attempt by the IRS to show any fraud or other wrongful conduct by Ms. Blouin vis-à-vis the Southampton properties.  Worse, there is no evidence from the IRS that Ms. Blouin was a control person of either company – Louise Blouin Media, Inc. ("*LBM*") and ArtNow, Inc. ("*ANI*") – that purportedly failed to turn over to the IRS funds held in trust for the payment of employment taxes.

//

//

//

---

[2]    The request to file a late proof of claim was no doubt included in the Response after it was raised at the deposition by Counsel for Debtor that it was not proper to file a proof of claim after the bar date without leave.

## II.    ARGUMENTS AND AUTHORITIES

### A.    THE PROOF OF CLAIM SHOULD BE DISALLOWED AS BEING LATE

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 382-83 (1993), sets forth four factors to consider when a party seeks to file a late proof of claim: (i) the danger of prejudice to the debtor; (ii) the length of the delay, (iii) the reason for the delay, including whether it was within the reasonable control of the person seeking to file a late claim; and (iv) whether the movant acted in good faith. *Id.* at 395.

The Second Circuit has "taken a hard line" in applying the four-prong test, and while each factor should be consider, the most important factor is the reason for the delay. *Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115 (2d Cir. 2005). "The Second Circuit has noted that "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-66 (2d Cir. 2003) (cited by *In re Residential Capital,* 2020 Bankr. LEXIS 653 (Bankr. S.D.N.Y. 2020)).

In its response, the IRS admits that it filed its Proof of Claim after the government bar date, but proposes the Proof of Claim should be allowed anyway because of its "neglect," substantially based upon its assertion that Debtor "failed to give the IRS adequate notice of its claim in this bankruptcy case." (Response at 1).   That so-called "inadequate notice" is the proffered fact that Debtor "merely listed the IRS as a creditor for notice purposes only, and without identifying the IRS's claim to collect Ms. Blouin's § 6672 liabilities against property title to Brickchurch."  The IRS further states that it "told Brickchurch's counsel about the recording of Notices of Federal Tax Liens (NFTLs) against Brickchurch as the nominee of Ms. Blouin in August 2022, but the debtor waited until November 2022 – after the bar dates has passed – to belatedly bring the IRS into this case by filing a motion accusing the IRS of violating the automatic stay."

The IRS's effrontery to blame Debtor for its failure is clear when one considers the testimony of IRS's Ms. Sylvia admitting that the failure to file the Proof of Claim was due to her lack of training and her failure to conduct a proper search within the IRS's data system.  Ms. Sylvia testified as follows:

1.    Ms. Sylvia is a bankruptcy specialist employed by the IRS.  Deposition of Sylvia Dep. at 26.

2.    The IRS has an automated proof of claim system, which was marked as Exhibit 2 to the Sylvia Dep.  Sylvia Dep. at 14, and Exhibit 2 thereto, which is the print out from the IRS's automated system.

3.    The system – Exhibit 2 – shows that the IRS was aware of the Debtor's filing for bankruptcy on May 3, 2022.   Sylvia Dep. at 15.

4.    The IRS is notified of nearly every Chapter 11 filing.  Sylvia Dep. at 15.

5.    When the petition was filed, the IRS computer system assigned this case to Ms. Sylvia on May 27, 2022.  Sylvia Dep. at 17.

6.    Generally, upon assignment, Ms. Sylvia investigates whether the IRS needs to file a Proof of Claim.   Part of the investigation involves looking for "whether or not open issues [for] people or entities that are related to the entity." *Id.* at 20.

7.    Ms. Sylvia investigated Ms. Blouin because she signed the bankruptcy petition.  *Id.* at 21.

8.    However, Ms. Sylvia testified that the method used to search Ms. Blouin was "not accurate to find her as a match." *Id.*  at 22.  Ms. Sylvia also testified that if she had performed a proper search, she would have found Louise Blouin in the IRS's system, and timely filed a Proof of Claim on behalf of the IRS:

Q.    If I wanted to sit down at your desk and do your job and locate Louise Blouin, how would I do it?

A.    Now as I was made aware, name I instead of name S it pulled up all Louise Blouin's in the system.

Q.      Name I name S what are those?

A.      Different ways to search.

Q.      Was it a training issue with you that made IRS you sitting in that chair was it sort of a training issue you didn't know how to do that?

