**EXHIBIT A**

**DISCLOSURE STATEMENT**

**IN UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------- x
In re:                                          :
                                                :       Chapter 11
BRICKCHURCH ENTERPRISES, INC.,:
                                                :       Case No. 22-70914-ast
                     Debtor.                    :
                                                :
--------------------------------------------------- x

**DISCLOSURE STATEMENT FOR BAY POINT CAPITAL PARTNERS II, LP'S**
**PROPOSED PLAN OF LIQUIDATION OF BRICKCHURCH ENTERPRISES, INC.**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: May 17, 2023

THOMPSON HINE LLP
John C. Allerding, Esq.
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN DESCRIBED HEREIN.     ACCORDINGLY,  THE  FILING  AND  DISSEMINATION  OF  THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE  PROPOSED  DISCLOSURE  STATEMENT  CONTAINS  ADEQUATE INFORMATION.**

4893-5174-7415.8

## DISCLAIMER

**PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT, INCLUDING THE FOLLOWING SUMMARY, ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, ANY AND ALL SUPPLEMENTS TO THE PLAN AND ANY EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT.  ALL CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW.  THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.**

**CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.**

**THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE DESCRIPTION OF THE DEBTOR, ITS BUSINESS AND EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASE, HAS BEEN OBTAINED FROM VARIOUS DOCUMENTS, AGREEMENTS AND OTHER WRITINGS RELATING TO THE DEBTOR. NEITHER THE PLAN PROPONENT NOR ANY OTHER PARTY MAKES ANY REPRESENTATION OR WARRANTY REGARDING SUCH INFORMATION.**

**THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.  ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.**

**AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING THE DEBTOR, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE**

ii

CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER.  AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE PLAN PROPONENT, THE DEBTOR, OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE LIQUIDATION AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, EACH HOLDER IS HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER UNDER THE TAX CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY THE PLAN PROPONENT IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY THE PLAN PROPONENT OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THE PLAN LEAVES UNALTERED THE LEGAL, EQUITABLE, AND CONTRACTUAL RIGHTS OF THE HOLDERS OF CLAIMS AND INTERESTS AND THUS THERE ARE NO ENTITIES HOLDING CLAIMS OR INTERESTS THAT ARE IMPAIRED, OR THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.

4893-5174-7415.8

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS...................................... 2

OVERVIEW OF CHAPTER 11 ................................................................................................ 6

DESCRIPTION OF THE DEBTOR AND EVENTS LEADING TO THE CHAPTER 11 CASE 6

THE CHAPTER 11 CASE ....................................................................................................... 7

SUMMARY OF THE PLAN OF LIQUIDATION .................................................................... 8

CONFIRMATION PROCEDURE ........................................................................................... 19

ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............ 22

CERTAIN RISK FACTORS TO BE CONSIDERED .............................................................. 22

SECURITIES LAWS MATTERS............................................................................................ 23

CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .................... 23

RECOMMENDATION AND CONCLUSION.......................................................................... 25

**EXHIBIT A – PLAN**

4893-5174-7415.8

# I.
## INTRODUCTION

Bay Point Capital Partners II, LP ("***Bay Point***" or the "***Plan Proponent***") filed a Plan of Liquidation for Brickchurch Enterprises, Inc. (the "***Debtor***") dated May 17, 2023 (as may be amended, modified or supplemented, the "***Plan***") with the United States Bankruptcy Court for the Eastern District of New York (the "***Bankruptcy Court***"), a copy of which is annexed hereto as **Exhibit A**, which sets forth the manner in which claims against and interests in the Debtor will be treated.  This Disclosure Statement (the "***Disclosure Statement***") describes certain aspects of the Plan (including the treatment of Claims and Interests under the Plan), the Debtor's business and related matters.  **Unless otherwise defined, all capitalized terms have the meaning ascribed to them in the Plan.**

This Disclosure Statement is submitted to holders of Claims against, and Interests in, the Debtor in connection with the hearing to consider confirmation of the Plan (the "***Confirmation Hearing***") presently scheduled for June _____, 2023, at [ ] (Eastern Daylight Time).

Attached as an exhibit to this Disclosure Statement is a copy of the Plan (**Exhibit A**).

The Plan Proponent has moved the Bankruptcy Court for an order approving this Disclosure Statement as containing "adequate information" to enable a hypothetical, reasonable investor typical of the holders of Claims and Interests in the Debtor to make an informed judgment on the merits of the Plan.

## SUMMARY OF THE PLAN

The Plan provides for the orderly liquidation of the assets of the Debtor through a sale in accordance with section 363 of the Bankruptcy Code (the "***Sale***"), following a marketed sale process for the Debtor's real property and improvements located at 366 Gin Lane, Southampton, New York (Block 01.00; Lot 017.014) (the "***366 Gin Property***").  Proceeds generated from the Sale will be distributed to Creditors of the Debtor's estate holding Allowed Claims in the order of priority established by the Bankruptcy Code; provided, however, if there are insufficient sale proceeds to satisfy allowed administrative and priority claims, Bay Point will advance funds to cover such insufficiency.

Any Successful Purchaser, or its nominee, shall take title to the Property, free and clear of all Liens, Claims and encumbrances, other than permitted encumbrances accepted by the Successful Purchaser.

### A.    **Confirmation Hearing**

The Confirmation Hearing will be held on _____, 2023 at [ ] (EST), before the Honorable Alan S. Trust, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722.  The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed so that they are received on or before _____, 2023.  Service of any objection to confirmation must be served upon (i) counsel for the Debtor, Simmons Legal PLLC, 1330 Avenue of the Americas, Suite 23A, New York 10019; (ii) counsel for Bay Point, Thompson Hine LLP, 3900 Key Center,

127 Public Square, Cleveland, Ohio 44114 (Attn: John C. Allerding, Esq.); (iii) the Office of the United States Trustee, 560 Federal Plaza, Room 560, Central Islip, New York 11722-4437 (Attn.: William Birmingham, Esq.); and (iv) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

THE PLAN PROPONENT BELIEVES THAT THE PLAN WILL ENABLE CREDITORS TO MAXIMIZE RECOVERIES AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11.  THE PLAN PROPONENT BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS.

