**IN UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------x

In re:

BRICKCHURCH ENTERPRISES, INC.,

　　　　　　　　　　　　　　Debtor.

---------------------------------------------------------------------------------x

Chapter 11

Case No. 22-70914-ast

Hearing Date: June 28, 2023

**MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (I) DISMISSING THE CHAPTER 11 CASE OF DEBTOR BRICKCHURCH ENTERPRISES, INC. AND (II) GRANTING RELATED RELIEF**

Brickchurch Enterprises, Inc. ("**BEI**" or "**Debtor**"), debtor and debtor in possession in the above-captioned chapter 11 case ("**Chapter 11 Case**") files this motion (this "**Motion**"), pursuant to sections 105(a), 305(a), and 1112(b) of the United States Code (the "**Bankruptcy Code**"), Rule 1017 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York (the "**Local Rules**"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) dismissing the Chapter 11 Case of BEI (Case No. 22-70914) and (iii) granting related relief. In support of the relief requested, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

1.　　Debtor BEI commenced this Chapter 11 Case on April 30, 2022. BEI commenced this case to ultimately sever its relationship with its prepetition secured lender, restructure and emerge from chapter 11.

2.　　In December 2022, after the case was commenced, Debtor BEI closed on new post-petition financing and paid off its prepetition secured lender and all creditor claims approved by the Court. BEI is now in discussions with a new lender to refinance its post-petition loan with

Bay Point Capital Partners, LP, an affiliate of Bay Point Advisers, LLC ("***Bay Point***" or "***DIP Lender***"). From the inception of the relationship with Bay Point, BEI made it clear that it wished to improve the narrative regarding the property and emerge from chapter 11. **Certain loan documents and interests of prior lender JGB were assigned by JGB to Bay Point to provide Bay Point additional security and protection as BEI moved forward**. **To date the loan with Bay Point is not in default, Bay Point has an interest cushion and BEI is requesting an extension of the maturity date to refinance the loan.**

3. **Moreover, BEI remaining in bankruptcy is adversely affecting the property's marketability. At the first meeting between Bay Point, Brickchurch and Nest Seekers, it was agreed that all parties would work together to clean up the narrative regarding the property. The new positive narrative would position the property at a higher value in the market to refinance and/or sell. BEI, however, hasn't been able to fully clean the narrative in the 6 months since the closing of the post-petition Bay Point loan in December 2022, since BEI has remained in bankruptcy. A new lender wants to refinance the Bay Point loan but is conditioning the financing on BEI emerging from bankruptcy before entering the loan transaction. BEI needs to be out of bankruptcy to allow breathing room to refinance. That is the best path forward for BEI.**

4. Further, per the new lender, the Chapter 11 Case must be resolved before consummation of the financing transaction that will pay Bay Point's post-petition loan in full. Further, the Debtor's real estate broker has communicated that the bankruptcy is adversely impacting the broker's efforts to sale and/or rent the Debtor's property and maximize value.

5. As a result of the foregoing, it is not in the best interests of the Debtor and the Debtor's creditors, including its post-petition lender, for the Debtor to remain as a debtor under chapter 11 of the Bankruptcy Code.

6. Because effectuating a refinancing, sale and rental are in the best interests

of the Debtor and the proposed refinancing is predicated on a dismissal of BEI's Chapter 11 Case, the Debtor believes dismissal of the Chapter 11 Case of BEI is warranted. Continuing in chapter 11 will only increase the administrative costs and burden on the Debtor's operations and estate.

7. The Debtor's post-petition secured lender and creditors will not be prejudiced by dismissal. The Debtor's post-petition secured lender retains all rights and remedies available to it under contract, court orders and applicable law.

## JURISDICTION AND VENUE

8. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

9. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor consents to entry of a final order by the Court in connection with this Motion.

10. Venue of these cases and related proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

11. On April 30, 2022 (the "***Petition Date***"), the Debtor commenced the Chapter 11 Case.

12. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. No official committee of unsecured creditors has been appointed in the Chapter 11 Case.

### The Post-Petition DIP Financing with Bay Point

14. On April 30, 2022, BEI commenced this Chapter 11 Case to protect itself from prepetition secured lender JGB Partners, LP, JGB Capital, LP, JGB (Cayman) Ancona, Ltd., JGB Plymouth Rock, LLC (collectively, "***JGB***"). **JGB forced BEI into bankruptcy protection because**

of JGB's refusal to take financing offers presented to JGB by Louise Blouin.  When the bankruptcy was commenced, JGB's claim was in the amount of $39.9 million and the remaining creditor claims, excluding Ms. Louise T. Blouin's claim, were only $54,741.  JGB's claim was 99.99 percent of BEI's outstanding debt.

