**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BRICKCHURCH ENTERPRISES, INC.,<br><br>Debtor. | Case No. 22-70914-ast<br><br>Chapter 11 |

### BAY POINT CAPITAL PARTERS II, LP'S OBJECTION AND OPPOSTION TO MOTION OF DEBTOR FOR ENTRY OF AN ORDER (I) DISMISSING THE CHAPTER 11 CASE OF DEBTOR AND BRICKCHURCH ENTERPRISES, INC. AND (II) GRANTING RELATED RELIEF (ECF NO. 257)

DIP Lender Bay Point Capital Partners, LP ("Bay Point" or the "DIP Lender") objects to the *Motion of Debtor for Entry of an Order (i) Dismissing the Chapter 11 Case of Debtor and Brickchurch Enterprises, Inc. and (ii) Granting Related Relief* (ECF No. 257, the "Motion") and in support of its objection states the following:

Debtor's strategically timed Motion and the arguments in support therein are now stale. Two days after filing the Motion, Debtor defaulted under the terms of the DIP Loan Documents[1] by failing to remit payment of the full DIP Obligations due thereunder. In fact, Debtor failed to make any payment to the DIP Lender.

Moreover, Debtor's self-serving and conclusory statements that "a new lender wants to refinance the Bay Point loan but is conditioning the financing on Debtor emerging from bankruptcy before entering the loan transaction" are without support. Where is the binding commitment letter from the refinancing lender? If Debtor can produce a complete, fully executed, binding agreement for refinancing from a reputable funding source[2] that will result in Bay Point

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the *Order (i) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (ii) Granting Liens and Super-Priority Claims* (ECF No. 172, the "DIP Order").

[2] Bay Point does not dispute that REYL Intesa San Paolo ("REYL") is a reputable funding source.

receiving payment of the DIP Obligations owed to, which is conditioned only on the dismissal of the bankruptcy case, Bay Point will agree to Debtor's requested dismissal. But there is no agreement in place.

Instead, Debtor wants out of bankruptcy so that it can put Bay Point on the proverbial bankruptcy marry-go-round. Specifically, Debtor knows that if this case is dismissed, Bay Point will pursue the remedies available to it in state court. *See* Motion, ¶ 3. Bay Point believes that if Debtor has not accomplished its Hail Mary refinancing by that point, Debtor will refile a second bankruptcy to further delay the process and frustrate its creditors. And the process goes on.

Moreover, the marry-go-round is going to pick up at least one additional rider soon. As set forth in the letter attached hereto as **Exhibit A**, Aberdeen Enterprises, Inc. ("Aberdeen"), Debtor's sister company which owns the adjacent real estate at 376 Gin Lane, is in default of its loan obligations with Morgan Stanley Private Bank, National Association ("Morgan Stanley"). Morgan Stanley is in the process of exercising foreclosure remedies as a result of such default and anticipates that the 367 Gin Lan property will be auctioned off by the foreclosure referee on August 3, 2023. Ex. A.

And Morgan Stanley's foreclosure sale is going to impact Debtor's ability to get refinancing. As set forth in the Motion, Debtor's proposed refinancing requires securitization by two separate parcels of real property: (i) 366 Gin Lane; and (ii) 376 Gin Lane. Motion, ¶ 26. Debtor's entire argument for dismissal rests on the unsupported allegation that REYL will not enter the refinancing transaction if the party owning the real estate securing such refinancing is in bankruptcy. *See* Motion, ¶¶ 4, 27. So what will happen on August 3rd? There are three potential courses of action:

1. Debtor and/or Aberdeen close(s) a sale or refinancing prior to Morgan Stanley's foreclosure sale. However, Debtor and Aberdeen's principal owner has indicated that she does not believe that it is possible to close a sale or refinancing transaction in less than ninety (90) days – which goes far past the August 3rd foreclosure sale. *See* **Exhibit B**.

2. Aberdeen allows Morgan Stanley to foreclose on 376 Gin Lane. This seems incredibly unlikely and, even if Aberdeen did permit Morgan Stanley to foreclose, that would mean that 376 Gin Lane was not available to serve as collateral for Debtor's proposed refinancing.

3. Aberdeen files for bankruptcy. This seems like the most likely scenario. If this were to occur, Debtor and Aberdeen would be in the exact same position that they are in now – with one of the properties being part of a bankruptcy.

In the end, there is no reasonable prospect for a refinancing of the DIP Loan Obligations.

Nor will a dismissal improve the prospects of a sale. Debtor first argues that potential purchasers are not interested in purchasing property out of bankruptcy because of the "exposure to unwanted publicity." Motion, ¶ 31. That problem can be addressed by a non-insider through the use of an LLC or a strawman purchaser without public ties to the purchasing individual.

Debtor's second argument is that the bankruptcy "taints the market and provides the wrong incentives to prospective buyers." Motion, ¶ 34. In other words, Debtor feels that instead of moving quickly to buy the Combined Estate,[3] potential buyers are waiting on the sideline "in the hopes of obtaining a significant discount." Motion, ¶ 34. But how will a dismissal improve this issue when there are pending foreclosure sales scheduled for 366 Gin Lane and 376 Gin Lane outside of

---

[3] The term "Combined Estate" as used herein shall refer the collective estate comprised of 366 Gin Lan and 376 Gin Lane.

bankruptcy? The problem is not the bankruptcy. The problem is that Debtor and Aberdeen are in default by not paying their debts. So long as Debtor and Aberdeen remain in default and the properties remain subject to a potential auction process, Debtor's concerns – to the extent they are legitimate at all – remain.[4]

    Bay Point is currently working on a plan of reorganization/liquidation that it believes will be in the best interests of all creditors. Because Bay Point has tried to work with Debtor and Aberdeen at every turn, it has not been able to finalize that plan prior to the objection deadline to the Motion. For that reason, Bay Point asks for the Court's continued patience within these bankruptcy proceedings.

For all of these reasons, along with any additional reasons and evidence that may be raised or presented through any supplemental briefing or at a hearing on the Motion, Debtor respectfully requests that the Court deny Debtor's Motion.

---

[4] Debtor fails to provide any explanation for why 366 Gin Lane 376 Gin Lane are different from the thousands (probably tens of thousands) of real properties (commercial, residential, and raw land) that sell through private sales/reorganizations in bankruptcy every year. Experience and logic both indicate that there are very good reasons why a potential buyer would rather purchase one or both of the real properties at issue here through a private sale through a plan of reorganization or section 363 sale.

Dated: June 27, 2023

Respectfully submitted,

THOMPSON HINE LLP

/s/ John C. Allerding
By: John C. Allerding (admitted pro hac vice)
Thompson Hine LLP
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
P: 404.407.3676 / F: 216.566.5800
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*