IN UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
In re:                                              :      Chapter 11
:
BRICKCHURCH ENTERPRISES, INC.,                      :      Case No. 22-70914-ast
:
:
:
Debtor.                                             :
:
---------------------------------------------------------------x

**OBJECTION AND RESERVATION OF RIGHTS OF DEBTOR BRICKCHURCH ENTERPRISES, INC. TO DISCLOSURE STATEMENT FOR BAY POINT CAPITAL PARTNERS II, LP'S PROPOSED PLAN OF LIQUIDATION OF BRICKCHURCH ENTERPRISES, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND REQUEST FOR EVIDENTIARY HEARING**

Brickchurch Enterprises, Inc. ("***BEI***" or "***Debtor***"), debtor and debtor in possession, by and through its undersigned counsel, files this objection and reservation of rights ("***Objection***") to the *Disclosure Statement for Bay Point Capital Partners II, LP's Proposed Plan of Liquidation of Brickchurch Entperises, Inc. Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 248] (the "***Disclosure Statement***") filed by Bay Point Capital Partners II, LP on May 17, 2023. In support of its Objection, BEI respectfully states:

### BACKGROUND

*Commencement of Chapter 11 Bankruptcy by Debtor*

1. On April 30. 2022 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Code***").

2. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Code.

3. No official committee of unsecured creditors has been appointed in the above-

captioned chapter 11 case (the "***Chapter 11 Case***").

***Restructuring Achievements and Debtor's Plan to Exit After Financing Closed in December***

4.  During the Chapter 11 Case, BEI considered and explored numerous alternatives to obtain the necessary liquidity to pay all creditors and fund this Chapter 11 Case. These alternatives included: a potential sale of Debtor's primary real estate and potential new third-party financing.

5.  The Debtor engaged real estate broker Nest Seekers International to market the Debtor's primary asset, a luxury residential estate in Southampton, for both sale and rental. The Debtor's broker continues to market the property and engage prospective buyers.

6.  In the process of exploring strategic alternatives, the Debtor has sought the financing necessary to reorganize its affairs in chapter 11. After approximately five months of shopping for ***exit financing***, the Debtor obtained exit financing from Bay Point, a $450 million hedge fund based in Atlanta, Georgia.

7.  With over $60 million in financing (the "***Bay Point Loan***") from the DIP Lender, BEI has paid all claims approved by the Court.

8.  On December 9, 2022 ("***Closing Date***"), the Debtor closed on the post-petition Bay Point Loan approved by the Court pursuant to the *Order (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (II) Granting Liens and Super-Priority Claims* [Dkt. No. 172] ("***DIP Financing Order***") and/or DIP Loan Agreement.[1]

9.  On the Closing Date, Debtor's pre-petition secured lender JGB was paid off, by paying a negotiated amount of $44.5 million and the Assignment contemplated under the Payoff Order and DIP Financing Order entered by the Court was effectuated.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Financing Order.

10. After financing and payment of creditors, the Debtor sought to exit chapter 11. Unfortunately, Bay Point had other plans.

*Bay Point Commandeers Chapter 11 Case to Achieve Its Investment Goals Instead of Focus on Debtor's Exit*

11. The Debtor closed on the Bay Point Loan over 7 months ago. The Debtor has consistently made it clear to Bay Point that the Debtor seeks to exit chapter 11. Further, Bay Point has all rights and remedies available to it outside of bankruptcy to protect its position.

12. **The Debtor's (upstream) principal recounts that it was agreed with Bay Point that all parties would work together to clean up the narrative regarding the property. The new positive narrative would position the property at a higher value in the market to refinance and/or sell. BEI agreed to 15 percent interest on the Bay Point Loan to clean the narrative and forge ahead with a clean narrative regarding the property. BEI, however, hasn't been able to clean the narrative in the 6 months since the closing of the post-petition Bay Point loan in December 2022.**

13. **The Court approved the Bay Point Loan for $62 million. The Debtor's (upstream) principal communicates that Bay Point took back $1.5 million of the loan amount and is charging interest on the amount that was taken back. The $1.5 million accordingly was not available for property maintenance.**

14. After trying to achieve an exit with Bay Point over the last 7 months, Bay Point is dead set on hijacking the Debtor's Chapter 11 Case to achieve its own goals. In the investment world, many investors' goal is to obtain "alpha," *i.e.*, an "excess rate of return" in relation to a benchmark, when adjusted for risk.

