**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BRICKCHURCH ENTERPRISES, INC.,<br><br>Debtor. | Case No. 22-70914-ast<br><br>Chapter 11 |

**NOTICE OF (I) NEW SHAREHOLDER OF RECORD OF DEBTOR'S EQUITY
INTERESTS; AND (II) REPLACEMENT OF OFFICERS AND DIRECTORS**

DIP Lender Bay Point Capital Partners II, LP ("Bay Point" or the "DIP Lender") hereby notifies the Court that it has exercised rights to (i) become the record shareholder of the Debtor; and (ii) remove Debtor's previous corporate officers and directors.

*The DIP Loan Agreement*

Pursuant to Section 9.3 of that certain Loan and Security Agreement, dated November 9, 2022 and entered into between the DIP Lender and Debtor (the "DIP Loan Agreement") at Debtor's request and pursuant to authorization from this Court, Bay Point is Debtor's attorney-in-fact with power of attorney to assign, transfer, or otherwise dispose of the shares of Debtor. Specifically, Section 9.3 provides as follows:

> Exercisable only upon the occurrence and during the occurrence of an Event of Default, each Borrower herby irrevocably appoints Lender (and any of Lender's designated officers, or employees) as Borrower's true and lawful attorney to . . . (i) sell, assign, transfer, pledge compromise, discharge or otherwise dispose of any Collateral; . . . and (k) do all acts and things necessary or expedient, in furtherance of such purposes.

DIP Loan Agreement, § 9.3. The term "Collateral," as it is used in the Section 9.3, is defined as:

> all tangible and intangible property, real and personal of any Person that is or purports to be the subject of a Lien in favor of Lender to secure the whole or any part of the Obligations, including, without limitation, the Mortgaged Property and the Pledged Equity.

DIP Loan Agreement, § 1.1. The term "Pledged Equity" is defined as:

> those shares, certificates, membership interests, or other evidence of ownership interest, whether in physical or electronic form, whether certificated or uncertificated, including any entries in any books and records, evidencing and constituting the complete, undiluted, and undivided ownership interest in Aberdeen, Brickchurch, Aberdeen Enterprises Holdings Ltd., Aberdeen Enterprises Ltd., and Brickchurch Enterprises Ltd.

DIP Loan Agreement, § 1.1. The term "Brickchurch" as it is used in the DIP Loan Agreement means the Debtor. DIP Loan Agreement, § 1.1. The term "Event of Default" includes that situation where "any Borrower fails to pay, when due, any principal due and payable under [the DIP Loan Agreement or, []] any Borrower fails to pay, when due, any interest or other amounts due and payable under [the DIP Loan Agreement] or any other portion of the Obligations."

### *The Pledge Agreements and Guaranty*

Pursuant to Section 6 of the Pledge and Security Agreements (collectively, the "Pledge Agreements") executed by Aberdeen Enterprises (BVI), Ltd. and Brickchurch Enterprises (BVI), Ltd. (collectively, the "Pledgors," and each, a "Pledgor"), the Pledgors relinquished, transferred and assigned DIP Lender all right, power, and authority to authorize any direct or indirect change, transfer, sale conveyance, encumbrance or other alienation of any stock, voting interest, economic interest or otherwise or any assets owned by the Pledgors. Pledge Agreements, § 7.

Moreover, pursuant to Section 9 of the Pledge Agreements:

> Upon the occurrence of an Event of Default, and after the expiration of any applicable notice and cure period set forth in the Loan Documents, in addition to any and all other rights and remedies which Lender may then have [under the Pledge Agreements], under the UCC or otherwise, [DIP] Lender may, at its discretion and without notice to Pledgor unless required by applicable law, do any one or more of the following, without liability except to account for property actually received by it, Pledgor[s] having agreed that it is commercially reasonable for [DIP] Lender to do any of the following: (a) transfer to or register in its name or the name of its nominee (if the same has not already been done) any of the

> Collateral with or without indication of the security interest herein created, and whether or not so transferred or registered, receive the income, dividends and other distributions thereon and hold them or apply them to the Obligations in any order of payment as decided by landlord in its sole and absolute discretion; (b) exercise or cause to be exercised all voting and corporate powers with respect to any of the Collateral so registered or transferred, including all rights to conversion, exchange, subscription or any other rights, privileges or options pertaining to such Collateral, as if the absolute owner thereof.

