# The Law Offices of Avrum J. Rosen

**A Professional Limited Liability Company**
Attorneys at Law
38 New Street
Huntington, New York 11743
631 423 8527
arosen@ajrlawny.com

AVRUM J. ROSEN
    ------------

DEBORAH L. DOBBIN
NICO G. PIZZO
ALEX E. TSIONIS+
(+ *also admitted in New Jersey*)

August 8, 2023

VIA ECF

Hon. Alan S. Trust
Chief United States Bankruptcy Judge
United States Bankruptcy Court
290 Federal Plaza
Central Islip, New York 11722

                 Re: Brickchurch Enterprises, Case No. 22-70914-ast & Aberdeen
                 Enterprises, Inc. Case No. 23-72834

Dear Hon. Judge Trust:

       This firm has recently been retained to represent both Aberdeen Enterprises (BVI) Ltd. & Brickchurch Enterprises (BVI) Ltd. respectively in the above referenced cases. These entities are the entities that own the shares in the respective properties and which Bay Point claims that they have removed. The purpose of this correspondence is to request that this Court provide this firm adequate time to respond to the Motion to Dismiss and to file its own adversary proceeding and contempt motion against Bay Point in both cases. The undersigned is leaving on a long-planed trip for cruise around Iceland on the evening of August 9th and am returning on August 19th. It is respectfully requested that the motion be adjourned for a date tat permits the undersigned to file opposition to these motions and to file the adversary proceeding. It is also respectfully requested that the time to file the "Joint "Plan be extended for the reasons set forth below.

       These entities were never represented in these cases, and appear to have been given little, if any, notice. Moreover, Bay Point took these actions, in what appears to be a direct violation of the DIP Order and despite asserting that they would move for a "comfort" order from this Court since mid-July and have failed to do so. Instead, Bay Port's counsel told Debtor's counsel in the Brickchurch case that she could not take direction from its shareholders and has left the Debtor unrepresented in this case. See the email annexed hereto as Exhibit "A". Bay Point took those

steps two days after this Court directed Bay Point and the Debtor to come up with a *Joint* plan and to file it by August 9, 2023, thus eviscerating this Court's direction.

Likewise, Bay Point asserted that it could take over Aberdeen and left it unrepresented with a foreclosure sale about to happen. Instead of taking steps to file that case, in its fiduciary duty as having purportedly taken over control of Aberdeen, it competed with Aberdeen's efforts to adjourn or pay off that mortgage foreclosure action and bought the note and mortgage without any notice to the Debtor's principals. The Aberdeen case was then filed to preserve substantial equity in that property. Moreover, having that case in chapter 11 greatly facilitates a refinance or sale process of both properties under the bankruptcy process.

The undersigned has been reviewing the entire record in the Brickchurch case since the beginning of the weekend and was involved in the decision to file the Aberdeen case for the reasons set forth above. From the review thus far, there are some glaring issues that need to be fully researched an briefed. For instance, the pledge agreements as to both the actual shares and the voting and control rights do not appear to have been filed with the Court in this case. These are the documents that Bay point relies upon. Initially Bay point asserted that they were using the Proxy to control the shares but not transfer them (for obvious transfer tax issues). In the most recent email, attached as Exhibit "B", counsel for Bay Point asserts that they have effectuated the transfer of the shares, a move with dire tax consequences for all parties.

Most importantly these actions are expressly contrary to the DIP Order which states:

F. **DIP Lender**.

(i) No Control. The DIP Lender is not a control person or insider of the Debtor or any of its affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility (as defined herein) and/or the DIP Loan Documents (as defined herein).

Clearly, the right to take over the control of the Debtor, oust management, and then breach its fiduciary duty to the Debtor and other creditors "Arises" from the Loan Documents. The fact that this was done in documents not disclosed to this Court or the Office of the United States Trustee is cause for concern. Moreover, a review of the contradictory clauses as to what Blue Point can and cannot do in its capacity as proxy creates a plethora of conflicts.

In addition to the above, the proposed adversary proceeding will document, with extensive documentary evidence, that Bay Point breached the Loan Agreement by refusing to approve preventive maintenance for the properties for the winter and even after there was a small flood, still refused to address the issues in a timely manner, resulting in a massive flood that caused hundreds of thousands of dollars of damages that prevented the property from being marketed for either sale or rental for seven months. These actions by Bay Point led to the alleged default under the DIP Loan, and it is the clients' position that Bay Point cannot call a default when its breach caused the default. Photos of some of the Damage are annexed hereto as Exhibit "C". In addition, it appears that improper late charges were assessed as well as interest charged on funds that were never made available to the Debtor and other issues in this case.

As the Court can see, there are multiple issues as to control. To be clear, our goal is not to delay the proper marketing and sale of both properties and will promptly engage in that process with input from Blue Point. But Blue Point cannot be both debtor and lender and still properly exercise its fiduciary duty to equity without oversight and input. As a result, this firm respectfully requests the time to address these issues in a fulsome manner.

Thank you.

Very truly yours,

*s/ Avrum J. Rosen*
Avrum J. Rosen