**IN UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ x | | |
| In re: | : | **Chapter 11** |
| | : | |
| **BRICKCHURCH ENTERPRISES, INC.,** | : | **Case No. 22-70914-ast** |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| | : | |
| _____ x | | |

**BAY POINT CAPITAL PARTNERS II, LP'S FIRST AMENDED PROPOSED**
**PLAN OF LIQUIDATION OF BRICKCHURCH ENTERPRISES, INC.**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: August 9, 2023

THOMPSON HINE LLP
John C. Allerding, Esq.
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
Tel: (404) 407-3676
Fax: (404) 541-2905
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*

Bay Point Capital Partners II, LP ("***Bay Point***" or the "***Plan Proponent***") hereby proposes

the following Plan of Liquidation (the "***Plan***") for the Debtor, Brickchurch Enterprises, Inc.,

pursuant to sections 1121, 1122 and 1123 of title 11 of the United States Code.

**ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE
ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN
THEIR ENTIRETY FOR AN ANALYSIS OF THE PLAN AND A DISCUSSION OF THE
DEBTOR'S ASSETS, RISK FACTORS ASSOCIATED WITH THE PLAN AND
RELATED MATTERS**

# ARTICLE I

## DEFINITIONS

Unless the context otherwise requires: (i) the terms set forth in this Article 1 shall have the following meanings when used in the Plan; (ii) any capitalized term used in the Plan and not defined in this Article 1, but defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan without reference to a particular document are to the respective section of, article of, or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as otherwise stated in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to interpretations of the provisions of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1     **"366 Gin Lane Property"** means the real property of the Debtor and the improvements thereon, located at and commonly known as 366 Gin Lane, Southampton, New York 11968.

1.2     **"366 Gin Lane Proceeds"** means the Net Sale Proceeds allocable to the 366 Gin Lane Property in accordance with the provisions of Section 6.4 of the Plan.

1.3     **"376 Gin Lane Proceeds"** means the Net Sale Proceeds allocable to the 376 Gin Lane Rights in accordance with the provisions of Section 6.4 of the Plan.

1.4     **"376 Gin Lane Foreclosure Sale"** means a foreclosure sale of the 376 Gin Lane Property conducted in either of the following cases: (a) *Morgan Stanley Private Bank, National Association v. Aberdeen Enterprises, Inc., et al.* (Supreme Court of the State of New York, Suffolk County Index No. 623196/2019); and (b) *JGB Partners, LP, et al. v. Brickchurch Enterprises, Inc., et al.* (Supreme Court of the State of New York, Suffolk County Index No. 623208/2019).

1.5     "**376 Gin Lane Property**" means the real property of Aberdeen, and the improvements thereon, located at and commonly known as 376 Gin Lane, Southampton, New York 11968.

1.6     **"376 Gin Lane Rights"** means any rights of Bay Point to close on the 376 Gin Lane Foreclosure Sale.

1.7     **"376 Gin Lane Rights Purchase Price"** means the total consideration, including the value of any credit bid, setoff, and cash consideration, paid by Bay Point for the 376 Gin Lane Rights, plus interest at the default interest rate set forth in the DIP Loan Documents.

1.8     **"Aberdeen"** means Aberdeen Enterprises, Inc., a Delaware corporation.

1.9     **"Administrative Bar Date"** means the first Business Day that is 30 days after the Confirmation Date.

1.10        **"Administrative Claim"** means a Claim or request for payment of an Administrative Expense.

1.11    **"Administrative Claims Objection Deadline"** means the first Business Day that is 30 days after the Administrative Bar Date; provided that the Administrative Claims Objection Deadline may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Plan Proponent.

1.12    **"Administrative Expense"** means any actual and necessary cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 507(a)(2), 507(b), 327, 330, 331, or 364(c)(1) of the Bankruptcy Code.

1.13    **"Allowed"** means (a) with respect to a Claim other than an Administrative Claim, a Claim against the Debtor that has not been disallowed  pursuant to a Final Order and is not a Disputed Claim, and with respect to which (i) a Proof of Claim, Proof of Administrative Claim, or request for payment of Administrative Expense has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been timely filed, the Claim has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent; (b) with respect to an Administrative Claim, a request for payment of an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent of the amount allowed by such Final Order; and (c) with respect to an Interest, an Interest listed by the Debtor in its Schedules as being liquidated in amount and not disputed or contingent.

1.14    **"Approval Order"** shall have the meaning ascribed to it in Section 6.2.7.2 of the Plan.

1.15    **"Auction"** shall have the meaning ascribed to it in Section 6.2.5 of the Plan.

1.16    **"Auctioneer"** shall have the meaning ascribed to it Section 6.2.1.

1.17    **"Auction Process"** shall have the meaning ascribed to it in Section 6.2.1 of the Plan.

1.18    **"Backup Bid"** shall have the meaning ascribed to it in Section 6.2.5.8 of the Plan.

1.19    **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.20    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York, or the United States District Court for the Eastern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.21    **"Bankruptcy Fees"** mean all fees and charges against the Estate under section 1930 of title 28 of the United States Code.

1.22    **"Bankruptcy Fees Reserve"** means the segregated account established by the Disbursing Agent Pursuant to Section 7.3(d) of the Plan.

1.23    **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in either case, as now in effect or hereinafter amended.

1.24    **"Bar Date"** means (a) with respect to non-Governmental Units, July 11, 2022, and (b) with respect to Governmental Units, October 31, 2022, as fixed by Order of the Bankruptcy Court entered on May 3, 2022 [ECF No. 7].

1.25    **"Bay Point"** means Bay Point Capital Partners II, LP, a Delaware limited partnership.

1.26    **"Bay Point Collateral"** means all tangible and intangible property of any Person that is or purports to be the subject of a Lien in favor of Bay Point to secure repayment of the DIP Obligations.

1.27    **"Bay Point Collateral Documents"** means each security instrument, mortgage document, pledge agreement, subordination agreement, account control agreement, or any agreement or instrument pursuant to which the Debtor, Aberdeen, or any other Person granted Bay Point a Lien to secure repayment of the DIP Obligations.

1.28    **"Bay Point Exit Advances"** shall have the meaning ascribed to it in Section 6.1(b) of the Plan.

1.29    **"Bid Deadline"** shall have the meaning ascribed to it in Section 6.2.3.1.1 of the Plan.

1.30    **"Bid Procedures"** shall have the meaning ascribed to it in Section 6.2.3 of the Plan.

1.31    **"Brickchurch Property"** means all property of the Debtor's estate, including, without limitation: (a) all cash collateral, cash and cash equivalents; (b) all real property owned by the Debtor, including, without limitation, the 366 Gin Lane Property; (c) all personal property, whether tangible, intangible, or mixed; and (d) all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing.

1.32    **"Business Day"** means any day other than a Saturday, Sunday or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.33    **"Case"** means the case commenced by the Debtor in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code and styled *In re Brickchurch Enterprises, Inc.*, Case No. 8:22-70914-ast.

1.34    **"Cash"** means lawful currency of the United States of America.

1.35    **"Claim"** means (i) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.36    **"Claims Objection Deadline"** means (a) the 60th day following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Plan Proponent.

1.37    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests.

1.38    **"Confirmation"** means the entry of the Confirmation Order.

1.39    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.40    **"Confirmation Order"** means an Order, in form and substance satisfactory to the Plan Proponent, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.41    **"Credit Bid"** shall have the meaning ascribed to it in Section 6.2.3.2 of the Plan.

1.42    **"Credit Bid Cash Component"** shall have the meaning ascribed to it in Section 6.2.3.2 of the Plan.

1.43    **"Credit Bidding"** shall have the meaning ascribed to it in Section 6.2.3.2 of the Plan.

1.44    **"Creditor"** means a holder of an Allowed Claim.

1.45    **"Debtor"** means Brickchurch Enterprises, Inc.

1.46    **"DIP Financing Order"** means the *Order (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (II) Granting Liens and Super-Priority Claims*, entered by the Bankruptcy Court on November 17, 2022, pursuant to which Bay Point was granted, among other things: (i) a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code for funds advanced to the Debtor; (ii) a first priority senior lien on all of the Brickchurch Property as security for repayment of Bay Point's superpriority administrative expense claim; and (iii) a second priority junior lien on all of the 376 Gin Lane Property as security for repayment of Bay Point's superpriority administrative expense claim.

