IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRICKCHURCH ENTERPRISES, INC., | ) | Case No. 8-22-70914-ast |
| | ) | |
| Debtor. | ) | Judge Alan S. Trust |
| | ) | |

**CREDITOR INTERNAL REVENUE SERVICE'S OBJECTION TO
DISCLOSURE STATEMENT FOR BAY POINT CAPITAL PARTNERS II, LP'S
PROPOSED FIRST AMENDED PLAN OF LIQUIDATION OF BRICKCHURCH ENTERPRISES, INC.
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (ECF NO. 288) AND RESPONSE TO
ORDER TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED**

The creditor Internal Revenue Service ("IRS") hereby objects to the Disclosure Statement

(ECF No. 288), and the accompanying proposed First Amended Chapter 11 Plan (ECF No. 287),

filed by Bay Point Capital Partners II LP. Nonetheless, the IRS submits that the case should not

be dismissed because the interests of all creditors, including the IRS, will be better served by

joint administration of this case with the recently filed related case of Aberdeen Enterprises, Inc.

## I.      Background

Debtor Brickchurch Enterprises, Inc. ("Brickchurch") holds title to the real property

located at 366 Gin Lane, Southampton, New York (the "366 Property"). Brickchurch has no

other assets. Another related entity, Aberdeen Enterprises, Inc. ("Aberdeen"), holds title to the

adjacent real property at 376 Gin Lane (the "376 Property"), with the two properties comprising

a single residential compound. Aberdeen has no other assets. Both Aberdeen and Brickchurch

are ultimately owned and controlled by Louise T. Blouin, as are the two real properties.

The IRS recorded notices of federal tax liens ("NFTLs") against both Brickchurch and

Aberdeen as nominees of Ms. Blouin in August 2022. Unbeknownst to the IRS at the time,

Brickchurch was in bankruptcy, and for that reason the NFTLs against Brickchurch were later

1

withdrawn pursuant to 26 U.S.C. § 6323(j). The NFTLs against Aberdeen were not withdrawn. Aberdeen and Ms. Blouin jointly filed a separate lawsuit in U.S. District Court, challenging the NFTLs and seeking to quiet title to the 376 Property. *See* Case No. 2:22-cv-07190 (E.D.N.Y.). The United States filed a counterclaim for a money judgment against Ms. Blouin based on her tax liabilities. The U.S. District Court lawsuit remains pending.

After belatedly being made aware of this bankruptcy case following the debtor's failure to provide timely notice, the IRS filed its proof of claim (Claim 13-1) on December 1, 2022, which was one month after the bar date and prior to any trustee's final report or the commencement of final distribution. The proof of claim asserts that Brickchurch is liable for tax debts of Ms. Blouin as her nominee or alter ego. In 2018, the IRS assessed trust fund recovery penalties under 26 U.S.C. § 6672 against Ms. Blouin for failing to remit withholding taxes for two companies. The IRS proof of claim shows unsecured priority claims in the amount of $5,685,582.56 for § 6672 liabilities assessed for 25 quarterly periods between 2010 and 2017. The liabilities are entitled to priority under 11 U.S.C. § 507(a)(8)(C). The Claim also includes a $50,000 unsecured general claim. Brickchurch filed an objection to the IRS claim that has been fully briefed, argued, and submitted. ECF Nos. 205, 223, 224, 233, 234.

In December 2022, Ms. Blouin, acting on behalf of Brickchurch and Aberdeen, entered into a loan agreement with Bay Point Capital Partners II LP ("Bay Point") that gave Bay Point a lien against both the 366 Property and the 376 Property. For several months, the IRS has been waiting to see if Brickchurch and Bay Point can reach agreement on a joint Chapter 11 Plan. It is now clear that they cannot.

Bay Point filed its own Chapter 11 Plan and Disclosure Statement on May 17, 2023. ECF Nos. 247, 248. The IRS filed an objection to the disclosure statement, noting that Bay Point's

proposal would not pay anything toward the IRS's priority claim or the capital gains tax on the contemplated sale of the 366 Property. ECF No. 265. Brickchurch has also objected to Bay Point's disclosure statement (ECF No. 277), and filed a motion to dismiss its own bankruptcy case (ECF No. 257). Bay Point has opposed Brickchurch's motion to dismiss. ECF No. 266.

On July 18, 2023, the Court held a status conference and hearing on Bay Point's disclosure statement and Brickchurch's motion to dismiss. Bay Point's counsel recognized that substantial capital gains tax would be due upon sale of the 366 Property and suggested that a plan would not be feasible unless the IRS agreed not to collect the full tax as a priority administrative expense. The Court gave the parties 10 days to file a letter regarding the status of negotiations toward a joint plan, and then until August 9, 2023 to file such plan, otherwise the failure to do so would be treated as an order to show cause why the case should not be dismissed.

