IN UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Chapter 11 |
| BRICKCHURCH ENTERPRISES, INC., | Case No. 22-70914-ast |
| Debtor. | |

---

## OBJECTION AND RESERVATION OF RIGHTS TO DISCLOSURE STATEMENT FOR BAY POINT CAPITAL PARTNERS II, LP'S PROPOSED FIRST AMENDED PLAN OF LIQUIDATION OF BRICKCHURCH ENTERPRISES, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Undersigned counsel ("**BEI Counsel**") to debtor and debtor in possession Brickchurch Enterprises, Inc. ("**BEI**" or "**Debtor**") files this objection and reservation of rights ("**Objection**") to the *Disclosure Statement for Bay Point Capital Partners II, LP's Proposed First Amended Plan of Liquidation of Brickchurch Entperises, Inc. Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 288] (the "***Disclosure Statement***") filed by Bay Point Capital Partners II, LP on August 10, 2023.  In support of its Objection, BEI Counsel respectfully states:

### BACKGROUND

***Commencement of Chapter 11 Bankruptcy by Debtor***

1. On April 30. 2022 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Code***").

2. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Code.

3. No official committee of unsecured creditors has been appointed in the above-captioned chapter 11 case (the "***Chapter 11 Case***").

***Restructuring Achievements and Debtor's Plan to Exit After Financing Closed in December***

4. During the Chapter 11 Case, BEI considered and explored numerous alternatives to obtain the necessary liquidity to pay all creditors and fund this Chapter 11 Case. These alternatives included: a potential sale of Debtor's primary real estate and potential new third-party financing.

5. The Debtor engaged real estate broker Nest Seekers International to market the Debtor's primary asset, a luxury residential estate in Southampton, for both sale and rental.

6. In the process of exploring strategic alternatives, the Debtor has sought the financing necessary to reorganize its affairs in chapter 11. After approximately five months of shopping for ***exit financing***, the Debtor obtained exit financing from Bay Point, a $450 million hedge fund based in Atlanta, Georgia.

7. With over $60 million in financing (the "***Bay Point Loan***") from the DIP Lender, BEI has paid all claims approved by the Court.

8. On December 9, 2022 ("***Closing Date***"), the Debtor closed on the post-petition Bay Point Loan approved by the Court pursuant to the *Order (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (II) Granting Liens and Super-Priority Claims* [Dkt. No. 172] ("***DIP Financing Order***") and/or DIP Loan Agreement.[1]

9. On the Closing Date, Debtor's pre-petition secured lender JGB was paid off, by paying a negotiated amount of $44.5 million and the Assignment contemplated under the Payoff Order and DIP Financing Order entered by the Court was effectuated.

10. After financing and payment of creditors, the Debtor sought to exit chapter 11. Bay Point opposed an immediate exit from chapter 11.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Financing Order.

***At the July 18th, 2023 Hearing the Court Instructed Bay Point and the Debtor to Negotiate to Try to Reach a Resolution – The Negotiations Never Occurred Because a Change of Control Notice Was Filed By Pay Point Less Than 24 Hours After the Hearing***

11. On July 18, 2023, the Court held a hearing on the status of the Chapter 11 Case, BEI's pending Motion to Dismiss, and Bay Point's originally filed disclosure statement with respect to its proposed plan filed with the Court.

12. At the July 18 hearing, the parties informed the Judge that the parties had not reached an agreement on a joint plan. Other matters with the IRS were likewise not resolved or settled. The Court accordingly directed and instructed the Debtor and Bay Point to use the next 10 days (until July 28, 2023) to attempt to resolve things. And, no later than July 28, 2023, report to the Court the status of whether the parties have reached agreement or not.

13. The Debtor BEI left the July 18 hearing believing that Bay Point would attempt to negotiate with the Debtor BEI in good faith to try to reach a joint plan or other case resolution. Instead of negotiating, Bay Point engaged in a purported transfer of equity interests in the Debtor to Bay Point; and Bay Point sought to take and exercise control of the property of the bankruptcy estate and BEI.

14. Less than 24 hours after the Court hearing in which Judge Trust gave instructions to negotiate and try to reach resolution over the next 10 days, Bay Point filed a *Notice of (I) New Shareholder of Record of Debtor's Equity Interests; and (II) Replacement of Officers and Directors* (the "**Change of Control Notice**") [Dkt. No. 278] with the Court to notify the Court that it had purportedly become the record shareholder of the Debtor; and had purportedly removed Debtor's previous corporate officers and directors and replaced them with Charles Andros.

