UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                    Chapter 11

    BRICKCHURCH ENTERPRISES, INC.,          Case No. 22-70914-ast

                                    Debtor
------------------------------------------------------------X
In re:                                                                    Chapter 11

    ABERDEEN ENTERPRISES, INC.,                   Case No. 23-72834-ast

                                    Debtor.
------------------------------------------------------------X

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

Aberdeen Enterprises, Inc. ("Aberdeen") and Brickchurch Enterprises, Inc. ("Brickchurch") (each a "Debtor", and collectively, the "Debtors") hereby propose the following joint Chapter 11 plan of reorganization (the "Joint Plan")[1] pursuant to the provisions of Title 11 of the United States Code (the "Bankruptcy Code").

### FRAMEWORK OF THE JOINT PLAN

**A.  Background**

The Debtors are jointly proceeding with a coordinated auction sale (the "Sale") of their valuable and iconic, contiguous ocean front properties located at 366 and 376 Gin Lane, Southampton, New York (collectively, the "Properties").  The Debtors shall entertain offers for the Properties either together under a single package with two lots, or a sale of each lot separately in whichever manner maximizes the total sale price to the Debtors' estates. The Sale is being conducted in furtherance of a settlement recently reached by the Debtors with their only major creditor, Bay Point Capital Partners II, LP ("Bay Point") as set forth on the record made before the Bankruptcy Court on August 23, 2023 (the "Settlement").  The lynchpin of the

---

[1] A motion for joint administration of the two cases has been filed with the Court.

Settlement is the parties' agreement regarding consensual bid procedures culminating in an auction sale of the Properties on November 16, 2023 (the "Auction") following a comprehensive marketing period. The bid procedures shall be the subject of a separate application to be filed by the Debtors, and once approved by the Bankruptcy Court shall be deemed incorporated by reference for purposes of the Joint Plan (the "Approved Bid Procedures").

### B. The Lead-Up to the Settlement

A review of the lead-up to the Settlement bears highlighting, for the purposes of inclusion in both the Joint Plan and accompanying Disclosure Statement so that creditors can fully appreciate the framework of the Joint Plan and the underlying Sale process.

The beneficial equity holder of each of the Debtors is Louise Blouin (an internet pioneer, philanthropist, and successful businesswoman) who acquired the Properties more than twenty-five years ago. The Debtors are owned respectively by Aberdeen Enterprises (BVI) LTD, ("AEL") and Brickchurch Enterprises (BVI) LTD. ("BEL"). Aberdeen owns the historic manor of 10,900 sq. ft. at 376 Gin Lane, Southampton, NY (the "376 Property"), which was originally designed by Stanford White in 1890. Brickchurch, owns the property at 366 Gin Lane (the "366 Property"), which includes a 10,400 sq. ft. home built by Ms. Blouin in 2002, that features a tennis court, cinema and pool. The Properties comprise a four-acre compound, separately zoned for 2-acres, with four hundred feet of bulkhead beach front on the Atlantic Ocean. The compound is one of the finest and most recognized oceanfront estates in the Hamptons.

Over the last two years, the Properties each became subject to separate foreclosure proceedings. Brickchurch originally sought Chapter 11 relief on April 30, 2022 in the face of a foreclosure judgment obtained by JGB Partners and their affiliates ("JGB") in the total sum of

$43,943,271.51 as of the Petition Date, arising out of a first mortgage lien on the 366 Property, cross-collateralized by a second mortgage lien on the 376 Property.

During its Chapter 11 case, Brickchurch obtained short-term DIP financing from Bay Point in the principal sum of $62 million which was used to refinance and pay-off the outstanding loans owed to JGB and provide additional liquidity. The impetus behind the DIP financing was to effectively provide the Debtors with additional time to sell or refinance the Properties. Unfortunately, the Properties encountered flood damage in early 2023 which impeded and delayed the Debtor's ability to sell or refinance. The obligations to Bay Point matured in early June 2023 amidst disputes as to whether Bay Point failed to administer the DIP loans by failing to promptly make funds available for necessary repairs.

