IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| ABERDEEN ENTERPRISES, INC. BRICKCHURCH ENTERPRISES, INC., | Case No. 8-23-72834-AST Case No. 8-22-70914- AST |
| Debtors. | Jointly Administered |
| | Re: D.I. Nos. 74, 76, 77 |

## OBJECTION OF DUANE MORRIS LLP TO CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT CHAPTER 11 LIQUIDATING PLAN

Duane Morris LLP ("Duane Morris") hereby respectfully objects (this "Objection") to confirmation of the Debtors' First Amended Joint Chapter 11 Liquidating Plan [D.I. 76] (the "Plan"), and in support hereof states as follows:

### Background

1. On April 30, 2022, debtor Brickchurch Enterprises, Inc. ("Brickchurch") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"). On August 2, 2023, related debtor Aberdeen Enterprises, Inc. ("Aberdeen" and, together with Brickchurch, the "Debtors") also filed a voluntary Chapter 11 petition. Debtors' chapter 11 proceedings are being jointly administered pursuant to this Court's Order dated September 6, 2023 (Docket No. 23-72834, D.I. No. 52).

2. The Debtors are presently managing their properties and operating their businesses as debtors in possession pursuant to sections 1107–08 of the Bankruptcy Code. No trustee or examiner has been appointed.

3. On September 22, 2022, the Brickchurch Debtor filed the *Application of the Debtor Pursuant to Sections 327(e) and 328 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2014(a), and Local Bankruptcy Rule 2014-1 for Authority to Retain and Employ Duane Morris LLP as Special Litigation Counsel* (Docket No. 22-70914, D.I. No. 108)

(the "Retention Application"), seeking authority for Duane Morris to continue providing the services described therein to Brickchurch as special litigation counsel.

4. On November 16, 2022, the Court entered the Order approving the Retention Application (Docket No. 22-70914, D.I. No. 173) (the "Retention Order"), approving the Brickchurch Debtor's retention and employment of Duane Morris as special litigation counsel *nunc pro tunc* to September 1, 2022.

5. On January 5, 2023, Duane Morris filed the *First Interim Fee Application of Duane Morris LLP as Special Litigation Counsel to the Debtor for the Allowance and Payment of Compensation for Services and Reimbursement of Expenses for the Period beginning September 1, 2022, through and including December 16, 2022* (the "First Interim Fee Period") (Docket No. 22-70914, D.I. No. 210) (the "First Interim Fee Application").

6. On February 7, 2023, this Court entered the Order (Docket No. 22-70914, D.I. No. 221) granting the relief requested in the First Interim Fee Application.

7. On September 5, 2023, Duane Morris filed the *Motion of Duane Morris LLP & Brett Messinger to Withdraw as Counsel for Brickchurch Enterprises, Inc., Aberdeen Enterprises, Inc. and Louise Blouin* (Docket No. 22-70914, D.I. No. 304) (the "Motion to Withdraw"). On October 6, 2023, this Court entered the *Order on the Motion to Withdraw* (Docket No. 22-70914, D.I. No. 317), authorizing Duane Morris and Brett Messinger to withdraw as counsel to Debtors (and their principal).

8. Duane Morris will soon submit its Second Interim and Final Fee Application (the "Final Fee Application"), seeking the allowance and payment of fees and reimbursement of expenses incurred by Duane Morris in its representation of the Brickchurch Debtor from the effective date of its retention through the date it ceased providing services for the Debtors. Duane Morris is presently assembling heretofore unbilled accruals, but estimates that its Final

Fee Application will seek compensation and reimbursement of approximately $550,000.00 in fees and expenses, inclusive of the $295,529.93 already approved in the Order granting the First Interim Fee Application. Duane Morris has already received $237,360.00 in payments on this matter, and it is also holding a $120,426.91 retainer.

9. On October 11, 2023, Debtors filed the Plan as well as their First Amended Joint Disclosure Statement (D.I. 77) (the "Disclosure Statement").

### Objection

10. Duane Morris objects to the Plan, but only to the extent the Plan is not clear whether professional fees, which must be afforded administrative priority under the Bankruptcy Code, will be paid in full on the Plan's effective date. While the Plan does state that professional fees will be paid in full, it establishes funding and distribution mechanisms that create significant doubt regarding whether full payment can be accomplished. The Plan should not be confirmed unless revised to clarify that professional fees will be paid in full, regardless of the outcome of the Debtors' asset sales, exit financing or any other event following Plan confirmation.

11. The Bankruptcy Code prohibits confirmation of a Chapter 11 plan unless such plan provides that holders of administrative claims will be paid in full. Specifically, Bankruptcy Code section 1129(a) provides that "the court shall confirm a plan only if . . . on the effective date of the plan, the holder of [administrative priority claim] will receive on account of such claim cash equal to the allowed amount of such claim". 11 U.S.C. § 1129(a)(9); *see also In re Lehman Bros. Holdings Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014) ("In Chapter 11 cases, such as this one, all administrative expenses must be paid in full."). Claims based upon the fees and expenses of retained professionals, such as Duane Morris, qualify as administrative claims required to be paid in full as a prerequisite to plan confirmation. 11 U.S.C. § 503(b)(2), (4); *see also In re Bayou Group, LLC*, 431 B.R. 549, 557 (Bankr. S.D.N.Y. 2010).

