**From:**          Louise Blouin <lt@ltbholding.com>
**Sent:**          Tuesday, October 29, 2024 4:18 PM
**To:**            NYEB_DropBox; Mathew Kabatoff; Kevin J. Nash
**Subject:**       Re: Latest last
**Attachments:**   JGB judgment [15][20][8][16].pdf; Covenant Breach[34][69][41].pdf; Auction Agreement -
                   January 10, 2023[64][31][27].pdf; Bay Point - Gin Lane - Fully Executed Loan and Security
                   Agreement[53][79][25].pdf; Scan Oct 28, 2024 (1)[30][56][57].pdf; Scan Oct 23, 2024.pdf;
                   Scan Oct 23, 2024 (1).pdf

**Categories:**    Central Islip

CAUTION - EXTERNAL:

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
In re: Chapter 11
ABERDEEN ENTERPRISES, INC., Case No. 23-72834-ast
BRICKCHURCH ENTERPRISES, INC., Case No. 22-70914-ast
Debtors. Jointly Administered

Honorable Alan S. Trust
U.S. Bankruptcy Court
290 Federal Plaza Central Islip
NY, 11722

Request for Court Intervention to Resolve Outstanding Financial and Legal Matters

This motion seeks the court's intervention to address unresolved tax filing obligations, capital gains
requirements, and the transfer of all remaining sales proceeds for Aberdeen and Brick Church
Enterprise Inc. Specifically, it requests the transfer of proceeds, following disbursements as detailed
in Schedule A, and any remaining funds in the Baypoint account to the sole remaining Creditor (as
specified bellow), sole Shareholder and sole Director.

It is respectfully requested that Mr. Nash, Ms. Simmons and Trustee promptly provide all
documentation and justification related to the $89 million transaction in one file as Mr. Kabatoff is
unwell and has limited  access to  this information .

This information is critical, as the subject, Gary Hertz, has confirmed that, despite the court order, he

1

does not currently have access to these essential details. Without this documentation, it is impossible to close the books accurately and meet the necessary financial reporting requirements.

This motion further requests that $100,000 from the transaction proceeds be ring-fenced to cover the costs associated with hiring a tax lawyer and CPA. The allocation is intended to ensure efficient resolution of outstanding financial and tax matters and enable the prompt hiring of tax lawyer / CPA within the next few days and to deliver the tax returns 12 weeks after the reception of all justifications and the hiring of the tax lawyer / CPA a tax opinion cannot be given for such an a small amount of $10 000 - we can pay a bookkeeper/ junior accountant with this amount .

In light of the remaining fiscal and financial reporting needs, and given that all debt, including the Chapter 11 obligations previously held by Baypoint, has been fully repaid, this motion respectfully requests the appointment of a tax lawyer and CPA. Additionally, it seeks the dismissal of the current counsel, trustee, and decision-maker ( Mr. kabatoff and I will deliver the tax returns – but do not need more costs )This change is intended to reduce unnecessary costs and ensure the timely completion of outstanding financial reports.

The primary focus, following the clawback hearing, which will be represented by the sole $26 million creditor, who is also the sole director and sole shareholder, is to expedite these financial and reporting obligations efficiently.

Additionally, the motion addresses an up-to-date summary of clawback and disputed claims filed since February 2024.

The court is respectfully asked to consider these requests to enable the resolution of all outstanding financial matters.

1. Background and Relief Sought

Mrs. Blouin, the sole shareholder, director, and $26 million creditor of Aberdeen and Brickchurch Enterprise Inc., respectfully moves this Court to restore control over the company, as Baypoint Capital, the prior sole debt holder, has been fully repaid. Mrs. Blouin seeks formal approval for the dismissal of the current trustee, decision-maker, and legal counsel to reduce unnecessary administrative costs and facilitate the return of Aberdeen and Brickchurch Enterprise Inc. to standard operations and appoint Tax lawyer /cpa to complete the filings.

2. Baypoint Capital Repayment and Clawback Process

While Baypoint Capital has been repaid in full, they are subject to a potential clawback action initiated by Mrs. Blouin, pending a court hearing that has been waiting for scheduling since February 2024. This clawback action is critical to ensuring a just final distribution and transparency in the financial records of the bankruptcy proceedings.