A.      I wouldn't say that.

Q.      So you did know how to do it?

A.      I used what I had access to.

Q.      Did you know how to search using both the I and S code?

A.      No.

Q.      So which one did you know how to use?

A.      The name S.

Q.      And what is the S mean?

A.      I'm not sure.

Q.      It's just a code right?

A.      Yes.

Q.      So are you on – are you not allowed to use the name I code?

A.      No.

Q.      You are allowed?

A.      I am.

Q.      So you didn't know you could do it?

A.      I did not.

                        *       *       *

Q.      Let me ask you this, you said when you did the name I search that you got all the Louise Blouins, right?

A.      Correct.

Q.      And was there more than one Louise Blouin that came up in your search?

A.      There were.

Q.      You've now learned the way you're doing searches isn't the way you're going to get the best results; is that correct?

A.      You could say.

                              *       *       *

Q.      If you would have done the name I search that's available to you that you didn't know about and you had searched Louise Blouin using that indicator you would have found her, right?

A.      I would.

Q.      You would have found other issues that the IRS had with her, right?

A.      I would.

Q.      As a result of that back in May or early June when you were doing investigation if you had done the search right you would have been in the position to file a proof of claim, is that correct?

A.      That's correct.

Q.      As a result of doing your search correctly or the way you should have done it using the I search, you would have filed instead of December 1, 2022, you would have filed your proof of claim much earlier, is that right?

A.      That is true.

                              *       *       *

Q.      But, it took you thirteen years [as an IRS bankruptcy specialist] to pick up the way to do a proper search, correct?

A.      Apparently.

Sylvia Dep. at 22-28.

        Ms. Sylvia also testified that the I-name search takes less than two minutes, and if she had known

to do it, "[i]t would have revealed information that would have helped in making the link between Louise

Blouin and Brickchurch."   Sylvia Dep. at 42.

        So, despite the IRS's attempt to blame Brickchurch (or its counsel, for that matter), for failing alert

the IRS of the possible need to file a Proof of Claim, it was the IRS's failure to properly train Ms. Sylvia that was the ultimate cause of not filing a timely claim, insofar as: (i) it had notice of the bankruptcy; (ii) had a system to identify Ms. Blouin and her potential TFRP assessment; and (iii) failed to properly search the system.

The *Pioneer* standard exempts from the list of excuses "office mix-ups, clerical mistakes and failure to follow office procedure." *In re Dana Corp.,* 2008 Bankr. LEXIS 2241 (S.D. N.Y. July 23, 2008); *see also, Marks Management Servs. V. Reliant Mfg.,* 74 F.App'x 493 (6th Cir. 2003) (clerical error did not constitute excusable neglect); *In re Musicland Holding Corp.*, 356 B.R. 603 (Bankr. S.D.N.Y. 2006); *In re Kmart Corp.*, 381 F.3d 709 (7th Cir. 2004).   And, there is a strong presumption against allowing a late filed claim where, as here, the "delay was in the reasonable control of the movant." *In re Lehman Bros Holdings, Inc.,* 433 B.R. 113, 119-20 (Bankr. S.D.N.Y. 2010). *See also, In re AMR Corp.,* 492 B.R. 660 (Bankr. S.D.N.Y. 2013) (same); *In re Delphi Corp.,* 2009 Bankr. LEXIS 571 (S.D.N.Y. Jan. 20, 2009) (Louisiana Department of Revenue did not present a reasonable excuse when there was a failure to adequate use the system that would have revealed a transfer of the tax liability to the debtor).