## II.
## SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS

The table below briefly summarizes the specific classification and treatment of Claims and Interests under the Plan.  As provided in the Plan, Professional Fee Claims, Post-Petition Administrative Tax Claims, Administrative Claims, and Priority Tax Claims have not been classified and are excluded from the Classes specified herein in accordance with section 1123(a)(1) of the Bankruptcy Code:

| Class | Type of Claim or Interest | Treatment | Estimated Claim Amount (By Class) | Estimated Recovery |
|---|---|---|---|---|
| N/A | Professional Fee Claims | All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date.  No later than three (3) Business Days prior to the Confirmation Hearing, all entities holding claims for Professional Fee Claims shall serve via email upon counsel for the Plan Proponent a notice of the estimated amount of their unpaid Professional Fee Claim and the estimate for any post-confirmation fees and expenses of the Debtor's professionals, and the Holders of Professional Fee Claims shall provide updated estimates to counsel for the Plan Proponent via email three (3) Business Days prior to the Effective Date.  The Disbursing Agent shall, on the basis of the revised estimates, establish on the Effective Date an Estimated Professional Fee Reserve, in such amounts which are | $300,000 | 100% |

4893-5174-7415.8

| | | | | |
|---|---|---|---|---|
| | | reasonably necessary to pay the amount of such Professional Fee Claims. Subject to allowance by the Bankruptcy Court, the Disbursing Agent shall use the funds in the Estimated Professional Fee Reserve to pay the allowed amount of each Professional Fee Claim (i) upon the later of (A) three (3) Business Days following the Effective Date or such other date as soon as reasonably practicable thereafter (the "Distribution Date") and (B) the date upon which the Order relating to any such Allowed Professional Fee Claim becomes a Final Order, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Disbursing Agent. Payments made to a Professional from funds in the Estimated Professional Fee Reserve shall constitute payment in full of the Professional's Allowed Professional Fee Claim, and the Professional shall have no further recourse against the Disbursing Agent, the Debtor or the Plan Proponent for such Claim. | | |
| N/A | Post-Petition Administrative Tax Claims | All Proofs of Post-Petition Administrative Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the Administrative Bar Date, which shall be the first Business Day that is thirty (30) days after the Confirmation Date. Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, all Post-Petition Administrative Tax Claims shall be paid, in Cash, in full on (A) the later of (i) the Distribution Date, (ii) the date payment is due under the terms thereof or applicable law, or (iii) three (3) Business Days after such Claim becomes an Allowed Claim, or (B) upon such other terms as may be agreed to, in writing, between the Disbursing Agent and the holder of such Claim. | $96,560 | 100% |
| N/A | Administrative Claims | With the exception of Claims for Administrative Expenses arising, and paid, in the ordinary course of the Debtor's business, all Proofs of Administrative Claim or requests for payment of Administrative Expenses | $250,000 | 100% |

| | | | | |
|---|---|---|---|---|
| | | shall be filed on or before the Administrative Bar Date. Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, other than Professional Fee Claims and Post-Petition Administrative Tax Claims to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (A) the later of (i) the Distribution Date, (ii) the date payment of such Claim is due under the terms thereof or applicable law, or (iii) three Business Days after such Claim becomes an Allowed Claim or (B) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim. | | |
| N/A | Priority Tax Claims | Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in full on the later of (i) the Distribution Date or (ii) three (3) Business Days after such Claim becomes an Allowed Claim. | $0.00 | 100% |
| N/A | Bankruptcy Fees | The Disbursing Agent shall pay on the Distribution Date all outstanding fees and charges assessed against the Debtor under 28 U.S.C. § 1930 as of the Effective Date and any applicable interest due thereon. All remaining fees and charges assessed against the Debtor under 28 U.S.C. § 1930, through the date of dismissal, conversion or entry of a final decree, shall be paid by the Disbursing Agent, in Cash in full as required by statute from the Bankruptcy Fees Reserve. | $250,000 | 100% |
| 1. | Other Priority Claims | Unimpaired. Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction of Class 1 Other Priority Claims, the holders of Other Priority Claims shall receive on the Distribution Date, or as soon as possible after such Claims become Allowed Claims, (i) Cash, in the full amount of the holder's Allowed Other Priority Claim, or (ii) such treatment as may be otherwise agreed in writing between the | $0.00 | 100% |

4

4893-5174-7415.8

| | | | | |
|---|---|---|---|---|
| | | Disbursing Agent and the holder of such Claim. | | |
| 2. | Unsecured Claims | Unimpaired. Unsecured Claims consist of Claims held by Louise Blouin and Claims, if any, arising from the rejection of Executory Contracts. In full and final satisfaction of Unsecured Claims, the holder of each Claim, to the extent allowed, shall share Pro Rata in the remaining balance of the Net Sale Proceeds realized from the sale of the Brickchurch Property after payment in full of Bankruptcy Fees, the DIP Obligations, the Bay Point Exit Advances, Administrative Claims, Post-Petition Administrative Tax Claims, Other Priority Claims, Priority Tax Claims, and Professional Fee Claims. Class 2 is unimpaired and the holders of Unsecured Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Unsecured Claims are not entitled to vote to accept or reject the Plan. | $10,000,000 | TBD% |
| 3. | Equity Interests | Except to the extent that an Interest Holder agrees to less favorable treatment, all Interest Holders shall retain the value of their Interests that may exist in the Debtor, including the right to receive the remaining balance of the Net Sale Proceeds, if any, after payment in full of the allowed amount of the Unsecured Claims. Interests in the Debtor shall not be extinguished, and the Debtor shall remain responsible for either managing or winding down its own affairs, without interfering with the Disbursing Agent's performance under the Plan. Class 3 is unimpaired and Interest Holders in Class 3 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of existing Interests are not entitled to vote to accept or reject the Plan. | N/A | N/A |

4893-5174-7415.8

## III.
## OVERVIEW OF CHAPTER 11

Chapter 11 provides a means for either the reorganization or liquidation of the debtor pursuant to a plan confirmed by the bankruptcy court. In addition to permitting reorganization or liquidation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly-situated creditors and equity interest holders with respect to the distribution of a debtor's assets, subject to the priorities established by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." The consummation of a plan of reorganization or liquidation is the principal objective of a chapter 11 reorganization case. A plan sets forth the means for satisfying claims against and interests in the debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor. In cases in which a debtor's assets are disposed of pursuant to a plan of liquidation, the debtor does not receive a discharge of debts that arose prior to the date of confirmation of the plan.

After a plan has been filed, the holders of claims against or interests in a debtor are permitted to vote to accept or reject the plan, unless their claims or interests are not impaired by the plan. Before soliciting acceptances of the proposed plan, however, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. Although the Plan Proponent does not believe that any Class of Claims or Interests is impaired by the Plan in this case, the Plan Proponent is submitting this Disclosure Statement to holders of Claims against or Interests in the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code in the event the Courts finds that one or more Classes of Claims or Interests is impaired by the Plan, and that holders of Claims or Interests within such Class are entitled to vote to accept or reject the Plan.