15. **Ms. Blouin always maintained traditional bank lenders, and BEI only entered into a financing relationship with JGB as a short-term temporary gap measure.**

16. During the Chapter 11 Case, BEI considered and explored numerous alternatives to obtain the necessary liquidity to pay all creditors and fund this Chapter 11 Case.  These alternatives included: a potential sale of Debtor's primary real estate and potential new third-party financing.

17. The Debtor engaged real estate broker Nest Seekers International to market the Debtor's primary asset, a luxury residential estate in Southampton, for both sale and rental.  The Debtor's broker continues to market the property and engage prospective buyers.

18. In the process of exploring strategic alternatives, the Debtor has sought the financing necessary to reorganize its affairs in chapter 11.  After approximately five months of shopping for exit financing, the Debtor obtained favorable exit financing from a reputable lender, Bay Point, a $450 million hedge fund based in Atlanta, Georgia.

19. With over $60 million in financing (the "*Bay Point Loan*") from the DIP Lender, BEI has paid all claims approved by the Court.

20. On December 9, 2022 ("*Closing Date*"), the Debtor closed on the post-petition Bay Point Loan approved by the Court pursuant to the *Order (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (II) Granting Liens and Super-Priority Claims* [Dkt. No. 172] ("*DIP Financing Order*") and/or DIP Loan Agreement.[1]

21. On the Closing Date, Debtor's pre-petition secured lender JGB was paid the $44.5

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Financing Order.

million Settlement Amount and the Assignment contemplated under the Payoff Order and DIP Financing Order entered by the Court was effectuated.

22. **BEI entered into the Bay Point Loan to take out the JGB loan and end the relationship with JGB. Blouin now is seeking a return to traditional financing.**

### Post-Dismissal Refinancing of DIP Loan and/or Sale

23. BEI now has an opportunity to pay the Bay Point Loan in full pursuant to a transaction with proposed lender REYL Intesa San Paolo ("*REYL*").

24. REYL has over $1 trillion in assets on its balance sheet. Founded in 1973, REYL is a diversified banking group with offices in Switzerland (Geneva, Zurich, Lugano), Europe (London, Luxembourg, Malta) and the rest of the world (Singapore, Dubai). It employs over 400 professionals.

25. Pursuant to the proposed financing transaction ("*Financing Transaction*") with REYL, REYL will provide $62 million in secured financing to BEI with a three percent interest rate to, among other things, pay the Bay Point Loan. The Bay Point Loan is currently not in default. No amounts are currently due and owing on the Bay Point Loan.

26. Sixty percent of the security for the REYL loan will be taken from the value of 366 Gin Lane, Southampton and the remainder of the security for the loan will be taken from the value of 376 Gin Lane, Southampton, through cross-collateralization.

27. **REYL will not enter the financing Transaction with BEI until BEI is no longer in bankruptcy. BEI's ability to refinance on favorable terms and sell the property at market value has been hampered by the bankruptcy.**

28. **Additionally, the Debtor's secured lender Bay Point will not be harmed by the dismissal because Bay Point retains all rights and remedies available to it under contract, applicable law and all Orders of this Court.**

29. Finally, exiting chapter 11 enables the Debtor to preserve and maximize the equity

in the Debtor's property and proceeds from refinancing and/or sale. The value of the Debtor's property exceeds the amount of the Bay Point Loan.

### Chapter 11 Case's Adverse Impact on Marketing, Sale and Rental Process

30. During BEI's Chapter 11 Case, real estate broker Nest Seekers was engaged in the Debtor's Chapter 11 Case to assist the Debtor BEI in selling and/or renting its property located at 366 Gin Lane, Southampton, New York. We were also engaged to assist non-debtor Aberdeen Enterprises, Inc. ("*AEI*") with the sale and/or rental of 376 Gin Lane, Southampton, New York. The properties 366 Gin Lane and 376 Gin Lane together are referred to herein as ("*La Dune*").

31. Nest Seekers is working diligently to close rental leases for both Debtor BEI and AEI for the summer months of June through September, with a keen interested party. However, the parties involved in the rental transactions required further clarity with respect to the bankruptcy, especially for BEI. The prospective tenant requires assurances that the bankruptcy proceeding, and approval process will not be an impediment to the tenant's occupancy nor become problematic during their planned lease term. Buyers and renters of luxury properties wish to avoid problems or exposure to unwanted publicity.

32. While the current party is very interested in renting both homes, they also still wish to purchase the entire La Dune compound; however, they continue to feel uncertainty regarding their status and are seeking a resolution to the to the Chapter 11 Case.

33. La Dune is now in the best shape it has been in for years and truly shows far better today than in previous seasons; the improvements are very noticeable. BEI and Nest Seeker's goal was to change the narrative from one of distress to stability. This has proved a success. At present Nest Seekers is in discussions with interested parties to rent the compound for July, August and September, as well as a request to show the compound for sale, in July. These are all very encouraging signs.