15. By its refusal to agree to a swift exit from chapter 11, Bay Point appears to desire to prolong the Debtor's exit to achieve an in-court sale only to maximize its returns and achieve its investment goals at the expense of the Debtor and the estate. **Bay Point is seeking**

**a 9 percent origination fee, plus an excessive amount of interest along with an additional excessive $6 million late charge, which results in a double recovery that is against public policy.**[2]  **Bay Point's legal fees and expenses charged to the Debtor are also excessive at over $500,000**.

16. **Moreover, Bay Point has consented to allow for a rental of BEI's property at 366 Gin Lane, Southampton, from the period of July 7, 2023 thru September 7, 2023.  However, Bay Point has not yet extended the maturity of the loan.  According to the Debtor's ultimate upstream principal Ms. Louise Blouin, on a call with the bank REYL, Bay Point sabotaged the refinancing deal with REY by not saying they would get out of chapter 11.   And according to Ms. Blouin, Bay Point sabotaged a workout deal with Morgan Stanley on a loan on the property that is adjacent to BEI's property and is collateral for the Bay Point Loan by not extending the Bay Point Loan.**

17. Bay Point appears to be prolonging the Chapter 11 Case to rack up excessive interest and fees.  Bay Point is proceeding under the profit motive.  The Debtor, on the other hand, is seeking to achieve a restructuring.  The Debtor achieved a restructuring when it obtained the Bay Point Loan to pay prepetition creditors.  The Debtor's restructuring objectives with respect to right sizing its prepetition balance sheet, have largely been realized.

18. Yet, here we are, with the Debtor facing more months in chapter 11, if Bay Point is allowed to continue with its proposed plan to run a sale process using this Court's resources.  A sale process will burden the bankruptcy estate with additional administrative costs.

---

[2] *See, e.g.*, *In re 785 Partners LLC*, 470 B.R. 126, 137 (Bankr. S.D.N.Y. 2012) (explaining that "'[t]he decisional law is uniform that over-secured creditors may receive payment of either default interest or late charges, but not both'… The reason is that the late fee and default interest are designed to compensate the lender for the same injury, and awarding both amounts to double recovery.").  Here, Bay Point has demanded both defaulted interest and a $6 million late charge to boot; both of which individually over-compensate Bay Point for any perceived damage.

19. Lenders should not be allowed to hijack bankruptcy cases to increase their profits to the detriment of the debtor, bankruptcy estate, and other creditors and parties in interest. A lender's commandeering of a debtor's chapter 11 case is not what Congress intended when Congress enacted chapter 11 of the Code.

***Joint Plan Negotiations Between Debtor and Bay Point***

20. Currently, pending before the Court are a motion to dismiss ("***Debtor's Motion to Dismiss***") the case filed by the Debtor and a separate Disclosure Statement filed by Bay Point setting forth its proposed plan to liquidate.

21. For more than three weeks, Debtor and Bay Point have been negotiating joint plan terms. The joint plan will enable the Debtor to emerge from bankruptcy to obtain the proceeds to pay the Bay Point Loan and the few other remaining unpaid creditors on allowed claims.

22. **The Debtor has repeatedly requested 90 days from the date of the plan confirmation order to refinance and/or sell the property and a 15 percent cap on the interest on the Bay Point Loan. Bay Point has rejected these requests of the Debtor**. Accordingly, to-date, the Debtor and Bay Point have not yet come to agreement on all key terms of the joint plan.

23. Moreover, Bay Point did not circulate an initial draft of the proposed joint plan to certain creditors and the Debtor until the evening of June 25, 2023. Consequently, by necessity, the Debtor requested an adjournment of the June 28, 2023 hearing before the Court.