Pledge Agreements, § 9. The following definitions are relevant to the rights granted to DIP Lender under Section 9:

- The term "Event of Default" includes the "[f[ailure by Pledgor to perform any of its monetary Obligations under this [Pledge] Agreement, the Guaranty, or any of the other Loan Documents." Pledge Agreements, § 2.

- The term "Obligations" includes "all advances to, and debts, liabilities, obligations, covenants and duties of, any Guarantor arising under any Loan Document or otherwise with respect to the Loan. Pledge Agreements at 1 n.1 (incorporating definition in the DIP Loan Agreement); DIP Loan Agreement, § 1.1.

- The term "Guaranty" is defined as "that certain Guaranty of even date herewith in favor of [DIP] Lender, pursuant to which Pledgor absolutely and unconditionally guaranteed, *inter alia*, all Borrowers' Obligations to Lender under the Loan Documents. Pledge Agreements at 1.

- The term "Loan Documents" includes all documents and agreements entered into in connection with the DIP Loan Agreement, as the same may be modified from time to time, including the Guaranty, the Pledge Agreements, and the DIP Loan Agreement. Pledge Agreements at 1 n.1 (incorporating definition in the DIP Loan Agreement); DIP Loan Agreement, § 1.1.

- The term "Collateral" means one hundred percent (100%) of the shares of Debtor and Aberdeen Enterprises, Inc. Pledge Agreements, Schedules A.

The effect of the above-referenced provisions is that, upon an Event of Default, Bay Point had the right to, *inter alia*, become the shareholder of record of Debtor's equity interests, replace Debtor's board of directors, and replace Debtor's corporate officers.

### *The Payment Event of Default*

3

There has been one or more Events of Default under the DIP Loan Documents, including the DIP Loan Agreement, the Guaranty, and the Pledge – most notably Debtor's failure to fully pay all of the DIP Obligations on the maturity date thereof. Although not required, DIP Lender sent notices of the above-referenced Event of Default to Debtor and Aberdeen Enterprises, Inc. on June 16, 2023. DIP Lender also sent notices of default to the Pledgors, among others, on June 16, 2023 and July 5, 2023. Despite receiving notice of the above-referenced Event of Default, Debtor, Aberdeen Enterprises, Inc, and the Pledgors have failed to cure the same.

### *Debtor's Former Officer and Director allow Debtor's corporate existence to lapse.*

Despite the Events of Default, DIP Lender continued to try and work with Debtor and its principals on a joint plan of reorganization. However, recent actions have made it necessary for DIP Lender to exercise its above-referenced rights to protect its Collateral – such protection also being in the best interest of Debtor's bankruptcy estate. Among other things, Debtor's officer and director allowed Debtor's corporate existence to lapse under Delaware law by failing to comply with Delaware legal requirements for maintaining a corporation in good standing. As a result of the change in corporate control, the new officer and director (Charles Andros[1]) immediately brought the Debtor back into compliance and, as of the filing of this Notice, Debtor is now a valid corporation in good standing under Delaware law.

Dated: July 19, 2023

Respectfully submitted,

*/s/ John C. Allerding*
By: John C. Allerding (admitted pro hac vice)
Thompson Hine LLP
3560 Lenox Road, Suite 1600
P: 404.407.3676 / F: 216.566.5800
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*

---

[1] Mr. Andros is the President and Chief Investment Officer of Bay Point Advisors LLC, the general partner of the DIP Lender.

# **CERTIFICATE OF SERVICE**

        The undersigned attorney hereby certifies that, on July 19, 2023, a true and correct copy of the foregoing was filed on the Court's docket electronically, which caused electronic service to be made through the Court's Electronic Case Filing System on those parties that have consented to such service. The undersigned attorney hereby further certifies that he caused service to be made on the following by first class mail at the following addresses:

Brett Messinger
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103

Camisha Simmons
Simmons Legal PLLC
6060 N. Central Expressway Suite 500
Dallas, Texas 75206

United States Trustee – Region 2
Attn: William J. Birmingham, Esq.
560 Federal Plaza
Central Islip, New York 11722

Internal Revenue Service Centralized
Insolvency Operation
2970 Market Street
Philadelphia, Pennsylvania 19104

Mr. Spencer Gould
Revenue Officer
Internal Revenue Service
290 Broadway, 14th Floor, COLL GR-43
New York, New York 10007

Respectfully submitted,

*/s/ John C. Allerding*
By: John C. Allerding (admitted pro hac vice)
Thompson Hine LLP
3560 Lenox Road, Suite 1600
P: 404.407.3676 / F: 216.566.5800
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*