1.47    **"DIP Lender Superpriority Claim"** means that Allowed Administrative Claim in the amount of the DIP Obligations, granted to Bay Point pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over all other Administrative Claims, adequate protection and other diminution claims, Unsecured Claims, and all other Claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including Administrative Claims or other Claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 507, 546, 726, 1113, and 1114 of the Bankruptcy Code, or any other section of the Bankruptcy

Code, whether or not such Administrative Claims or Claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

1.48    **"DIP Loan Documents"** means (i) the Loan and Security Agreement, dated November 9, 2022, by and among Debtor, Aberdeen, and Bay Point, and (ii) each of the Bay Point Collateral Documents.

1.49    **"DIP Obligations"** means the obligations of the Debtor and Aberdeen, jointly and severally, to repay Bay Point the amounts due and owing under the DIP Loan Documents, including, without limitation, the principal amount of its superpriority administrative expense claim, together with accrued unpaid interest thereon, and all fees and expenses related thereto, including, without limitation, the fees and expenses of Bay Point's counsel.

1.50    **"Disbursing Agent"** means the Plan Proponent or such other entity or entities as may be selected by the Plan Proponent to make or facilitate distributions pursuant to the Plan.

1.51    **"Disclosure Statement"** means the Disclosure Statement for the Plan, including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.52    **"Disputed"** means, with respect to a Claim, (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been timely filed; (b) any Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; provided however, that until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if: (A) the amount specified in the Proof of Claim

exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.  Claims arising from the rejection of Executory Contracts will be treated as Disputed Claims unless and until such Claims have been settled, withdrawn, or determined by a Final Order.

1.53    **"Disputed Claims Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to Section 7.3(a) of the Plan.

1.54    **"Distribution Date"** means three (3) Business Days following the Effective Date, or such other date as soon as reasonably practicable thereafter as may be fixed by Disbursing Agent.

1.55    **"Effective Date"** means (a) with respect to the Plan, the date that all conditions specified in Section 9.2 to the Plan have been satisfied; *provided, however*, that the Plan shall become effective immediately preceding the closing of the Sale Transaction; and (b) with respect to the Sale Transaction, that date which has been defined in the Proposed APA or Stalking Horse APA of the Successful Bidder and which has been agreed to by the Auctioneer; *provided that*, unless otherwise expressly stated, the use of the term "Effective Date" in the Plan shall refer to the Effective Date of the Plan.

1.56    **"Estate"** means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.57    **"Estimated Professional Fee Reserve"** means the reserve established pursuant to Section 2.4 of the Plan to pay Professional Fee Claims in full, subject to their allowance by the Bankruptcy Court.

1.58    **"Executory Contracts"** shall mean "executory contracts" and "unexpired leases" of the Debtor as such terms are used in section 365 of the Bankruptcy Code.

1.59    **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed, reversed, or vacated, and that is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing.  The possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to an order will not cause it not to be a Final Order.

1.60    **"Forfeited Deposit"** shall have the meaning ascribed to it in Section 6.2.8 of the Plan.

1.61    **"Good Faith Deposit"** shall have the meaning ascribed to it in Section 6.2.3.1.4 of the Plan.

1.62    **"Governmental Unit"** means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory a municipality, or a foreign state; or other foreign or domestic government.

1.63    **"Gross Sale Proceeds"** means the gross amount realized from the Sale Transaction (excluding the amount of any credit bid made pursuant to section 363(k) of the Bankruptcy Code).

1.64    **"Interest"** means an equity interest in the Debtor.

1.65    **"Interest Holder"** means the holder of an Allowed Interest in the Debtor.

1.66    **"IRS"** means the United States Internal Revenue Service.

1.67    **"IRS Claim Objection"** means *Debtor's Motion Objecting to Proof of Claim Filed by Internal Revenue Service* [ECF No. 205], as the same may be amended from time to time, and those documents filed with the Bankruptcy Court with respect thereto, including ECF Nos. 207, 223, 224, 226, 233, 234, 240, and 243.

1.68    **"Legal Holiday"** has the same meaning as ascribed to such term in Bankruptcy Rule 9006(a).

1.69    **"Lien"** has the same meaning as is ascribed to such term in section 101(37) of the Bankruptcy Code, and includes charges, bills, encumbrances, adverse interests, and any legally cognizable security device of any kind.

1.70    **"Louise Blouin Unsecured Claim"** shall have the meaning ascribed to it in Section 3.3 of the Plan.

1.71    **"Net Sale Proceeds"** means the Gross Sale Proceeds, less the costs and expenses incurred in connection with the Sale Transaction chargeable to the seller, including without limitation, brokerage fees, closing costs, and documentary and Transfer Taxes, if any. For the avoidance of doubt, Net Sale Proceeds shall not include shall not include the non-cash amount of any Credit Bid made pursuant to section 363(k) of the Bankruptcy Code or otherwise.

1.72    **"Offer Letter"** shall have the meaning ascribed to it in Section 6.2.3.1.2 of the Plan.

1.73    **"Order"** means an order of the Bankruptcy Court.

1.74    **"Person"** means any individual, sole proprietorship, partnership, limited liability company, joint venture, trust, unincorporated organization, association, corporation, institution, public benefit corporation, firm, joint stock company, estate, entity, or governmental agency.

1.75    **"Petition Date"** means April 30, 2022, the date on which the Debtor commenced its Case by the filing of its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.76    **"Plan"** means this Plan of Liquidation of the Debtor, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.77    **"Plan Failure"** shall have the meaning ascribed to it in Section 10.6 of the Plan.

1.78    **"Plan Proponent"** means Bay Point.

1.79    **"Post-Petition Administrative Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) incurred from and after the Petition Date until the Plan becomes effective.

1.80    **"Potential Bidder"** shall have the meaning ascribed to it in Section 6.2.3.1 of the Plan.

1.81    **"Priority Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

1.82    **"Private Sale"** shall have the meaning ascribed to it in Section 6.2.6 of the Plan.

1.83    **"Professional"** means all professionals employed by the Debtor under section 327 of the Bankruptcy Code.

1.84    **"Professional Fee Claim"** means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with sections 330 and 331 of the Bankruptcy Code.

1.85    **"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (excluding Professional Fee Claims) filed pursuant to section 503 of the Bankruptcy Code.

1.86    **"Proof of Claim"** means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.87    **"Proof of Interest"** means a proof of Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.88    **"Proposed APA"** shall have the meaning ascribed to it in Section 6.2.3.1.2(a) of the Plan.

1.89    **"Pro Rata"** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims within such Class.

1.90    **"Purchase Price"** shall have the meaning ascribed to it in Section 6.2.3.1.3 of the Plan.

1.91    **"Qualified Bid"** shall have the meaning ascribed to it in Section 6.2.3.1 of the Plan.

1.92    **"Qualified Bidder"** shall have the meaning ascribed to it in Section 6.2.3.1 of the Plan.

1.93    **"Real Estate Broker"** shall have the meaning ascribed to it in Section 6.2.2.

1.94    **"Real Property"** means, collectively, the 366 Gin Lane Property and the 376 Gin Lane Rights.

1.95    **"Sale Transaction"** means the combined sale of: (a) the 366 Gin Lane Property pursuant to sections 363 and 1123(a)(5)(D) of the Bankruptcy Code; and (b) the 376 Gin Lane Rights pursuant to the terms of the Plan.

1.96    **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(a)(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.97    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.98    **"Secured Creditor"** shall have the meaning ascribed to it in Section 6.2.3.2 of the Plan.

1.99    **"Stalking Horse"** shall have the meaning ascribed to it in Section 6.2.3.5 of the Plan.

1.100    **"Stalking Horse APA"** means a clean executed assert purchase agreement (and electronic version in Word format) submitted by the Stalking Horse, together with all exhibits and schedules thereto, including terms relating to price and the time of closing.

1.101    **"Stalking Horse Bid"** shall have the meaning ascribed to it in Section 6.2.3.5 of the Plan.

1.102    **"Successful Bid"** shall have the meaning ascribed to it in Section 6.2.5.8 of the Plan.

1.103    **"Successful Bidder"** means the Qualified Bidder that submits the Successful Bid.

1.104    **"Successful Purchaser"** means the Person or entity to whom the Real Property is sold pursuant to the Sale Transaction.