Rather than work toward a compromise solution, Bay Point then exercised its purported rights under the loan documents to replace the management of both Brickchurch and Aberdeen. *See* ECF No. 278. Bay Point now appears to take the view that it can act unilaterally with respect to both the 366 Property and the 376 Property. Bay Point and Brickchurch's counsel still filed a bizarre letter on July 31, 2023, suggesting they may yet be able to reach agreement on terms of a joint plan while hastening to add that control of the debtor itself was in dispute. ECF No. 283. The letter indicated that Bay Point would first try to buy the 376 Property in a state court foreclosure and then attempt to re-sell it, along with the 366 Property, through a Chapter 11 plan to be proposed in this bankruptcy case. *See id.*

The illusion of cooperation did not last long, however, as Aberdeen filed its own Chapter 11 petition on August 2, 2023—the day before a state court foreclosure auction of the 376 Property. *See* Case No. 8:23-bk-72834, ECF No. 1. Ms. Blouin's case-opening affidavit in the

Aberdeen bankruptcy case acknowledges that the 376 Property is "encumbered by Federal tax liens in the aggregate amount of approximately $4.7 million," with that amount being exclusive of statutory interest that is also due and owing. *Id*. at 7 ¶ 7. Aberdeen's schedules show the IRS as having an undisputed secured claim. *Id*. at 21-22, Schedule D (item 2.4). Bay Point's claim, by contrast, is disputed. *Id*. at 20-21. Ms. Blouin takes the position that while the portion of Bay Point's claim that arises from an alleged assignment of an earlier mortgage may be entitled to priority over the tax liens on the 376 Property (to the extent the mortgage was not satisfied), the additional amount of Bay Point's December 2022 loan is junior to the tax liens. *Id*. at 7-8 ¶¶ 6-8. The IRS agrees that Bay Point's claim is at least partially—if not wholly—junior to the tax liens that have attached to the 376 Property.

Bay Point has moved to dismiss the Aberdeen Chapter 11 case, alleging that Ms. Blouin had no authority to put Aberdeen into bankruptcy. ECF No. 12 in Case No. 8:23-bk-72834. Newly retained counsel for Ms. Blouin's entities have indicated that they will be opposing Bay Point's motion and filing an "adversary proceeding and contempt motion against Bay Point in both cases." ECF No. 18 in Case No. 8:23-bk-72834 and ECF No. 284 in this case.

On August 9 and 10, 2023, Bay Point filed its Amended Plan and Amended Disclosure Statement in the Brickchurch case. ECF Nos. 287 ("Amended Plan") and 288 ("Amended Disclosure Statement"). The sole "Plan Proponent" is Bay Point. Amended Plan § 1.78.

## II.    Argument

Under the circumstances, the Amended Disclosure Statement is not adequate, and confirmation of the Amended Plan should be denied for several reasons.

### A.    The 376 Property Is Not Property of the Brickchurch Bankruptcy Estate

First, the Amended Plan in the Brickchurch bankruptcy case improperly directs the

disposition of the proceeds of an anticipated future state court foreclosure sale of the 376 Property, which is titled to Aberdeen. The fundamental problem with doing that is that the 376 Property is not property of Brickchurch's estate.

Of course, Aberdeen itself is also now in bankruptcy, and it may well make sense to consolidate the two cases for joint administration of the 366 and 376 Properties. *See infra* Part II.E. Everyone appears to agree that selling the two properties together is most likely to maximize the sale proceeds. *See* ECF No. 283 at 2 (agreeing that there is "synergy value" in selling the properties together). Yet Bay Point is simultaneously taking the self-contradictory position that Aberdeen's bankruptcy should be dismissed so that the two properties can be sold separately in sequential steps involving the state court and then the Bankruptcy Court.

Bay Point cannot have it both ways. Either the Bankruptcy Court should administer both properties, with both title-holding entities in bankruptcy (whether Chapter 11 or Chapter 7), or else both cases should be dismissed.[1]

### B.      The Principal Purpose of the Plan Is Avoidance of the Tax Claim

Second, Bay Point's counterintuitive proposal to sell the two properties in two separate steps makes no sense as anything other than an attempt to avoid taxes. Bay Point appears to be operating under the erroneous assumption that a state court foreclosure sale of the 376 Property would be free and clear of the federal tax liens. That is not so. The only way to convey clear title to the 376 Property would be to pay off the federal tax liens and thus satisfy the IRS's priority claim in the Brickchurch case as well (which is for the same underlying liability).

Nevertheless, Bay Point is trying to forge a path where it can arrogate the entirety of the

---

[1] Both Bay Point and the lawyers for Ms. Blouin and her entities have taken constantly shifting positions on whether being in or out of bankruptcy is preferable for a given property at a given time. The IRS has not been consulted about any of this strategic maneuvering.