15. There currently is no specific Court order or other Court authorization regarding a change control of the Debtor and Bay Point's taking, possession and/or exercise of control

and ownership of property of the bankruptcy estate.

16. There is now an active unresolved dispute regarding who is in control of the Debtor.

***Related Debtor Aberdeen Enterprises, Inc. Commenced Chapter 11 Proceedings on August 2, 2023***

17. On August 2, 2023, Aberdeen Enterprises, Inc. ("***Aberdeen***") filed for chapter 11 bankruptcy protection and was assigned Case No. 23-72834. Certain property of Aberdeen Enterprises, Inc. serves as collateral for the Bay Point Loan.

18. Bay Point has moved to dismiss Aberdeen's bankruptcy case. As of the filing of the Objection, at least one party, the Internal Revenue Service, has filed an opposition to Bay Point's dismissal of Aberdeen's bankruptcy.

## RESPONSE AND OBJECTION

***Control of the Debtor and Aberdeen is in Active Dispute --- Both Companies and Their Professionals Are Operating in a Gray Area***

19. On July 19, 2023, Bay Point filed the Change of Control Notice. In the Change of Control Notice, Bay Point communicated to the Court that the Debtor's current officers and directors were removed and replaced by Charles Andros of Bay Point, who had been appointed sole officer and director of the Debtor. Bay Point accordingly takes the position that Charles Andros has the authority to make all major decisions on behalf of the Debtor.

20. Louise Blouin and Mathew Kabatoff, however, dispute the legality of Bay Point's assertion of control and Bay Point's purported replacement of Louise Blouin and Mathew Kabatoff as officer and director of Debtor. Upon information and belief, Louise Blouin and Mathew Kabatoff have not conceded that a change of control of the Debtor and Aberdeen has occurred.

21.     Additionally, the equity owners of BEI and Aberdeen have retained counsel. Counsel to the equity owners of BEI and Aberdeen has noted the dispute. *See* Dkt. No. 284. Additionally, it is noted that on page 6 of the DIP Financing Order, Bay Point disclaims "control" of the Debtor:

> <u>No Control</u>. The DIP Lender is not a control person or insider of the Debtor or any of its affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility (as defined herein) and/or the DIP Loan Documents (as defined herein).

22.     Thus, it appears that Bay Point's actions may be in violation of the DIP Financing Order. Because of the dispute, which places both BEI and Aberdeen and their counsel in a gray area, BEI's Counsel has communicated to counsel for Bay Point that the parties should request an order from the Court to clarify the control issue.

***The Proposed Plan Fails to Meet the Feasibility Requirement***

23.     A disclosure statement cannot be approved unless it contains "adequate information."[2] The information in a disclosure statement is adequate if it contains sufficient detail to enable "a hypothetical investor of the relevant class to make an informed judgment about the plan."[3] Further, "[i]n addition to the requirement that the disclosure statement contain adequate information, *a bankruptcy court should not approve a disclosure statement if the proposed plan which it describes is incapable of confirmation*."[4]

24.     The feasibility requirement set forth under Section 1129(a)(11) of the Code provides that a plan can only be confirmed if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any

---

[2] *See* 11 U.S.C. § 1125(a)(1).

[3] *See id*.

[4] *See. e.g.*, *In re 18 RVC, LLC*, 485 B.R. 492, 495 (Bankr. E.D.N.Y. 2012) (citation omitted).

successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

25. Under the plan proposed by Bay Point, there is clear language that provides for possibility of failure (lack of feasibility). Section 10.6 of the plan provides:

> **Plan Failure.** If Bay Point shall fail to acquire the 376 Gin Lane Rights for any reason, the Plan shall immediately become null and void (a "***Plan Failure***"), and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor, or (ii) prejudice in any manner the rights of the Debtor, Bay Point, or any other Person in any further proceedings involving the Debtor or its Estate, including the right of any Person to propose a future chapter 11 plan. Bay Point shall not be liable in any respect to any Person for, or as a result of, a Plan Failure and nothing contained in the Plan shall obligate Bay Point to acquire the 376 Gin Lane Rights.

26. Accordingly, the plan as currently proposed doesn't meet the requirements under the Code.

***Bay Point Provides No Justification for Separate Classification of Louise Blouin's Claim***

27. Ms. Louise Blouin, the Debtor's ultimate upstream principal, has an over $10.5 million general unsecured claim against the Debtor. Ms. Blouin's general unsecured claim accounts for more than two-thirds of the total dollar amount of all asserted general unsecured claims.