Concurrently, the 376 Property became subject to a judgment of foreclosure and sale in the total sum of $15,480,254.90 (subject to verification as to amount) obtained by the senior lender on the 376 Property, Morgan Stanley Private Bank ("Morgan Stanley"). On August 2, 2023, the day prior to a scheduled foreclosure sale, Aberdeen commenced its own Chapter 11 case. At the time, Aberdeen was not aware that Bay Point had acquired the senior mortgage held by Morgan Stanley just before the foreclosure sale. In bankruptcy, Bay Point contested Aberdeen's Chapter 11 filing and moved for dismissal of the bankruptcy case, contending that Bay Point exercised certain purported proxy and voting rights to change the Debtors' respective Boards of Directors on July 18, 2023. The Debtors and their equity holders disputed these contentions.

The outstanding disputes came on for a hearing before the Bankruptcy Court on August 23, 2023. At that time, the Settlement was reached regarding a path forward based upon filing of this Joint Plan subject to a full reservation of rights by the Debtor to challenge Bay Point's

actions and entitlements during the Cases in the aftermath of a major flood. Under the Settlement, the Debtors shall continue to be managed by Louise Blouin and Matthew Kabatoff, in their capacity as the managers of AEI and BEI, subject to agreed protocols with Bay Point. It is anticipated that the Sale will generate sufficient proceeds to pay all allowed claims in full on the Effective Date, which coincides with a closing on the Sale. The final allowed amounts owed to Bay Point will be fixed by the Bankruptcy Court after confirmation of the Joint Plan. The major area of dispute relates to Bay Point's alleged entitlement to default interest, certain interest, late fees, and other damages. A disputed claim reserve shall be established at closing from the Sale proceeds to secure payment of the claim amounts in dispute. All undisputed claim amounts owed to each creditor shall be paid at closing from the Sale proceeds.

Besides Bay Point, the IRS also filed disputed tax liens against the Properties in connection with a matter unrelated to Brickchurch and Aberdeen. The IRS liens against Brickchurch were filed after commencement of the Chapter 11 case and subsequently vacated. Thus, the IRS retains a disputed unsecured claim against Brickchurch and a disputed secured claim against Aberdeen. The tax liens are in dispute following the commencement of litigation in the District Court for the Eastern District of New York entitled *Aberdeen Enterprises, Inc. and Louise Blouin v. United States of America*, 2:22-cv-07190-LDH-AYS and related claims objections in bankruptcy (the "IRS Claim Litigation"). The Debtors remain hopeful that a global settlement can be reached with the IRS to resolve the IRS Claim Litigation. If a resolution with the IRS cannot be reached, objections will proceed after confirmation in connection with the IRS Claim Litigation. As warranted, a Disputed Claim Reserve shall be established from the proceeds of sale with respect to the disputed IRS Claim.

# ARTICLE I

# DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1 "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the respective Cases allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Properties; and (b) the awarded compensation and reimbursement of expenses for the Debtor's respective bankruptcy counsel and other professionals.

1.2 "**Allowed**" means, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, that has scheduled by the Debtors as being liquidated and undisputed, and as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Joint Plan; or (b) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

1.3 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.4 "**Bar Date**" means the last dates set by the Bankruptcy Court to file a Claim against each of the Debtors.

1.5 "**Broker**" means the person or firm engaged by the Debtors and approved by the Bankruptcy Court to market and sell the Properties (anticipated to be BeSpoke Real Estate).

1.6 "**Cases**" means the respective Chapter 11 cases commenced by the Debtors in the Bankruptcy Court under the above referenced joint caption.

1.7 "**Claim**" means a claim against early the Debtors as defined in Bankruptcy Code § 101(5).

1.8 "**Claim Objection Deadline**" shall mean one (1) business day prior to the Effective Date of the Joint Plan.

1.9 "**Closing**" means the day when the Debtors consummate the Sale of the Properties, jointly or separately, pursuant to the Confirmation Order.