12. As noted above, the Plan does state that administrative priority claims will be paid in full. (Plan, § 2.1). However, though professional fee claims are included within the Plan's definition of administrative claims (Plan, § 1.7), the Plan proposes different treatment for professional fee claims. (Plan, § 2.2). Specifically, the Plan proposes that Debtors shall establish an escrow account to cover "estimated" professional fees, "in such amounts which are reasonably necessary to pay the amount of the Estimated Professional Fee Claims" and that such reserve shall be the sole source of payment, such that the holders of professional fee claims "shall have no further recourse against the Plan Administrator, the Debtors, or Bay Point". (Plan, § 2.2).

13. Further, as the Plan concedes, sufficient funding for distributions on account of allowed administrative claims is not yet certain or in place. Rather, such funding will depend upon post-confirmation events. According to the Plan, distributions will be paid from the proceeds of "the Sale of the Properties through the sale process" and if that is insufficient, Ms. Blouin will advance exit financing to make up the difference. (Plan, §§ 4.2, 4.3). If a claim, including an administrative claim / professional fee claim, is disputed, the Plan entitles Debtors to seek to estimate such claim for purposes of establishing a disputed claims reserve, upon which the holder of such claims "shall have no recourse to any assets theretofore distributed . . . or any other entity or property". (Plan, § 5.2).

14. What is more, although the sale of the Properties is the primary funding source for distributions, the Plan proposes its own priority waterfall to govern which claims shall be paid from such proceeds, and in what order. (Plan, §§ 5.8, 5.9). Specifically, before administrative claimants recover any sale proceeds, the various claims of Debtors' secured creditors, priority claimants, indemnification claims, tax claims and the like, must be paid. (Plan, § 5.8). This would not be problematic were it clear that administrative claimants will receive a 100%

distribution. But read in tandem with the Plan's 'substantial consummation' provision, full payment is by no means assured. Rather, the Plan provides that if it cannot be "substantially consummated," secured creditors will recover the sale proceeds, and the cases will be converted to Chapter 7. (Plan, §§ 10.3, 10.4). But such determination is to take place *after* Plan confirmation. The current iteration of the Plan, therefore, risks the impermissible outcome where the Court confirms a plan for what may be administratively insolvent estates, but then is forced to convert the cases to Chapter 7, after Bay Point and other secured creditors reap the entire benefits of the Debtors' Chapter 11 sale process, including the sale proceeds.

15. The potential for such outcome is rendered more likely because under the Plan, Ms. Blouin is entitled to await the property sale results before deciding whether to provide sufficient exit financing. (Plan, § 4.3). Said another way, satisfaction of allowed administrative claims may depend upon the presence or absence of exit financing, which the Plan sets up as a condition to *consummation*, as opposed to *confirmation*. However, administrative solvency must be established as a condition to Plan *confirmation*, and cannot be dependent upon post-confirmation events. 11 U.S.C. § 1129(a)(9). Such is the mandate not only of section 1129(a)(9), but also of the Bankruptcy Code's confirmation requirement that the Plan be feasible. 11 U.S.C. § 1129(a)(11).

16. Accordingly, the Plan must be revised to clarify that administrative claims, including professional fee claims, will be paid in full regardless of the outcome of the Property sales. If exit financing is required to accomplish this plan confirmation requirement, such financing should be funded and escrowed in advance of confirmation.

WHEREFORE, for the reasons stated herein, Duane Morris requests that confirmation of the Plan be denied, unless resolved to clarify that all administrative priority claims, including professional fee claims, will be paid in full in accordance with the priority scheme established by

the Bankruptcy Code, irrespective of any post-confirmation events, and that the Court grant such other and further relief as is just and proper.

Dated: October 26, 2023                     Respectfully submitted,

                                                          **DUANE MORRIS LLP**

                                                        /s/ *Brett L. Messinger*
                                                        Brett L. Messinger
                                                        1540 Broadway
                                                        New York, NY 10036
                                                        Tel.: 215.979.1508
                                                        Email: blmessinger@duanemorris.com

                                                        ***FORMER SPECIAL LITIGATION COUNSEL FOR THE DEBTOR***

# CERTIFICATE OF SERVICE

I, James C. Carignan, hereby certify that, on October 26, 2023, I caused to be served the Objection of Duane Morris LLP to Confirmation of Debtors' First Amended Joint Chapter 11 Liquidating Plan, upon the following entities via cm/ecf, first-class mail and electronic mail.

Camisha L. Simmons, Esq.
Simmons Legal PLLC
1330 Avenue of the Americas, No. 23A
New York, NY  10019
Email:  camisha@simmonslegal.solutions

J. Ted Donovan, Esq.
Goldberg Weprin Finkel Goldstein LP
125 Park Avenue, 12th Floor
New York, NY  10017
Email:  tdonovan@gwfglaw.com

Dated:  October 26, 2023
Wilmington, DE

*/s/ James C. Carignan*
James C. Carignan, Esq.