3. Request for Return of Control and Operational Transition

Given that all creditor obligations are satisfied and the outstanding debt has been resolved, Mrs. Blouin, as the sole director and shareholder, requests the Court to formally restore her full operational control of the business. The removal of the trustee and related roles would streamline the conclusion

of the Chapter 11 case, allowing Aberdeen and Brickchurch to resume regular business functions effectively.

## 4. Financial and Administrative Tasks Remaining

The final step to close the Chapter 11 proceedings involves:

• A hearing for the clawback motion, with representation from Mrs. Blouin's legal and financial team.

• Completion of all necessary tax filings, which will be concluded within 12 weeks of receiving detailed justifications for the $89 million in disbursements. Mrs. Blouin's team has committed to promptly prepare the necessary filings, as they have successfully filed over 23 years of prior tax returns.

## 5. Request for Transparency and Allocation of Reserved Funds

**Mrs. Blouin respectfully requests that the Court order the provision of complete justifications for the $89 million in expenses** listed on Schedule A to enable a thorough review and accurate final tax filing. Additionally, Mrs. Blouin requests the ring-fencing of $100,000 from the distribution proceeds to cover any remaining fiscal, legal, and administrative expenses necessary to finalize the bankruptcy proceedings.

**Failure to Provide Requested Financial Documentation: Despite multiple requests from Mrs.Blouin and Mr. Kabatoff, Mrs. Simmons and Mr. Nash** have not provided necessary financial breakdowns, including the principal and interest details over the last months and the information needed for tax filings. Their lack of responsiveness has hindered the completion of accurate financial reports and demonstrates a disregard for the transparency required in their role.

Mrs. Blouin has a demonstrated track record in business consolidation, having successfully managed over 60 consolidations and filed corporate taxes for over 300 entities. As the former sole shareholder and director responsible for the turnaround of Phillips Auction House, she brings extensive experience in corporate and financial oversight. Mrs. Blouin now seeks to conclude this Chapter 11 proceeding to facilitate the revival of her business ventures and to allow realign costs where need it and to relieve Mr. Kabatoff of his function – we are asking a social science specialist person to file tax returns when he cannot read a balance sheet and income statement and has never filed a corporate tax return and especially one of this size $89 million .

Honorable Judge Trust

Points outstanding:

## 1. Enforcement of Contracted 9% Interest Rate on the JGB Assignment

• Issue: Baypoint has imposed inflated interest rates, reaching up to 24% and 50%, contrary to the agreed-upon 9% rate in the JGB assignment. This deviation represents a breach of contract, causing significant financial damage to Mrs. Blouin, the sole $26 million creditor.

- **Desired Outcome:** Enforce the 9% interest rate as per the JGB assignment, preventing Baypoint from unilaterally inflating interest charges.

Supporting Case Law:
Courts uphold contracted interest rates and prevent unauthorized increases. For instance:

• *F.D.I.C. v. Dintino, 167 Cal. App. 4th 333 (2008),* invalidated excessive interest rates exceeding contractual terms, mandating restitution for overcharged interest.

• *National Bank of Commerce v. All-American Assurance Co., 583 F.2d 1295 (5th Cir. 1978),* confirmed that creditors are entitled to recover any unlawfully imposed interest beyond agreed terms.

• Application: Enforcing the 9% interest rate will shield Mrs. Blouin from undue financial penalties. A reimbursement claim of $8,721,433 is warranted for excess interest charges imposed by Baypoint.

https://acrobat.adobe.com/id/urn:aaid:sc:EU:575dce2a-1a26-4146-8173-d09516e5c011

*See attachment above JGB Judgment*

2. Allegations of Fraudulent Misrepresentation and Preferential Treatment in Misallocation of Proceeds

- **Issue:** Baypoint allegedly engaged in fraudulent misrepresentation and preferential treatment, misallocating proceeds in violation of the JGB judgment and auction process. The failure to set aside funds for the RIS lien (not yet due) and authorization of improper fund transfers undermines Mrs. Blouin's creditor position and constitutes an unfair preference.

- **Desired Outcome:** Nullify preferential treatment, recover unauthorized fund allocations, and ensure Baypoint's compliance with equitable distribution requirements.

Supporting Case Law:

• *In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392 (S.D.N.Y. 2003),* supports claims for damages arising from fraudulent misrepresentation.