Here, the IRS's reason for missing the bar date was simply because its specially-employed bankruptcy specialist failed to properly queue a search on its system and to locate the link as between Ms. Blouin's purported assessment of TFRP and Debtor.  This is not the type of excuse acceptable under the hardline rule developed in the Second Circuit under *Pioneer*.

Beyond the fact that the IRS failed to properly search its own records, it makes many other unsupported or misleading statements as excuses for failing to timely file its Proof of Clam.  For example, the IRS says that "[n]one of the debtor's notices to the IRS disclosed that Ms. Blouin had been assigned an ITIN[3] and assessed the §6672 liabilities." Response at 8.   But, when put into proper context, these two facts do not assist the IRS in proving a reasonable excuse. First, Ms. Blouin never applied for the issuance

---

[3]        Individual Tax Identification Number.

of an ITIN, but rather, it was the IRS that obtained this ITIN on behalf of Ms. Blouin so that Ms. Blouin could be tracked.  Deposition of Spencer Hughes ("Hughes Dep.") at 101.  In fact, Ms. Blouin did not even learn of her ITIN until it was given to her following the deposition.  Hughes Dep. at 102-103.

Second, there was no way that as of April 30, 2022, the date Debtor filed its Petition, that Debtor could have advised the IRS of the claim for nominee liability upon Debtor as the claim for such liability was not ever made until the IRS filed its Notice of Federal Tax Lien ("NFTL") on August 17, 2022. Apparently, the IRS did not run a bankruptcy search prior to filing the NFTL against Debtor; and ended up filing the NFTL in violation of the automatic stay.  Had the IRS conducted a search as a prelude to its collection activity, it would have discovered Debtor's filing.  *See In re Voll,* 2013 Bankr. LEXIS 4723 (Bankr. N.D.N.Y. 2013) (creditors have an affirmative duty to avoid the continuation of collection activities upon the filing of bankruptcy).  We know that the IRS's system, by that time, had a matter opened for Debtor.  Sylvia Dep. 15.  We also know that the IRS made no search of the bankruptcy dockets on PACER to determine if Debtor was in bankruptcy.

The IRS makes further reference to correspondence between Duane Morris tax partner Thomas Ostrander and RO Hughes relating to the TRFP sought to be imposed against Ms. Blouin, and alleges – somehow – that Mr. Ostrander has some sort of duty to advise the IRS of the Debtor's bankruptcy. Response  at 9.   This is nonsensical. First, it relates to a request for proof of mailing of the letter to Ms. Blouin, not any nominee liability that may have implicated Debtor.  ECF No. 168, at page 60.  Second, the correspondence pre-dates the filing of the NFTL, which was filed after the request by Mr. Ostrander.  *Id.* And, just the same, RO Hughes did not mention to Mr. Ostrander of his intent to file NFTL's against the Debtor's property.

The IRS also asserts the IRS failed to meet the Bar Date because the Debtor's schedules did not accurately set forth the IRS's claim.  However, and most obviously, the IRS's claim of nominee liability was not something that Debtor recognized as a debt to be listed on its schedule, and to the extent the IRS thought differently, that is why it receives notice of virtually every Chapter 11 filing, has a system to

research the notices, and conducts searches for the persons associated with the bankrupt entity. The truly facetious part of the IRS's argument is that the IRS filed a NFTL in violation of the automatic stay, and then claims that the violative NFTL is what gave rise to a duty on the part of the Debtor to amend a bankruptcy schedule. That's not the way it's supposed to work.

In sum, try as it must, to formulate a reasonable excuse, none is here – the failure to timely file a Proof of Claim was due to bad training and the lack of procedures in place at the IRS, and not excusable neglect.

## B.      THE §6672 ASSESSMENTS ARE NOT VALID BECAUSE THE NOTICE WAS NOT PROPERLY MAILED TO MS. BLOUIN

Prior to a TFRP penalty being imposed, the IRS has the burden of proving compliance with 26 U.S.C. § 6672. *United States v. Applebaum*, 2016 WL 427944 (W.D.N.C. Feb. 3, 2016). One of the requirements is the mailing of the Notice of the intent to assess the penalties:

> (1)     In general
>
>> No penalty shall be imposed under subsection (a) unless the Secretary notifies the taxpayer in writing by mail to an address as determined under section 6212(b) or in person that the taxpayer shall be subject to an assessment of such penalty.