## IV.
## DESCRIPTION OF THE DEBTOR AND
## EVENTS LEADING TO THE CHAPTER 11 CASE

The Debtor is the owner of a luxury residential estate (the "***Debtor's Beachfront Estate***" or "***Property***") located at 366 Gin Lane, Southampton, New York, 11968.

Adjacent to the Debtor's Beachfront Estate is another luxury estate located at 376 Gin Lane in Southampton (the "***Adjacent Estate***"). The Adjacent Estate is owned by non-debtor Aberdeen Enterprises, Inc. Both entities are owned by a company located in the British Virgin Islands.

The Debtor commenced the above-captioned Chapter 11 case (the "***Chapter 11 Case***") on the Petition Date to forestall foreclosure litigation initiated by its then secured lenders, refinance its secured debt and/or sell its Property in an orderly fashion with the benefit of the protections of the Bankruptcy Code.

6

# V.
# THE CHAPTER 11 CASE

Together with its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, the Debtor filed its Schedules of Assets and Liabilities (the "Schedules") [ECF No.  1] on the Petition Date.  The Schedules listed (i) JGP Partners, LP, (ii) JGP Capital, LP; (iii) JGP (Cayman) Ancona Ltd., and (iv) JGP Plymouth Rock LLC (collectively, "JGP") as  secured creditors holding a non-contingent, liquidated, but disputed secured claim.

In its pursuit of a sale of the Property, the Debtor entered into an agreement with Nest Seekers International (the "Broker") to market the Property for sale.  On August 3, 2022, Vanderbilt Appraisal Company issued a report appraising the market value of the Debtor's Property to be $67.5 million as of August 1, 2022.

On September 30, 2022, the Debtor filed a proposed Chapter 11 Plan of Reorganization (the "**Debtor's Plan**") and moved for an order approving its Disclosure Statement filed in support of the Debtor's Plan (the "**Debtor's Disclosure Statement**").

On October 21, 2022, the Debtor filed a motion [ECF No. 147] (the "**Refinancing Motion**") seeking authorization from the Court to refinance the outstanding original amount owed to JGB pursuant to a settlement agreement reached between the Debtor and JGB.  Payment to JGB was to be financed through a post-petition debtor-in-possession loan (the "**DIP Loan**") from Bay Point, pursuant to a certain Loan and Security Agreement (the "**DIP Loan Agreement**").

On November 15, 2022, the Court entered its *Order Granting Debtor's Motion for Order Authorizing Payment of the Undisputed Secured Claim Amount Asserted by Debtors Prepetition Secured Lender* [ECF No. 170] (the "**Payout Order**") authorizing the payment of $44.5 million to JGB upon the closing of the DIP Loan.  On November 16, 2022, the Court entered its *Order (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (II) Granting Liens and Super-Priority Claims* [ECF No. 172] (the "**DIP Financing Order**"), pursuant to which it, among other things, (i) authorized the Debtor to obtain the DIP Loan, in the amount of $62 million,  from Bay Point under the terms of the DIP Loan Agreement with the proceeds of the DIP Loan to be used for, among other things, the payment of $44.5 million to JGB, a payment to Morgan Stanley as consideration for its agreement to forbear from exercising its rights as a first lienholder against the Aberdeen property, payment of certain mechanics liens, interest reserves, and payment of related fees and expenses; (ii) authorized an assignment by JGB, without recourse, of all of its loan documents, its state court judgment against the Debtor, and its proofs of claim to Bay Point as DIP Lender (collectively, the "**Assignment**"); (iii) granted Bay Point superpriority administrative claims and first priority senior liens with respect to DIP Collateral (as defined in the DIP Loan Agreement) in accordance with sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code; (iv) authorized the Debtor to borrow under the DIP Loan Agreement for the purposes of effectuating the Payout Order; and (v) provided additional time for the Debtor to market its property to maximize the estate's recovery with respect thereto.  On December 12, 2022, the Debtor filed a Notice confirming both the closing of the DIP Loan and that the terms and conditions of the Payout Order had been satisfied.

On January 23, 2023, the Debtor filed a letter with the Court [ECF No. 216] confirming that (i) the remaining DIP Loan proceeds, following the payment to JGB, were sufficient to pay all allowed claims of the Debtor's other prepetition creditors and certain administrative expenses in the Debtor's case; (ii) the Debtor intended to file an amended chapter 11 plan of reorganization that would provide for the sale of the Debtor's property and/or the refinancing of the DIP Loan, and would pay all prepetition claims of creditors and administrative expenses in full; and (iii) the Debtor intended to use the sale and/or refinancing proceeds to pay the claims of Bay Point in full on the maturity date of the DIP Loan.

On February 20, 2023, the Debtor filed a second letter [ECF No. 225] apprising the Court of its ongoing efforts to formulate a consensual Plan with Bay Point, as well as confirming both the Debtor's and Bay Point's agreement to schedule a hearing on April 19, 2023 for approval of the Debtor's Disclosure Statement and confirmation of the Debtor's Plan (the "***Combined Hearing***"). In connection with the Combined Hearing, the Debtor also indicated that it would file by March 21, 2023 an amended plan and disclosure statement that "pays all allowed claims of creditors in full". Unfortunately, such discussions between the Debtor and Bay Point were ultimately not successful and a consensual plan has not been agreed upon by the parties, leading Bay Point to file this Disclosure Statement and Plan for the consideration of both creditors and the Court.

## VI.
## SUMMARY OF THE PLAN OF LIQUIDATION

### A.    Introduction

The Plan Proponent believes that confirmation of this Plan provides the best opportunity for maximizing recoveries for the Debtor's creditors. The Plan provides that creditors will be paid from the proceeds of the Sale, in the priority established under the Bankruptcy Code. Under the Plan, the Disbursing Agent will make distributions to creditors.

Although there are no impaired Classes of Claims or Interests under the Plan and the "best interest test" under section 1129 (a)(7) is not implicated, the Plan Proponent will nonetheless demonstrate to the Bankruptcy Court that the holders of the Claims and Interests in the Debtor would receive less in a hypothetical liquidation under chapter 7 of the Bankruptcy Code than they would under the Plan. The following is a summary of the Plan. The Plan is attached as **Exhibit A** to this Disclosure Statement. The terms of the Plan govern in the event of any discrepancies with the following discussion.