34. According to the Debtor's real estate broker, the bankruptcy however is

problematic since it taints the market and provides the wrong incentives to prospective buyers. Instead of working quickly and competitively to obtain a marquee property, the market information regarding bankruptcy forces prospective buyers to wait on the sidelines in the hopes of obtaining a significant discount.

35. The Debtor's broker further reports that although there continues to be challenges in the broader U.S. economy, high net worth individuals are still doing quite well, if not even better than in years past. La Dune as well maintains its prestige as one of the most desirable compounds in all of the Hamptons. That said, buyers will be more willing to step forward and make offers at fair market price once the status of the properties has stabilized and the bankruptcy has been resolved. As a result, the Debtor's broker is in support of the Debtor's efforts to emerge from bankruptcy and give the selling proposition of the Debtor's property to the wider market, a more solid footing.

36. See the *Declaration of Louise Blouin in Support of Motion of the Debtor for Entry of an Order (I) Dismissing the Chapter 11 Case of Brickchurch Enterprises, Inc. and (II) Granting Related Relief* and the *Declaration of Geoff Gifkins of Nest Seekers International in Support of Motion of the Debtor for Entry of an Order (I) Dismissing the Chapter 11 Case of Brickchurch Enterprises, Inc. and (II) Granting Related Relief*, both filed contemporaneously with this Motion, for further background and in support of the requested relief.

## **RELIEF REQUESTED**

37. By this Motion, the Debtor seeks (i) to dismiss the Chapter 11 Case of BEI, pursuant to sections 105(a) and 1112(b) or, alternatively, section 305(a) of the Bankruptcy Code, enter a final decree closing the Chapter 11 Case within 14 days of entry of an Order dismissing the Chapter 11 Case and (iii) to have the Court enter an order granting other relief that is just, equitable and proper.

## BASIS FOR RELIEF REQUESTED

38. Section 1112(b) provides that, "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b).

39. Whether "cause" exists is determined on a case-by-case basis, and the Court has wide discretion in its decision to dismiss a chapter 11 case. *See In re Rubio*, 09-75163-AST, 2011 WL 124458, at *3 (Bankr. E.D.N.Y. Jan. 13, 2011) (noting that "a bankruptcy court has 'wide discretion' to determine whether to dismiss a case under Section 1112(b).") (citation omitted); *In re Greene Ave. Restoration II Corp.*, 597 B.R. 202, 217 (Bankr. E.D.N.Y. 2019) (same).

40. A nonexclusive list of sixteen examples of "cause" that may constitute grounds for dismissal is included under Section 1112(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1112(b)(4)(A)–(P).

41. Here, cause exists to dismiss the Chapter 11 Case, because the Proposed Financing Transaction requires its dismissal, and consummating the Financing Transaction, and a sale and/or rental of the Debtor's property is in the best interests of the Debtor, its estate, creditors and other interested parties.

42. Therefore, preventing the Debtor from dismissing the Chapter 11 Case of BEI could jeopardize the Financing Transaction, a sale and/or rental of the BEI's property. Because dismissal of the Chapter 11 Case of BEI is in furtherance of the Financing Transaction, sale and rental of the Debtor's property, the proceeds of which will benefit the Debtor, its estate, and creditors, including DIP Lender Bay Point, cause exists to dismiss the Chapter 11 Case of BEI.

43. Alternatively, cause exists to dismiss the Chapter 11 Case of BEI, pursuant to section 305(a) of the Bankruptcy Code:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .

11 U.S.C. § 305(a)(1).

44. In determining dismissal and/or abstention requests pursuant to section 305(a), courts have considered a wide range of factors including, but not limited to:

> 1) The economy and efficiency of administration;
>
> 2) Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;
>
> 3) Whether federal proceedings are necessary to reach a just and equitable solution;
>
> 4) Whether there is an alternative means of achieving an equitable distribution of assets;
>
> 5) Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
>
> 6) Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
>
> 7) The purpose for which bankruptcy jurisdiction has been sought.

*See*, *e.g.*, *In re Newbury Operating LLC*, 20-12976-JLG, 2021 WL 1157977, at *10 (Bankr. S.D.N.Y. Mar. 25, 2021).

45. Under section 305(a) of the Bankruptcy Code, dismissal of the Chapter 11 Case of BEI is warranted, for the same reasons dismissal is warranted pursuant to section 1112(b). Dismissal of the Chapter 11 Case of BEI is necessary to consummate the Financing Transaction, which will benefit the Debtor and creditors, particularly Bay Point.

46. Further, Bay Point and other creditors have all rights and remedies available to

them that have not been waived or are prohibited by any applicable court Order or by operation of applicable law.