## **OBJECTION**

24. A disclosure statement cannot be approved unless it contains "adequate information."[3] The information in a disclosure statement is adequate if it contains sufficient

---

[3] *See* 11 U.S.C. § 1125(a)(1).

detail to enable "a hypothetical investor of the relevant class to make an informed judgment about the plan."[4] Further, "[i]n addition to the requirement that the disclosure statement contain adequate information, *a bankruptcy court should not approve a disclosure statement if the proposed plan which it describes is incapable of confirmation*."[5]

25. Pursuant to Sections 1129 and 1126 of the Code, a plan cannot be confirmed, unless, with respect to impaired classes of creditors, at least two-thirds in dollar amount of claims and more than one-half in number of the creditors in the impaired class submit votes in the acceptance of the plan of reorganization by that class.

26. Ms. Louise Blouin, the Debtor's ultimate upstream principal, has an over $10.5 million general unsecured claim against the Debtor. Ms. Blouin's general unsecured claim accounts for more than two-thirds of the total dollar amount of all asserted general unsecured claims. Without Ms. Blouin's vote, the plan proposed cannot be confirmed by the Court. Accordingly, Bay Point's plan and disclosure statement fail to meet the confirmation requirements of the Code.

27. **But all hope is not lost. The Debtor remains hopeful that the Debtor and Bay Point will come to a reasonable mutually acceptable plan. Though, in the interim, the Debtor must move forward on parallel tracks. That said, the Debtor is moving forward with scheduling an evidentiary hearing on the Debtor's Motion to Dismiss.**

## REQUEST FOR EVIDENTIARY HEARING ON DEBTOR'S MOTION TO DISMISS

28. Given that a joint plan has not yet been agreed to, the Debtor hereby requests the scheduling of an evidentiary hearing on the Debtor's Motion to Dismiss. The Debtor likewise

---

[4] *See id*.

[5] *See. e.g.*, *In re 18 RVC, LLC*, 485 B.R. 492, 495 (Bankr. E.D.N.Y. 2012) (citation omitted).

respectfully requests a scheduling order to set forth the timeline to, among other things, conduct depositions and other discovery.

29. Additionally, one or more of the Debtor's witnesses may not be able to appear in person. Accordingly, the allowance of the admission of deposition testimony for witnesses is also requested.

## RESERVATION OF RIGHTS

30. Debtor reserves its rights to amend or supplement this Objection, raise additional objections and to introduce evidence at any hearing relating to the Disclosure Statement and plan proposed by Bay Point on May 17, 2023 and any amended plan and disclosure statement proposed by Bay Point.

## CONCLUSION

For the foregoing reasons, Debtor respectfully requests that this Court (i) deny approval of the Disclosure Statement; (ii) set an evidentiary hearing on the Debtor's Motion to Dismiss; and (iii) grant such other and further relief as this Court deems just and proper.

Dated: July 17, 2023                                    Respectfully submitted,

SIMMONS LEGAL PLLC

*/s/ Camisha L. Simmons*
**Camisha L. Simmons**
SIMMONS LEGAL PLLC
1330 Avenue of the Americas, Suite 23A
New York, New York 10019
212.653.0667 (Telephone- New York)
214.643.6192 (Telephone- Dallas)
800.698.9913 (Facsimile)
Email: camisha@simmonslegal.solutions

***COUNSEL FOR DEBTOR***

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on July 17, 2023, a true and correct copy of the foregoing *Objection and Reservation of Rights of Debtor Brickchurch Enterprises, Inc. to Disclosure Statement for Bay Point Capital Partners II, LP's Proposed Plan of Liquidation of Brickchurch Enterprises, Inc. Under Chapter 11 of the Bankruptcy Code and Request for Evidentiary Hearing* was served electronically upon the counsel and parties of record through the Court's Electronic Case Filing System on those parties that have consented to such service and by email to Bay Point and U.S. Trustee.

/s/ *Camisha L. Simmons*
Camisha L. Simmons