1.105    **"Transfer Taxes"** means, without limitation, (a) Suffolk County or other applicable local real property transfer taxes, (b) New York state mortgage recording taxes imposed under Article 11 of the New York Real Property Tax Law (i.e., the Uniform Delinquent Tax

Enforcement Act), and (c) and any and all other stamp taxes or similar taxes, which, but for the applicability of § 1146(a) of the Bankruptcy Code, would be applicable, to any transfer made in accordance with, pursuant to, or in furtherance of the Plan.

1.106   **"Transferred Encumbrances"** shall have the meaning ascribed to it in Section 6.2.3.4 of the Plan.

1.107   **"Unimpaired"** means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.108   **"Unsecured Claim"** means an Allowed Claim which is not an Administrative Claim, a Bankruptcy Fee, an Insider Claim, a Priority Claim, a Post-Petition Administrative Tax Claim, or a Secured Claim.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1     Pursuant to section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims. Such Claims, to the extent they are Allowed Claims, shall receive the treatment provided in this Article II in full satisfaction thereof.

2.2     **Administrative Bar Date**.  Except as otherwise set forth herein, requests for payment of and/or Proof of Administrative Claims not previously Allowed must be filed no later than the Administrative Bar Date.  The Administrative Bar Date shall be the first Business Day that is thirty (30) days after the Confirmation Date.  Holders of Administrative Claims not previously Allowed that do not file requests for payment or Proofs of Administrative Claims on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or the 376 Gin Lane Property; *provided, however*, that holders of Claims for Administrative

Expenses arising in the ordinary course of the Debtor's business need not file requests for payment or Proof of Administrative Claims.

2.3    **DIP Lender Superpriority Claim**.  The Disbursing Agent shall use the 366 Gin Lane Proceeds to pay the DIP Lender Superpriority Claim in accordance with the provisions of Section 6.5 of the Plan.

2.4    **Professional Fee Claims**.  All Professionals seeking an award by the Bankruptcy Court of Professional Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date.   No later than three (3) Business Days prior to the Confirmation Hearing, all entities holding claims for Professional Fee Claims shall serve via email upon counsel for the Plan Proponent a notice of the estimated amount of their unpaid Professional Fee Claim and the estimate for any post-confirmation fees and expenses of the Debtor's professionals.  Holders of Professional Fee Claims shall provide updated estimates to counsel for the Plan Proponent via email not later than three (3) Business Days prior to the Effective Date. The Disbursing Agent shall, on the basis of the revised estimates, establish on the Effective Date an Estimated Professional Fee Reserve in such amounts which are reasonably necessary to pay the amount of the Professional Fee Claims.  The Estimated Professional Fee Reserve shall be funded from the 366 Gin Lane Proceeds in accordance with Section 6.5 of the Plan.  Subject to allowance by the Bankruptcy Court, the Disbursing Agent shall use the funds in the Estimated Professional Fee Reserve to pay the allowed amount of each Professional Fee Claim (a) upon the later of (i) the Distribution Date and (ii) the date upon which the Order relating to any such Allowed Professional Fee Claim becomes a Final Order, or (b) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Disbursing Agent.

Payments made to a Professional from funds in the Estimated Professional Fee Reserve shall constitute payment in full of the Professional's Allowed Professional Fee Claim, and the Professional shall have no further recourse against the Disbursing Agent, the Debtor, or the Plan Proponent for such Claim.

2.5    **Administrative Claims**.  All Proofs of Administrative Claims for which no bar date has otherwise previously been established, must be filed on or before the first Business Day that is thirty (30) days after the Confirmation Date.  Any holder of any Administrative Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Administrative Claim against the Debtor, the 366 Gin Lane Property, or the Disbursing Agent.  Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, all Administrative Claims shall be paid, in Cash, in full on (a) the later of (i) the Distribution Date, (ii) the date payment of such Claim is due under the terms thereof or applicable law, or (iii) three (3) Business Days after such Claim becomes an Allowed Claim or (b) upon such other terms as may be agreed to, in writing, between the Disbursing Agent and the holder of such Claim.  The Disbursing Agent shall use the 366 Gin Lane Proceeds to pay Allowed Administrative claims in accordance with Section 6.5 of the Plan.

2.6    **Bankruptcy Fees**.  The Disbursing Agent shall pay on the Distribution Date all Bankruptcy Fees assessed against the Debtor under 28 U.S.C. § 1930 as of the Effective Date and any applicable interest due thereon.  All remaining Bankruptcy Fees assessed against the Debtor under 28 U.S.C. § 1930 from the Effective Date through the date of dismissal, conversion or entry of a final decree, shall be paid by the Disbursing Agent from the Bankruptcy Fees Reserve.  The Disbursing Agent shall use the 366 Gin Lane Proceeds or Bay Point Exit Advances to pay

Bankruptcy Fees assessed against the Debtor as of the Effective Date, and to fund the Bankruptcy Fees Reserve in accordance with the provisions of Section 6.1(b) and 6.5 of the Plan.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article II, Allowed Claims and Interests are classified as set forth in this Article III.  A Claim is in a particular Class designated herein only to the extent such Claim (i) fits within the description of such Class (and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes), and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1      **Class 1 – Priority Claims**.  Class 1 consists of Allowed Claims entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Claims.

3.2      **Class 2 – Unsecured Claims**.  Class 2 consists of any general Unsecured Claims, other than the Louise Blouin Unsecured Claim, and Claims, if any, arising from the rejection of Executory Contracts, to the extent such Claims become Allowed Claims.

3.3      **Class 3 – Louise Blouin Unsecured Claim.** Class 3 consists of the Claim of Louise Blouin, the principal of the Debtor (the "***Louise Blouin Unsecured Claim***").

3.4      **Class 4 – Interests**.  Class 4 consists of the holders of equity interests in the Debtor.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

4.1      **Class 1 – Priority Claims.**  Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction of Class 1 Priority Claims, the holders of Priority Claims, if any, shall receive on the Distribution Date, or as soon as possible after such Claims become Allowed Claims, (a) Cash, in the full amount of the holder's Allowed Claim, or (b) such treatment as may be otherwise agreed in writing between the Plan Proponent and the holder of

such Claim.  The Disbursing Agent shall use 366 Gin Lane Proceeds to pay Allowed Class 1 Priority Claims in accordance with Section 6.5 of the Plan.  Class 1 is unimpaired, and the holders of Priority Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Claims are not entitled to vote to accept or reject the Plan.

4.2    **Class 2 – Unsecured Claims.**  Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, each holder of an Allowed Class 2 Unsecured Claim shall share Pro Rata in the remaining balance of the 366 Gin Lane Proceeds after the required payments are made pursuant to (a) clauses (a), (b), (c), and (d) of Section 6.5 of the Plan, and (b) Section 7.3 of the Plan.  Class 2 is unimpaired, and the holders of Class 2 Unsecured Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Unsecured Claims are not entitled to vote to accept or reject the Plan.

4.3    **Class 3 – Louise Blouin Unsecured Claim**.  Subject to the provisions of Article VII of the Plan with respect to Disputed Claims and subject to the Louise Blouin Unsecured Claim being deemed an Allowed Claim, the holder of the Louise Blouin Unsecured Claim shall share Pro Rata in the remaining balance of the 366 Gin Lane Proceeds after the required payments are made pursuant to (a) clauses (a), (b), (c), (d), and (e) of Section 6.5 of the Plan, and (b) Section 7.3 of the Plan.  Class 3 is unimpaired, and the holder of the Class 3 Louise Blouin Unsecured Claims is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holder of the Class 3 Louise Blouin Unsecured Claim is not entitled to vote to accept or reject the Plan.

4.4    **Class 4 – Equity Interests**.  Except to the extent that an Interest Holder agrees to less favorable treatment, all Interest Holders shall retain the value of their Interests that may exist

in the Debtor, including the right to receive the remaining balance of the 366 Gin Lane Proceeds, if any, after payment in full of the Allowed Unsecured Claims. Class 4 is unimpaired and the Interest Holders in Class 4 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of existing Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS

5.1     **Rejection of Executory Contracts**.  On the Effective Date, all Executory Contracts to which the Debtor is a party shall be deemed rejected.

5.2     **Rejection Claims**.  Allowed Claims arising from the rejection of Executory Contracts of the Debtor pursuant to Section 5.1 of the Plan shall be treated as Class 2 Unsecured Claims.