376 Property sale proceeds for itself, leaving the IRS to collect from the 366 Property only, and only if funds remain after Bay Point's claim is satisfied in full. *See* Amended Plan § 4.1; *see also* Amended Disclosure Statement § II (providing for payment of $74.5 million to Bay Point ahead of any payment to IRS). This would obviously be preferable to Bay Point compared to having the 376 Property sold through the Aberdeen bankruptcy, where the IRS has an undisputed secured claim that may be partly or wholly senior to Bay Point.[2] But it also points to the fact that the only plausible rationale for the sequential sales Bay Point is proposing—an overly complicated procedure that goes against the recognized benefits of selling the properties together—is to avoid having the IRS's claim paid ahead of any portion of Bay Point's claim. Given that the principal purpose of Bay Point's amended plan is avoidance of taxes, confirmation should be denied under 11 U.S.C. § 1129(d).

### C.    The Plan Impairs the IRS Priority Claim and Treats It Contrary to the Code

Third, the Amended Plan and Disclosure Statement are wrong to say that the IRS's priority claim is not impaired. *See* Amended Plan § 4.1; Amended Disclosure Statement § VI.A (asserting that "there are no impaired Classes of Claims or Interests under the Plan and the 'best interest test' under section 1129 (a)(7) is not implicated"). The IRS claim is impaired because the Amended Plan unjustifiably alters the IRS's rights (11 U.S.C. § 1124(1)) by automatically disallowing late claims and deferring payment on the claim even though it is no longer disputed.

The fact that the IRS's claim was filed after the bar date does not affect how it must be treated under a confirmed Chapter 11 plan.[3] The claim still should be treated as "allowed" per 11

---

[2] If Bay Point disagrees, then it can file an adversary proceeding to determine the validity, priority, or extent of its and the IRS's respective liens, as required by Bankruptcy Rule 7001(2). Bay Point should not be able to circumvent this adversary proceeding requirement via dismissal.

[3] The IRS's surreply brief in connection to the objection to claim makes this same argument in greater detail. *See* ECF No. 234 at 3-5.

U.S.C. § 502. A tardily filed priority claim that would be permitted under 11 U.S.C. § 726(a)(1) is an "allowed" claim, *see* 11 U.S.C. § 502(b)(9), and the same rule holds in Chapter 11 cases, *see* 11 U.S.C. § 103(a). Therefore, the IRS's untimely priority claim is still an allowed claim that has to be paid in full through the Debtor's Chapter 11 plan in accordance with both § 1129(a)(7)(A)(ii) and § 1129(a)(9)(C). The Amended Plan improperly seeks a different result by saying that, "[n]o distribution shall be made on account of any Claims filed after the Bar Date . . . except as specifically allowed by Order of the Court[.]" § 10.15. This provision thus impairs the IRS's legal rights and is contrary to § 1129's requirements.

Furthermore, the Amended Plan wrongly defers payment on the IRS claim on the ground that it is allegedly "disputed" by Ms. Blouin. *See* Amended Plan §§ 1.52, 4.1, 7.3; Amended Disclosure Statement § V.B.5. But as discussed above, Ms. Blouin has now admitted in the Aberdeen bankruptcy filing that the IRS has valid liens that have attached to the 376 Property and that its secured claim in that case is *undisputed*. This admission is necessarily also an admission that the underlying tax is due and owing (otherwise the lien would be in dispute). Accordingly, the IRS's claim for the same taxes in the Brickchurch bankruptcy must be treated as undisputed too. That Ms. Blouin controls both entities and properties (or at least she did prior to Bay Point's recent takeover attempt) is beyond dispute as well. The only other argument advanced in the debtor's objection to the IRS proof of claim was the bar date, and as noted in the preceding paragraph, that argument is irrelevant to the allowance of the claim. For these reasons, the Court should overrule the claim objection, allow the IRS's claim as filed, and require that it be paid in full through any Chapter 11 plan pursuant to § 1129(a)(7)(A)(ii) and § 1129(a)(9)(C).

### D.     Capital Gains Taxes Must Be Paid as Administrative Expenses

Fourth, the Amended Plan does not provide for payment of capital gains taxes that would

be incurred upon the sale of either the 366 Property or the 376 Property. These capital gains taxes would be administrative claims entitled to full payment through the Plan. *See* §§ 1129(a)(9)(A) and 503(b). Yet the Amended Plan does not distribute anything toward these likely sizeable tax debts.