28. With respect to separate classification of similar claims, the Second Circuit has noted that a party "must adduce credible proof of a legitimate reason for separate classification of similar claims." *Boston Post Road Ltd. P'ship v. FDIC (In re Boston Post Road Ltd. P'ship)*, 21 F.3d 477, 483 (2d Cir. 1994). *See also In re Frascella Enterprises, Inc.*, 360 B.R. 435, 443 (Bankr. E.D. Pa. 2007) (noting that "[t]here is no per se requirement that unsecured insider claims be separately classified from other unsecured claims. Insider status alone does not make a claim dissimilar.").

29. The plan proposed by Bay Point separately classifies the claim of Ms. Blouin with no justification in violation of applicable Second Circuit case law.

***The Credit Bid of Bay Point Must Satisfy New York Law***

30. The current plan language does not adequately or properly define "Proceeds." If Bay Point credit bids, as it states it has the right to do, the "Proceeds" should not be the amount of the credit bid, rather, Bay Point must reduce the loan balance by the higher of: (i) its credit bid, or (ii) the actual value of the property. It should be required to file a Motion to Determine that amount, just like you would do under state law. Section 1371 of the New York Real Property Actions and Proceedings Law ("***RPAPL***") provides: that any deficiency judgment shall be: "for the amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements, less THE MARKET VALUE AS DETERMNED BY THE COURT OR THE SALE PRICE OF THE PROPERTY <u>WHICHEVER SHALL BE THE HIGHER.</u>" It is only with a provision that reflects the RPAPL that we can be sure that the credit bid made by Bay Point is close to the value, and not just to underbid. Since it is being paid first, the loan balance should be reduced upon an auction, regardless of whether it is the successful credit bidder or not.

31. Moreover, pursuant to applicable law, Bay Point should not reduce the amount of the DIP Obligations by the amount of its credit bid, but by the value. Bay Point should also be required, as part of any credit bid, to pay the Bankruptcy Fees and fund the Bankruptcy Reserves.

32. Further, allowing Bay Point to reduce the loan by the amount of its credit bid, may soak some equity and/or value from Debtor and Aberdeen and impair other creditors' interest in favor of its own. Thus, failing the best interests of creditors test for plan confirmation.

33. The proposed plan and Disclosure Statement, accordingly, do not satisfy the requirements of the Code and applicable non-bankruptcy law.

*The Disbursing Agent as Attorney-in-Fact Should Not Prohibit the Debtor from Objecting to Certain Disputed Fees, Interest and Charges of Bay Point*

34. The Debtor has noted on numerous occasions that it disputes the late fee and other amounts that Bay Point claims it is owed. The proposed Bay Point plan seeks to appoint the Disbursing Agent as attorney-in-fact of the Debtor to file and prosecute objections to claims. The Disbursing Agent, however, should not be allowed to usurp the Debtor's ability to object to certain amounts of Bay Point's claim(s) against the Debtor.

### RESERVATION OF RIGHTS

35. BEI Counsel, in its capacity of counsel of record to the Debtor, reserves its rights to amend or supplement this Objection, raise additional objections and to introduce evidence at any hearing relating to the Disclosure Statement and plan proposed by Bay Point and any amended plan and disclosure statement proposed by Bay Point.

### CONCLUSION

For the foregoing reasons, BEI Counsel, as counsel of record to the Debtor, respectfully requests that this Court (i) deny approval of the Disclosure Statement; and (ii) grant such other and further relief as this Court deems just and proper.

Dated: August 16, 2023                                  Respectfully submitted,

                                              SIMMONS LEGAL PLLC

                                               */s/ Camisha L. Simmons*
                                              **Camisha L. Simmons**
                                              SIMMONS LEGAL PLLC
                                              1330 Avenue of the Americas, Suite 23A
                                              New York, New York 10019
                                              212.653.0667 (Telephone- New York)
                                              214.643.6192 (Telephone- Dallas)
                                              800.698.9913 (Facsimile)
                                              Email: camisha@simmonslegal.solutions

                                              ***COUNSEL FOR DEBTOR***

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on August 16, 2023, a true and correct copy of the foregoing *Objection and Reservation of Rights to Disclosure Statement for Bay Point Capital Partners II, LP's Proposed First Amended Plan of Liquidation of Brickchurch Enterprises, Inc. Under Chapter 11 of the Bankruptcy Code* was served electronically upon the counsel and parties of record through the Court's Electronic Case Filing System on those parties that have consented to such service and by email to Bay Point and U.S. Trustee.

/s/ *Camisha L. Simmons*
Camisha L. Simmons