1.10 "**Confirmation**" means approval of the Joint Plan by the Bankruptcy Court.

1.11 "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.12 "**Confirmation Order**" means the order of the Bankruptcy Court approving the Joint Plan pursuant to Bankruptcy Code § 1129.

1.13 "**Credit Bid**" means the right of Bay Point pursuant to 11 U.S.C. §363(k) to bid its claims at the Sale in accordance with the Approved Bid Procedures. For purposes of the Auction, Bay Point shall be permitted to assert a credit bid up to the total amount of its debt without prejudice to the Debtors' right file objections concerning the final allowed amount of Bay Point's total secured claim.

1.14 "**Creditor**" means the holder of a Claim against one or both of the Debtors.

1.15 "**DIP Financing Order**" means the Order (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (II) Granting Liens and Super-Priority Claims, entered by the Bankruptcy Court on November 17, 2022, pursuant to which Bay Point was granted, among other things: (i) a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code for funds advanced to the Debtor; (ii) a first priority senior lien on all of the Brickchurch Property as security for repayment of Bay Point's superpriority administrative expense claim; and (iii) a second priority junior lien on all of the 376 Gin Lane Property as security for repayment of Bay Point's DIP Loan Obligations.

1.16 "**DIP Loan Documents**" means (i) the Loan and Security Agreement, dated November 9, 2022, by and among Debtor, Aberdeen, and Bay Point, and (ii) each of the Bay Point Collateral Documents.

1.17 "**DIP Loan Obligations**" means the obligations of Brickchurch and Aberdeen, jointly and severally, to repay Bay Point the amounts due and owing under the DIP Loan Documents as finally determined by the Bankruptcy Court.

1.18 "**Disputed Claim Reserve**" means the escrow established by the Debtors at the Closing with the Escrow Agent or Plan Administrator for the deposit of cash reserves to secure payment of the disputed portion of a creditor's particular claim.

1.19 "**Effective Date**" means the date a closing occurs with respect to the Sale. The Closing date shall be established by the Debtors and Bay Point in conjunction with the Successful Bidder or Bidders but shall be no earlier than November 23, 2023.

1.20 "**Equity Interests**" means the ownership interests of Aberdeen Enterprises (BVI) Ltd. and Brickchurch Enterprises (BVI) Ltd. in the respective Debtors.

1.21 "**Escrow Agent**" means Goldberg Weprin Finkel Goldstein LLP.

1.22 "**Final Order**" means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified.

1.23 "**Petition Date**" means April 30, 2022 for Brickchurch and August 2, 2023 for Aberdeen, the dates on which the respective voluntary petitions commencing these Chapter 11 cases were filed.

1.24 "**Priority Tax Claim**" means any Unsecured Claim of a federal, state or local taxing authority for capital gain or real estate taxes and related charges.

1.25 "**Professional**" means all professionals employed by either Debtors under section 327 of the Bankruptcy Code.

1.26 "**Professional Fee Claim**" means a Claim for compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by the Bankruptcy Court.

1.27 "**Properties**" means collectively the real property located at 366 Gin Lane, Southampton, NY and 376 Gin Lane, Southampton, NY.

1.28 "**Qualified Bidder**" means a person or entity designated in accordance with the Approved Bid Procedures as being eligible to submit a bid at the Auction. Bay Point shall be deemed to be a Qualified Bidder by virtue of its Credit Bid rights.

1.29 "**Stalking Horse**" means a person or entity as may subsequently be selected by the Debtors and Bay Point as having made an acceptable opening bid for one or both Properties pursuant to an executed asset purchase agreement in accordance with the Approved Bid Procedures.

1.30 "**Successful Bid(s)**" shall mean the highest and best bid for one or both of the Properties as recommended by the Debtors in consultation with Bay Point and approved by the Bankruptcy Court.

1.31 "**Transfer Taxes**" means, without limitation, (a) Suffolk County or other applicable local real property transfer taxes, including but not limited to the Peconic Bay transfer tax; (b) New York state TP 584 deed and transfer taxes; and (c) any and all other stamp taxes, similar taxes, or mansion taxes, which, but for the applicability of § 1146(a) of the Bankruptcy Code, would be applicable to any transfer made in accordance with, pursuant to, or in furtherance of the Joint Plan.