• *BFP v. Resolution Trust Corp., 511 U.S. 531 (1994),* protects creditors against preferential transfers that disadvantage other creditors.

• *Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989),* underscores the right to recover funds misappropriated through fraudulent transfers.

• Application: Clawback proceedings filed in February 2024 seek to reclaim $21 million, including $1 million allegedly given as a bribe to the RIS, facilitating Baypoint's improper allocation. Enforcing clawback provisions under Section 548 of the Bankruptcy Code ensures fair treatment of Mrs. Blouin's claims and to respect the amount of the lien for RIS and to disburse to the creditor the full amount that will remain with a lien - until further notice .

*https://acrobat.adobe.com/id/urn:aaid:sc:EU:51abb1e7-c5d1-490f-8b25-9706913d917a*    *See the attachment contract – JGB judgment with allocation instruction*
*https://acrobat.adobe.com/id/urn:aaid:sc:EU:5e3a63e6-e37b-4175-b191-237d25bbf423*    *See the attached order approving bid procedures attachment 2023.11 27 – lien must be paid or set aside if not due*

*In the previous disputed claims*

3. Compliance with DIP Loan Agreement Covenants and Removal of Unwarranted Interest and Delays
It was for the emergency renovation line never made available, the covenant breach is related to this sum that they release in part (in bad faith) mostly at maturity, then putting me in default.

A default is not legal when the lender breaches a covenant – Camisha Simmons refused to present any motion to protect debtor – and was forging my signature at the same time with a conflict of interest.

(See attached Covenant)

- Issue: Baypoint breached the DIP loan covenants, causing procedural delays and financial harm. Delays included a nine-month deferment in releasing the renovation line and a five-month lag in finalizing a one-day concierge contract, obstructing Mrs. Blouin's timely Chapter 11 exit and diminishing asset value by forcing the sale in an unfavorable month.

- Desired Outcome: Enforce compliance with DIP loan covenants and remove undue interest caused by delay tactics.

Supporting Case Law:

• *Seiden Assocs., Inc. v. ANC Holdings, Inc., 754 F. Supp. 37 (S.D.N.Y. 1991), ruled that intentional delays hindering contract performance violate good faith.*

• *Hunt v. Alliance North Am. Gov't Income Trust, Inc., 159 F.3d 723 (2d Cir. 1998), established that covenant breaches justify restitution.*

• Application: Enforcing the DIP loan covenants and removing interest protects Mrs. Blouin from financial losses due to delay tactics. Reimbursement claims range between $11,840,000 and $21,396,000, depending on allocation enforcement of the JGB mortgage.

Details:
Paid to Bay Point $56, 340 000 for JGB on both Aberdeen and Brickchurch  – $44,500 000 JGB judgment  (including pre-interest on JGB judgment )
= $11,840 000- assuming non -respect of allocation however respecting the above covenant breach with no interest paid.

Paid to Bay Point $ 56, 340 000 for JGB - $ 34,944 000 for JGB judgment including pre interest only respecting the JGB judgment as per allocation = $21 396 000

*In the previous disputed claims*

https://acrobat.adobe.com/id/urn:aaid:sc:EU:215897c4-55e6-4456-93c7-750ee87e4ffd

See attachment Bay Point above

## 4. Protection Against Defamation and Reputational Harm

- Issue: Baypoint and Sotheby's /Concierge representatives, including brokers Tim Davis  from Corcoran owned by Sotheby and Harald Grant, from Sotheby's  allegedly defamed Mrs. Blouin by leaking false information to the press, impacting her reputation and asset valuation. Statements to media outlets, such as Vanity Fair and The New York Times, implied substantial liabilities and potential bankruptcy, which were factually inaccurate and damaging with invasion of privacy.

- Desired Outcome: Accountability for defamation and compensation for reputational harm.

Supporting Case Law:

• *New York Times Co. v. Sullivan, 376 U.S. 254 (1964), protects against reputational harm caused by public misrepresentation.*

• *Hannex Corp. v. GMI, Inc., 140 F.3d 194 (2d Cir. 1998), supports tortuous interference claims for intentional disruption of business relations.*

• Application: Enforcing defamation accountability will mitigate reputational damage by Baypoint's media narrative. Damages will be assessed by the court, ensuring recovery for harm inflicted by these defamatory statements.