26 U.S.C. § 6672(b)(1).

Section 6212 provides that notices must be sent to a person's last known address:

> In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, or chapter 44 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

26 U.S.C. §6212(b)(1).

So, as a condition precedent to the assessment of TFRP, two things are required: (i) proof of mailing; and (ii) that the mailing is directed to the last known address. However, the IRS did neither. It did not send a properly addressed letter directed to what it knew be it Ms. Blouin's last known address.

Deposition Exhibit 17 is the IRS's record relating to the TFRP sought to be assessed against Ms. Blouin.  Hughes Dep. at 189-190, and Exhibit 17.  RO Hughes testified regarding the contents of that record.  Hughes Dep., Exhibit 17.  The entries on Exhibit 17 begin on October 13, 2018. Hughes Dep. at 189.  One of the first entry on the record was on November 9, 2018, and shows that the IRS knew that Ms. Blouin was a Canadian Citizen, "currently living in Switzerland" with a "corporate HQ in London." Hughes Dep. at Exhibit 17, at 8 of 287; and 130.

RO Hughes testified that he printed out IRS Letter 1153 to notify Ms. Blouin of the intent of the IRS to assess TFRP against her.  There were two letters printed, both dated July 16, 2018.  One was IRS Letter 1153 related employment tax relating to ANI.   Hughes Dep. at 119, and Exhibit 12.  The other is IRS Letter 1153 related to employment tax relating to a company called LBM.  Hughes Dep. at 128, and Exhibit 13.

Neither of the letters were addressed to the last known address in Switzerland reflected in the IRS's record, nor to an office in London, but rather were addressed to "366376 Gin Ln., S. Hampton, NY 11968-0000-00," as pasted below:

**Internal Revenue Service**                                    **Department of the Treasury**

Date: 7/16/2018

LOUISE T BLOUIN
366376 GIN LN
S HAMPTON, NY 11968-0000-000

Number of this Letter:
1153
Person to Contact:
S. Gould
Employee Number:
1000281200
IRS Contact Address:
INTERNAL REVENUE SERVICE
290 BROADWAY 14TH FLOOR COLL GR-43
NEW YORK, NY 10007

Hughes Dep., as Exhibits 12 & 13.

Seemingly, RO Hughes intended the letters to be delivered to either 366 or 376 Gin Lane, but admits that the letters printed with the numbers running together.  Hughes Dep. at 122.  Because of the error on

10

the letter, both letters were returned, as can be seen on page 9 of Exhibit 12, and on page 8 of Exhibit 13, both pasted below:



Hughes Dep., at Exhibits 12 & 13.

To make matter worse, RO Hughes knew the address was wrong, and even corrected the address in the IRS's records – see Exhibit 17 at page 9 of 287, and refers to address of "366376" as "not correct," as pasted below:

```
    ACTION DATE: 11/09/2018                    CREATE ID: 21034341

Systemic History: ENTITY UPDATED - ICS

IDRS MAILING ADDRESS (M)  change requested

Addr:                    FROM:
                         ----

                         366376 GIN LN
                         S HAMPTON NY 11968

                         TO:
                         --

                         366 376 GIN LN
                         SOUTHAMPTON NY 11968

    ACTION DATE: 11/09/2018  SYSTEM DATE: 11/13/2018  CONTACT: FIELD  CREATE ID: 21062230
ATTEMPTED CONTACT
POST OFFICE SEARCH
NEIGHBOR SEARCH

ATTEMPTED CONTACT - TAXPAYER
    RESULTS: fc to tp's address, there are 2 houses, and 2 street numbers, 366, and 376.  ics address
should be revised as "366376" is not correct.  both properties are located in a "AAA" area, right
on the atlantic ocean.  high hedges, and electric gates on each.  name on sign is "la dune".
```

Hughes Dep. at 190-191, and Exhibit 17, at 9 of 287.