### B.    Classification and Treatment of Administrative Claims, Claims and Interests Under the Plan

Only administrative expenses, claims and equity interests that are "allowed" may receive distributions under a chapter 11 plan. Generally, an "allowed" administrative expense, claim or equity interest means that a debtor agrees, or, in the event of a dispute, the court determines, that the administrative expense, claim or equity interest, including the amount, is in fact a valid obligation of, or interest in, a debtor. Section 502(a) of the Bankruptcy Code provides that a

timely-filed administrative expense, claim or equity interest is automatically "allowed" unless a debtor or another party in interest objects.

The Bankruptcy Code also requires that, for purposes of treatment, a chapter 11 plan divide the different claims against, and equity interests in a debtor, into separate classes based upon the legal rights and obligations attached to the claim or interest. Substantially similar claims are usually but not necessarily, classified together, as are equity interests of a substantially similar legal nature. Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the holders of such claims and/or equity interests may find themselves members of multiple classes of claims and/or equity interests. As a result, under the Plan, for example, if a creditor holds a Claim based on an unsecured Claim as well as an equity Interest in the Debtor, its Claim is properly classified in Class 2 and its Interest classified in Class 3.

Under a chapter 11 plan, the separate classes of claims and equity interests must be designated either as "impaired" (altered by the plan in some way) or "unimpaired" (unaltered by the plan). If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the plan (unless the plan provides for no distribution to the holder, in which case, the holder is deemed to reject the plan), and the right to receive an amount under the chapter 11 plan that is not less than the value that the holder would receive if the debtor were liquidated under chapter 7 (unless each holder within the class has accepted the plan).

Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless, with respect to each claim or interest of such class, (i) the plan does not alter the legal, equitable and contractual rights of the holders of such claims or interests, or (ii) irrespective of the holder's right to receive accelerated payment of such claims or interests after the occurrence of a default, the plan cures all defaults (other than those arising from, among other things, the debtor's insolvency or the commencement of a bankruptcy case), reinstates the maturity of the claims or interests in the class, compensates the holders of such claims or interests for any damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable or contractual rights. Typically, this means that the holder of an unimpaired claim will receive on the later of the effective date of the plan, or the date on which amounts owing are due and payable, payment of such amount as the holder of the claim is legally or contractually entitled to receive. Thus, other than its right to accelerate the debtor's obligations, the holder of an unimpaired claim will be placed in the position it would have been in had the debtor's case not been commenced.

Consistent with these requirements, the Plan divides the Claims against, and Interests in, the Debtor as follows:

| Unclassified | Professional Fee Claims | Unimpaired |
|---|---|---|
| Unclassified | Post-Petition Administrative Tax Claims | Unimpaired |
| Unclassified | Administrative Claims | Unimpaired |
| Unclassified | Priority Tax Claims | Unimpaired |
| Unclassified | Bankruptcy Fees | Unimpaired |
| Class 1 | Other Priority Claims | Unimpaired |
| Class 2 | Unsecured Claims | Unimpaired |

4893-5174-7415.8

| Class 3 | Equity Interests | Unimpaired |
|---------|------------------|------------|

For purposes of computing Distributions under the Plan, Allowed Claims do not include post-petition interest unless otherwise specified in the Plan.

**THE PLAN DOES NOT ALTER THE LEGAL OR CONTRACTUAL RIGHTS OF UNCLASSIFIED CREDITORS OR ANY CLASS OF CLAIMS OR INTERESTS.**

### 1.    Unclassified—Professional Fee Claims

Professionals are persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and are to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503 or 1103 of the Bankruptcy Code. All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. No later than three (3) Business Days prior to the Confirmation Hearing, all entities holding claims for Professional Fee Claims shall serve via email upon counsel for the Plan Proponent a notice of the estimated amount of their unpaid Professional Fee Claim and the estimate for any post-confirmation fees and expenses of the Debtor's professionals, and the Holders of Professional Fee Claims shall provide updated estimates to counsel for the Plan Proponent via email three (3) Business Days prior to the Effective Date. The Disbursing Agent shall, on the basis of the revised estimates, establish on the Effective Date an Estimated Professional Fee Reserve in such amounts which are reasonably necessary to pay the amount of such Professional Fee Claims. Subject to allowance by the Bankruptcy Court, the Disbursing Agent shall use the funds in the Estimated Professional Fee Reserve to pay the allowed amount of each Professional Fee Claim (i) upon the later of (A) the Distribution Date and (B) the date upon which the Order relating to any such Allowed Professional Fee Claim becomes a Final Order, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Disbursing Agent. Payments made to a Professional from funds in the Estimated Professional Fee Reserve shall constitute payment in full of the Professional's Allowed Fee Claim, and the Professional shall have no further recourse against the Disbursing Agent, the Debtor or the Plan Proponent for such Claim.

### 2.    Unclassified—Post-Petition Administrative Tax Claims

All Proofs of Post-Petition Administrative Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the first Business Day that is thirty (30) days after the Confirmation Date (the "Administrative Bar Date"). Any holder of any Post-Petition Administrative Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Administrative Tax Claim against the Debtor, the Brickchurch Property or the Disbursing Agent. Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, all Post-Petition Administrative Tax Claims shall be paid, in Cash, in full on (A) the later of (i) the Distribution Date, (ii) the date payment of such Claim is due under the terms thereof or applicable law, or (iii) three (3) Business Days after such Claim becomes an Allowed Claim, or (B) upon such other terms as may be agreed to, in writing, between the Disbursing Agent and the holder of such Claim. For purposes of the

Plan, any capital gains tax, ordinary income tax, Transfer Tax or any other tax arising from, or related to, the Sale Transaction shall not be treated as a Post-Petition Administrative Tax Claim.

### 3.    Unclassified—Administrative Claims

Administrative Claims are Claims constituting costs or expenses of administration of the Chapter 11 Case.  Such Claims include any actual and necessary costs and expenses of preserving the Debtor's estate and any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business.  With the exception of Claims for Administrative Expenses arising, and paid, in the ordinary course of the Debtor's business, all Proofs of Administrative Claim or requests for payment of Administrative Expenses shall be filed on or before the Administrative Bar Date.  Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (A) the later of (i) the Distribution Date, (ii) the date payment of such Claim is due under the terms thereof or applicable law, or (iii) three Business Days after such Claim becomes an Allowed Claim or (B) as may be otherwise mutually agreed in writing between Disbursing Agent and the holder of such Claim.

### 4.    Unclassified—Priority Tax Claims

Priority Tax Claims are Claims for taxes against the Debtor entitled to priority in payment pursuant to sections 502(i) or 507(a)(8) of the Bankruptcy Code.  Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in full on the Distribution Date.