47. Additionally, Bay Point and other creditors have rights and remedies available outside and bankruptcy while failure to dismiss this case could endanger the Financing Transaction, rental and sale prospects. And continuing in chapter 11 will only increase the administrative costs and burden on the Debtor's operations and estate.

48. Moreover, section 105(a) of the Bankruptcy Code provides this Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

49. All creditor claims approved by the Court have been paid. U.S. Trustee quarterly fees and monthly operating reports are current. And pursuant to Bankruptcy Rule 3002, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

## NOTICE

50. The Debtors have provided notice of the filing of the Motion to: (i) the Office of the United States Trustee; (ii) counsel to DIP Lender Bay Point; (iii) the Internal Revenue Service; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order, granting the relief requested herein, and grant such other relief as the Court may deem just and proper.

Dated:  June 7, 2023                                        Respectfully submitted,

                                                    **SIMMONS LEGAL PLLC**

                                                    */s/ Camisha L. Simmons*
                                                    **Camisha L. Simmons**
                                                    **SIMMONS LEGAL PLLC**
                                                    1330 Avenue of the Americas, Suite 23A
                                                    New York, New York 10019
                                                    212.653.0667 (Telephone- New York)
                                                    214.643.6192 (Telephone- Dallas)
                                                    800.698.9913 (Facsimile)
                                                    Email:  camisha@simmonslegal.solutions

                                                    ***COUNSEL FOR DEBTOR***

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on June 7, 2023, a true and correct copy of the foregoing *Motion of the Debtor for Entry of an Order (I) Dismissing the Chapter 11 Case of Brickchurch Enterprises, Inc. and (II) Granting Related Relief* was served electronically by email and through the Court's Electronic Case Filing System upon the counsel and parties of record on those parties that have consented to such service and (i) the Office of the United States Trustee; (ii) counsel to Bay Point; (iii) the Internal Revenue Service; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002.

                                                    /s/ *Camisha L. Simmons*
                                                    Camisha L. Simmons

**Exhibit A**

**(Proposed Order)**

IN UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

In re:

BRICKCHURCH ENTERPRISES, INC.,

Debtor.

---

Chapter 11

Case No. 22-70914-ast

## ORDER (I) DISMISSING THE CHAPTER 11 CASE OF BRICKCHURCH ENTERPISES, INC. AND(II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "*Motion*") for entry of an order (this "*Order*") dismissing the bankruptcy case of Brickchurch Enterprises, Inc. (Case No. 22- 70914) filed by the Debtor; and the Court having found that it has jurisdiction to consider the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; adequate notice of the Motion and opportunity for objection having been given; this Court having reviewed and considered the Motion and any objections thereto; this Court having heard statements and evidence presented in support of the relief requested by the Debtor in the Motion at a hearing before this Court (the "*Hearing*"); upon the full record of the Chapter 11 Case; it appearing that no other notice need be given; it further appearing that the legal and factual bases set forth in the Motion and the record made at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Chapter 11 Case of Brickchurch Enterprises, Inc. (Case No. 22-70914) shall be dismissed effective as of the date of this Order (the "*Dismissal Date*") and such case is hereby

closed effective 14 days after entry of this Order.

3. Notwithstanding section 349 of the Bankruptcy Code, all orders of this Court entered in the Chapter 11 Case on or before the Dismissal Date shall remain in full force and effect and shall survive the dismissal of the Chapter 11 Case.

4. Without limiting the generality of the foregoing, the liens (including, without limitation, the scope (*i.e.*, the assets, property, and interests in property encumbered thereby) and the self-effecting and automatic perfection aspects and qualities thereof), claims, rights and other protections granted to DIP Lender Bay Point, in various capacities under the DIP Financing Order and any other Order this Court, shall survive the dismissal of the bankruptcy case and attach solely to the proceeds of any sale and/or refinancing transaction.

5. Except as otherwise provided by Order of this Court, nothing in this Order shall release, enjoin, bar, limit, or otherwise impede the Debtor's and other parties' exercise of all valid, legal and enforceable rights, claims, and causes of action and all such rights, claims, and causes of action are expressly reserved and preserved; provided, however, no standing to any creditor or other party in interest is hereby conferred.

6. To the extent the proposed Financing Transaction, a sale of the Debtor's property or other transaction that pays the Bay Point Loan in full does not occur within 90 days from the Dismissal Date, this Order shall be void and of no further force and effect and Bay Point may exercise its right to request that the Court reopen the Chapter 11 Case to effectuate a sale of the Debtor's property. Debtor agrees not to oppose the reopening of the Chapter 11 Case pursuant to the provisions of this Order.

7. Notwithstanding the dismissal of the Chapter 11 Case of BEI, the Court shall retain jurisdiction with respect to all matters, claims, rights, or disputes arising from or related to the implementation of this Order and all Orders entered by the Court in the Chapter 11 Case of BEI.

8.  Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

9.  The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.