5.3     **Bar to Rejection Claims**.  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract pursuant to Section 5.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Plan Proponent and the Debtor within thirty (30) days after the Confirmation Date.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, its their successors, or the 376 Gin Lane Property.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.1     **Plan Funding Sources.**  The Plan shall be implemented through the Bay Point Exit Advances and the Sale Transaction.

(a)     The Sale Transaction.  Upon entry of the Confirmation Order, the Disbursing Agent shall implement and undertake the Auction Process, subject to the Disbursing

Agent's right to consummate a Private Sale pursuant to Section 6.2.6 of the Plan, which shall culminate in the sale of the 366 Gin Lane Property and 376 Gin Lane Rights as set forth in the Plan. By agreeing to the terms of the Plan, Bay Point has agreed that, to the extent that it acquires the 376 Gin Lane Rights, it will make such rights available for purchase pursuant to the terms of the Plan.

(b)    <u>Bay Point Exit Advances</u>.  Bay Point shall, on the Effective Date, make advances (the "***Bay Point Exit Advances***") in such amounts as may be required to pay Bankruptcy Fees and fund the Bankruptcy Fees Reserve, as provided in Section **7.3(d)** of the Plan. The Bay Point Exit Advances shall be secured by a first priority senior Lien on all of the Brickchurch Property, senior in priority to the Lien securing the DIP Obligations.  Bay Point shall have a superpriority administrative expense claim for all Bay Point Exit Advances made pursuant to the Plan, with senior priority to the superpriority administrative expense claim granted to Bay Point under the DIP Financing Order.  The Bay Point Exit Advances shall bear interest on the principal amount outstanding at the non-default rate provided in the DIP Financing Order.

6.2    **The Plan Funding Procedures**.

6.2.1    <u>The Auction Process</u>.  The Disbursing Agent, in its sole and absolute discretion, may serve in the role of auctioneer or may select a third-party auctioneer (in either case, the "***Auctioneer***"), and the Auctioneer shall have the exclusive authority to: (a) coordinate the efforts of Potential Bidders in conducting due diligence regarding the Real Property; (b) receive offers from Potential Bidders; (c) determine whether any Person is a Qualified Bidder and whether any submitted bids are a Qualified Bid; and (d) negotiate any offers made to acquire the Real Property; and (e) conduct a public Auction of the Real Property in strict accordance with the

process set forth herein (collectively, the "**Auction Process**"). The cost of the Auctioneer shall be paid out of the Gross Sale Proceeds of the Sale Transaction.

6.2.2   <u>Retention of Real Estate Broker</u>.   During the Auction Process, the Auctioneer may, at its sole and absolute discretion, engage a reputable real estate broker (the "**Real Estate Broker**") to market the Real Property for purposes of sale at the Auction, the cost of such Real Estate Broker being paid out of the Gross Sale Proceeds realized from the Sale Transaction. The Real Estate Broker shall take direction during the Auction Process exclusively from the Auctioneer.

6.2.3   <u>The Bid Procedures</u>.   The following procedures (the "**Bid Procedures**") shall govern the submission of bids through the Auction Process:

6.2.3.1   <u>Participation Requirements</u>.   In order to participate in the Bidding Process each bidder (a "**Potential Bidder**") must submit a bid that the Auctioneer determines, in its sole and absolute discretion, adheres to the following requirements (each bid that so satisfies such requirements being a "**Qualified Bid**"), and shall, after being determined by the Auctioneer, in its reasonable discretion, to (a) be financially able to consummate the Sale Transaction, and (b) have submitted a Qualified Bid, be deemed to be a "**Qualified Bidder**;" *provided that* notwithstanding anything to the contrary herein, each Secured Creditor is automatically deemed a Qualified Bidder up to the amount of its potential Credit Bid and each Credit Bid is automatically deemed a Qualified Bid.

6.2.3.1.1   *Bid Deadline.*   All Qualified Bids must be submitted to the Auctioneer on or before November 7, 2023 (the "**Bid Deadline**"). Upon determination that any bid is not a Qualified Bid, the Auctioneer shall notify such Potential Bidder of such determination forthwith and shall provide such bidder with the basis for such determination.

6.2.3.1.2    *Offer Letter.*  All Qualified Bids shall be in the form of an offer letter (each, an "***Offer Letter***") from a Potential Bidder. The Offer Letter shall state:

(a)        that such Potential Bidder offers to purchase the Real Property upon the terms and conditions set forth in an attached clean executed asset purchase agreement (and electronic version in Word format) as well as, in the case a Stalking Horse is selected, an attached version of such asset purchase agreement redlined against the Stalking Horse APA (also an electronic version in Word format) together with all exhibits and schedules, including terms relating to price and the time of closing (the "***Proposed APA***") on or before the Bid Deadline;

(b)        that such Potential Bidder is prepared to consummate the Sale Transaction within one (1) day of the entry of an Approval Order;

(c)        that in the event such Potential Bidder becomes the Successful Bidder or a holder of a Backup Bid, such Potential Bidder's offer is irrevocable until the closing of the Sale Transaction; and

(d)        that the Potential Bidder consents to the jurisdiction of the Bankruptcy Court as to all matters relating to the Auction and the Sale Transaction.

6.2.3.1.3    *Value of Qualified Bids.*  All Qualified Bids, other than a Qualified Bid that includes a Credit Bid, must be in an amount such that the actual value of such bid (the "***Purchase Price***") is greater than any Stalking Horse Bid; *provided that* any Potential Bidder that has submitted a bid that otherwise satisfies the terms to be deemed a Qualified Bid at the time that the Auctioneer receives and accepts a Stalking Horse Bid shall be given five (5) business days' notice that such Potential Bidder must increase its offered Purchase Price or that its bid will not be deemed to be a Qualified Bid;

6.2.3.1.4    *Good Faith Deposit.*    All Qualified Bids shall be accompanied by a deposit into escrow with the Disbursing Agent of an amount equal to the greater of (a) five percent (5.00%) of the Purchase Price; and (b) Five Million Dollars ($5,000,000.00) (the greater of such amounts being the "***Good Faith Deposit***"); *provided that* a Secured Creditor that submits a Qualified Bid that includes a Credit Bid does not need to submit a Good Faith Deposit unless the Good Faith Deposit that would otherwise be associated with such Qualified Bid exceeds the amount of the Credit Bid portion of the Secured Creditor's Qualified Bid, in which case the amount of the Credit Bid portion of the Secured Creditor's Qualified Bid shall be deducted from the amount of the Good Faith Deposit otherwise required by this Section 6.2.3.1.4.

6.2.3.1.5    *Qualified Bidder's Ability to Close.*    All Qualified Bids, other than a Qualified Bid that includes only a Credit Bid that accounts for eighty percent (80.00%) or more of the total value of such Qualified Bid, shall be accompanied by satisfactory evidence, in the reasonable opinion of the Auctioneer, of committed financing or other ability to close the Sale Transaction contemplated by the Proposed APA.

6.2.3.1.6    *No Contingencies.*    No Qualified Bids shall contain any financing conditions or other contingencies not contained in a Stalking Horse APA, if any.

6.2.3.2    <u>Credit Bid</u>.    A holder of a Secured Claim against the 366 Gin Lane Property (each, a "***Secured Creditor***") may credit bid the full amount of such Secured Claim pursuant to 11 U.S.C. 363(k) and applicable law (each, a "***Credit Bid***," and the act of submitting a Credit Bid being, "***Credit Bidding***").    Each Offer Letter presenting a Credit Bid must contain a statement of the Secured Creditor submitting such Credit Bid that the Secured Creditor understands and acknowledges that consummation of a Sale Transaction to such Secured Creditor will require the Secured Creditor to satisfy any fee payable to the United States Trustee under 28 U.S.C. §

1930(a)(6) as a result of the contemplated Sale Transaction, and other customary closing costs associated with the contemplated Sale Transaction, including the costs associated with the Auctioneer and any Real Estate Broker, in Cash (the "***Credit Bid Cash Component***") at the closing of the Sale Transaction.  In considering whether a Credit Bid constitutes the highest and best offer for the Real Property, the Auctioneer shall consider the estimated Credit Bid Cash Component associated with that Credit Bid and add that amount to the amount of the Credit Bid. Notwithstanding anything to the contrary herein, each Secured Creditor is automatically deemed a Qualified Bidder and each Credit Bid is automatically deemed a Qualified Bid. For the avoidance of doubt, Bay Point shall be permitted to submit a Qualified Bid made up solely of a Credit Bid and the Credit Bid Cash Component regardless of whether it is serving as the Auctioneer or is otherwise consulting with a third-party Auctioneer with respect to any aspect of the Auction Process. Notwithstanding anything to the contrary in Section 6.2 of the Plan, to the extent that Bay Point desires to submit a Qualified Bid in excess of a Credit Bid and the Credit Bid Cash Component thereof, Bay Point shall not serve in the role as the Auctioneer and the Disbursing Agent shall hire an independent, third-party Auctioneer to conduct the Auction Process.