Indeed, the Amended Disclosure Statement's section on tax consequences (§ XI) treats the "[g]ain or loss, if any, upon the transfer of the Debtor's assets" as merely one of the "Consequences to Debtor." The apparent goal is to leave the debtor entities as empty shells that are liable for substantial capital gains tax debts that they will be unable to pay. Congress ensured that this cannot occur in a Chapter 11 case, however, by giving administrative priority status to taxes incurred by the estate under § 503(b)(1)(B), which must be paid in full under a confirmed Chapter 11 Plan pursuant to § 1129(a)(9)(A). In other words, IRS cannot be left holding the bag.[4]

Bay Point's refusal to account for capital gains taxes as required by the Code—even after being made well aware of this issue in the IRS's prior objection and at the July 18 hearing—is further evidence that the principal purpose of the Amended Plan is tax avoidance. Confirmation therefore must be denied under § 1129(d).[5]

---

[4] The gimmick of Bay Point acquiring, through a state court foreclosure, only the "rights" to close on a sale of the 376 Property, but purportedly not the property itself, is an attempt to maintain the fiction that there has been no "sale or exchange" (*see* 26 U.S.C. § 1001(c)) sufficient to trigger capital gains tax until after the money is gone and there is nothing left to pay the IRS. But the "Sale Transaction" contemplated by the Amended Plan (§ 1.95) involves both properties, and the plan must pay capital gains tax for both.

[5] There is no basis for subordinating capital gains tax to Bay Point's claim either. Bay Point asserts it has "superpriority" status based only on loan documents that the IRS is not a party to. *See* Amended Dislcosure Statement § V.B.2 ("The DIP Lender Superpriority Claim has priority over all other Administrative claims").

### E.        This Case Should Not Be Dismissed

Finally, with Bay Point's Amended Plan unable to be confirmed for numerous reasons, and with no joint plan having been filed by the previously fixed deadline, we address the Court's order to show cause why this case should not be dismissed. As discussed above, Bay Point appears to be trying to use the state court foreclosure process to avoid paying the IRS, and those efforts would likely continue upon a dismissal. Bay Point, Ms. Blouin and her entities' attorneys also cannot agree on which entity should be in bankruptcy at any given time. Now they cannot even agree on who controls the debtor entities themselves. Dismissal would inevitably result in further litigation that could easily end up back in this Court.

At this point, the best way to cut through the Gordian knot of these cases may be to consolidate both the Brickchurch and Aberdeen Chapter 11 proceedings and appoint a trustee to liquidate both properties in an orderly fashion. This could be done with or without a conversion to Chapter 7.[6] The IRS's priority claim, the capital gains taxes, and the undisputed amount of the Bay Point claim could be paid immediately, with an amount equal to the remainder of the Bay Point claim to be escrowed pending judicial resolution of the Bay Point-Blouin dispute. The IRS has no need to be a part of that proceeding, which seems likely to drag on for a long time.

In sum, we favor consolidation and liquidation in bankruptcy with a Chapter 11 or 7 trustee, as opposed to dismissal, because of the apparent intent to avoid taxes reflected in the Amended Plan. A consolidated bankruptcy that sells both properties and pays associated capital

---

[6] The Amended Disclosure Statement (§ VII.B.3 (second B)) contains a brief and conclusory argument for why Bay Point's Amended Plan would supposedly be better than conversion to Chapter 7, relying chiefly on the specter of having to pay trustee fees. But those fees may be money well spent when the alternative is more prolonged fighting between the attorneys for Bay Point and Ms. Blouin. The tax avoidance schemes that would likely be attempted outside bankruptcy also makes a trustee potentially worth the cost from the IRS's perspective.

gains taxes, while also paying in full the IRS's priority claim in the Brickchurch case (which is for the same liability as the IRS's undisputed secured claim in the Aberdeen case), may be necessary to protect the government's interests. The payment of these taxes would be far from assured outside bankruptcy. Accordingly, the IRS submits that good cause exists not to dismiss this case.

If the Court is not immediately inclined to dismiss this case, then the IRS asks that the Court allow 21 days after the hearing that is scheduled for August 23, 2023, to file a motion to consolidate, to appoint a trustee, and possibly to convert both cases to Chapter 7.

### III.    Conclusion

For the foregoing reasons, the Court should not approve of Bay Point's Amended Disclosure Statement or confirm Bay Point's Amended Chapter 11 Plan, but the Court also should not immediately dismiss this case.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

/s/ Edward J. Murphy
EDWARD J. MURPHY
ERIC A. ASHBY II
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
Tel: 202-307-6064 / 202-514-6508
Fax: 202-514-5238
Edward.J.Murphy@usdoj.gov
Eric.A.Ashby@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2023, I served the foregoing document electronically upon all parties of record through the Court's Electronic Case Filing System on those parties that have consented to such service.

*/s/ Edward J. Murphy*
EDWARD J. MURPHY
Trial Attorney
United States Department of Justice, Tax Division