1.32 "**Unsecured Claim**" means an Allowed general unsecured claim arising prior to the Petition Date not entitled to priority under the Bankruptcy Code or otherwise secured by property of the Debtors.

1.33 "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against one or both of the Debtors.

1.34 "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

# ARTICLE II

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Joint Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

2.1 **Administrative Expense Claims**.  Administrative Expense Claims primarily consist of the costs and expenses of maintaining, preserving and selling the Properties during the Cases, including allowed brokerage commissions, and allowed professional fees and expenses. Each holder of an Allowed Administrative Expense Claim as determined by the Bankruptcy Court that shall be paid at the Closing or as soon thereafter as is practicable from the proceeds of the Sale, unless Bay Point is the Successful Purchaser at the Auction based upon its Credit Bid, in which event Bay Point shall pay Allowed Administrative Expenses, including Professional Fees, as may be awarded by the Bankruptcy Court.

2.2 **Professional Fees and Broker Commissions**.  The requests for allowance of Professional Fee Claims the Debtors' respective counsel, and any commissions to be paid to the Broker for services rendered prior to the Effective Date shall be filed no later than thirty (30) days after the Closing.  If the Closing occurs prior to the time that Professional Fee Claims and Broker commission are heard and determined by the Bankruptcy Court, then reserves shall be established at Closing to pay the requested amounts.

2.3 **Priority Tax Claims**.  The Town of Southampton originally filed a proof of a secured claim against Brickchurch for pre-petition real estate taxes.  While Brickchurch believes that all outstanding real estate taxes were paid through the DIP Loan based upon receipt of paid invoices, the Town's website incorrectly indicates that only the 2022 taxes have been paid.

8

Accordingly, objections may be required to correct the record. Aberdeen is current on its real estate taxes. Any open and outstanding real estate taxes as of the Effective Date after objections are being treated as Priority Tax Claims and shall be paid in full from the proceeds of the Sale unless Bay Point is the Successful Purchaser at the Auction based upon its Credit Bid, in which event Bay Point shall pay Allowed Priority Tax Claims.

2.4     **U.S. Trustee Fees**.  The Debtors shall pay the accrued and billed U.S. Trustee Fees, together with any interest thereon, until the cases are closed by entry of a Final Decree.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtors consistent with the applicable provisions of the Bankruptcy Code.

3.1     **Summary**.  The categories listed below classify Claims and Interests against the Debtors for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code, as summarized below:

| Class 1 | Allowed Secured Claims of Bay Point | Yes | Yes |
|---|---|---|---|
| Class 2 | Allowed Secured Claim of the IRS | Yes | Yes |
| Class 3 | Allowed General Unsecured Claims | Yes | Yes |
| Class 4 | Equity Interests | N/A | N/A |

**Class 1: The Allowed Secured Claims of Bay Point**

3.2     **Classification** – Class 1 consists of the total Allowed Secured Claims of Bay Point arising out of the following direct and assigned loans and mortgages: (i) the DIP Financing Order and the DIP Loan Obligations in the principal amount of $62 million plus accrued interest and late fees and other charges allowed by the Bankruptcy Court, including the assigned mortgage liens and judgment of JGB encumbering the Property; and (ii) the assigned mortgage

9

lien of Morgan Stanley in the total sum of $15,480,254.90 as of July 27, 2023 (subject to verification as to amount) (the "Morgan Stanley Judgment").

**Treatment** – In the event that one or both of the Properties are sold to a third-party buyer, Bay Point, as the senior mortgage lender, shall be paid from the proceeds of the Sale at Closing the full allowed amount of all unpaid principal under the DIP Financing Order plus the amount of the Morgan Stanley Judgment in the same amount and priority as exists on the separate Properties. A Disputed Claim Reserve shall also be established at Closing relating to Bay Point's disputed default interest, certain interest, late charges and attorneys' fees pending Bankruptcy Court determination thereof. The Morgan Stanley Judgment constitutes a first lien against the 376 Property and the DIP Loan obligation constitutes a first lien against the 366 Property (to the extent of the assigned judgment of foreclosure previously held by Morgan Stanley, and a second lien against the 376 Property).