## 5. Compliance with Auction and Broker Confidentiality Provisions and counteract the manipulation of asset values

- Issue: Breaches of confidentiality by brokers Tim Davis working for the subsidy of concierge, who disclosed sensitive information to the media without authorization and undermined Mrs. Blouin's asset valuation. Such disclosures violate fiduciary duty, forfeit commission rights, and justify financial damage. Mr. Harald Grant also came to the house without disclosing he was bringing the NY Times – this is an intrusion of  privacy  and  defamation -fiduciary duty.

- Desired Outcome: Deny commission payments for breach of confidentiality to broker and its owner concierge Sotheby's  and seek reimbursement for damages caused by  Tim Davis / concierge for diminishing the price against previous consent by   $50 mm from its UBS evaluation this was communicated  to the Real Deal paper and Concierge did not apply its stacking horse price to protect this leak as per their contract , nor include a required minimum asked by the decision maker previously approved by Lender and Debtor of $110 million.

Note: commission were paid to brokers that did not do the selling of the homes – unheard *??? in the disputed claims*

Supporting Case Law:

• *In re Lehman Bros. Holdings Inc., 594 B.R. 33 (S.D.N.Y. 2018), establishes that breaches of confidentiality in bankruptcy cases result in forfeiture of compensation.*

• *Krahm v. Graham, 336 F.2d 941 (9th Cir. 1964)*, and *Coldwell Banker Commercial Group, Inc. v. Camelback Office Park, Ltd., 156 Ariz. 226, 751 P.2d 532 (1987)*, confirm that brokers violating fiduciary duties by disclosing confidential information forfeit their right to compensation.

• Application: The unauthorized media engagement by brokers Tim Davis and Harald Grant and Concierge justifies denial of their commission and reimbursement of previously paid commissions totaling $395,000 and $1,580 000
However the broker that sold the house gets fully paid.

• Court Authority to Deny Broker Com their commission:.
 Under 11 U.S.C. § 330(a), bankruptcy courts have discretion to deny professional fees if the professional's conduct did not benefit the estate. If these brokers breached their duties and violated confidentiality, the court may revoke or deny

6. Unauthorized Mortgage tortuous Interference by Baypoint with Aberdeen Estate

 See above attachment to reinstate my Morgan mortgage – they were flexible but Bay Point came in and interfered – they wanted the mortgage.

   • Issue: Baypoint allegedly engaged in tortious interference by securing an unauthorized mortgage on the Aberdeen estate. They falsely claimed control over the Aberdeen estate, blocking Mrs. Blouin's ability to refinance with Morgan Stanley, despite her having full financing available and no default status.

   • Relevant Law: Tortious interference with economic advantage protects parties from intentional interference in contractual or business relationships, especially when resulting in financial harm.( see the reinstatement of good standing )

Supporting Case Law:

   • *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183 (1980)*, defines tortious interference with prospective economic advantage as requiring a wrongful means or interference solely aimed at harming the other party.

   • *Carvel Corp. v. Noonan, 3 N.Y.3d 182 (2004)*, holds that economic interference by fraudulent misrepresentation or deceit can lead to damages.

• Application: Recognition of Baypoint's tortious interference, allowing Mrs. Blouin to claim damages for the unauthorized mortgage's impact on her refinancing efforts and financial interests in Aberdeen- having to seek Bankrupcy protection – cost to reimburse trustee fee $ 250,000, legal fees  $140,000, fee reserves $30,000 = total  $420,000. Plus damages to be established by the court.

7.  Embezzlement of Insurance Credit ($108,317.25) by Baypoint
 https://acrobat.adobe.com/id/urn:aaid:sc:EU:0d2698ab-5743-4325-b579-d149d1ba16e5  they took the money that was a credit from Aberdeen insurance from before Bay Point and did not account for it with the source of revenue and distribution
 https://acrobat.adobe.com/id/urn:aaid:sc:EU:729cc21c-c10f-4ccc-8b7f-33d1387d73ea they turned it to go to Bay Point

- Issue: Baypoint allegedly embezzled a $108,317 insurance credit intended by Morgan Stanley to be re-credited to Aberdeen. This amount was linked to insurance funds collected prior to Baypoint's involvement and was intended solely for Aberdeen.

- Relevant Law: Embezzlement of funds, particularly in bankruptcy proceedings, is actionable and could be subject to clawback if it involves unauthorized use or diversion of estate assets.