After making the correction to the house number in the IRS's records, the IRS did not resend the letter to the updated address, even though RO Hughes considered the possibility that the letters were returned because of the error in the address: "That's within the realm of possibility, yes." Hughes Dep. at 194, 197, 123 & 125.

So, even assuming the Southampton was in fact Ms. Blouin's last known address, the IRS knew that it failed to properly address and mail the required notice, yet nonetheless filed NTFLs and Proof of Claims based upon the assessment of TFRP against Ms. Blouin. But, it is worse. The IRS did not even have the Southampton address as Ms. Blouin's last known address, as clearly shown in its own records. Indeed, in the entry earlier the same day as the entry showing the faulty house number, the IRS believed Ms. Blouin to be living in Switzerland:



ACTION DATE: 11/09/2018  SYSTEM DATE: 11/09/2018  CONTACT: OTHER  CREATE ID: 21034341

GENERAL HISTORY

OI opened by r/o 21034341 to maintain control of case. bal-dues are result of tfrp's originating
from Louise Blouin Media Inc EIN:          , and Art Now Inc EIN:          . the mft 55 bal-dues
were quick assessed from both entities. they also contain 6020(b) assessments from both entities.
the t/p is a canadian media entrepreneur currently living in Switzerland, with a corporate HQ in
London. the t/p did not previously have an ssn until revenue officer 21034341 got it

Page 8 of 287
Sensitive But Unclassified

REQUESTOR: 2199-6916
ICS COMPLETE TRANSCRIPT
history information

Name: LOUISE T BLOUIN                              TIN:

assigned to her thru the ITIN process. at present the tfrp appears to be the only way to recover
unpaid payroll taxes since the businesses cited above are part of a maze of interconnected corp's
and llc's tied to a London based parent company. the employees work from home, and the US corp addresses
are nothing more than mail drops. the accounting firms for both businesses are based in Mumbai India
and are unresponsive.

And, the IRS had Ms. Blouin's address in Switzerland:

rcvd estab'd 1120F for Aberdeen Enterprises Holdingd (BVI) ltd under ein:          or the following
years 201412, 201512, and 201612. gleaned that the BVI is short for British Virgin Islands. the care
of name on the returns is Louise Blouin @ 376 gin lane. all returns report the value of the US assets
@ $20.5M with slight fluctuations from beginning to year ends.
attchmnts 5472 - info return of a 25% foreign owned us corporation or a foreign owned corporation
engaged in a US trade or business shows only louise blouin with an address of Haus Blauherd Wiestistra,
Zermatt 3920 Switzeland. there is no identifying number (ssn) associated with her on any return.
the 2014 return shows an outstanding loan to aberdeen starting @ $7.9M with an ending loan balance
in 2016 of $9.3M.

Hughes Dep., at 197, and Exhibit 17, at page 29 of 287.

When we sum all this together, it is undisputed that: (i) the Southampton address was not correct;
(ii) the letters were returned because they were not addressed correctly; (iii) after the address was corrected
by RO Hughes, no new 1153 Letters were sent; (iv) according to the IRS, Ms. Blouin's last known address
was in Switzerland; and (v) no letter was sent to the known address in Switzerland.  This all equals the
IRS's failure to assess TFRP against Ms. Blouin.  Because there was no properly imposed assessment
against Ms. Blouin, it must follow that the IRS cannot seeks any amounts as stated in the Proof of Claim.