### 5.    Unclassified—Bankruptcy Fees

Bankruptcy Fees are all fees and charges assessed against the Debtor or its estate under 28 U.S.C. § 1930.  The Disbursing Agent shall on the Distribution Date use Net Sale Proceeds of the Sale Transaction or Bay Point Exit Advances to pay all outstanding fees and charges assessed against the Debtor under 28 U.S.C. § 1930 as of the Effective Date, and any applicable interest due thereon, and reserve a sufficient amount to pay all remaining fees and charges assessed against the Debtor under 28 U.S.C § 1930, and any applicable interest thereon, anticipated to accrue through the date of conversion, dismissal or entry of a  final decree.

### 6.    Class 1—Other Priority Claims

Other Priority Claims consist of Claims against the Debtor entitled to priority in payment under section 507(a) of the Bankruptcy Code, other than Bankruptcy Fees, Administrative Claims, Post-Petition Administrative Tax Claims, Professional Fee Claims, or Priority Tax Claims. Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction of Class 1 Other Priority Claims, the holders of Other Priority Claims shall receive on the Distribution Date, or as soon as practicable after such Claims become Allowed Claims, (i) Cash, in the full amount of the holder's Allowed Other Priority Claim, or (ii) such treatment as may be otherwise agreed in writing between the Disbursing Agent and the holder of such Claim.

### 7.    Class 2—Unsecured Claims

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full and final satisfaction of Unsecured Claims, the holder of each Claim, to the extent allowed, shall share Pro Rata in the remaining balance of the Net Sale Proceeds realized from the sale of the Brickchurch Property after payment in full of Bankruptcy Fees, the DIP Obligations, the Bay Point Exit Advances, Administrative Claims, Post-Petition Administrative Tax Claims, Other Priority Claims, Priority Tax Claims, and Professional Fee Claims. Class 2 is unimpaired and the holders of Unsecured Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Unsecured Claims are not entitled to vote to accept or reject the Plan.

### 8.    Class 3—Equity Interests

Except to the extent that an Interest Holder agrees to less favorable treatment, all Interest Holders shall retain the value of their Interests that may exist in the Debtor, including the right to receive the remaining balance of the Net Sale Proceeds, if any, after payment in full of the allowed amount of the Unsecured Claims. Interests in the Debtor shall not be extinguished, and the Debtor shall remain responsible for either managing or winding down its own affairs, without interfering with the Disbursing Agent's performance under the Plan. Class 3 is unimpaired and Interest Holders in Class 3 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of existing Interests are not entitled to vote to accept or reject the Plan.

### C.    Treatment of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts (including unexpired leases) to which the Debtor is a party shall be deemed rejected.

Allowed Claims arising from the rejection of Executory Contracts of the Debtor pursuant to Section 5.1 of the Plan shall be treated as general Unsecured Claims.

A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract pursuant to Section 5.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Plan Proponent within thirty (30) days after the Confirmation Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or their successors or the Brickchurch Property.

### D.    Provisions for Implementation of the Plan

#### 1.    Bay Point Exit Advances.

The Plan shall be implemented through the Bay Point Exit Advances and the Sale Transaction referenced below. The Disbursing Agent shall use Net Sale Proceeds to make all of the payments required to be made under the Plan, in the order of priority specified in the Plan. In the event, and to the extent, there are insufficient Net Sale Proceeds to make payments required to be made on the Distribution Date, Bay Point shall on the Effective Date make Bay Point Exit Advances in such amounts as may be required to (A) fund the Estimated Professional Fee Reserve as provided in Section 2.3 of the Plan; (B) pay Allowed Post-

Petition Administrative Tax Claims, as provided in Section 2.4 of the Plan; (C) pay Allowed Administrative Claims, other than (i) Professional Fee Claims, (ii) Post-Petition Administrative Tax Claims, and (iii) the DIP Obligations and Bay Point Exit Advances, as provided in Section 2.5 of the Plan; (D) pay Allowed Priority Tax Claims, if any, as provided in Section 2.6 of the Plan; (E) pay Allowed Other Priority Claims in Class 1, if any, as provided in Section 4.1 of the Plan; (F) fund the Disputed Claims Reserve for each Disputed Claim in clauses (B) through (E) above; and (G) pay Bankruptcy Fees and fund the Bankruptcy Fees Reserve.

The Bay Point Exit Advances shall be secured by a first priority senior Lien on all of the Brickchurch Property, equal in priority to the Lien securing the DIP Obligations. Bay Point shall have a superpriority administrative expense claim for all Bay Point Exit Advances made pursuant to the Plan, with equal priority to the superpriority administrative expense claim granted to Bay Point under the DIP Financing Order. The Bay Point Exit Advances shall bear interest at the rate provided in the DIP Financing Order.

2. **The Sale Transaction.** The Plan Proponent shall implement the Sale Transaction pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code. Within ten (10) days following the Confirmation Date, the Plan Proponent shall serve upon all creditors and other parties in interest identified on the matrix maintained by the Bankruptcy Court for notice purposes, the Bid Procedures to be followed in connection with the Sale Transaction, including (i) the procedures to be followed in the determination of qualified bidders, (ii) the selection of a stalking horse bidder, (iii) the timeline for receiving bids and scheduling a public auction, (iv) the recognition of Bay Point's right to credit bid, and (v) the scheduling of a hearing to approve the Sale Transaction. A copy of the Bid Procedures to be followed in connection with the Sale Transaction will be included in a Plan Supplement filed with the Court and served upon all creditors and other parties in interest prior to the hearing on confirmation of the Plan. The Brickchurch Property shall be sold to the Successful Purchaser, pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code free and clear of all Liens (except permitted encumbrances as determined by the Successful Purchaser), with any such Liens, Claims and encumbrances to attach to the Net Sale Proceeds. The Brickchurch Property will be sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things: (i) any state of facts that an accurate survey may show; (ii) any covenants, restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Brickchurch Property's compliance (or lack of compliance) with environmental laws (and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Brickchurch Property, if any).

3. **Credit Bid.** The Bid Procedures shall recognize Bay Point's right under section 363(k) of the Bankruptcy Code to credit bid any amount up to the outstanding amounts of the DIP Obligations and the Bay Point Exit Advances.