6.2.3.3     <u>Due Diligence</u>.  Subject to each Qualified Bidder's execution of a confidentiality agreement in form and substance satisfactory to the Auctioneer, if the same shall have been requested by the Auctioneer in its sole and absolute discretion, the Auctioneer and/or Real Estate Broker shall afford such Qualified Bidder due diligence access to the Real Property. Due diligence access shall include onsite inspections, and such other matters which a Qualified Bidder may request and to which the Auctioneer may agree; *provided that* all such information shall be made available to each Qualified Bidder on an equal basis, subject only to such Potential Bidder's execution of the above-referenced confidentiality agreement (if any).   Neither the

Auctioneer, nor the Real Estate Agent, Bay Point, or any of their respective representatives, shall be obligated to furnish any information relating to the Real Property to any Person except Qualified Bidders.

          6.2.3.4     <u>No Representations or Warranties</u>.  The Real Property shall be sold "AS IS", "WHERE IS", "WITH ALL FAULTS", without representations, warranties, covenants or guarantees of any kind, nature, or description whatsoever, except to the extent set forth in the Proposed APA of the Successful Bidder.  Except as otherwise provided in the Proposed APA, the 366 Gin Lane Property shall be acquired free and clear of all liens, claims, and encumbrances of any kind or nature thereon (collectively, the "***Transferred Encumbrances***"), with such Transferred Encumbrances to attach to the 366 Gin Lane Proceeds in the same order of priority as such Transferred Encumbrances encumbered the 366 Gin Lane Property. Each Qualified Bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and information in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Real Property, or the completeness of any information provided in connection with the Real Property, the Bidding Procedures, the Auction Process, or the Auction, except as expressly stated in these Bid Procedures or, as to the Successful Bidder, in the applicable Proposed APA.  Without limiting the "AS IS, WHERE IS" nature of the Sale Transaction, the Sale Transaction shall be subject to, among other things, (a) any state of facts that an accurate survey may show, (b) any covenants, restrictions and easements of record, (c) any state of facts a physical inspection may show, (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof, and (e) environmental conditions, including without limitation,

the 366 Gin Lane Property's and/or 376 Gin Lane Property's compliance or lack of compliance with environmental laws, and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the subject real property.

6.2.3.5    The Stalking Horse Bidder.  In the event a stalking horse bidder is selected (the "***Stalking Horse***"), the Stalking Horse is deemed a Qualified Bidder and the Stalking Horse's bid (the "***Stalking Horse Bid***") is a Qualified Bid. Notwithstanding any other provision in these Bid Procedures, in the event that the Stalking Horse Bid is not selected as the Successful Bid, the Stalking Horse Bid shall not be a Backup Bid unless the Stalking Horse expressly consents. In the event that one or more Qualified Bids other than the Stalking Horse Bid (if any) is selected as the Successful Bid and is approved as the Successful Bid by the Bankruptcy Court, the Stalking Horse shall be entitled to a break-up fee, expense reimbursement, and a refund of the Good Faith Deposit in accordance with, and subject to, the terms of the Stalking Horse APA. The Auctioneer shall provide notice to all parties in interest as soon as reasonably practicable after selection of a Stalking Horse, if any.

6.2.4    Stalking Horse Sale.  If the Auctioneer accepts a Stalking Horse Bid, and the Auctioneer does not receive any other Qualified Bids, then the Auctioneer shall cancel the Auction and consummate the Sale Transactions with the Stalking Horse pursuant to the terms of the Stalking Horse APA.

6.2.5    The Auction.  If the Auctioneer receives more than one Qualified Bid prior to the Bid Deadline, the Auctioneer shall conduct an auction (the "***Auction***") at 10:00 a.m. (Eastern) on November 9, 2023 at the offices of Thompson Hine LLP, 300 Madison Avenue, 27th Floor, New York, New York 10017-6232.

6.2.5.1    *Auction Attendance.*    Only the Auctioneer, the Debtor, the Stalking Horse (if any), the Disbursing Agent, the Plan Proponent, the United States Trustee, the Internal Revenue Service, and any Qualified Bidders who have submitted Qualified Bids, and representatives of each of the foregoing, are entitled to attend the Auction.

6.2.5.2    *Procedural Rules.*    The Auctioneer, in its reasonable discretion, may announce at the Auction procedural rules in addition to those set forth herein that are reasonable under the circumstances for conducting the Auction.

6.2.5.3    *Interim Highest and Best Bids.*    Upon the commencement of the Auction and at the conclusion of each round of bidding, the Auctioneer shall announce the then highest or otherwise best offer, along with the basis for such determination, including identification of any non-economic terms that form the basis for such determination. In comparing the proposed purchase price in any competing Qualified Bid to the bid of the Stalking Horse, if any, the proposed purchase price of such competing Qualified Bid shall be reduced by the break-up fee and expense reimbursement that would be paid to the Stalking Horse.

6.2.5.4    *Minimum Bid Increments.*    At the Auction, overbids bids shall be made in minimum increments of not less than One Hundred Thousand Dollars ($100,000).

6.2.5.5    *Rejection of Bids.*    The Auctioneer may reject, at any time before announcing the Successful Bid at the Auction, any bid that, in its reasonable discretion, is: (a) inadequate or insufficient; or (b) not in conformity with the Bankruptcy Code or the Auction Process, including the Bid Procedures.

6.2.5.6    *Reservation of Rights.*    The Auctioneer may: (a) determine, in its reasonable business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; (b) consult with any significant constituency in connection with the bidding process and the

Auction Procedures; and (c) reject, at any time before announcing the Successful Bid at the Auction, any bid that, in the reasonable discretion of the Auctioneer, is: (i) inadequate or insufficient; or (ii) not in conformity with the Bankruptcy Code or the Auction Procedures; *provided that*, notwithstanding the foregoing, the Auctioneer is not permitted to reject a valid Credit Bid.

> 6.2.5.7    Without limitation, at any point during the Auction, the Auctioneer shall have the absolute right to convert the Bidding Process from an open auction to a "sealed bid auction," in which case all Qualified Bidders shall have one opportunity to make a final, sealed bid. If this option is exercised, then the Auctioneer shall collect all sealed bids, analyze them, and determine the highest and best bid (i.e., the Successful Bidder) and Backup Bid (i.e., Backup Bidder) as set forth above.

> 6.2.5.8    *Selection of Successful Bid.*  Prior to concluding the Auction, the Auctioneer shall: (a) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Auction Process, including those factors affecting the speed and certainty of consummating the Sale Transaction; and (b) identify and announce to all attending the Auction, the highest or otherwise best Qualified Bid (the "***Successful Bid***") and second-best Qualified Bid (the "***Backup Bid***") and the basis for such determination.

> 6.2.5.9    *No Acceptance of Tardy Bids.*  Absent irregularities in the conduct of the Auction, the Auctioneer will not consider bids made after the announcement of the Successful Bid.

> 6.2.6    <u>Private Sale</u>.  The Auctioneer shall be permitted, until that date that is twenty (20) days before the Bid Deadline, to solicit and enter into a private sale of the Real Property (a "***Private Sale***"); *provided that*, the Auctioneer shall not be permitted to enter into a

Private Sale of the Real Property unless (a) the anticipated 366 Gin Lane Proceeds resulting from such Private Sale are equal to or greater than all asserted non-insider Claims against the Debtor (i.e., all claims other than the Louise Blouin Unsecured Claim) that have not been Disallowed; or (b) the holders of any such Claims (i.e., asserted non-insider Claims against the Debtor that have not been Disallowed) have agreed to such Private Sale; *and further provided that* any buyer at a Private Sale may not be an affiliate or otherwise related to the Auctioneer. The Auctioneer may, without further order of the Bankruptcy Court, postpone the Auction Process as necessary to consummate a Private Sale; *provided that* the Auctioneer shall not have any liability in any respect if the contemplated Private Sale that resulted in the postponement of the Auction Process does not ultimately close.