In the event that Bay Point is the successful bidder for the Properties at the auction based upon its Credit Bid, Bay Point shall receive a deed to the respective Properties in satisfaction of its Allowed Secured Claims at the Closing upon payment to the Debtors of funds sufficient to pay that portion of the IRS Class 2 Claims, if any, having priority over the secured claims of Bay Point, U.S. Trustee Fees, Allowed Administrative Expense Claims and Allowed Priority Tax Claims in full.

**Voting** – Bay Point is impaired under the Plan, although by virtue of the Settlement, Bay Point has previously agreed to support the Plan.

**Class 2: The Allowed Secured Claims of the IRS**

3.3     **Classification** – Class 2 consists of the Allowed Secured Claims of the IRS based upon federal tax liens previously filed against the Properties (the "Federal Tax Liens").

**Treatment** – The Debtors intend to attempt to negotiate a global settlement with the IRS relating to the amount and priority of the Federal Tax Liens. In the event that the Properties are sold together in a single package with two lots to a third-party buyer, the Class 2 Secured Claims of the IRS shall be paid from the proceeds of the sale up to the full Allowed amount thereof after payment of all U.S. Trustee Fees, all Allowed Administrative Expenses, all Priority Tax Claims and the full amount of the Allowed Secured Class 1 Claims of Bay Point (including the Disputed Claim Reserve).

In the event that the 376 Property is sold as a separate lot, the IRS retains a disputed second priority lien against the proceeds of the sale of that lot and shall be paid from the proceeds of the Sale up to the full Allowed amount thereof, if any, after payment of all U.S. Trustee Fees, all Allowed Administrative Expenses, all Priority Tax Claims and the full amount of the Allowed Secured Class 1 Claims of Bay Point (including the Disputed Claim Reserve).

In the event that 366 Property is sold as a separate lot, the IRS shall have a Class 3 unsecured claim to be paid *pro rata* and *pari passu* with other unsecured creditors of Brickchurch only if the IRS claim is allowed.

**Voting** – The IRS is impaired under the Plan and eligible to vote.

**Class 3: Unsecured Claims**

3.4      **Classification** – Class 3 consists of the Allowed Unsecured Claims including all insider claims, the non-priority claims of the IRS, and residual capital gain taxes generated from the sale of the Properties not otherwise subject to a 1031 Like Kind Exchange.

**Treatment** – To the extent that proceeds are available from the sale of the respective Properties, the Class 3 unsecured claims shall be paid at the Closing on a *pro rata* basis (up to 100% of their allowed claims with post-petition interest at the federal judgment rate)

of the residual proceeds from the sale after the payment of all U.S. Trustee Fees, all Allowed Administrative Expenses, all Allowed Priority Tax Claims, the full amount of the Allowed Secured Class 1 Claims of Bay Point (including the Disputed Claim Reserve) and the full amount of the Allowed Class 2 Secured claims of the IRS (including the Disputed Claim Reserve).

**Voting** – The Class 3 Claims of Unsecured Creditors are impaired and eligible to vote.

**Class 4: Equity Interests**

    3.5    **Classification** – Class 4 consists of the Equity Interests in the Debtors.

Treatment – To the extent that any surplus remains from the proceeds of sale after payment of all U.S. Trustee Fees, all Allowed Administrative Expenses, all Allowed Priority Tax Claims, the full amount of the Class 1 Secured Claims of Bay Point (including the Disputed Claim Reserve), the full amount of Class 2 secured claims of the IRS (including the Disputed Claim Reserve), and all Allowed Class 3 claims of unsecured creditors, shall be allocated between the Equity Interest Holders of the respective Debtors as directed by the Equity Interest holders.