Supporting Case Law:

• *United States v. Bailey, 859 F.2d 1265 (7th Cir. 1988), explains that embezzlement in bankruptcy proceedings constitutes unauthorized and intentional misappropriation of funds.*

• Application: Recovery of $108,317 for the Aberdeen estate and reallocation to sole creditor account, given that Baypoint lacked authority to intercept these funds.

## 8. Unauthorized Withdrawal of Legal Fees Baypoint from Escrow Account ($708,000)

• Issue: Baypoint is alleged to have withdrawn $708,000 in legal fees from the escrow account without authorization. This constitutes a misappropriation of funds that should have been disclosed and approved as part of the bankruptcy estate's asset distribution.

• Relevant Law: Unauthorized withdrawals or transfers during bankruptcy without court approval violate the Bankruptcy Code's requirements for transparency and fiduciary responsibility.

Supporting Case Law:

• *In re Ionosphere Clubs, Inc., 17 F.3d 600 (2d Cir. 1994), emphasizes the importance of fiduciary duty and transparency in managing bankruptcy estate funds.*

• Application: Immediate reimbursement of $708,000 to the escrow account, with additional penalties or sanctions for unauthorized withdrawals.
A full audit is required of this initial escrow account. It should have been done to avoid double payments such as the$250,000 trustee fee and the $135,000 Simmons fee.

https://acrobat.adobe.com/id/urn:aaid:sc:EU:f0562025-43f3-4de2-bf0f-4ea70037e43d unauthorized payment to bay point from my escrow account  so excessive -they are mostly hired to threaten the borrower it should be at their expense

## 9. Unaccounted Funds from Renovation Line ($250,000 - $300,000)in Bay Point account .no transparency on  $1,5 million
https://acrobat.adobe.com/id/urn:aaid:sc:EU:6e4d9349-016f-49f1-9174-07cda90e2e1f

$1,585 773.29 not properly accountant for. This amount was sent to Brickchurch and had to be returned a week after to Bay Point or a few days why?  They charged 24 % while money was no longer made available, contrary to the Dip Loan Covenant.

- Issue: Baypoint allegedly concealed between $150,000 to $200,000 from the renovation line, failing to disclose these funds during distribution. An audit is necessary to verify the exact amount.

- Relevant Law: Bankruptcy estate funds must be fully disclosed, and concealed assets can be clawed back or recovered to maintain fairness in asset distribution.

Supporting Case Law:

• In re TSG Group, Inc., 426 B.R. 423 (Bankr. S.D.N.Y. 2010), allows for recovery of funds in cases of nondisclosure or concealment of estate assets, including equitable remedies.

• Application: Recovery of the concealed funds and accounting for their misallocation, ensuring full transparency in the bankruptcy proceedings.

10. Trustee received, unless proven to the contrary, double payment on Brickchurch to be reimbursed $250,000- - trustee to verify I am sure it is fine https://acrobat.adobe.com/id/urn:aaid:sc:EU:cf783970-74af-4fcd-bdba-e5a2fa8d3dc0

Application: Seek restitution for unauthorized fees and potential double payments, ensuring accountability for all funds withdrawn without approval and to receive justification of fees, which has never been shared, related to the distribution to reconcile the two accounts escrow and distribution of proceed accounts

11. Request for Excess Proceeds Allocation: We respectfully ask that any proceeds exceeding $84 million which is the amount of the agreed plan as the maximum amount to Baypoint with still as of today certain clawbacks and disputed claims to the credit to the Sole $ 26 million creditor to be heard and possibly representing a range from $ 9 million to 26 million plus damages , I ask these proceeds to be credited directly to Mrs. Blouin, the sole creditor. This arrangement is both fair and essential to maintaining the integrity of the bankruptcy process and ensuring that Mrs. Blouin's creditor rights are preserved.

Supporting Case Law:

• In re Crystal Apparel, Inc., 220 B.R. 816 (Bankr. S.D.N.Y. 1998): This case reaffirms that proceeds from asset liquidation should be distributed in accordance with creditors' rights, protecting creditors from unauthorized retention or distribution of assets.

• In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723 (Bankr. S.D.N.Y. 1992): This decision underscores the principle that proceeds from sales should be allocated to creditors in a manner that respects the priority of claims and the equitable rights of all parties.