In response, the IRS agrees that, "[b]efore imposing a TFRP, the IRS must comply with the notice
requirement in § 6672(b)(1)," which requires mailing of a Letter 1153 at least 60 days before the assessment
to the taxpayer's last known address.  Response at 16.  But, as already discussed, the two letters in question
were not mailed to the Southampton property (which was not Ms. Blouin's last known address in any
event).  Relying on the Second Circuit's decision in *Tadros v. Comm'r*, 763 F.2d 89 (2d Cir. 1985), the IRS

13

argues that the undisputed fact that Ms. Blouin never received the notices is irrelevant because "'if [notice] is mailed to the taxpayer's last known address it is adequate for the purposes of the statute.'"  Response at 17.  True enough, but the Second Circuit added an important caveat to this rule:

> This is not to say, however, that the IRS has no obligation to attempt to ascertain the taxpayer's new address; where it is shown that the IRS has failed to exercise reasonable care in determining an address, a notice sent to the wrong address will not satisfy the statutory requirement, and the 90-day period will not begin to run.

*Tadros*, 763 F.2d at 91-92.  Here, not only was the IRS aware that it had mistakenly addressed the notices in question to a nonexistent address in Southampton—as evidenced by both the return of the letters as undeliverable and the later change in its systems to correct that address—but it was further aware that even the correct Southampton address was **not** Ms. Blouin's last known address.[4]  The Proof of Claim, therefore should be disallowed because: (i) it was filed late, and (ii) there was never any assessment imposed against Ms. Blouin in the first place.

### C.  DEBTOR IS NOT, AS A MATTER OF LAW, THE NOMINEE OF LOUISE BLOUIN

Even if properly assessed against Ms. Blouin—though it is clear the TFRP were not—there is no basis upon which to impose against Debtor the TFRP because there is the absence of any evidence that overcomes what is offered by Debtor on both the nominee and alter ego issues.

#### 1.  Debtor is not, as a matter of law, the Nominee of Louse Blouin

"Under the nominee doctrine, an owner of property may be considered a mere 'nominee' and thus may be considered to hold only bare legal title to the property." *United States v. Snyder,* 233 F. Supp. 2d 293, 296 (D. Conn. 2002).  "In discerning whether a nominee relationship exists, the question is whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in

---

[4]    *Tadros*, and cases like it, are further distinguishable because there the taxpayer was found to have originally provided the address in question to the IRS, but failed to provide clear notification of his change in address, meaning that the original address was considered the "last known address" in possession of the IRS for communications to be sent to the taxpayer.  *Tadros*, 763 F.2d at 91-92.  In this case, by contrast, there is no suggestion that Ms. Blouin ever provided the Southampton address to the IRS (let alone the incorrect, non-existent address to which the mailings were made).

the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *Nassar Fam. Irrevocable Tr. v. United States*, 2016 WL 5793737, at *7 (S.D.N.Y. Sept. 30, 2016), *aff'd in part, appeal dismissed in part sub nom.*, *United States v. Nassar*, 699 F. App'x 46 (2d Cir. 2017) (citations omitted).

The "critical issue" in the nominee analysis is "not motive, but control, and whether the defendant used this control to commit a fraud or other wrong resulting in an unjust loss or injury to the plaintiff." *United States v. Evseroff*, 270 Fed. Appx. 75, 77 (2d Cir. 2008) (citing *In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003)). The most common considerations in determining nominee status are the following:

> (1) whether inadequate or no consideration was paid by the nominee;
>
> (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
>
> (3) whether there is a close relationship between the nominee and the transferor;
>
> (4) whether they failed to record the conveyance;
>
> (5) whether the transferor retains possession; and
>
> (6) whether the transferor continues to enjoy the benefit of the transferred property.

*United States v. Evseroff*, 2012 WL 1514860, at *10 (E.D.N.Y. April 30, 2012), *aff'd*, 528 F. App'x 75 (2d Cir. 2013).

The elements of the nominee test are not satisfied here. Ms. Blouin never owned the Property, and thus there is no question of a transfer for allegedly inadequate value or a lack of arms' length negotiation between purported nominee and transferee. The Debtor has owned the Property since 2000, and the TFRP sought to be imposed is for the tax periods beginning 2011, nearly one decade **after** Debtor acquired any interest in the Property. *See Snyder*, 233 F. Supp. 2d at 296-97 (discussing relevance of transfer at time tax liability was known). The IRS's reliance upon the circumstances by which Debtor obtained its interest in

15

the Property more than a decade before the liabilities here even existed is improper as a matter of law. Response at 23.