4. **Sale Approval.** Subject to the introduction of evidence in support, the Order approving the Sale Transaction shall contain the following findings of fact and conclusions of law: (i) that the terms and conditions of the Sale Transaction and the purchase agreement are fair and reasonable, (ii) that the sale, and the Successful Purchaser's purchase, of the Brickchurch

Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, without any fraud, (iii) that the transfer of the Brickchurch Property to the Successful Purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (iv) that the Successful Purchaser, as transferee of the Brickchurch Property, is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (v) that the Brickchurch Property is sold free and clear of all Liens, Claims, interests, and encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code, (vi) that the Sale Transaction was not controlled by an agreement among potential purchasers for purposes of section 363(n) of the Bankruptcy Code, and (vii) that no cause of action exists against the Successful Purchaser or with respect to the sale of the Brickchurch Property to the Successful Purchaser.  All stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

       **5.**      **Distribution of Sale Proceeds.**  The Net Sale Proceeds realized from the Sale Transaction shall be distributed to the holders of Allowed Administrative Claims, Allowed Claims and Interests in the following order:

      (a)     <u>First</u>, to pay Bankruptcy Fees;

      (b)     <u>Second</u>, to Bay Point in partial or full satisfaction of the outstanding amounts of the DIP Obligations and the Bay Point Exit Advances;

      (c)     <u>Third</u>, any Net Sale Proceeds remaining after the payments required to be made pursuant to clauses (a) and (b) above shall, to the extent not paid from proceeds of the Bay Point Exit Advances, be used to (i) fund the Estimated Professional Fee Reserve, (ii) pay Allowed Post-Petition Administrative Tax Claims, (iii) pay Allowed Administrative Claims, other than Professional Fee Claims, Post-Petition Administrative Tax Claims, the DIP Obligations and Bay Point Exit Advances, (iv) pay Allowed Priority Tax Claims; (v) pay Allowed Other Priority Claims, (vi) fund the Disputed Claims Reserve for each Disputed Claim in clauses (c)(ii) through (c)(v) above, and (vii) fund the Bankruptcy Fees Reserve);

      (d)     <u>Fourth</u>, any Net Sale Proceeds remaining after the payments required to be made pursuant to clauses (a), (b), and (c) above, shall be used to (i) pay each holder of an Allowed Unsecured Claim its Pro Rata share of the Net Sale Proceeds available to satisfy all Unsecured Claims, and (ii) fund the Disputed Claims Reserve in an aggregate amount equal to the Pro Rata share of Net Sale Proceeds that each holder of a Disputed Claim would be entitled to receive if its Claim was allowed; and

      (e)     <u>Fifth</u>, any Net Sale Proceeds remaining after the payments required to be made pursuant to clauses (a), (b), (c), and (d) above, shall be paid to the holders of Interests in the Debtor.

       For the avoidance of doubt, to the extent there are insufficient Net Sale Proceeds to make the payments required to be made pursuant to clause (c) of Section 6.5 of the Plan, Bay Point shall make Bay Point Exit Advances to satisfy any insufficiency.

      **6.**      **The Disbursing Agent.**  The Disbursing Agent shall be appointed on the Confirmation Date in order to take such actions as may be necessary or appropriate to implement the Plan, including the Sale Transaction, the claims administration process, and distributions to creditors.  Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan.  The Disbursing Agent shall take all necessary steps, and perform all necessary acts, to consummate the

terms and conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, authorizing and directing the Debtor and any other necessary party to execute or deliver, or to join in the execution or delivery, on the closing date of the Sale Transaction, of any instrument required to effect a transfer of property required by the Plan, in form and substance satisfactory to the Successful Purchaser, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. The Disbursing Agent is designated an attorney in fact to execute all documents in the name of the Debtor as may be required to consummate the Sale Transaction, including, without limitation, a deed to the Brickchurch Property, a bill of sale, and all required transfer tax and ACRIS documents or any other documents in the name of the Debtor as may be required to consummate the Sale Transaction.  The Confirmation Order will also authorize the Disbursing Agent to hold all proceeds of the Bay Point Exit Advances and proceeds from the closing of the Sale Transaction, if consummated, until Disbursing Agent makes distributions or disbursements under the Plan.

The Disbursing Agent shall have no obligation to file tax returns or similar reports with the appropriate taxing authorities.  The Disbursing Agent shall not have, or incur, any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, except in the case of gross negligence or willful misconduct.

7.      **Vesting of Assets.**  The Brickchurch Property shall remain in the Debtor's estate under section 541(a) of the Bankruptcy Code until the Effective Date.  Upon the closing of the Sale Transaction, Brickchurch Property shall vest in the Successful Purchaser, free and clear of all Liens and Claims.

8.      **Exemption from Certain Taxes.**  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Brickchurch Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax, including, without limitation, Transfer Taxes, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

9.      **Execution of Documents.** On the Effective Date, the Debtor and/or the Disbursing Agent on the one hand, and any necessary party thereto on the other hand, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.  The Debtor shall not interfere with the Disbursing Agent in the performance of its duties. Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor and any other necessary party shall be authorized, and shall be directed by the Confirmation Order, to execute any estoppel certificate, or any notice of

satisfaction, release or discharge of any Lien, Claim or encumbrance, including any Lien, Claim or encumbrance not expressly provided for in the Plan that is necessary for consummation of the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide. If the Debtor is unable to execute or deliver any document or notice in connection with the Sale Transaction, the Disbursing Agent shall be authorized to execute such documents and/or notices, and the Confirmation Order shall expressly so provide.

 10. **Filing of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local government agency or department shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

 11. **Property Turnover at Closing.** The Debtor shall turnover possession of the Brickchurch Property at closing of a Sale Transaction to the Successful Purchaser or its designee, together with all files and records pertaining to the Brickchurch Property, including, but not limited to construction documents, building permits, violations, architectural plans, leases and repair invoices to the extent that any such documents exist within the possession of the Debtor at that time.

 12. **Preservation of Insurance.** The Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor or any other person or entity. Likewise, the Plan and the Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtor or any insurance carrier.

### E.     Provisions for Distributions Under the Plan

#### 1.     Prosecution of Objections.

 The Debtor and the Disbursing Agent shall have the right to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims, provided that the Debtor shall not be entitled to use Net Sale Proceeds to pay professional fees in connection therewith without the written consent of the Disbursing Agent, which consent may be withheld in the sole discretion of the Disbursing Agent. Objections to Claims shall be served and filed on or before the Claims Objection Deadline, and objections to Administrative Claims shall be served and filed on or before the Administrative Claims Objection Deadline.

#### 2.     Escrow of Cash Distributions

 Unless otherwise agreed to in writing by the Disbursing Agent and the holder of any Claim, on the Distribution Date the Disbursing Agent shall deposit in one or more segregated accounts (the "Disputed Claims Reserve"), in accordance with the provisions of Sections 6.1 and 6.5 of the Plan, funds equal to 100% of the Cash that would be distributed under the Plan to each holder of a Disputed Claim that would be an Allowed Claim, but for the dispute, including, but not limited

to (i) Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) Disputed Claims of Governmental Units for any tax, and (iii) any disputed cure amount.