6.2.7    <u>Closing of the Sale Transaction(s) Post-Auction</u>.

6.2.6.1    *Execution of APA.*    The Auctioneer, on behalf of Debtor's Estate, and the Successful Bidder shall execute the asset purchase agreement for the Successful Bid at the conclusion of the Auction or immediately thereafter.    Any other Qualified Bidder holding a Backup Bid shall also execute an asset purchase agreement for its Backup Bid, contingent on the failure of any Successful Bidder to close the Sale Transaction.

6.2.7.2    *Approval Order.*  The Disbursing Agent shall file a motion with the Bankruptcy Court seeking an Order approving the Sale Transaction (the "***Approval Order***"). Upon the filing of any such motion, and after due notice to Creditors, the Bankruptcy Court will conduct a hearing (the "***Approval Hearing***") to approve the Sale Transaction. At the Approval Hearing, the Disbursing Agent will seek entry of an Approval Order, among other things, authorizing and approving the Sale Transaction.  The Approval Hearing may be adjourned or rescheduled without notice other than by an announcement in open court.  In the event the

Successful Bidder, as determined at the Auction and whose bid is approved by the Bankruptcy Court in the Approval Order, fails to close through no fault of the Auctioneer, the Auctioneer may sell the Real Property to the holder of the Backup Bid without further approval of the Bankruptcy Court.  Subject to the introduction of evidence in support, the Approval Order approving the Sale Transaction shall contain the  following findings of fact and conclusions of law: (a) that the terms and conditions of the Sale Transaction and the asset purchase agreement with respect to the same are fair and reasonable, (b) that the Sale Transaction, and such Successful Bidder's purchase, of the Real Property is non-collusive, fair and reasonable, and was conducted openly and in good faith, without any fraud, (c) that the transfer of the Real Property to the Successful Bidder represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Successful Purchaser, as transferee of the Real Property, is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (e) that the 366 Gin Lane Property is sold free and clear of all Liens, Claims, interests, and encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code, (f) that such Sale Transaction was not controlled by an agreement among potential purchasers for purposes of section 363(n) of the Bankruptcy Code, and (g) that no cause of action exists against the Successful Purchaser or with respect to the sale of the Real Property to the Successful Purchaser.  All stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

6.2.8    <u>Return of Good Faith Deposit</u>.  The Good Faith Deposit of those Qualified Bidders submitting a Successful Bid or Backup Bid will be retained by the Disbursing Agent, and such Successful Bid or Backup Bid will remain open and irrevocable notwithstanding Bankruptcy Court's entry of an Approval Order, until the closing of the Sale Transaction; *provided that* the

Good Faith Deposit of the Stalking Horse shall be returned in accordance with and subject to the terms of the Stalking Horse APA.  If a Successful Bidder fails to consummate the Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Disbursing Agent will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder (each being a "***Forfeited Deposit***").   The Disbursing Agent shall distribute the funds constituting a Forfeited Deposit in the same manner and in the same priorities as set forth in Section 6.5 of the Plan.  All Good Faith Deposits held by the Disbursing Agent, except that of any Qualified Bidder that has closed on a Sale Transaction, shall be returned on or before the fifth (5th) day following the closing of the Sale Transaction or as soon as practicable thereafter.

6.2.9    <u>Modification of Auction Process Timeline</u>.  The Plan Proponent and/or the Auctioneer shall have the right, without further order of the Bankruptcy Court, to modify the timeline of the Auction Process, including, without limitation, the Bid Deadline and the date of the scheduled Auction, the Plan Proponent and/or the Auctioneer may, in their sole and absolute discretion, deem necessary to promote consummation of the Plan, including, without limitation, providing Bay Point with additional time to obtain the 376 Gin Lane Rights. If the Auction Process timeline is so modified, the person exercising the right to modify the Auction Process timeline shall provide notice of the same to the Debtor, the Stalking Horse (if any), the Disbursing Agent, the Plan Proponent, the Auctioneer, the United States Trustee, the Internal Revenue Service, any Qualified Bidders that have expressed written interest in participating in the Auction Process.

6.3    **Payment of Sale Transaction Costs.**  The Disbursing Agent shall distribute the following amounts from the Gross Sale Proceeds: (a) the fees and expenses of the Auctioneer; (b) the fees and expenses of any Real Estate Broker; (c) the fees and expenses of the Disbursing Agent;

(d) any other closing costs; and (e) subject to and without waiving Section 6.8 of the Plan and section 1146(a) of the Bankruptcy Code, any documentary and Transfer Taxes.

6.4    **Allocation of Sale Proceeds.**   The Net Sale Proceeds realized from the Sale Transaction shall be allocated between the 366 Gin Lane Property (i.e., the 366 Gin Lane Proceeds) and the 376 Gin Lane Rights (i.e., the 376 Gin Lane Proceeds) in the following manner: <u>First</u>, to Bay Point in the amount of the 376 Gin Lane Rights Purchase Price;

(b)    <u>Second</u>, to the 366 Gin Lane Property and the 376 Gin Lane Rights, Pro Rata, in their respective values as determined by an independent, third-party broker price opinion or appraisal of the 366 Gin Lane Property and 376 Gin Lane Property obtained by the Disbursing Agent; *provide, however,* that, solely for purposes of this Section 6.4(b), the value of the 376 Gin Lane Property shall be reduced by the amount of the 376 Gin Lane Rights Purchase Price; and

(c)    <u>Third</u>, to the 366 Gin Lane Property and the 376 Gin Lane Rights, Pro Rata, in their respective values as determined by an independent, third-party broker price opinion or appraisal of the 366 Gin Lane Property and 376 Gin Lane Property obtained by the Disbursing Agent.

6.5    **Distribution of 366 Gin Lane Proceeds.**   The 366 Gin Lane Proceeds realized from the Sale Transaction shall be distributed on the Distribution Date, to the holders of Allowed Claims and Interests in the following order:

(a)    <u>First</u>, to pay Bankruptcy Fees and fund the Bankruptcy Fees Reserve;

(b)    <u>Second</u>, any 366 Gin Lane Proceeds remaining after the payments required to be made pursuant to Section 6.5(a) of the Plan shall be remitted to Bay Point for application to (i) first, the outstanding amount of the Bay Point Exit Advances, and (ii) second, the outstanding amount of the DIP Obligations;

(c)    <u>Third</u>, any 366 Gin Lane Proceeds remaining after the payments required to be made pursuant to Section 6.5(b) of the Plan shall be used to (i) pay each holder of an Allowed Administrative Claim its Pro Rata share of the 366 Gin Lane Proceeds available to satisfy all Administrative Claims, (ii) fund the Disputed Claim Reserve in an aggregate amount equal to the Pro Rata share of 366 Gin Lane Proceeds that each holder of a Disputed Administrative Claim would be entitled to receive if its Claim was Allowed; and (iii) fund the Estimated Professional Fee Reserve established pursuant to Section 2.4 of the Plan;

(d)    <u>Fourth</u>, any 366 Gin Lane Proceeds remaining after the payments required to be made pursuant to Section 6.5(c) of the Plan shall be used to (i) pay each holder of an Allowed Priority Claim its Pro Rata share of the 366 Gin Lane Proceeds available to satisfy all Priority Claims, and (ii) fund the Disputed Priority Claim Reserve in an aggregate amount equal to the Pro Rata share of 366 Gin Lane Proceeds that each holder of a Disputed Priority Claim would be entitled to receive if its Claim was Allowed;

(e)    <u>Fifth</u>, any 366 Gin Lane Proceeds remaining after the payments required to be made pursuant to Section 6.5(d) of the Plan shall be used to (i) pay each holder of an Allowed Class 2 Unsecured Claim its Pro Rata share of the 366 Gin Lane Proceeds available to satisfy all Class 2 Unsecured Claims, and (ii) fund the Disputed Claim Reserve in an aggregate amount equal to the Pro Rata share of 366 Gin Lane Proceeds that each holder of a Disputed Claim would be entitled to receive if its Claim was Allowed;

(f)    <u>Seventh</u>, any 366 Gin Lane Proceeds remaining after the payments required to be made pursuant to Section 6.5(e) of the Plan shall be used to pay any Allowed amount of the Louise Blouin Unsecured Claim, and to the extent that all or any portion of the Louise Blouin Unsecured

Claim is Disputed, fund the Disputed Claim Reserve in the amount of the Louise Blouin Unsecured Claim so Disputed; and

(g)    <u>Eighth</u>, any 366 Gin Lane Proceeds remaining after the payments required to be made pursuant to Section 6.5(f) of the Plan shall be paid to the holders of Interests in the Debtor.