## MEANS FOR IMPLEMENTATION OF THE PLAN

    3.6    **Sale Free and Clear of All Claims, Liens, Taxes and Interests.**  The Joint Plan shall be funded through the sale of one or both of the Properties through an auction process unless the Debtors and Bay Point agree upon an acceptable private sale.  The Debtors and Bay Point shall agree in advance of the Auction on a proper market-based reserve price.  All transfers of the Properties shall be effectuated by a Bargain and Sale Deed(s) free and clear of all liens, claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5), with the same to attach to the proceeds in the same order, extent and priority as existed prior to confirmation.

The Sale shall be conducted in accordance with the Bid Procedures, to be approved by separate Order of the Bankruptcy Court. The results of the Auction shall be confirmed at the Confirmation Hearing and incorporated as part of the Joint Plan and Confirmation Order. The Closing shall take place once the Confirmation Order and Sale Order entered by the Bankruptcy Court become effective without a stay of enforcement.

3.7     **The Plan Administrator**. The Joint Plan shall be implemented by the Plan Administrator, who shall be jointly selected by the Debtors and Bay Point to oversee the Closing and to execute all documents required to be signed to consummate the Sale of the Properties. The Confirmation Order shall approve the appointment of the Plan Administrator, with the following core powers and duties:

> i.  To effectuate any of the provisions in the Joint Plan relating to the Sale of the Properties, including the execution of all required conveyancing and transfer documents and instruments needed to consummate the Sale transaction; and
> ii. To close on the Sale, collect and distribute all of the proceeds of the Sale in accordance with the terms of this Joint Plan, including the establishment of the Disputed Claim Reserve.

3.8     **Potential Substantive Consolidation.** In the event that the Properties are sold together as a single package covering both lots, and there are no adverse consequences, the Debtors respective estates may potentially be deemed substantively consolidated as of the Effective Date based upon the filing of a separate motion. Such substantive consolidation, if granted, however, shall not affect the legal and corporate structures of the Reorganized Debtors. As applicable, as part of the confirmation process, the Plan shall serve as a motion to substantively consolidate the Chapter 11 Cases, and Creditors may object to substantive consolidation in connection with the hearing to confirm the Plan. In such event, Confirmation of the Plan shall be deemed approval of substantive consolidation.

3.9     **Transfer Taxes**.  The Sale of the Properties constitutes the making or delivery of instruments of transfer of property or otherwise, pursuant to or in connection with confirmation of the Joint Plan, and, therefore, to the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Joint Plan, including an instrument of transfer and deed executed by the Debtors shall not be subject under any law imposing a stamp tax, real estate transfer tax, mansion tax, mortgage recording tax (as may be applicable) or similar tax (previously defined as the "Transfer Taxes").  Accordingly, the appropriate officials or agents of state or local governmental unit, including New York State, Suffolk County and the Town of Southampton, shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes.

3.10     **Allocation**.  In the event of a sale of the Properties as a single lot, the proceeds of the Sale shall be allocated between the respective Debtors in a manner which promotes the most favorable tax treatment as determined by the Equity Interest holders.

3.11     **Preservation of Causes of Action.**  All claims, causes of action, damages or remedies in favor of the Debtors' respective estates relating to any prior transactions (including all avoidance claims under the Bankruptcy Code or state law) shall be preserved for the benefit of the Debtors' estates, with any recovery therefrom to be distributed in accordance with the provisions of this Joint Plan.

3.12     **Capital Gains and 1031 Provisions.**  The Sale is likely to generate obligations for the payment of capital gains by the Debtors.  Accordingly, the Debtors, to the extent reasonably possible, are authorized to structure the Sale and any underlying asset purchase

agreements, so that the Sale qualifies under the exchange provisions of Section 1031 of the Internal Revenue Code of 1986 as amended (*i.e.*, a "Like-Kind Exchange"), including use of a qualified intermediary. To the extent that a Like Kind Exchange is not available, any resulting capital gains tax shall be treated as a Class 3 General Unsecured Claim for the purposes of this Joint Plan, eligible for a *pro rata* distribution as provided above.