Application; The undersigned seeks authorization from the Court to transfer these proceeds in compliance with creditor rights and New York State law.

12. Ms. Simmons to reimburse her fee as she was fairly remunerated from the escrow account considering she forged a signature, would not quit and not file

https://acrobat.adobe.com/id/urn:aaid:sc:EU:cf783970-74af-4fcd-bdba-e5a2fa8d3dc0  paid in advance –
paid again with a reserve  $135,000   with distribution sole creditor object – not one motion – just pushing papers from Baypoint to the court with no changes when
Mr Katabotoff was asking – no motion for minimum not stacking horse  $20 million loss. Mr Kabatoff had to hire Rosen to do her job

**Summary of Key Outcomes**

1. Background and Relief Sought

Mrs. Blouin, the sole shareholder, director, and $26 million creditor of Aberdeen and Brickchurch Enterprise Inc., respectfully moves this Court to restore control over the company, as Baypoint Capital, the prior sole debt holder, has been fully repaid. Mrs. Blouin seeks formal approval for the dismissal of the current trustee, decision-maker, and legal counsel to reduce unnecessary administrative costs and facilitate the return of Aberdeen and Brickchurch Enterprise Inc. to standard operations.

2. Enforcement of the 9% interest rate on the JGB assignment and respect for allocation terms to prevent preferential treatment.

3. Compliance with the DIP loan covenants and removal of undue interest.

4. Accountability for defamation, with compensation for damages resulting from false statements.

5. Full financial restitution for covenant breaches, misallocated proceeds, and fraudulent actions by Baypoint.

6. Transparency in all financial transactions, to uphold creditor interests, no one answers .We have no justification for payments , no breakdown of principal and interest on  $89 million ,the adjuster said he has nothing and follows the order from the court as to the line by line ,I have asked Nash and Simons nothing and  Mr  Kabatoff is not well -

7. Baypoint to reimburse $1 million bribe cash disbursement to RIS for enhancing their ranking .As well the payment of RIS cannot be made on Brickchurch no legal link with this entity .

 8. Concealed Amounts and Full Remittance to the Creditor: We also request that any concealed amounts currently held in Baypoint's accounts be fully disclosed and remitted to Mrs. Blouin. Given the complexity and scale of this transaction, it is imperative that no funds be withheld from the rightful creditor.

 The undersigned seeks authorization from the Court to transfer these proceeds in compliance with creditor rights and New York State law.

9. Baypoint Capital Repayment and Clawback Process
 While Baypoint Capital has been repaid in full, they are subject to a potential clawback action initiated by Mrs. Blouin, pending a court hearing that has been awaiting  the first disputed claims filed

in February 2024. This clawback action is critical to ensuring a just final distribution and transparency in the financial records of the bankruptcy proceedings.

## 10. Request for Return of Control and Operational Transition

Given that all creditor obligations are satisfied and outstanding debt has been resolved, Mrs. Blouin, as the sole director and shareholder, requests the Court to formally restore her full operational control of the business. The removal of the trustee and related roles would streamline the conclusion of the Chapter 11 case, allowing Aberdeen and Brickchurch to resume regular business functions effectively and to file the tax return.

## 11.  Financial and Administrative Tasks Remaining

The final step to close the Chapter 11 proceedings involves:

- A hearing for the clawback motion, with representation from Mrs. Blouin's legal and financial team.
- Completion of all necessary tax filings, which will be concluded within 12 weeks of receiving detailed justifications for $89 million in disbursements. Mrs. Blouin's team has committed to promptly preparing the necessary filings, as they have successfully filed over 23 years of prior tax returns.

## 12. Request for Transparency and Allocation of Reserved Funds

Mrs. Blouin respectfully requests that the Court order the provision of complete justifications for the $89 million in expenses listed on Schedule A to enable a thorough review and accurate final tax filing. Additionally, Mrs. Blouin requests the ring-fencing of $100,000 from the distribution proceeds to cover any remaining fiscal, legal, and administrative expenses necessary to finalize the bankruptcy proceedings.

## 13. Conclusion and Formal Approval Request

For an orderly and efficient conclusion to this Chapter 11 case, Mrs. Blouin respectfully requests that the Court:

- Issue an order formally transferring control of Aberdeen and Brickchurch Enterprise Inc. to Mrs. Blouin.

CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.