Indeed, as to most significant elements of nominee liability, RO Hughes admitted they were not present:

- The IRS made no finding that the property was placed in either Brickchurch's or Aberdeen's name in anticipation of any lawsuit or claim by the IRS.  Hughes Dep. at 150.

- The IRS found the deeds to the property were recorded in the public record.  Hughes Dep. at 150-151.

- Ms. Blouin never individually owned the property.  Hughes Dep. at 151.

- There was no lack of consideration for the transfer of the deed.  Hughes Dep. at 227-228.

As a matter of law, Debtor is not shown to be the nominee of Ms. Blouin.

### 2.        Debtor is not the alter ego of Louise Blouin

The IRS seems to take the position that because property is owned by a single asset entity, that somehow converts the ultimate owner of that holding company into the legal beneficiaries.  However, that is a terrible leap to take, as properties, including residential properties are titled in the name of corporations all the time, and for legitimate reasons.

 Here, the IRS relies upon some general statements by Ms. Blouin regarding the use of the properties, and to articles it retrieved from the Internet.  But, none of this goes to whether the companies are the alter ego of Ms. Blouin; especially where there is no allegation that Ms. Blouin committed any fraud.

The form of an entity may be disregarded under New York law to hold a party liable for the debts of an entity when the party controls the entity, and such control is used to commit a fraud or a wrong. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc*., 933 F.2d 131, 138 (2d Cir. 1991) ("[C]ontrol . .

. is the key; the control must be used to commit a fraud or other wrong that causes plaintiff's loss." (*citing Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)).

"New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp., 122 F.3d at 134. "Liability therefore may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties." *Wm. Passalacqua Builders*, 933 F.2d at 138 (citing cases).

Here, while the IRS has attempted to make a link between statements reported in the press regarding Ms. Blouin, they make no effort to even address the second prong regarding the commission of some sort of fraud to another party.  Indeed, the corporate structure of the ownership of both properties greatly pre-dated the attempted assessment against Ms. Blouin of TFRP; which makes this a long cry away from any sense of fraud on part of Ms. Blouin.  And, the IRS makes no claim of fraud. What we have here, is the IRS's attempt to recover employment taxes; and its frustration of not being able collect against any property located in the United States.  Taxes go unpaid all the time, and the simple fact that Ms. Blouin gets some benefit from the Southampton properties is really beside the point.  The IRS utterly failed to make out any basis upon which alter ego liability may be imposed against Debtor.

### D.    THE IRS DID NOT HAVE A SCINTILLA OF EVIDENCE SHOWING THAT MS. BLOUIN SHOULD BE ASSESSED THE TFRP IN THE FIRST PLACE

To impose TFRP penalties against an individual, that individual must be a "control person" of the organization which owes employment taxes. Whether a person is a control person requires two findings: first, that the person was responsible for the payment of the tax within the organization and, second, that the non-payment was willful. *See Hochstein v. United States*, 900 F.2d 543 (2d Cir. 1990).

Courts consider several factors in determining whether an individual is responsible for collecting and paying withholding taxes, including the individual's duties as outlined in the corporate bylaws, his

17

ability to sign checks, his status as an officer or director, and whether he could hire and fire employees. *Id. citing, Gephart v. United States*, 818 F.2d 469, 473 (6th Cir. 1987) (per curiam). The central question, however, is whether the individual has significant control over the enterprise's finances. *See, e.g., Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987); *Gephart*, 818 F.2d at 473; *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir. 1978) (per curiam). A person willfully fails to pay withholding taxes within the meaning of section 6672 when he pays other creditors with knowledge that withholding taxes are due. *Hockstein*, 900 F.2d at 548; *see, e.g., Wood v. United States*, 808 F.2d 411, 415 (5th Cir. 1987); *Kalb v. United States*, 505 F.2d 506, 511 (2d Cir. 1974).