In determining the amount of the Cash to be distributed under the Plan to the holders of Allowed Claims on the Distribution Date, the calculation of the amount to be distributed to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating the amount of a Disputed Claim, and limiting the amount of Cash that must be so deposited. Any Creditor whose Claim is so estimated and limited shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or to any other entity or property if the Allowed Claim of the Creditor (whose Claim was so estimated and limited) as determined by Final Order exceeds the amount so deposited. Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

In addition to the Disputed Claims Reserve, the Disbursing Agent shall deposit in a segregated account on the Distribution Date (the "Bankruptcy Fees Reserve") an amount equal to the Bankruptcy Fees estimated to accrue from and after the Effective Date through the date of dismissal, conversion, or entry of a final decree pursuant to 28 U.S.C. § 1930.

### 3. Distribution After Allowance

Within ten (10) days after the allowance of a Disputed Claim (or as soon thereafter as practicable), the Disbursing Agent shall distribute from the funds placed in escrow in accordance with Section 7.3 of the Plan all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

### F. **Injunctions and Release**

### 1. Injunction

**Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim or Interest held as of the Effective Date: (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Brickchurch Property or property of the Estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Brickchurch Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan. Except as otherwise provided in the Confirmation Order, entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or**

**offset, from the Debtor, the Plan Proponent, Disbursing Agent or from the Brickchurch Property, any claim, obligation or debt against the Debtor that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan. Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor herein shall not receive a discharge in connection with this liquidating Plan.**

### 2.    Limitation of Liability

Neither the Debtor, the Plan Proponent, Disbursing Agent nor any of their respective officers, attorneys, directors, members, partners, shareholders, advisers, agents, employees, representatives or assigns, nor any professional person employed by any of them (collectively, the "***Released Entities***"), shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, or criminal conduct. Nothing in Section 8.2 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Plan Proponent, the Disbursing Agent or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Entities referred to herein. Nothing in section 8.2 of the Plan shall limit the liability of any professionals involved herein for malpractice.

### 3.    Plan and Confirmation Order as Release

Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to Article VIII of the Plan.

### G.    Revocation

The Plan Proponent may revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is revoked or withdrawn, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor, or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

# VII.
## CONFIRMATION PROCEDURE

Under the Bankruptcy Code, the following steps must be taken to confirm a plan:

### A.    Voting

An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider as defined in section 101(31) of the Bankruptcy Code.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Any creditor in an impaired Class (i) whose Claim has been listed by the Debtor in the Debtor's Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated) or (ii) who filed a Proof of Claim on or before the Bar Date (or, if not filed by such date, any Proof of Claim filed within any other applicable period of limitations or with leave of the Bankruptcy Court), which Claim is not the subject of an objection or request for estimation, is entitled to vote.

In accordance with sections 1126 and 1129 of the Bankruptcy Code, none of the Claims or Interests in Classes 1, 2 and 3 of the Plan are impaired and are entitled to vote to accept or reject the Plan.  The holders of Allowed Claims in Classes 1-3 are conclusively presumed to have accepted the Plan and the solicitation of acceptances with respect to such Classes therefore is not required under section 1126(f) of the Bankruptcy Code.

### B.    The Confirmation Hearing

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing.  The Confirmation Hearing in respect of the Plan has been scheduled for _____, 2023, at [ ] (EDT) before the Honorable Alan S.  Trust, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722.  The Confirmation Hearing may be conducted via teleconference, and may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any objection to Confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the objector's Claim.  Any such objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court and the following parties on or before [ ], 2023:

John C. Allerding, Esq.
Thompson Hine LLP
3900 Key Center

127 Public Square
Cleveland, Ohio 44114
John.Allerding@ThompsonHine.com

-and-

Camisha L. Simmons, Esq.
Simmons Legal PLLC
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
212.653.0667 (New York)
214.643.6192 (Dallas)
camisha@simmonslegal.solutions

-and-

Office of the United States Trustee
Alfonse D'Amato Federal Courthouse
560 Federal Plaza
Central Islip, New York 11722
Attn: William Birmingham, Esq

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014 and orders of the Bankruptcy Court.

## B.   <u>Confirmation</u>

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of the Plan are that the Plan is (i) accepted by all impaired Classes of Claims and Interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, (ii) feasible and (iii) in the "best interests" of creditors and stockholders that are impaired under the Plan.

### 1.   **Acceptance**

Classes 1, 2 and 3 are unimpaired under the Plan and, therefore, are conclusively presumed to have voted to accept the Plan.

### 2.   **Feasibility**

The Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization.  Here, the Plan contemplates the liquidation of all of the assets of the Debtor.  In order to accomplish such liquidation, the Plan requires the Disbursing Agent to make distributions from sale proceeds pursuant to Section 6.5 of the Plan.

### 3.    Best Interests Test

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of an Allowed Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  To determine what holders of Unsecured Claims and Interests in each impaired Class would receive if the Debtor were liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation case.  The cash amount that would be available for satisfaction of Unsecured Claims and Interests would consist of the net proceeds resulting from the disposition of the assets and properties of the Debtor, after satisfaction of secured debt, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the liquidation case.  Such cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative expense and priority claims that might result from the termination of the Debtor's business and the use of chapter 7 for the purposes of liquidation.

The Debtor's costs of liquidation under chapter 7 would include the fees payable to a chapter 7 trustee, as well as those fees and expenses that might be payable to attorneys and other professionals that such a trustee might engage.  Those fees and expenses, as well as other claims that might arise in a liquidation case or result from the pending Chapter 11 Case, including any unpaid fees and expenses incurred by the Debtor during the Chapter 11 Case, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Unsecured Claims.

To determine if the Plan is in the best interests of each impaired Class of Unsecured Claims and Interests, the present value of the distributions from the proceeds of a chapter 7 liquidation of the Debtor's assets are then compared with the value of the property offered to such Classes of Claims and Interests under the Plan.  In this case, it is clear that the value of distributions to the holders of Unsecured Claims and Interests from a chapter 7 liquidation would be less than the value to be realized from the Sale Transaction contemplated by the Plan.  Assuming the Brickchurch Property were to be sold by a chapter 7 trustee for $67.5 million, the Property's appraised value as of August 1, 2022, the fee payable to the trustee pursuant to the provisions of Section 326(a) of the Bankruptcy Code could be as high as $2,048,250.  This is in addition to legal fees that would be incurred by the chapter 7 trustee in administering the bankruptcy estate.  All of these fees will be avoided by having the Brickchurch Property sold in accordance with the provisions of the Plan.  Moreover, the sale will almost certainly be completed in substantially less time than a sale in a chapter 7 liquidation.