6.6    **The Disbursing Agent**.    The Disbursing Agent shall be appointed on the Confirmation Date in order to take such actions as may be necessary or appropriate to implement the Plan, including the Sale Transaction, the claims administration process, and distributions to Creditors.  The Disbursing Agent shall not be deemed an officer, fiduciary or agent of the Debtor. Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan.  The Disbursing Agent may employ or contract with such third parties as appropriate to assist in the distribution of Cash or other property under the Plan.  Pending the final distribution of all sums required to be paid under the Plan, the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payments provided for in the Plan.

The Disbursing Agent shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, authorizing and directing the Debtor and any other necessary party to execute or deliver, or to join in the execution or delivery, on the closing date of the Sale Transaction, of any instrument required to effect a transfer of property required by the Plan, in form and substance satisfactory to the Successful Purchaser, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.  The Confirmation Order shall also contain appropriate provisions designating the Disbursing Agent as Debtor's attorney in fact to execute all documents in the name

of the Debtor as may be required to consummate the Sale Transaction, including, without limitation, a deed to the 366 Gin Lane Property, a bill of sale, all required transfer and ACRIS documents, and any other documents in the name of the Debtor as may be required to consummate the Sale Transaction.  The Confirmation Order will also authorize the Disbursing Agent to hold all proceeds of the Bay Point Exit Advances and proceeds from the closing of the Sale Transaction, if consummated, until Disbursing Agent makes distributions or disbursements under the Plan.

The Disbursing Agent shall have no obligation to file tax returns or similar reports with the appropriate taxing authorities.  The Disbursing Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, except in the case of gross negligence or willful misconduct.

No Person, including Debtor and any of its officers and directors, shall interfere with the Disbursing Agent in the performance of its duties, and any party with notice of the Confirmation Order shall be enjoined from taking any action that could reasonably be deemed to be an intentional interference with the Disbursing Agent in the performance of its duties.

6.7    **Vesting of Assets**.  The 366 Gin Lane Property shall remain in the Debtor's estate under section 541(a) of the Bankruptcy Code until the Effective Date.  Upon the closing of the Sale Transaction, (a) the 366 Gin Lane Property shall vest in the Successful Purchaser, free and clear of all Liens and Claims; and (b) the 376 Gin Lane Rights shall vest in the Successful Purchaser.

6.8     **Exemption from Certain Taxes**.  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, and notwithstanding anything to the contrary herein, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan as confirmed by the Bankruptcy Court, (including an instrument of transfer executed in furtherance of the Sale Transaction), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the Real Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax, including, without limitation, Transfer Taxes, and the appropriate state or local Governmental Unit, including the officials or agents thereof, shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.9     **Execution of Documents.**

(a)     On the Effective Date, (i) the Disbursing Agent, as Debtor's attorney in fact, and any other necessary party thereto shall execute, release, and deliver all documents reasonably necessary to consummate the transactions related to the 366 Gin Lane Property contemplated by the terms and conditions of the Plan; and (ii) Bay Point, or any agent or attorney in fact appointed by Bay Point, and any other necessary party thereto shall execute, release, and deliver all documents reasonably necessary to consummate the transactions related to the 376 Gin Lane Rights contemplated by the terms and conditions of the Plan.

(b)     Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor and any other necessary party shall be authorized, and shall be directed by the Confirmation Order,

to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance, including without limitation, any Lien, claim or encumbrance not expressly provided for in the Plan, that is necessary for consummation of the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

(c)      If the Debtor is unable to execute or deliver any document or notice in connection with the Sale Transaction, the Disbursing Agent shall be authorized to execute such documents and/or notices, and the Confirmation Order shall expressly so provide.

6.10    **Filing of Documents**.  Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local government agency or department shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.11    **Property Turnover at Closing**.  Subject to and without affecting the Debtor's obligations under any other document or agreement, including, without limitation, the DIP Financing Order and the DIP Loan Documents, (a) the Debtor shall turnover possession of the 366 Gin Lane Property at closing of the Sale Transaction to the Successful Purchaser or its designee, together with all files and records pertaining to the 366 Gin Lane Property, including, but not limited to construction documents, building permits, violations, architectural plans, leases and repair invoices to the extent that any such documents exist within the possession, custody, or control of the Debtor at that time; and (b) Bay Point shall transfer or otherwise assign the 376 Gin Lane Rights at the closing of the Sale Transaction to the Successful Purchaser or its designee.

6.12    **Preservation of Insurance**.    The Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor, the 366 Gin Lane Property or any other Person or entity.  Likewise, the Plan and the Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtor or any insurance carrier.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

7.1    **Method of Payment**.  Unless otherwise expressly agreed, in writing, payments to be made pursuant to the Plan shall be made by either electronic funds wire transfer or check drawn on a domestic bank.

7.2    **Prosecution of Objections**.  The Disbursing Agent, as attorney in fact to the Debtor, shall have the right to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. Objections to Claims, other than Administrative Claims, shall be served and filed on or before the Claims Objection Deadline, and objections to Administrative Claims shall be served and filed on or before the Administrative Claims Objection Deadline.

7.3    **Escrow of Cash Distributions.**

(a)    The Disbursing Agent shall deposit in one or more segregated accounts (the "*Disputed Claims Reserve*"), in accordance with the provisions of Section 6.5 of the Plan, funds equal to 100% of the Cash that would be distributed under the Plan to the holder of a Disputed Claim that would be an Allowed Claim, but for the dispute, including, but not limited to (i) Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) Disputed Claims of Governmental Units for any tax, and (iii) any disputed cure amount.

(b)    In determining the amount of the Cash to be distributed under the Plan to the holders of Allowed Claims on the Distribution Date, the calculation of the amount to be distributed to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c)    The Disbursing Agent or any other party in interest shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating the amount of a Disputed Claim, and limiting the amount of Cash that must be so deposited.  Any Creditor whose Claim is so estimated and limited shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other entity or property if the Allowed Claim of the Creditor (whose Claim was so estimated and limited) as determined by Final Order exceeds the amount so deposited.  Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

(d)    The Disbursing Agent shall deposit in a segregated account on the Distribution Date (the "***Bankruptcy Fees Reserve***") an amount equal to the Bankruptcy Fees estimated to accrue from and after the Effective Date through the date of dismissal, conversion or entry of a final decree pursuant to 28 U.S.C. §1930.

7.4    **Distribution After Allowance**.  Within ten (10) days after the allowance of a Disputed Claim (or as soon thereafter as practicable), the Disbursing Agent shall distribute from the funds placed in escrow in accordance with Section 7.3 of the Plan, all Cash, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

7.5 **Investment of Segregated Cash and Property**. To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however*, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for an investment made or any omission to invest such Cash, other property or proceeds.

7.6 **Distribution After Disallowance**. The Cash, if any, segregated on account of Disputed Claims, including all allocable portions of the net return yielded from any investment thereof, remaining after all Disputed Claims have been resolved by Final Order, shall be used to satisfy outstanding Bankruptcy Fees, Claims, and Interests in the order of priority specified in Section 6.5 of the Plan.

7.7 **Delivery of Distributions**. Except as provided in Sections 7.8 and 7.9 of the Plan, distributions to holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective Proofs of Claim or Proofs of Administrative Claim filed by such holders; (ii) at the addresses set forth in any written notices of address change delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Administrative Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of change of address.

7.8 **Undeliverable Distributions.**

(a) If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Undeliverable distributions shall

remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 7.9 of the Plan.

(b)      Nothing contained in the Plan shall require Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

7.9      **Unclaimed Distributions**.  Any Cash to be distributed under the Plan shall be retained by the Disbursing Agent and used to satisfy outstanding Bankruptcy Fees, Claims and Interests in the order of priority specified in Section 6.5 of the Plan, if it is not claimed by the entity entitled thereto before the later of (i) six months after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order and such entity's claim shall be deemed to be reduced to zero.