## ARTICLE IV

## DISTRIBUTIONS

4.1     **Closing**. All distributions shall be made at the Closing.

4.2     **Disputed Claims**.     No distributions shall be made with respect to the disputed portion of any Class 1, 2 or 3 Claims to which a written objection has been filed with the Bankruptcy Court prior to the Closing. Instead, at Closing, a Disputed Claim Reserve shall be calculated, funded and established with the Plan Administrator.

## ARTICLE V

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     Neither Debtor is a party to any executory contract or unexpired lease. However, in an abundance of caution, any executory contract or unexpired lease shall be deemed assumed under 11 U.S.C. §365 upon the Effective Date.

## ARTICLE VI

## RETENTION OF JURISDICTION

6.1     **Retention of Jurisdiction**. The Bankruptcy Court shall retain post-confirmation jurisdiction over the following matters:

6.1.1     To adjudicate any dispute relating to the sale of the Properties and ensure that the Joint Plan is substantially consummated.

    6.1.2 To resolve all matters arising under or relating to the Plan, including, without limitation, (i) disputes relating to the Auction; (ii) any disputes relating to, or involving the amount of the allowance of Claims; and (iii) distribution or disbursement of the proceeds of the Sale.

    6.1.3 To allow or disallow in whole or in part any objections to Claims filed prior to the Closing.

    6.1.4 To grant or deny the applications for allowance of final compensation and reimbursement of expenses of Professionals.

    6.1.5 To enter an order or final decree concluding the Cases following the Sale of the Properties, payment of allowed claims, resolution of all disputes, and distribution of all reserves.

**ARTICLE VII**

**GENERAL PROVISIONS**

 7.1 **<u>Headings</u>**.  The headings in the Joint Plan are for reference purposes only.

 7.2 **<u>Contents of Confirmation Order</u>**.  The Confirmation Order shall be in form and substance satisfactory to the Debtors and Bay Point, and may contain various provisions deemed necessary to clarify, implement or enforce the Plan and Sale of the Properties.

 7.3 **<u>Modification of the Plan for Refinancing</u>**.  The Debtors reserve the right to modify the Plan based upon a written unconditional offer to purchase or term sheet to refinance one or both of the Properties, in lieu of the Auction, if any of the foregoing occurs prior to the start of the Auction and the same pays all Allowed Claims in full as determined by the Bankruptcy Court, including the Disputed Claims Reserve, and otherwise facilitates better tax treatment of disposition of the Properties.

7.4     **Quarterly Fees**.  All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtors until the closing of the Cases under 11 U.S.C. §350(a).

7.5     **Post-Confirmation Reports**.  The Debtors shall file quarterly status reports until the Cases are closed.

7.6     **Continuation of the Debtors**.  The Debtors shall continue in existence, duly authorized to carry out the terms of the Joint Plan and the distribution of the proceeds of the Sale. The Debtor shall not be dissolved until after the entry of a Final Decree closing the Cases.   and If it is determined that the Debtors need to continue to exist for purposes of tax planning, that election shall be made by the Equity Interest holders.

Dated:  New York, NY
        September 5, 2023

| | |
|---|---|
| Simmons Legal PLLC<br>*Counsel for Brickchurch Enterprises, Inc.*<br>1330 Avenue of the Americas, Suite 23A<br>New York, New York 10019<br>(212) 653-0667<br>camisha@simmonslegal.solutions | Goldberg Weprin Finkel Goldstein LLP<br>*Counsel for Aberdeen Enterprises, Inc.*<br>125 Park Avenue, 12th Floor<br>New York, New York 10017<br>(212) 221-5700<br>knash@gwfglaw.com |
| By:   /s/ Camisha L. Simmons, Esq. | By:   /s/ Kevin J. Nash, Esq. |
| Brickchurch Enterprises, Inc. | Aberdeen Enterprises, Inc. |
| By:   /s/ Matthew Kabatoff | By:   /s/ Matthew Kabatoff |