When one considers what is offered by the IRS in response to the Objection, there is absolutely no evidence that Ms. Blouin had control over the enterprise's financing or was in charge of paying any creditors.  Rather, the IRS focused on the names of the two companies, with one of them bearing Ms. Blouin's name – Louise Blouin Media, Inc., and to various new articles which speaks, at most, of Ms. Blouin's association with the companies.  But there is no information – absolutely none – which bear on whether Ms. Blouin had control of the financing of either.  RO Hughes simply testified that other companies "had LTB or some – some concoction of her initials which made it obvious that this was hers.  This was her gig."  Hughes Dep. at 99, 145, 147-152, and Exhibit 14.

When asked, RO Hughes makes general statements, such as "all roads led to Ms. Blouin."  Hughes Dep. at 98.  However, what RO Hughes is really saying is that "we couldn't figure it out, so we just pinned the liability on Ms. Blouin."   In fact, he admits that he pinned the liability on Ms. Blouin because he could not find anyone else to pin it on:

> There was no records in any of my contacts or Ms. McQueenies to show any coherent, responsible fiscal management of these U.S.-based entities that were paying payroll taxes that had a responsibility to withhold Social Security contributions from employees, withhold federal income tax from employees, and then turn them over to the government. That is what I saw.

Hughes Dep. at 116.

18

RO Hughes also admitted that he learned that payroll was actually managed by a company called Paychex, but that he did think it was worth talking to anyone at Paychex to determine who there or at ANI or LBM was responsible for the payroll and the payment of employment tax. Hughes Dep. at 106-108. RO Hughes also knows that one of the services provided by Paychex, is the payment of the employment taxes; and that from time to time they make mistakes. Hughes Dep. at 113. But, even with this knowledge, RO Hughes did not approach Paychex "because of experience with their bloated bureaucracy and their indifference to many of their low level and maybe mid-level clients." Hughes Dep. at 113. And, "Paychex is not as responsive to inquiries form revenue officers as [Hughes] would like them to be." Hughes Dep. at 113.

In sum, it is apparent that RO Hughes became frustrated with his inability to collect the employment taxes from ANI and LBM, and when he could not find a responsible party, determined to pin the responsibility on Ms. Blouin, despite the lack of evidence. While perhaps making some connection between Ms. Blouin and ANI and LBM – and some sort of "concoction" – there is no evidence that he can point to that Ms. Blouin had control over any of the companies' finances. The IRS's attempt to hold Ms. Blouin responsible for the non-payment of taxes, through the assessment of TFRP is made out of whole cloth and the IRS's Proof of Claim should be disallowed.

## III.    CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an appropriate order disallowing the IRS's untimely filed Proof of Claim and granting the Debtor such other and further relief as the Court deems just and proper both at law and in equity.

Dated:  February 20, 2023

Respectfully submitted,

DUANE MORRIS LLP

/s/ Brett L. Messinger
Brett L. Messinger
1540 Broadway
New York, NY 10036
215.979.1508
Email: blmessinger@duanemorris.com

With him,

SIMMONS LEGAL PLLC

*/s/ Camisha L. Simmons*
**Camisha L. Simmons**
**SIMMONS LEGAL PLLC**
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
212.653.0667 (Telephone- New York)
214.643.6192 (Telephone- Dallas)
800.698.9913 (Facsimile)
Email:  camisha@simmonslegal.solutions

***COUNSEL FOR DEBTOR***

## CERTIFICATE OF SERVICE

I certify that on February 20, 2023 a true and correct copy of the foregoing Motion was served electronically upon all parties of record through the Court's Electronic Case Filing System on those parties that have consented to such service.

DUANE MORRIS LLP

/s/ Brett L. Messinger
Brett L. Messinger
1540 Broadway
New York, NY 10036
215.979.1508
Email: blmessinger@duanemorris.com

20