Given the facts in this case, it is beyond question that the holders of Unsecured Claims in Class 2 and Interests in Class 3 will receive at least as much as they would receive in a chapter 7 liquidation, and in all likelihood substantially more.

VIII.
<b><u>ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN</u></b>

If the Plan is not confirmed and consummated, the alternatives to the Plan include (i) liquidation of the Debtor under chapter 7 of the Bankruptcy Code and (ii) an alternative plan of reorganization.

### A.    <u>Liquidation Under Chapter 7</u>

If no plan is confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be selected to liquidate the Debtor's remaining assets for distribution in accordance with the priorities established by chapter 7. As discussed above, the Plan Proponent believes that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for in the Plan.

### B.    <u>Alternative Plan of Reorganization</u>

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan. Such a plan might involve either a reorganization and continuation of the Debtor's business or an orderly liquidation of its assets. However, no party has proposed a feasible alternate plan of reorganization.

IX.
<b><u>CERTAIN RISK FACTORS TO BE CONSIDERED</u></b>

HOLDERS OF CLAIMS AGAINST THE DEBTOR AND INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE). THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### C.    <u>Certain Bankruptcy Law Considerations</u>

#### 1.    <b>Risk of Non-Confirmation of the Plan</b>

Although the Plan Proponent believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the solicitation of votes to accept or reject the Plan.

#### 2.    <b>Risk of Non-Occurrence of the Effective Date</b>

22

Although the Plan Proponent believe that all of the conditions to the Effective Date will occur after the entry of the Confirmation Order, there can be no assurance as to the timing of the Effective Date or that such conditions will ever occur.

D.    **Certain Tax Matters**

For a summary of certain federal income tax consequences of the Plan to holders of Claims and to the Debtor, see Section XI , "Certain Federal Income Tax Consequences Of The Plan."

E.    **Additional Factors to be Considered**

1.    **The Plan Proponent Has No Duty to Update**

The statements contained in this Disclosure Statement are made by the Plan Proponent as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date.  The Plan Proponent has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

2.    **No Representations Outside This Disclosure Settlement Are Authorized**

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.

3.    **No Legal or Tax Advice is Provided to You By This Disclosure Statement**

The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each holder of a Claim or Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest.

This Disclosure Statement is not legal advice to you.  This Disclosure Statement may not be relied upon for any purpose other than to determine whether to object to confirmation of the Plan.

**X.**
**SECURITIES LAWS MATTERS**

The Plan does not contemplate the issuance of any securities.

**XI.**
**CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and holders of certain Claims against the Debtor.  This discussion does not address the U.S. federal income tax consequences of the implementation of

the Plan to holders of Claims that are unimpaired or otherwise entitled to payment in full in cash under the Plan.

The discussion of U.S. federal income tax consequences set forth below is based on the Internal Revenue Code of 1986, as amended (the "***Tax Code***"), U.S. Department of Treasury regulations promulgated or proposed thereunder, judicial authorities, published positions of the Internal Revenue Service ("***IRS***") and other applicable authorities, all as in effect on the date of this document and all of which are subject to change or differing interpretations (possibly with retroactive effect). The U.S. federal income tax consequences of the contemplated transactions are complex and are subject to significant uncertainties. The Plan Proponent has not requested a ruling from the IRS or any other tax authority, or an opinion of counsel, with respect to any of the tax aspects of the contemplated transactions, and the discussion below is not binding upon the IRS or such other authorities. Thus, no assurance can be given that the IRS or such other authorities would not assert, or that a court would not sustain, a different position from any discussed herein.

Except as specifically stated otherwise, this summary assumes that a holder holds a Claim or an existing Interest as a capital asset for U.S. federal income tax purposes. This summary does not address foreign, state or local tax consequences of the contemplated transactions, nor does it purport to address the U.S. federal income tax consequences of the transactions to special classes of taxpayers (e.g., foreign persons or entities, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, tax-exempt organizations, holders that are, or hold Claims or existing Interests through, pass-through entities, persons whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, and persons holding claims or existing Interests as a hedge against, or that is hedged against, currency risk or as part of a straddle, constructive sale or conversion transaction).

The discussion does not address U.S. federal taxes other than income taxes, nor does it apply to any person that acquires any of the consideration issued pursuant to the Plan through means other than directly participating in the exchange. If a partnership (or another entity that is treated as a partnership for U.S. federal income tax purposes) holds Claims or existing Interests, the tax treatment of a partner (or other equity owner) generally will depend upon the status of such partner (or other owner) and upon the activities of the partnership (or other entity). This discussion is based on currently available information regarding the Plan terms and may not reflect the actual terms of the Plan upon its implementation. The following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of Claims or existing Interests.

### <u>Consequences to the Debtor</u>

The Sale Transaction is intended to be a taxable sale of the assets of the Debtor. Gain or loss, if any, upon the transfer will be recognized based on the difference between the tax basis in the assets that were disposed of and the sale price allocable to such assets. It is not known if the Debtor has any current losses, deductions or loss carryforwards that may offset realized gains.

It is anticipated that any realized gains will be recognized by the Debtor, and that none of these gains will constitute cancellations of debt income that may be subject to the exclusions under section 108 of the Tax Code.

It is also anticipated that any tax liability will not be treated as a Post-Petition Administrative Tax Claim, but shall be a tax liability of Debtor outside of the bankruptcy process.

Additional income tax consequences may arise to Debtor's Interest Holders in connection with any liquidation (actual or deemed) of Debtor after the Sale Transaction is consummated.

### Consequences to Claim Holders

As all Claims are unimpaired, no tax disclosure is being made with respect to Claim Holders.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE PLAN PROPONENT DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE ANY CREDITOR OR INTEREST HOLDER REGARDING THE TAX CONSEQUENCES OF THE PLAN. ALL HOLDERS OF CLAIMS OR EXISTING INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES APPLICABLE TO THEM, INCLUDING WITH RESPECT TO CAPITAL GAINS TAXES, IF ANY.**

### XII.
### RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in the Disclosure Statement, the Plan Proponent believes that confirmation and consummation of the Plan is preferable to all other alternatives.

Dated: New York, New York
        May 17, 2023

Respectfully submitted,

*/s/ John C. Allerding, Esq.*
THOMPSON HINE LLP
John C. Allerding, Esq.
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Tel: (216) 566-5500
Fax: (216) 566-5800
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*