7.10      **Setoffs**.  The Disbursing Agent may, but shall not be required to, setoff against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, *provided, however*, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such holder.  Parties affected by setoffs will receive a three (3) day notice of such a setoff.

7.11      **Interest on Claims**.  Except as otherwise expressly provided for in the Plan, the Confirmation Order, the DIP Financing Order, or other Order of the Bankruptcy Court, or as otherwise required by applicable bankruptcy law, interest accruing after the Petition Date shall not be paid on any unsecured or undersecured Claims, and no unsecured or undersecured Claimant

shall be entitled to be paid interest accruing on or after the Petition Date on any Claim; *provided that*, for the avoidance of doubt, nothing contained in the Plan shall prohibit Bay Point from charging interest, at the then applicable rate under the DIP Loan Documents (as that term is defined in the DIP Financing Order), on all amounts due to Bay Point that are secured by the Bay Point Collateral Documents.

## ARTICLE VIII

## INJUNCTION AND RELEASES

8.1 **Injunction.  Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim or Interest held as of the Effective Date: (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the 366 Gin Lane Property or other property of the Estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the 366 Gin Lane Property or any other property of the Estate that has been, or is to be transferred or distributed under the Plan.**

8.2 **Limitation of Liability**.    Neither the Debtor, the Plan Proponent, nor the Disbursing Agent, nor any of their respective officers, attorneys, directors, members, partners, shareholders, advisors, agents, employees, representatives, or assigns, nor any professional Person employed by any of them, except for Louise Blouin and Mathew Kabatoff, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, or criminal conduct; *provided that* nothing in this Section 8.2 shall limit the liability of the Debtor's professionals pursuant to

Rule 1.8(h)(1) of the New York State Rules of Professional Conduct; and *further provided that* nothing in this Section 8.2 shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Plan Proponent, the Disbursing Agent or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Section 8.2 exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority. Nothing in this Section 8.2 of the Plan shall limit the liability of any professionals involved herein for malpractice.

8.3     **Plan and Confirmation Order as Release**.  Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article VIII of the Plan.

8.4     **Injunction Against Interference with Plan.  Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtor and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order, along**

**with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.**

8.5    **No Discharge.**  Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtor will not be discharged from debts that arose prior to Confirmation.

## ARTICLE IX

### CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1    **Condition to Confirmation**.  The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponent.

9.2    **Conditions to Effective Date**.  The Plan will not become effective and the Effective Date will not occur, unless and until:

(a)    the Confirmation Order has become a Final Order;

(b)    the Bankruptcy Court shall have entered the Order approving the Sale Transaction; and

(c)    the Sale Transaction shall have closed.

9.3    **Binding Effect**.  Subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of the Plan will bind every holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

# ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1    **Orders in Aid of Consummation**.  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

10.2    **Compliance with Tax Requirements**.  In connection with the Plan, the Debtor, and where applicable, the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to applicable withholding and reporting requirements; *provided, however*, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

10.3    **Due Authorization by Creditors**.  Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

10.4    **Amendments**.  The Plan may be altered, amended or modified by the Plan Proponent at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

10.5    **Revocation**.  The Plan Proponent may revoke or withdraw the Plan at any time prior to the Confirmation Date.  If the Plan is revoked or withdrawn, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a

waiver or release of any Claims by or against the Debtor, or (ii) prejudice in any manner the rights of the Debtor or the Plan Proponent in any further proceedings involving the Debtor or its Estate.

10.6    **Plan Failure.**  If Bay Point shall fail to acquire the 376 Gin Lane Rights for any reason, the Plan shall immediately become null and void (a "***Plan Failure***"), and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor, or (ii) prejudice in any manner the rights of the Debtor, Bay Point, or any other Person in any further proceedings involving the Debtor or its Estate, including the right of any Person to propose a future chapter 11 plan. Bay Point shall not be liable in any respect to any Person for, or as a result of, a Plan Failure and nothing contained in the Plan shall obligate Bay Point to acquire the 376 Gin Lane Rights.

10.7    **Request for Relief Under Section 1129(b)**.  If the Plan is accepted by one or more, but not all, Classes of Creditors that are found to be impaired by the Plan, the Plan Proponent may request confirmation under section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

10.8    **Filing of Additional Documents**.  Except as otherwise provided in the Plan, on or before the Effective Date, the Plan Proponent and the Disbursing Agent may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

10.9    **Section Headings**.  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

10.10    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.11   **Penalties**.  Unless Allowed by the Court, no distribution shall be made on account of any Other Administrative Claim, Post-Petition Administrative Tax Claim, Priority Claim, or Unsecured Claim for or in satisfaction of any punitive or exemplary damages or on account of any fine, penalty or forfeiture.

10.12   **Successors and Assigns**.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

10.13   **Notices**.  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein.

If to the Plan Proponent:

THE LAW OFFICES OF JOHN F. ISBELL LLC
John F. Isbell, Esq.
3050 Peachtree Road NW, Suite 740
Atlanta, Georgia 30305
John@JFI-Law.com

*-and-*

THOMPSON HINE LLP
John C. Allerding, Esq.
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*

If to the Debtor:

Simmons Legal PLLC
Camisha L. Simmons, Esq.
6060 N.  Central Expressway, Suite 500
Dallas, Texas 75206
Camisha@SimmonsLegal.Soltutions

-and-

Simmons Legal PLLC
Camisha L. Simmons, Esq.
1330 Avenue of the Americas, Suite 23A
New York, New York 10019

*Counsel for Brickchurch Enterprises, Inc.*

<u>If to any Creditor</u>:

At (a) the addresses set forth on the applicable Proofs of Claim or Proofs of Administrative Claim filed by such holder, (b) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Administrative Claim, or (c) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address

<u>If to any Entity that has filed a notice of appearance</u>:

At the address set forth on such notice of appearance.

10.14 **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

10.15 **Late Claims**. No distribution shall be made on account of any Claims filed after the Bar Date, or any bar date contained in the Plan or Order of the Court, whichever is applicable, except as specifically allowed by Order of the Court after notice and opportunity for a hearing. No distribution shall be made on account of Administrative Claims filed after the Administrative Bar Date.

10.16   **Other Actions**.  Nothing contained herein shall prevent the Plan Proponent or the Disbursing Agent from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

10.17   **No Discharge**.  Notwithstanding anything to the contrary contained in the Plan or any exhibit or supplement thereto, pursuant to 11 U.S.C. § 1141(d)(3), the Debtor shall not receive a discharge in connection with this liquidating Plan.

10.18   **Severability**.   In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

10.19   **Business Day**.  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

10.20   **Entire Agreement**.   Except as set forth herein, the Plan supersedes all prior discussions, understandings, agreements and documents pertaining or relating to any subject matter of the Plan.

**ARTICLE XI**

**<u>RETENTION OF JURISDICTION</u>**

11.1   **Retention of Jurisdiction**.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)   Ensure that the Plan is consummated, and to enter an Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

(b)   Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for

payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

(c)     Grant or deny any and all applications for the allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(d)     Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

(e)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(f)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(g)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

(h)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(i)     Approve modifications of the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, and modifications of the Disclosure Statement or any

contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(j) Authorize the Plan Proponent to cure any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(k) Issue and enforce injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(l) Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m) Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(n) Enter and implement such Orders as are necessary or appropriate to implement or consummate the Sale Transaction;

(o) Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(p) Enter an Order or Final Decree concluding the Case.

11.2 **Post-Closing Jurisdiction**. Notwithstanding the entry of a final decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any

Final Decree, including, without limitation, the enforcement of any rights of the Plan Proponent or the Debtor.

## ARTICLE XII

## CLOSING THE CASE

12.1    **Substantial Consummation**.  On the Effective Date of the Sale Transaction, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.   The Plan may be altered, amended, modified or withdrawn by the Plan Proponent any time before substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  If the Plan Proponent revokes or withdraws the Plan, is a Plan Failure shall occur, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

12.2    **Closing the Case**.  Within fourteen (14) days following the full administration of the Debtor's Estate, the Plan Proponent or the Debtor shall file, on notice to the United States Trustee's Office, an application and proposed order seeking a final decree, closing this case pursuant to Bankruptcy Rule 3022.

Dated: August 9, 2023

Respectfully submitted,

THOMPSON HINE LLP

*/s/ John C. Allerding*
John C. Allerding (admitted pro hac vice)
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
P: 404.407.3676 / F: 216.566.5800
John.Allerding@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*